JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Old Guard Insurance Company

**DEFENDANTS**

Mike Burdett Roofing and Exteriors, LLC

**(b)** County of Residence of First Listed Plaintiff  Medina County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Delaware County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Brendan S. Reilly, Esq., Post & Schell, P.C., Three Logan Square, 24th Fl., 1717 Arch St., Phila., PA, 215-587-1050

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [x] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [x] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [x] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- [x] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### CIVIL RIGHTS
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### INTELLECTUAL PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332 and 28 U.S.C. Section 2201(a)

Brief description of cause:
Declaratory Judgment insurance coverage

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
over $75K at issue

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE
Jul 17, 2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

Case 2:26-cv-04909-CAM Document 1 Filed 07/17/26 Page 2 of 577

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction:_____

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1.  Does this case involve property included in an earlier numbered suit? Yes ☐

2.  Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐

3.  Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐

4.  Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐

5.  Is this case related to an earlier numbered suit even though none of the above categories apply? Yes ☐
    If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☐ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

*B.* ***Diversity Jurisdiction Cases:***

☒ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____
    _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **OLD GUARD INSURANCE COMPANY** : | **CIVIL ACTION** |
| One Park Circle, P.O. Box 5001 : | |
| Westfield Center, OH 44251 : | **No.** |
|     **Plaintiff** : | |
| : | |
| : | |
|     **v.** : | |
| : | |
| : | |
| **MIKE BURDETT ROOFING AND EXTERIORS,** : | |
| **LLC** | |
| 3420 Horton Rd | |
| Newtown Square, PA 19073-3418 | |
|     **Defendant** | |

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Old Guard Insurance Company ("Old Guard"), by and through its undersigned counsel, Post & Schell, P.C., hereby files a Complaint against Defendant, Mike Burdett Roofing and Exteriors, LLC ("Burdett Roofing"), and in support thereof, alleges the following:

1. Old Guard files this Complaint seeking a declaration that it has no duty to defend or indemnify Burdett Roofing in connection with a lawsuit captioned, *Kelly Stewart and Mackenzie Hickey v. Reed Court Apts, LLC v. Richard S. Fleming v. Burdett Roofing and Exteriors, LLC*, pending in the Court of Common Pleas of Delaware County, PA, Case No. CV-2025-00156 (the "Underlying Action").

2. A true and correct copy of Second Amended Complaint (the operative Complaint) filed by Kelly Stewart and Mackenzie Hickey (collectively, "Underlying Plaintiffs") is attached hereto as Exhibit "1".

3. A true and correct copy of the Joinder Complaint filed by Reed Court Apts, LLC ("Reed Court") and Richard S. Fleming against Burdett Roofing is attached hereto as Exhibit "2".

1

4.      The Second Amended Complaint filed by Underlying Plaintiffs and the Joinder Complaint filed by Reed Court and Mr. Fleming generally seek damages arising out of alleged mold exposure suffered by Underlying Plaintiffs in their apartments in the Reed Court apartment complex in Delaware County, PA.

5.      Old Guard issued the below-described five (5) policies of insurance to Burdett Roofing (the "Old Guard Policies" and/or the "Policies") consecutively, ranging in dates from October 8, 2021 to October 8, 2026:

- CWP 179385Y (policy period 10/08/2021 to 10/08/2022) (hereinafter the "2021-2022 Policy");

- CWP 179385Y (policy period 10/08/2022 to 10/08/2023) (hereinafter the "2022-2023 Policy");

- CWP 179385Y (policy period 10/08/2023 to 10/08/2024) (hereinafter the "2023-2024 Policy");

- CWP 179385Y (policy period 10/08/2024 to 10/08/2025) (hereinafter the "2024-2025 Policy"); and

- CWP 179385Y (policy period 10/08/2025 to 10/08/2026) (hereinafter the "2025-2026 Policy").

6.      True and correct copies of the Old Guard Policies are attached hereto as Exhibits "3", "4", "5", "6", and "7", respectively.

7.      As detailed further below, Old Guard has no duty to defend and/or indemnify Burdett Roofing in the Underlying Action because each of the Old Guard Policies contain a Fungi Or Bacteria Exclusion (form CG 21 67 12 04), which generally provides that the Old Guard Policies do not apply to "bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" (**including mold**, per definition) or bacteria on or within a building or structure, including its contents, regardless of whether any other cause,

2

event, material or product contributed concurrently or in any sequence to such injury or damage. *See* Exhibit 3[1] at OGIC 000076.

8.      Accordingly, Old Guard files the instant declaratory judgment action.

## PARTIES

9.      Old Guard is an insurance company incorporated under the laws of the state of Ohio and which has principal place of business at One Park Circle, P.O. Box 5001, Westfield Center, OH 44251.

10.      Upon information and belief, Defendant Burdett Roofing is a limited liability company ("LLC") organized under the laws of Commonwealth of Pennsylvania with its principal place of business located at 3420 Horton Rd, Newtown Square, PA 19073-3418.

11.      Upon further information and belief, each of Burdett Roofing's members are citizens of Pennsylvania.  And, upon further information and belief, none of Burdett Roofing's members are citizens of Ohio.

## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332. There is complete diversity between Old Guard and Burdett Roofing, and the amount in controversy exceeds $75,000, exclusive of costs and interest.

13.      Old Guard is a citizen of Ohio, whereas Burdett Roofing is a citizen of Pennsylvania (and none of its members are citizens of Ohio), and thus, the parties are diverse.

14.      The amount in controversy exceeds $75,000.00 (exclusive of interest and costs) – as the liability limits for each of the Old Guard Policies exceed this amount.  *See Jumara v. State*

---

[1] This Complaint references identical language contained within each Old Guard Policy (*i.e.*, Exhibits 3, 4, 5, 6, and 7.  For ease of reference and brevity, citations are only made to Exhibit 3, the 2021-2022 Old Guard Policy.

*Farm Ins. Co.*, 55 F.3d 873, 876-77 (3d Cir. 1995); *Manze v. State Farm Ins. Co.*, 817 F.2d 1062, 1068 (3d Cir. 1987).

15. This Court has personal jurisdiction over Burdett Roofing because, upon information and belief, Burdett Roofing maintains its principal place of business in this judicial district.

16. This Court also has jurisdiction over this matter pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201(a), because this matter presents an actual controversy and seeks an order declaring the rights and other legal relations of the parties to this action.

17. An actual controversy is presented here because Burdett Roofing seeks coverage for the Underlying Action under the Old Guard Policies, and Old Guard contends that such coverage is barred.

18. Venue is proper in the Eastern District of Pennsylvania under 28 USC §1391 because Burdett Roofing resides in the Eastern District of Pennsylvania and is subject to personal jurisdiction in this judicial district, the Old Guard Policies were issued to Burdett Roofing in the Eastern District of Pennsylvania, and the events giving rise to the claims made in the Underlying Action occurred within this judicial district.

## **THE OLD GUARD POLICIES**

19. The Old Guard Policies provide certain commercial general liability ("CGL") coverage and are each subject to a $1,000,000 each occurrence limit, a $2,000,000 general aggregate limit (other than products/completed-operations), and a $2,000,000 million products/completed-operations aggregate limit.

4

20. Among other things, the Old Guard Policies provide certain CGL coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *See* Exhibit 3 at OGIC000033.

21. Specifically, the Old Guard Policies provide, in part, on form CG 00 01 04 13:

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

   **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

   **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim,

5

knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

*Id.*

22.    The Old Guard Policies contain the following definitions for "bodily injury", "occurrence" and "property damage":

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*        \*        \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*        \*        \*

17. "Property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CDROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

*Id.* at OGIC00045; 000047.

6

23.     Pursuant to the Damage To Your Work endorsement contained in each of the Old Guard Policies, the following language is added to the Policies' insuring agreement:

> f.  Damages because of "property damage" include damages the insured becomes legally obligated to pay because of "property damage" to "your work" and shall be deemed to be caused by an "occurrence", but only if:
>
> (1) The "property damage" is the result of work performed on your behalf by a subcontractor(s) that is not a Named Insured;
>
> (2) The work performed by the subcontractor(s) is within the "products-completed operations hazard"; and
>
> (3) The "property damage" is unexpected or unintended from the standpoint of the insured.
>
> We will not be obligated to pay any sums to repair or replace the defective work performed on your behalf by a subcontractor.

*Id.* at OGIC000089.

24.     The Old Guard Policies each contain the Fungi Or Bacteria Exclusion (form CG 21 67 12 04), which states, in pertinent part, that the insurance does not apply to:

> **Fungi Or Bacteria**
>
> a.  "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.
>
> b.  Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.
>
> This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

*Id*. at OGIC000076.

25.     The Fungi Or Bacteria Exclusion defines "fungi" as follows:

7

> "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

*Id.*

26.     The Old Guard Policies also each contain the Pennsylvania Changes – Defense Costs endorsement (form IL 01 20 10 13), which provides, in pertinent part:

> If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

*Id.* at OGIC000029.

## THE UNDERLYING ACTION

### A.     The Complaint Filed By Underlying Plaintiffs

27.     Kelly Stewart and Mackenzie Hickey initiated the Underlying Action by the filing of a Writ of Summons on or about March 23, 2025.

28.     The Underlying Plaintiffs filed a Complaint against Reed Court and Richard S. Fleming on or about November 4, 2025.

29.     The Underlying Plaintiffs filed a Second Amended Complaint on or about January 12, 2026.  The Second Amended Complaint remains the operative Complaint in the Underlying Action.  *See* Exhibit 1.

30.     Underlying Plaintiffs in the Second Amended Complaint generally allege to have incurred damages related to mold exposure in their apartments in Reed Court.

31.     Underlying Plaintiffs allege Richard S. Fleming is the sole owner, managing member, and governor of Reed Court.  *See* Exhibit 1 at ¶ 18.

8

32. There are no allegations directed against Burdett Roofing in Underlying Plaintiffs'
Second Amended Complaint.

33. As more specifically alleged by Underlying Plaintiffs:

21. Plaintiffs, Kelly Stewart and Mackenzie Hickey, have been tenants at the Apartment Complex since September 2019 and first resided in a second floor apartment ("E-2") before moving into the first floor apartment below it ("E-1") in or about September 2023.

\* \* \*

24. Beginning in or about September 2021, Ms. Stewart first notified Mr. Fleming that water was infiltrating her bedroom ceiling and she was told that it would be taken care of by Defendant Reed Court.

\* \* \*

31. Likewise, Plaintiff repeatedly notified Mr. Fleming that she thought there was mold growing in her ceiling and bathroom and expressed her fear that it could cause health complications for her due to her emphysema.

32. Defendants denied that there was any mold, however, and took no actions to have E-2 inspected for mold or to remediate the mold in E-2.

\* \* \*

34. In November 2022, Plaintiffs provided a letter to Defendants from Ms. Hickey's primary care physician notifying them that she was suffering from chronic sinusitis and that the conditions in E-2 were not acceptable and needed to be remediated immediately. Attached hereto as Exhibit "D" and incorporated is a true and correct copy of the letter from Ms. Hickey's primary care physician dated November 25, 2022.

35. In March 2023, Ms. Stewart provided a letter from her allergist, Dr. Dossumbekova, to Defendants informing them that Ms. Stewart has chronic breathing problems, that mold is a known toxin that can cause breathing problems, asthma, and chronic sinusitis, and recommending that Defendants have E-2 professionally cleaned to remove the mold. Attached hereto as Exhibit "E" and incorporated is a true and correct copy of the letter from Dr. Dossumbekova dated March 6, 2023.

36. In or about May 2023, Defendants finally screwed a rough-cut patch of drywall over the open hole in her bedroom ceiling but left large gaps so that the bedroom continued to be exposed to the water intrusion and the mold in the rafters. Likewise, Defendants never remediated the plainly

9

visible mold in the bedroom, the rafters, on the drywall, in the bathroom, or from any other locations in E-2 where it was now visibly growing on the walls along with pockets of water trapped in between the paint and drywall.

\* \* \*

39. In July 2023, Ms. Stewart provided a second letter from her allergist, Dr. Dossumbekova, to Defendants informing them that Ms. Stewart has chronic breathing problems, that mold is a known toxin that can cause breathing problems, asthma, and chronic sinusitis, and recommending that that Defendants have E-2 professionally cleaned to remove the mold.

\* \* \*

41. Despite repeatedly notifying Defendants of the leak in her bedroom, the mold forming throughout E-2, the health problems Plaintiffs were suffering, and providing them with videos and photos of the deteriorating conditions in the apartment, Defendants intentionally delayed abating the water intrusion, repairing and remediating the damage and mold in order to avoid spending money and maximizing their profit from Unit E-2. See, Ex. C.

\* \* \*

45. On September 5, 2023, Plaintiffs provided Defendants with Dr. Perez's Report documenting airborne levels of Aspergillus/Penicillium spores that rendered E-2 unfit and inhabitable for continued occupation due to the severe damage and hazardous health conditions caused by the unabated mold growth, requested alternative accommodations to mitigate her damages, and demanded the claim be reported to their insurance carrier. See, Notice of Intent to Sue dated September 5, 2023 attached hereto as Exhibit "I."

\* \* \*

48. Ms. Stewart had asked Defendants on multiple occasions if they could move into Unit E-1, which had been vacant for some time, but Defendants refused to transfer the Lease because they had it listed for rent at a much higher amount than Plaintiffs' rent.

49. Unfortunately, it soon became clear to Plaintiffs that E-1, although freshly painted, was also unfit and uninhabitable due to unabated mold growth and active water intrusion.

\* \* \*

10

54. On August 26, 2024, Plaintiffs provided Defendants with Dr. Perez's Follow-up Report documenting airborne levels of Aspergillus/Penicillium spores that rendered E-1 unfit and inhabitable for continued occupation due to the severe damage and hazardous health conditions caused by the unabated mold growth, and Plaintiffs requested alternative accommodations. See, Notice of Intent to Sue dated August 26, 2024 attached hereto as Exhibit "L."

55. In response, Defendants did absolutely nothing – they failed to conduct a mold inspection, remediate the dangerous levels of mold identified in Dr. Perez's Follow-up Report, and ignored Ms. Stewart's repeated notifications of her health problems.

*See* Exhibit 1 at referenced paragraphs.

34. With respect to damages, Underlying Plaintiffs allege:

63. During the course of their tenancy, Ms. Stewart was compelled to discard the following personal property due to mold growth: bedding including two queen bed pillow tops; 2 queen box springs; couches; one lamp; one nightstand; one dresser; and clothing of both Plaintiffs.

\* \* \*

73. Since March of 2022, Ms. Stewart has suffered from a number of health issues either exacerbated by or caused by her mold exposure including Hashimoto's thyroiditis, various gastroenterological maladies, chronic bronchitis, chronic cough, asthma, worsening emphysema, chronic rhinitis, multiple drug allergies, alcohol allergy, throat pain, thrush, various cysts and masses in her throat and neck, cervicalgia, fatigue, weight gain, headaches, hair loss, fevers, brain fog, odynophagia, chronic GERD, and dysphagia.

74. Since March of 2022, Ms. Stewart has been prescribed numerous medications to treat and suppress the symptoms of the aforementioned health issues either exacerbated by or caused by her mold exposure and will continue to take those medications for the foreseeable future.

\* \* \*

76. Since October 2022, Ms. Hickey has likewise suffered from health issues either exacerbated by or caused by her mold exposure including fevers, sore throat, congestion, swollen lymph nodes, joint pain, neck and throat pain, fatigue, headaches, and chronic sinusitis.

*Id* at referenced paragraphs.

35.     Based on the foregoing and other allegations in the Complaint, Plaintiffs have alleged causes of action against Reed Court and Mr. Fleming for:

- Breach of implied warranty of habitability (Count I);

- Breach of contract (Count II);

- Negligence (Count III);

- Intentional infliction of emotional distress (Count IV);

- Unfair and deceptive trade practices (Count V); and

- Unjust enrichment (Count VI).

**B.      The Joinder Complaint Filed Against Burdett Roofing By Reed Court and Richard S. Fleming**

36.     By way of a Joinder Complaint filed on or about March 23, 2026 by Reed Court and Richard S. Fleming, Burdett Roofing was joined to the Underlying Action.  *See* Exhibit 2.

37.     In their Joinder, Reed Court and Mr. Fleming "incorporate by reference the factual averments contained in Plaintiffs' Second Amended Complaint…."  *Id.* at ¶ 8.

38.     As alleged by Reed Court and Mr. Fleming, Burdett Roofing purportedly entered into a contract with Reed Court to repair the roof of Plaintiffs' apartment building.  *Id.* at ¶ 11.

39.     Despite Burdett Roofing installing new roofs, the apartments at Reed Court purportedly "continued to experience water infiltration."  *Id*. at ¶ 15.

40.     As alleged by Reed Court and Mr. Fleming:

14. In March and April of 2022, Mike Burdett installed new roofs for buildings A-F at Reed Court.

15. After the installation was completed, Reed Court continued to experience water infiltration.

16. Reed Court contacted Burdett on several occasions to fix the water infiltration problem, but Burdett failed to properly remediate the roof to cure the water infiltration problem.

17. Defendants ultimately had to contract with another roofing company to have the roof properly replaced.

*Id.* at ¶¶ 14-17.

41.     Based on the foregoing and other allegations in the Joinder Complaint, Reed Court and Mr. Fleming set forth causes of action against Burdett Roofing for:

- Negligence (Count I);

- Breach of contract (Count II);

- Contribution (Count III); and

- Indemnification (Count IV).

## **THE CLAIM FOR COVERAGE**

42.     Old Guard was provided notice of the Underlying Action on May 1, 2026.

43.     On June 29, 2026, 2026 Old Guard issued a coverage position letter to Burdett Roofing wherein Old Guard advised Burdett Roofing that Old Guard believed that the Fungi Or Bacteria Exclusion precluded coverage in relation to the Underlying Action.

44.     A true and correct copy of the June 29, 2026 letter is attached hereto as Exhibit "8".

45.     Accordingly, Old Guard in the June 29, 2026 letter asked Burdett Roofing to withdraw its tender and agree that Old Guard has no obligation to defend or indemnify Burdett Roofing in consideration of the Fungi Or Bacteria Exclusion.  *See* Exhibit 8 at p. 2.

46.     Nonetheless, Old Guard offered to provide a defense to Burdett Roofing in the Underlying Action subject to a full and complete reservation of rights.  *Id.*

47.     Old Guard expressly reserved its right to bring an action such as the instant litigation to obtain a declaration of the obligations and responsibilities of the parties under the Old Guard Policies.  *Id*. at p. 3.

48.     The defense being provided to Burdett Roofing is specifically being provided under the 2021-2022 Policy and the 2022-2023 Policy because, to the extent there is *any* coverage under the Old Guard Policies (it being <u>strictly</u> denied there is any coverage available to Burdett Roofing), Underlying Plaintiffs' damages manifested in the 2021-2022 policy period and perhaps the 2022-2023 policy period.  As more fully explained in the June 29, 2026 letter:

> Moreover, for there to be any coverage under any of the Old Guard Policies, it must be the case that the bodily injury or property damage occur during the relevant policy period.  Here, Reed Court alleges that Burdett Roofing completed its work in March and April 2022, and that water intrusion continued into Plaintiffs' apartments notwithstanding Burdett Roofing's work.  Plaintiffs allege that Ms. Stewart has suffered from mold-related health issues since March 2022, and that Ms. Hickey has suffered from mold-related issues since October 2022.  These allegations aver that the damage and injury at issue first occurred in 2022.  **Accordingly, to the extent there is coverage under any of the Old Guard Policies (which Old Guard believes it does not owe for the reasons set forth further below), only the 2021-2022 Policy (and perhaps the 2022-2023 Policy if Ms. Hickey's mold-related health issues first became apparent after October 8, 2022) would be triggered.  <u>Old Guard therefore denies any obligation to provide coverage (whether defense or indemnity) to Burdett Roofing under the 2023-2024 Policy, the 2024-2025 Policy, and the 2025-2025 Policy.</u>**  Old Guard reserves all rights to deny further limit or deny coverage under the 2022-2023 Policy should it be determined Ms. Hickey's mold-related health issues manifested prior to October 8, 2022.

*Id.* at p. 12.

49.     Old Guard also informed Burdett Roofing that the Old Guard Policies contained the Pennsylvania Changes – Defense Costs endorsement (form IL 01 20 10 13).

50.     Old Guard reserved all rights to seek reimbursement for any defense costs incurred in defending Burdett Roofing in the Underlying Action pursuant to the Pennsylvania Changes – Defense Costs endorsement.  *Id.* at pp. 15-16.

51.     Old Guard further reserved all rights to further limit or deny coverage for any punitive damages award in the Underlying Action to the extent such damages do not constitute

14

damages because of "bodily injury" and/or "property damage", are excluded by a policy provision, and/or are precluded from coverage by applicable public policy. *Id.* at p. 15.

52. Old Guard also reserved its rights to further limit or deny coverage based upon any terms, conditions, provisions, and exclusions in the Old Guard Policies, whether specifically discussed in the June 29, 2026 letter or not. *Id.* at p. 17.

## COUNT I: DECLARATORY JUDGMENT
### *Declaratory Judgment That Old Guard Has No Duty To Defend Or Indemnify Burdett Roofing In The Underlying Action, And That Old Guard Is Entitled To Reimbursement Of Defense Costs*

53. Old Guard hereby restates and incorporates by reference the averments of the preceding paragraph as though the same were set forth at length herein.

54. Pursuant to 28 U.S.C. § 2201, Old Guard is entitled to a judicial determination concerning the scope and nature of its rights and other legal relations and obligations, if any, under the Old Guard Policies with respect to the Underlying Action.

55. Specifically, Old Guard seeks a declaration that it has no duty to defend or indemnify Burdett Roofing in relation to the Underlying Action (and therefore that Old Guard may withdraw the defense currently being provided to Burdett Roofing), as well as a declaration that Old Guard is entitled to reimbursement for defense costs paid on behalf of Burdett Roofing in connection with the Underlying Action.

56. As set forth earlier in this Complaint, the Fungi Or Bacteria Exclusion states that the insurance provided by the Old Guard Policies does not apply to "bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether

any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage. *See* Exhibit 3 at OGIC000076.

57. As applicable here, Old Guard submits that all of Underlying Plaintiffs' alleged damages (both "bodily injury" and "property damage"), would not have occurred, in whole or in part, but for the actual or alleged inhalation, ingestion of, contact with, exposure to, existence of, or presence of, any mold on or within the Underlying Plaintiffs' apartments at Reed Court.

58. Similarly, any damages that may be awarded in favor of Reed Court and/or Mr. Fleming against Burdett Roofing in the Underlying Action would also necessarily be premised upon Underlying Plaintiffs' mold exposure.

59. As it relates to any "bodily injury" alleged in the Underlying Action, by way of example (and not as limitation) both Underlying Plaintiffs allege to have suffered "health issues either exacerbated by or caused by her mold exposure…." *See* Exhibit 1 at ¶¶ 73; 76.

60. Underlying Plaintiffs also allege that they provided Reed Court and Mr. Fleming with multiple reports from their doctors notifying Reed Court and Mr. Fleming that Underlying Plaintiffs were suffering from mold-related conditions. *See, e.g., id.* at ¶¶ 34-35.

61. Underlying Plaintiffs also purportedly provided Reed Court and Mr. Fleming with reports authored by industrial hygienist Dr. Hernando Perez. *Id.* at ¶ 45.

62. In his reports, Dr. Perez opines that the Underlying Plaintiffs were exposed to Aspergillus/Penicillium while living in their apartments at Reed Court. *Id.* at ¶¶ 45; 54.

63. There are no allegations in the Second Amended Complaint filed in the Underlying Action contending that Underlying Plaintiffs suffer from some "bodily injury" unrelated to mold exposure.

16

64. As it relates to any "property damage" alleged in the Underlying Action, by way of example (and not as limitation), Underlying Plaintiffs allege that "Ms. Stewart was compelled to discard the following personal property **due to mold growth**: bedding including two queen bed pillow tops; 2 queen box springs; couches; one lamp; one nightstand; one dresser; and clothing of both Plaintiffs". *Id.* at ¶ 63 (emphasis added).

65. There are no allegations in the Second Amended Complaint filed in the Underlying Action contending that Plaintiffs incurred any alleged "property damage" unrelated to mold exposure.

66. Old Guard reiterates that the Fungi Or Bacteria Exclusion applies "regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage"; therefore, in harmony with this language in the Fungi Or Bacteria Exclusion, mold must be excluded as a cause of Underlying Plaintiffs' alleged damages for there to be any coverage under the Old Guard Policies. *See* Exhibit 3 at OGIC000076.

67. While Underlying Plaintiffs allege water intrusion into their apartments, it appears that any such water instruction is directly related to the complained-of mold exposure.

68. Indeed, Plaintiffs' hygienist Dr. Perez opined that, "The mold growth in Ms. Stewart's residence is a **direct result** of inadequate response to water intrusion into the space." *See* Exhibit 1 at ¶ 44 (emphasis added).

69. For all of the above reasons, Old Guard is entitled to a declaration that it has no duty to defend or indemnify Burdett Roofing in the Underlying Action.

70. Therefore, Old Guard is also entitled to a declaration that it may withdraw the defense currently being provided to Burdett Roofing in the Underlying Action.

71.     Lastly, Old Guard is moreover entitled to a declaration that Old Guard is entitled to reimbursement for defense costs paid on behalf of Burdett Roofing in connection with the Underlying Action pursuant to the Pennsylvania Changes – Defense Costs endorsement contained in the Old Guard policies.

WHEREFORE, Plaintiff, Old Guard Insurance Company, respectfully requests that the Court enter an Order:

(a) Declaring that Plaintiff Old Guard is not obligated to defend or indemnify Defendant Burdett Roofing and Exteriors, LLC in connection with the Underlying Action;

(b) Declaring that Old Guard may withdraw from the defense of Burdett Roofing in the Underlying Action;

(c) Declaring that Old Guard is entitled to reimbursement for defense costs paid on behalf of Burdett Roofing in connection with the Underlying Action; and

(d) Granting Old Guard such other relief as may be necessary and appropriate under the circumstances.

**POST & SCHELL, P.C.**

By:     */s/ Brendan S. Reilly*

Dated:  July 17, 2026

BRENDAN S. REILLY
I.D. # 330954
THREE LOGAN SQUARE, 24TH FLOOR
1717 ARCH STREET
PHILADELPHIA, PA   19103
215-587-1050
*Attorney for Old Guard Insurance Company*

# EXHIBIT

# "1"

*NOTICE TO PLEAD*
*TO: DEFENDANTS*
*You are hereby notified to file a written response to this First Amended Complaint within twenty (20) days from service hereof or a judgment may be entered against you.*

*/s/ Carmen A. De Gisi*
*Attorney for Plaintiffs*

**De GISI LAW GROUP, LLC**
Carmen A. De Gisi, Esquire (No. 208989)
Luke T. Pepper, Esquire (No. 87100)
462 Germantown Pike, Suite 11
Lafayette Hill, PA 19444
Telephone: (610) 897-8721
Facsimile (610) 897-8754
*Attorneys for Plaintiffs*

| | |
|---|---|
| Kelly Stewart and<br>Mackenzie Hickey | COURT OF COMMON PLEAS<br>DELAWARE COUNTY, PENNSYLVANIA |
| Plaintiffs, | CIVIL ACTION – LAW |
| v. | NO.: CV-2025-001561 |
| Reed Court Apts, LLC and<br>Richard S. Fleming | |
| Defendants. | |

## SECOND AMENDED COMPLAINT

Plaintiffs, Kelly Stewart ("Ms. Stewart") and Mackenzie Hickey ("Ms. Hickey" (collectively, "Plaintiffs"), by their undersigned counsel, file this Second Amended Complaint against Defendants, Reed Court Apts, LLC, and Richard S. Fleming, and aver as follows:

## THE PARTIES

1. Plaintiff Kelly Stewart is an adult individual citizen of the Commonwealth of Pennsylvania currently residing at 725 Upper Stump, Chalfont, PA 18914.

2. Plaintiff Mackenzie Hickey is an adult individual citizen of the Commonwealth of

1

Pennsylvania currently residing at 22 S. Harwood Avenue, Upper Darby, PA. Ms. Hickey is the daughter of Ms. Stewart.

3. Defendant Richard S. Fleming ("Fleming") is an adult, individual and resident of the Commonwealth of Pennsylvania with an address as captioned.

4. Defendant Reed Court Apts, LLC ("Reed Court") is a Pennsylvania limited liability company with an address as captioned. At all relevant times, Defendant Fleming was and is the sole member of Defendant Reed Court.

5. Defendant Reed Court is the owner of an apartment complex with 16 residential units (the "Apartment Complex") located at 160 Reed Road, Broomall, PA 19008.

6. At all material times, Defendant Fleming dominated and controlled the business and financial affairs of Defendant Reed Court. Defendant Fleming also comingled his personal affairs and finances with that of Defendant Reed Court, paid personal expenses with corporate assets, failed to maintain corporate formalities, ran Defendant Reed Court in an undercapitalized state that was insufficient to properly maintain the Apartments for its tenants and in an underinsured state that was insufficient to cover the liabilities incurred in its business as a residential landlord and property manager operating the Apartments.

7. Defendant Fleming operated Defendant Reed Court as his alter ego while failing to adhere to corporate formalities and comingled his personal interests to such a degree that the unity of ownership and interest between the two requires piercing the corporate veil to avoid injustice.

8. Defendants are vicariously liable for the negligent acts, commissions, or omissions of their employees and/or agents who were at all times relevant hereto acting on behalf of Defendants and within the scope of their employment with Defendants, under the doctrines of *respondeat superior* and ostensible agency.

2

9.      At all relevant times hereto, Defendants had actual and/or constructive knowledge of the full nature and extent of the acts and/or omissions relating to the injuries in question as referenced in this Complaint.

10.     All officers, agents, employees, contractors, and subcontractors who were involved in the maintenance of the Apartment Complex and/or the Plaintiffs' leased units, or the failed repairs and/or remediation of the same ("Defendant's Agents"), were acting as duly authorized agents and/or employees on behalf of Defendants.  The identities of Defendant's Agents are within the exclusive control and custody of Defendants and will be the subject of discovery.  Plaintiffs are asserting claims against both of these Defendants.

11.     Defendant Reed Court is vicariously liable for the actions described herein of Defendant's Agents, including Defendant Fleming in his capacity as landlord and/or property manager, Ryan Fleming, and any and all contractors, subcontractors, and others retained to inspect, maintain, and repair the common areas of the Apartment Complex and units E-1 and E-2.

12.     Defendant Fleming, Ryan Fleming, and Defendant's Agents all committed the acts which are the subjects of Counts I through V while acting as the agents, servants, and /or employees of Defendant Reed Court.

13.     The acts committed by Defendant Fleming, Ryan Fleming, and Defendant's Agents, which are the subjects of Counts I through V, were committed within the course and scope of their agency, employment, and/or service with Defendant Reed Court, who is vicariously liable for their actions.

14.     Defendant Reed Court authorized the acts which are the subject of Counts I through V and/or ratified said acts.

15.     The actions and/or omissions of Defendant Reed Court and Defendant's Agents,

3

including Defendant Fleming and Ryan Fleming, were a factual cause of and/or placed Plaintiffs at an increased risk of harm for and/or was a substantial factor in causing and did directly and proximately cause the harm suffered by Plaintiffs and described herein.

16. Defendant Reed Court is liable for the negligent conduct of Defendant's Agents, including Defendant Fleming and Ryan Fleming as described herein pursuant to principles of agency, vicarious liability, and/or *respondeat superior*.

## VENUE & JURISDICTION

17. Venue and jurisdiction in Delaware County, Pennsylvania are proper because all alleged tortious conduct occurred in the Commonwealth of Pennsylvania and this action concerns physical injuries to Plaintiffs suffered as a result of toxic exposures in their leased residences in Delaware County.

## FACTS

18. Defendant Fleming is the sole owner, managing member, and governor of Reed Court Apts, LLC.

19. Defendant Reed Court has been the title owner since 2002 of the real property and the Apartment Complex situated thereon.

20. At all material times, Defendant Fleming acted as the landlord and property manager of the Apartment Complex on behalf of Defendant Reed Court.

21. Plaintiffs, Kelly Stewart and Mackenzie Hickey, have been tenants at the Apartment Complex since September 2019 and first resided in a second floor apartment ("E-2") before moving into the first floor apartment below it ("E-1") in or about September 2023.

22. On or about September 17, 2019, Ms. Stewart entered into a residential lease of E-2 with Defendant Fleming as landlord for a term of one year beginning on September 19, 2019

4

with an automatic month-to-month renewal term and she agreed to pay annual rent in the amount of $13,020.00 ("Lease"). A true and correct copy of the Lease is attached hereto as **Exhibit "A."**

23. Pursuant to the Lease, Defendant Reed Court was responsible for the maintenance and repair of E-2 in addition to the common areas of the Apartment Complex and Ms. Stewart was responsible for her electricity bill.

24. Beginning in or about September 2021, Ms. Stewart first notified Mr. Fleming that water was infiltrating her bedroom ceiling and she was told that it would be taken care of by Defendant Reed Court.

25. Despite her notification, Defendants took no action to repair the water intrusion or remediate it.

26. Over the course of the next few months, a hole opened in the ceiling of Ms. Stewart's bedroom, over top of her bed, where she first noticed the water leaking into her apartment.

27. On February 5, 2022, Ms. Stewart notified the Defendants of the worsening conditions and provided a photograph of the hole in her ceiling yet the Defendants did not make any efforts to prevent or remediate the water infiltration or repair the hole in the drywall. A true and correct copy of a photograph of the ceiling of her bedroom sent to defendants and the text message notification to Defendants is attached hereto as **Exhibit "B."**

28. Throughout 2022, Plaintiff Stewart repeatedly notified Mr. Fleming of the worsening water infiltration in her bedroom, the growing hole in her ceiling, her fear that the entire ceiling would come down on her while she was in her bed.

29. In addition, Plaintiff Stewart repeatedly informed Mr. Fleming that water was infiltrating in other areas of E-2, including her bathroom, where it was causing the shower liner to

5

separate from the wall.

30. Instead of repairing the shower, Mr. Fleming told her it was too hard to repair without gutting the whole shower so he would ask around to see if there were any cheaper alternatives.

31. Likewise, Plaintiff repeatedly notified Mr. Fleming that she thought there was mold growing in her ceiling and bathroom and expressed her fear that it could cause health complications for her due to her emphysema.

32. Defendants denied that there was any mold, however, and took no actions to have E-2 inspected for mold or to remediate the mold in E-2.

33. Instead, for over a year, Defendants repeatedly lied to Ms. Stewart by telling her that they would have a roofer come out to fix the roof to stop the water infiltration, that they would repair the ceiling in her bedroom, and find a solution to repair the shower without gutting the bathroom. Attached hereto as **Exhibit "C"** and incorporated herein are true and correct copies of text messages between Ms. Stewart and Defendants' agent, Richard Fleming beginning in January 2022 through June 2023.

34. In November 2022, Plaintiffs provided a letter to Defendants from Ms. Hickey's primary care physician notifying them that she was suffering from chronic sinusitis and that the conditions in E-2 were not acceptable and needed to be remediated immediately. Attached hereto as **Exhibit "D"** and incorporated is a true and correct copy of the letter from Ms. Hickey's primary care physician dated November 25, 2022.

35. In March 2023, Ms. Stewart provided a letter from her allergist, Dr. Dossumbekova, to Defendants informing them that Ms. Stewart has chronic breathing problems, that mold is a known toxin that can cause breathing problems, asthma, and chronic sinusitis, and recommending

6

that Defendants have E-2 professionally cleaned to remove the mold.  Attached hereto as **Exhibit "E"** and incorporated is a true and correct copy of the letter from Dr. Dossumbekova dated March 6, 2023.

36.     In or about May 2023, Defendants finally screwed a rough-cut patch of drywall over the open hole in her bedroom ceiling but left large gaps so that the bedroom continued to be exposed to the water intrusion and the mold in the rafters.  Likewise, Defendants never remediated the plainly visible mold in the bedroom, the rafters, on the drywall, in the bathroom, or from any other locations in E-2 where it was now visibly growing on the walls along with pockets of water trapped in between the paint and drywall.

37.     In fact, Defendants never finished repairing the ceiling but, instead, simply cut out the hole, screwed in a poorly cut piece of drywall that allowed the mold in the rafters to come through the gaps, and failed to tape it and spackle it to close the gaps.  *See*, photograph of ceiling repair taken by Defendants' agent on May 8, 2023, attached hereto **as Exhibit "F"** and incorporated herein.

38.     As a result, mold from the rafters and ceiling drywall continued to grow in Ms. Stewart's bedroom, bedding, and clothing, and infiltrated the entire apartment.

39.     In July 2023, Ms. Stewart provided a second letter from her allergist, Dr. Dossumbekova, to Defendants informing them that Ms. Stewart has chronic breathing problems, that mold is a known toxin that can cause breathing problems, asthma, and chronic sinusitis, and recommending that that Defendants have E-2 professionally cleaned to remove the mold.

40.     In that same month, Ms. Stewart's bedroom ceiling and walls began leaking water again so that the paint on the drywall formed water pockets and mold.  *See*, photographs taken by Ms. Stewart in July 2023, attached hereto as **Exhibit "G"** and incorporated herein.

7

41. Despite repeatedly notifying Defendants of the leak in her bedroom, the mold forming throughout E-2, the health problems Plaintiffs were suffering, and providing them with videos and photos of the deteriorating conditions in the apartment, Defendants intentionally delayed abating the water intrusion, repairing and remediating the damage and mold in order to avoid spending money and maximizing their profit from Unit E-2. *See,* **Ex. C**.

42. With their health rapidly failing, Plaintiffs retained legal counsel and a certified industrial hygienist, Dr. Hernando R. Perez, Ph.D., MPH, CIH, CSP ("Dr. Perez"), to conduct an indoor environmental quality assessment of E-2 to evaluate the extent to which mold amplification was occurring in their apartment.

43. On August 24, 2023, Dr. Perez performed his assessment of E-2, which involved the following actions:

(a) Visual inspection for the presence of recognized allergens or potential allergen reservoirs in both the occupied space and the directly adjacent plenum space. This included an assessment for the presence of water intrusion/damage and visible mold growth;

(b) Assessment of relative humidity, carbon dioxide concentration and temperature;

(c) Surface moisture assessment of building materials as appropriate; and

(d) Air sampling for total mold spore counts.

44. Dr. Perez documented the results of his assessment in a report dated September 1, 2023 in which he concluded, inter alia, the following:

> The water damage and mold amplification conditions documented to be present in Ms. Stewart's residence clearly demonstrate that she has chronically and consistently been exposed to levels of airborne fungal aerosols that are significantly elevated above background while in her apartment. The results of this indoor environmental quality assessment document airborne levels of *Aspergillus/Penicillium* spores that were greater than an order of magnitude higher in Ms. Stewart's living space than outdoors. The pattern of indoor airborne *Aspergillus/Penicillium* spore concentration observed in the space is a clear indicator of significant fungal amplification in the apartment, with resultant continual entrainment and buildup of spores into the air of Ms. Stewart's living space.

8

> The long-term uncontrolled water intrusion and fungal amplification conditions in Ms. Stewart's residence have resulted in her chronic inhalation exposure to mold since at least 2021. The mold growth in Ms. Stewart's residence is a direct result of inadequate response to water intrusion into the space. She will continue to be exposed to significantly elevated concentrations of mold for as long as she continues to reside in the apartment in its current condition. The levels of airborne mold in Ms. Stewart's environment represent a health risk to individuals with allergies or respiratory problems.

*See*, Dr. Perez's Indoor Mold Assessment dated September 1, 2023 ("Dr. Perez's Report") attached hereto as **Exhibit "H."**

45. On September 5, 2023, Plaintiffs provided Defendants with Dr. Perez's Report documenting airborne levels of *Aspergillus/Penicillium* spores that rendered E-2 unfit and inhabitable for continued occupation due to the severe damage and hazardous health conditions caused by the unabated mold growth, requested alternative accommodations to mitigate her damages, and demanded the claim be reported to their insurance carrier. *See*, Notice of Intent to Sue dated September 5, 2023 attached hereto as **Exhibit "I."**

46. Defendants' insurance carrier never responded to the Notice of Intent to Sue and Defendants did not provide any information to Plaintiffs regarding their insurance carrier.

47. Under threat of litigation, however, Defendants permitted Plaintiffs to move into the apartment immediately below E-2 that was vacant, Unit E-1 ("E-1") and transferred the Lease to E-1.

48. Ms. Stewart had asked Defendants on multiple occasions if they could move into Unit E-1, which had been vacant for some time, but Defendants refused to transfer the Lease because they had it listed for rent at a much higher amount than Plaintiffs' rent.

49. Unfortunately, it soon became clear to Plaintiffs that E-1, although freshly painted, was also unfit and uninhabitable due to unabated mold growth and active water intrusion.

9

50.     Thereafter, Ms. Stewart repeatedly notified Defendants' agent, Richard Fleming, that E-1 smelled of mold and that both Plaintiffs continued to have respiratory and other health problems that are caused by toxic mold exposure. Ms. Stewart largely communicated her concerns about the mold in E-1 in person as Defendants were remodeling E-2 but she did notify Defendants via text on at least one occasion that the smell of mold in E-1 was so strong that she had to leave the windows open. *See,* text message dated May 28, 2024, attached hereto as **Exhibit "J."**

51.     Despite those notifications, Defendants refused to have E-1 inspected for mold or to take any measures to address Plaintiffs complaints about the smell of mold and their deteriorating health.

52.     Once again, Plaintiffs were forced to retain Dr. Perez to conduct an indoor environmental quality assessment of E-1 to evaluate the extent to which mold amplification was occurring in their apartment.

53.     On August 16, 2024, Dr. Perez performed his assessment on E-1 and documented the following conclusions:

(a) The conditions documented in Ms. Stewarts residence clearly demonstrate that she had been chronically and consistently exposed to levels of airborne fungal aerosols significantly elevated above background while in her apartment.

(b) The results of sampling the that I performed documented airborne levels of *Aspergillus/Penicillium* spores that were greater than an order of magnitude higher in her living space than outdoors.

(c) The pattern of indoor airborne *Aspergillus/Penicillium* spore concentration observed in her living space was a clear indicator of significant fungal amplification in the apartment, with resultant continual entrainment and buildup of spores into the air or her living space.

(d) The long-term uncontrolled water intrusion and fungal amplification conditions in Ms. Stewart's residence had resulted in her chronic inhalation exposure to mold since at least 2021.

10

(e) The mold growth that was occurring in Ms. Stewart's residence was a direct result of inadequate response to water intrusion into the space.

(f) The levels of airborne mold in Ms. Stewart's environment represent a health risk to individuals with allergies or respiratory problems.

*See*, Dr. Perez's Follow-up Indoor Mold Assessment dated August 16, 2024 ("Dr. Perez's Follow-up Report") attached hereto as **Exhibit "K."**

54. On August 26, 2024, Plaintiffs provided Defendants with Dr. Perez's Follow-up Report documenting airborne levels of Aspergillus/Penicillium spores that rendered E-1 unfit and inhabitable for continued occupation due to the severe damage and hazardous health conditions caused by the unabated mold growth, and Plaintiffs requested alternative accommodations. *See*, Notice of Intent to Sue dated August 26, 2024 attached hereto as **Exhibit "L."**

55. In response, Defendants did absolutely nothing – they failed to conduct a mold inspection, remediate the dangerous levels of mold identified in Dr. Perez's Follow-up Report, and ignored Ms. Stewart's repeated notifications of her health problems.

56. Exasperated by Defendant's refusal to remediate the mold and protect their health, on or about February 27, 2025, Ms. Stewart notified Defendants that she would be escrowing her monthly rent of $1,350.00 until the Defendants remediated the mold and addressed a number of other repairs that they had failed to make despite repeated requests. *See,* Notice of Escrow letter attached hereto as **Exhibit "M."**

57. Rather than address the list of health hazards and disrepair necessitating the escrow of rent, Defendants chose to retaliate against Ms. Stewart by filing a landlord/tenant complaint on April 10, 2025 (Docket no. MJ-32127-LT-0000023-2025) seeking the escrowed rent as if Ms. Stewart simply failed to pay.

58. The trial was continued multiple times so that Defendants could have an inspection

and mold testing done on E-1, which occurred on June 18, 2025,

59. The same day of the inspection and mold testing, Defendants retaliated by terminating her lease effective August 31, 2025. *See,* termination letter dated June 18, 2025 attached hereto as **Exhibit "N."**

60. Plaintiffs' counsel requested the results of the inspection and mold testing multiple times but Defendants refused to provide a report on the results and instead dismissed the landlord/tenant complaint.

61. On August 27, 2025, Plaintiffs vacated E-1 pursuant to the termination letter, however, Defendants had never repaired any of the items in the Notice of Escrow that required repairs and/or remediation

62. In addition to the failing to remediate the water intrusion and mold in both units, Defendants performed unpermitted electric work on the units. In May 2023, during her tenancy in E-2, Ms. Stewart discovered that Defendants had wired E-1's electrical circuits into E-2's electrical panel thereby causing Ms. Stewart to be charged by PECO for the electricity used by the tenants in E-1. Besides greatly increasing Ms. Stewart's utility bill each month, the unpermitted electric work caused both Plaintiffs' electronics and appliances to burn out and Ms. Hickey to suffer a burn on her body from flaming outlets.

### *Damages*

63. During the course of their tenancy, Ms. Stewart was compelled to discard the following personal property due to mold growth: bedding including two queen bed pillow tops; 2 queen box springs; couches; one lamp; one nightstand; one dresser; and clothing of both Plaintiffs.

64. As a result of Defendants performing electrical work without a license, Ms. Stewart

incurred increased utility bills when she lived in unit E-2 for unit E-1's electric usage because Defendants wired E-1's electrical circuits into E-2's electric panel. Plaintiffs also had to replace electrical devices burnt out by the electrical work that caused the outlets to spark and shoot flame.

65. Plaintiffs incurred co-pays and parking charges for their medical visits.

66. At a minimum, Plaintiffs incurred $8,000.00 in out-of-pocket expenses during their tenancy in units E-1 and E-2.

67. As both Plaintiffs health deteriorated during the tenancy, they were forced to miss work and lost income as a result.

68. Plaintiffs have suffered lost wages as a result of their tenancy and their injuries resulting therefrom.

69. In the months following the first discovery of water intrusion in 2021, Ms. Stewart's health has severely declined and she has suffered immensely.

70. In the spring of 2022, Ms. Stewart ended up in the emergency room due to a mass in her throat that was causing difficulties eating and swallowing and pain in her throat, neck, and chest. She was referred to an Ear, Nose, and Throat specialist and has had multiple surgeries since July 2022, including:

(a) October 2022: surgical removal of a left vallecular cyst and thyroglossal duct cyst;

(b) August 2023: surgical removal of a Level II lymph node in her neck and a second thyroglossal duct cyst;

(c) February 2024: post scar surgical revision of tethered incision; and

(d) January 2025: total and complete thyroidectomy following diagnosis of Hashimoto thyroiditis.

71. Following the October 2022 and February 2024 surgeries, Ms. Stewart suffered post-op seizures caused by the anesthesia, which mandated a suspension of her driving privileges

13

in February 2024.

72. At the time her driving privileges were suspended in February 2024, Ms. Stewart was working as a delivery driver for Uber Eats and was unable to work until her privileges were restored following a neurological examination in May 2024.

73. Since March of 2022, Ms. Stewart has suffered from a number of health issues either exacerbated by or caused by her mold exposure including Hashimoto's thyroiditis, various gastroenterological maladies, chronic bronchitis, chronic cough, asthma, worsening emphysema, chronic rhinitis, multiple drug allergies, alcohol allergy, throat pain, thrush, various cysts and masses in her throat and neck, cervicalgia, fatigue, weight gain, headaches, hair loss, fevers, brain fog, odynophagia, chronic GERD, and dysphagia.

74. Since March of 2022, Ms. Stewart has been prescribed numerous medications to treat and suppress the symptoms of the aforementioned health issues either exacerbated by or caused by her mold exposure and will continue to take those medications for the foreseeable future.

75. As a result of the surgeries on her neck, Ms. Stewart has suffered permanent and extreme scarring that causes her great embarrassment that will likely last her natural life. *See,* photographs of Ms. Stewart's surgical scars, attached hereto as **Exhibit "O"** and incorporated herein.

76. Since October 2022, Ms. Hickey has likewise suffered from health issues either exacerbated by or caused by her mold exposure including fevers, sore throat, congestion, swollen lymph nodes, joint pain, neck and throat pain, fatigue, headaches, and chronic sinusitis.

77. In addition, Ms. Hickey experienced severe depression during periods of extended illness and developed anxiety over her health.

78. Like her mother, Ms. Hickey has likewise been subjected to numerous tests,

14

including a needle biopsy of her lymph node, bloodwork to test for lupus and other conditions, and has been on multiple antibiotics and steroids.

79. Additionally, Ms. Hickey suffered a burn to her leg from flames that shot out of the electrical outlet she was using to power her hairdryer.

80. Although her health has slightly improved since she vacated the Apartment Complex, Ms. Hickey continues to suffer from severe anxiety over her fear of falling into months long illness and depression every time she feels that she may be getting sick.

81. As a result of Defendants' acts and/or omissions, Plaintiffs were forced to seek other living accommodations after the retaliatory lease termination and had to move in with others but live separately from each other.

82. As a result of Defendants' acts and/or omissions, Plaintiffs incurred and continue to incur medical expenses associated with the treatment and aggravation of the aforementioned maladies and symptoms of mold poisoning.

83. As a result of Defendants' acts and/or omissions, Plaintiffs were forced to quit working or reduce their work schedules due to medical appointments, medical treatments, and suffering from the symptoms of mold poisoning.

84. Plaintiffs' injuries were caused due to the recklessness, negligence, carelessness and intentional misconduct of the Defendants as set forth throughout this Complaint.

85. Plaintiffs' injuries were also caused by the reckless indifference and complete disregard for the safety of tenants exhibited by the Defendants, who disregarded the fact that medical professionals advised them of the danger to Plaintiffs from continued exposure to mold in their residence, but nonetheless delayed repairs to active water intrusions for years,

15

refused to remediate mold even after being provided Dr. Perez's test results, and chose to terminate the Lease rather than remediate the dangerous conditions.

86.    The Defendants' refusal to make the repairs and remediate the health hazards in both units was motivated by their desire to continue receiving rent while avoiding the expense of professional repairs and remediation and was done with reckless indifference to whether the Plaintiffs suffered health consequences and, in fact, continued after Plaintiffs' doctors warned them that Plaintiffs were suffering illness from the mold exposure.

87.    Plaintiffs are entitled to recover punitive damages against Defendants.

## COUNT I
## BREACH OF IMPLIED WARRANTY OF HABITABILITY
### (Plaintiffs v. All Defendants)

88.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint by reference as though fully set forth at length herein.

89.    Defendants impliedly warranted that units E-2 and E-1 had been constructed in a way that was habitable and free of latent defects that would affect habitability.

90.    Based upon the conduct and representations of Defendants, Plaintiffs reasonably believed that units E-2 and E-1 had been constructed and maintained in compliance with the building code, manufacturers' recommendations, and industry practices to be habitable, when she executed the Lease and each subsequent renewal.

91.    Plaintiffs were not aware of the dangerous construction defects in units E-2 and E-1 at the time they leased them.

92.    Plaintiffs would not have leased units E-2 and E-1 from the Defendants if they had known of the defects in their construction and maintenance.

93.    The defective construction and maintenance caused damages that required

16

Plaintiffs to incur financial costs for remediation, replacement of personal property, as well as pain and suffering caused by the presence of mold.

94. The Defendants impliedly warranted that units E-2 and E-1 would be habitable and free of latent defects affecting habitability.

95. Plaintiffs justifiably relied on Defendants' implied warranty of habitability.

96. Defendants' defective construction and/or maintenance of units E-2 and E-1 contained latent defects that caused moisture to accumulate in the residence leading to the growth of *Aspergillus* mold colonies, which caused the Plaintiffs' personal and economic injuries, Plaintiff Stewart's surgeries, and the inhabitability of both units.

97. Defendants failed to comply with the implied warranty of habitability.

98. In failing to remedy the water intrusion and black mold discovered by Plaintiffs or provide alternative accommodations, Defendants have breached this implied warranty of habitability, resulting in the significant damages enumerated above.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in his favor and as against Defendants Richard Fleming and Reed Court Apts, LLC, individually, jointly and/or severally, in an amount greater than $50,000.00 and in excess of the applicable arbitration limits, for all damages sustained as a result of breach of the implied warranty of habitability in an amount according to proof.

**COUNT II**
**<u>BREACH OF CONTRACT</u>**
**(Plaintiff Stewart v All Defendants)**

99. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint by reference as though fully set forth at length herein.

100. During the course of the tenancy, Plaintiff did execute a lease with Defendant

17

Fleming as landlord and property manager for Defendant Reed Court wherein each agreed to perform certain obligations related to the rental of units E-2 and E-1 (collectively, the "Lease"). *See*, Exhibit A.

101. Under the express terms of the Lease, in exchange for Plaintiff's agreement to pay monthly rent to Reed Court, Defendants agreed to maintain the units and common areas in a safe condition and to repair any defects and dangerous conditions in the property and its appliances.

102. Plaintiff substantially performed all of her obligations under the terms of the Lease.

103. Despite repeated requests, Defendants failed and refused to make necessary repairs and necessary maintenance to the leased premises, including delaying repairs, failing to repair and remediate the presence of mold within Units E-1 and E-2, and failing to repair the roof of the building and abate the water intrusion for over a year.

104. Defendants breached the Lease by failing to make necessary repairs to the Units E-1 and E-2 and the roof of the building after proper notice of dangerous defects that were not due to the negligent or deliberate act by the Plaintiffs or their guests.

105. Defendants breached the Lease by making repairs to the roof of the building and the ceiling of Unit E-2 that were woefully inadequate and in violation of applicable building code.

106. Defendants materially breached their obligations under the Lease by failing to maintain the common areas, including the roof, and the units in a safe condition, by first delaying and then failing to make repairs to the property including the leaking roof, the interior of both units, the bathrooms, and the electrical wiring, by failing to repair the open hole in the bedroom ceiling, by failing to remediate the mold discovered by Plaintiff, and failing to provide Plaintiffs with suitable, safe accommodations during remediation.

107. Defendants breached their contractual duty to maintain the common areas by

18

failing to pay for the necessary maintenance and repairs to the roof to prevent the water intrusion, failing to timely repair the roof once water intruded, and failing to remediate the water mold that spread through the interior of the building walls of both units.

108.    Pursuant to the Lease, in the event that the leased premises were severely damaged, Plaintiffs had a right to continue to live there and pay a reduced rent until the damages were repaired.  Ex. A at Section 21(B).

109.    Defendants breached their contractual duty to charge a reduced rent after Unit E-2 was severely damaged from water intrusion and mold in February 2022.  Instead, Defendants increased the rent for Unit E-2 in September 2022 and again in September 2023.

110.    Defendants again breached their contractual duty to charge a reduced rent after receiving Dr. Perez's Follow-up Indoor Mold Assessment dated August 16, 2024 determining that Unit E-1 was severely damaged by water intrusion and fungal amplification causing chronic inhalation exposure to mold. Ex. K at p. 6.

111.    Instead of charging Plaintiffs a reduced rent, Defendants increased the rent on Unit E-1 beginning September 1, 2024, which was after receiving Dr. Perez's Follow-up Indoor Mold Assessment.

112.    Defendants have failed and/or refused to perform their obligations in full in accordance with the Lease.

113.    To date, Defendants have failed to cure their breach of performance and, instead, retaliated against Plaintiffs by terminating the Lease after she lawfully escrowed rent until repairs and remediation were completed.

114.    As a direct and proximate result of the Defendants' breach of the material terms of the Lease, Plaintiffs have incurred significant damages including rent payments, moving

19

and storage expenses, and damages to their personal property .

115.     As a direct and proximate result of the Defendants' breach of the material terms of the Lease, Plaintiffs have incurred significant personal injuries, pain, suffering, mental anguish and the necessary and reasonable costs of medical expenses, all of which were reasonably foreseeable and within the contemplation of the parties.

116.     As a direct and proximate result of the Defendants' breach of the material terms of the Lease, Plaintiffs suffered significant damages enumerated above and throughout this Complaint.

**WHEREFORE**, Plaintiff Kelly Stewart respectfully requests that this Court enter judgment in her favor and as against Defendants Richard Fleming and Reed Court Apts, LLC, individually, jointly and/or severally, in an amount greater than $50,000.00 and in excess of the applicable arbitration limits, for all damages sustained as a result of breach of the Lease in an amount according to proof.

**COUNT III**
**NEGLIGENCE**
**(Plaintiffs v. All Defendants)**

117.     Plaintiffs incorporate by reference all facts and allegations set forth this Complaint by reference as though fully set forth at length herein .

118.     At all times relevant hereto, Defendants owed a duty of care to Plaintiffs as tenants of the Apartment Complex and specifically units E-2 and E-1.

119.     At all material times, Defendants owed a duty of care to Plaintiff to inspect, maintain, and repair the common areas and units E-2 and E-1, to timely respond to reports of defects and dangerous conditions, and to take all measures reasonably necessary to inform and protect the Plaintiffs from injury and damage to their personal property thereon.

120. Defendants, including Defendant's Agents, knew or in the exercise of reasonable care should have known, that their failure to properly maintain the common areas and units E-2 and E-1, to repair the defects in the roof over units E-2 and E-1 and the garage of E-1, would cause water intrusion and the growth of mold colonies in the interior space of units E-2 and E-1.

121. Defendants, including Defendant's Agents, of the potential for injury to Plaintiff Stewart, who suffers from emphysema and COPD, and Plaintiff Hickey and damage to the Plaintiffs' personal property that would likely result from the unabated water intrusion and the growth of mold colonies in the interior space of units E-2 and E-1.

122. Defendants, including Defendant's Agents, should have taken reasonable precautions and measures to prevent or mitigate the water intrusion and growth of the mold colonies, including the timely repair of the roof and the remediation of the water intrusion that continuously soaked the drywall and insulation in the ceilings and walls, in accordance with applicable building codes, and to prevent the excess moisture that is known to cause the growth of mold colonies.

123. Defendants, including Defendant's Agents, knew or in the exercise of reasonable care should have known, that the water intrusion and growth of mold colonies caused by their negligent conduct, and the resultant harm to Plaintiffs and their property, were foreseeable and inevitable consequences of Defendant's acts and/or omissions in the manner in which it engaged in their activities.

124. Defendants, including Defendant's Agents, acted unreasonably and negligently by failing to inspect and repair the roof, to prevent and abate the water intrusion, to remediate the visible mold growth, to take reasonable measures and precautions necessary to avoid and/or respond to the growth of mold colonies in units E-1 and E-2, and to protect the Plaintiffs from the

21

likely damage to their personal property and health.

125.    Defendants breached their duty to Plaintiffs by failing to provide them with a rental unit that was free of dangerous defects like the leaking roof and water intrusion.

126.    Defendants breached their duty by failing to inspect and maintain the roof and units E-1 and E-2 prior to renting them to Plaintiffs.

127.    Defendants breached their duty by failing to inspect units E-1 and E-2 for dangerous conditions after being notified by Ms. Stewart of the water intrusion, crumbling, ceiling, and visible mold growth.

128.    Defendants breached their duty in failing to properly repair the water intrusion and remove and/or remediate the black mold in units E-1 and E-2 after being notified by Ms. Stewart of those dangerous conditions.

129.    Defendants further breached their duty by failing to provide Plaintiff with alternative accommodations when Ms. Stewart provided the report of Dr. Perez indicating that the levels of airborne fungal aerosols in unit E-1 was a health risk to Plaintiffs.

130.    Plaintiff in no way contributed to the dangerous condition or the damages and injuries he has sustained.

131.    Defendant's acts and/or omissions mentioned herein were the direct and proximate cause of the damages and injuries to Plaintiffs alleged herein.

132.    Defendants, by reason of their negligence, are liable for all the damages and injuries to Plaintiffs proximately caused by the dangerous conditions and their failure to inspect, maintain, and repair the common areas and units prior to leasing them to Plaintiffs, and failing to abate the water intrusion and remediate the mold and provide Plaintiffs with safe and suitable accommodations until the units were safe for habitation.

133. As a direct and proximate result of Defendants' acts and/or omissions, Plaintiffs suffered personal injuries and significant damages as enumerated throughout this Complaint.

134. Furthermore, the Defendants' conduct demonstrates a willful, wanton, reckless, and malicious disregard for the rights and safety of others and was outrageous and was done with a conscious disregard for the rights and safety of the Plaintiffs.

135. Specifically, the Defendants refused for years to repair the roof and ceiling, abate the water intrusion, and remediate the mold growth, after being repeatedly notified by Ms. Stewart beginning in July 2021.

136. Despite being notified by Plaintiffs' doctors and Dr. Perez that Plaintiffs were at risk of health problems due to the mold exposure in their living environment, Defendants willfully, wantonly, recklessly, and maliciously disregarded Plaintiff's safety by refusing to abate the water intrusion and remediate the mold growth but, instead, retaliated against them after Ms. Stewart escrowed the rent.

137. Additionally, the Defendants acted with reckless disregard for the Plaintiffs' safety when they performed electrical work on the units without a license or permit to do so, resulting in electrical outlets that burnt out appliances and shot flames that injured Ms. Hickey.

138. The Defendants had a subjective appreciation of the high risk of harm created by this conduct but proceeded in conscious disregard of that risk.

139. Therefore, in addition to compensatory damages, Plaintiff seeks punitive damages in an amount to be determined at trial, to punish the Defendants for their outrageous conduct and to deter similar conduct in the future.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants and claim of Defendants a sum in excess of the jurisdictional limit for arbitration in compensatory and

punitive damages, with lawful interest thereon, damages pursuant to Rule 238, and costs of suit.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (*Plaintiffs v. All Defendants*)

140.    Plaintiffs incorporate by reference all facts and allegations set forth this Complaint by reference as though fully set forth at length herein.

141.  . Under Pennsylvania law, a claim for intentional infliction of emotional distress requires a plaintiff to establish the following elements: "(1) the conduct must be extreme or outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1273 (3d Cir.1979).  Pennsylvania courts also require a plaintiff asserting a claim for intentional infliction of emotional distress to provide evidence of a physical injury caused by the defendant's conduct. *Hart v. O'Malley,* 436 Pa.Super. 151, 647 A.2d 542, 554 (1994).

142.    As described above in Count III and throughout the Complaint, the Defendants acted with evil motive or reckless indifference to the health consequences to Plaintiffs and knowingly did so in order to continue to receive rental income without spending money on repairs, which constitutes extreme and outrageous conduct.

143.    In refusing to repair the roof, abate the water intrusion, remediate the visible mold, and repair the crumbling ceiling in unit E-2 for over two years, Defendants acted intentionally and/or with reckless disregard for the safety of the Plaintiffs.

144.    In refusing to repair the premises and remediate the mold growth in unit E-2 after being warned by Plaintiffs' doctors of the health risk to them, Defendants acted intentionally and/or recklessly in order to avoid costly repairs and only moved Plaintiffs into E-2 after being presented with Dr. Perez's first report in a notice of intent to sue letter.

24

145. In refusing to repair the premises and remediate the mold growth in unit E-1 after being presented with Dr. Perez's second report indicating a health risk to Plaintiffs, Defendants again acted intentionally and/or recklessly in order to avoid costly repairs and elected to retaliate against them by terminating the Lease after Ms. Stewart lawfully escrowed the rent.

146. Defendants' acted with the intent to cause physical injury and emotional distress to Plaintiffs or with reckless disregard for the high probability that physical injury and emotional distress would result.

147. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiffs suffered physical injuries, hospitalizations, surgeries, and psychological injuries that manifested themselves physically in the form of insomnia, anxiety, financial loss, and other physically disabling manifestations.

148. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiffs suffered severe emotional distress, including depression and anxiety, requiring medical care.

149. Plaintiffs' physical injuries and emotional distress were foreseeable.

150. As a direct and proximate result of the outrageous conduct set forth in this Complaint, Plaintiffs suffered severe mental anguish, inconvenience, loss of the capacity for the enjoyment of life, and embarrassment associated with the same, loss of earnings, incurred medical and psychological care expenses for their care and treatment along with attorneys' fees to defend against a lawsuit filed by Defendants after Ms. Stewart lawfully escrowed the rent. These injuries are either permanent or continuing in their nature and Plaintiff will suffer such losses and impairments in the future.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants and

25

claim of the Defendants a sum in excess of the jurisdictional limit for arbitration in compensatory and punitive damages, with lawful interest thereon, damages pursuant to Rule 238, and costs of suit.

## COUNT V
## <u>UNFAIR AND DECEPTIVE TRADE PRACTICES</u>
### (*Plaintiffs v. All Defendants*)

151.    Plaintiffs incorporate by reference all facts and allegations set forth this Complaint by reference as though fully set forth at length herein.

152.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§201-1, *et seq.*, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce .... " 73 Pa. Stat. Ann. § 201-3.

153.    "Unfair methods of competition" and "unfair or deceptive acts or practices" include, among other things, "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another," "[m]aking repairs, improvements or replacements on tangible, real or personal property, of a nature or quality inferior to or below the standard of that agreed to in writing," and "[ e ]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  73 Pa Stat. Ann.§ 2-201-2.

154.    "Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by" Pennsylvania's Unfair Trade Practices and Consumer Protection Law "may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater." 73

26

Pa Stat. Ann. § 2-201-9.2. In addition, "[t]he court may, in its discretion, award up to three times the actual damages sustained ... , costs and reasonable attorney fees." *Id.*

155. The Pennsylvania Supreme Court has held in, *Commonwealth by Creamer v. Monumental Properties, Inc.*, 459 Pa. 450 (1974), that the UTPCPL covers unfair and deceptive trade practices in connection with residential leasing.

156. Both before and after the execution of the Lease, the Defendants, including their agents, represented to the Plaintiffs that the Leased Premises were safe, inhabitable, and fully operational and that that the Defendants would promptly and effectively fix all maintenance and repair issues relating to the Leased Premises that arose during the term of the Lease and which were the landlord's responsibility.

157. Both before and after the execution of the Lease, and in specific response to the Plaintiffs stated concerns regarding air quality due to the chronic health conditions and illnesses of the Plaintiffs, the Defendants represented to the Plaintiffs that the Leased Premises were in a safe and healthy condition and contained good air quality.

158. For over a year, the Defendants repeatedly represented that they would have a qualified roofer repair the roof and abate the water intrusion.

159. For over two years, the Defendants repeatedly represented that they would repair the hole in Ms. Stewart's bedroom ceiling and remediate the mold growth throughout Unit E-2.

160. The above-referenced representations were knowingly false when made and were made by the Defendants with the intent to defraud the Plaintiffs and induce them into executing the Lease and later to refrain from vacating the Leased Premises, which would necessitate abating the water intrusion, remediating the mold, and foregoing rental income.

161. In reasonable reliance upon the Defendants' representations, Plaintiff Stewart

27

executed the Lease, Plaintiffs moved into the Leased Premises, and delayed vacating the Leased Premises.

162. During the term of the Lease, Plaintiffs raised numerous repair and maintenance issues that required immediate attention and which caused the Leases Premises to be unsafe, unsanitary and uninhabitable, including specifically the water intrusion, mold growth, and faulty electrical work.

163. Upon knowledge, information, and belief, Defendants knew that the electrical work was not permitted or inspected and caused an unreasonably unsafe condition for the Plaintiffs.

164. Defendants falsely represented to the Plaintiffs that they did not connect the two electrical circuits from the other unit into their unit's electrical panel but that they had corrected the issue. Upon knowledge, information and belief, the Defendants connected the two electrical circuits from the other unit into their unit's electrical panel and then reversed the connections without permits or inspections in violation of Marple Township Code.

165. Defendants failed to disclose the code violations and made the false and misleading statements to the Plaintiffs with the intent to calm the Plaintiffs' fears about the building's deficiencies and to lead them to believe that the Defendants would ensure that the Leased Premises were safe, habitable, and properly repaired.

166. In reasonable reliance upon the Defendants' omissions, representations, and receptive course of conduct, the Plaintiffs entered into the Lease, moved into the Leased Premises, and delayed vacating the Leased Premises.

167. The Defendants overall conduct throughout the course of this relationship constituted fraudulent or deceptive conduct which misled the Plaintiffs and intentionally caused confusion and misunderstanding on the part of the Plaintiffs.

168.     As a direct result of the Defendants' unfair trade practices and deceptive acts, the Plaintiffs have incurred significant damages including rent payments, moving and storage expenses, costs of inspecting and testing for mold, and damage to the Plaintiffs' personal property.

169.     As a direct result of the Defendants' unfair trade practices and deceptive acts, the Plaintiffs have incurred significant personal injuries, pain, suffering, mental anguish and the necessary and reasonable costs of medical expenses, all of which were reasonably foreseeable and within the contemplation of the parties.

170.     At all material times, Plaintiffs were customers of the Defendants and relied upon them to represent the condition and status of the Premises in determining whether to lease it as their residence.

171.     The Defendants violated the UTPCPL by, among other things:

    a.    Unfairly and fraudulently concealing water damage and the presence of mold in the roof and attic over unit E-2;

    b.    Unfairly and fraudulently concealing water damage and the presence of mold in the walls of unit E-1 by painting over it;

    c.    Unfairly and fraudulently misleading the Plaintiffs by falsely claiming that the units had been inspected and certified for use and occupancy as a residential rental units, when in fact they had never been inspected or certified for use and occupancy;

    c.    Unfairly and fraudulently misleading the Plaintiffs by falsely claiming that the units had been constructed and maintained in compliance with the applicable building codes, manufacturers' recommendations, and industry practices to be habitable;

    d.    Unfairly and fraudulently misleading the Plaintiffs by falsely informing them that the Premises were safe and free from dangerous conditions and/or defects like mold; and

    e.    Causing additional damage to Plaintiffs' persons and property by delaying repairs to the defective conditions by actively misrepresenting to Plaintiffs that the defects were cured and satisfied building codes and that the Premises were mold-free and safe for habitation.

172.     Plaintiffs reasonably relied on the implied and actual representations of Defendants.

173.     Plaintiffs leased the units as their residence from the Defendants in reliance upon

29

their misrepresentations to Plaintiffs that the units had been constructed and maintained in compliance with the applicable building codes, manufacturers' recommendations, and industry practices to be habitable, were certified for use and occupancy as residential rental units and were safe and free from dangerous conditions and/or defects like mold.

174. Plaintiffs suffered an ascertainable loss of money and property as a result of Defendants' deceptive acts, practices, and conduct as described herein.

175. Defendants engaged in fraudulent or deceptive conduct by indicating to Plaintiffs that the units had been constructed and maintained in compliance with the applicable building codes, manufacturers' recommendations, and industry practices to be habitable, were certified for use and occupancy as residential rental units and were safe and free from dangerous conditions and/or defects.

176. The aforesaid methods, acts or practices constitute unfair methods of competition and unfair acts or practices in the conduct of trade or commerce prohibited by Section 201-3 of the UTPCPL, as defined by Section 201-2(4), including the following:

a. Section 201~2(4)(v), representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has sponsorship, approval, status,. Affiliation or connection that he does not have;

b. Section 201-2( 4 )( vii), representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; and

c. Section 201-2(4)(xxi), engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 P.S. §§ 201-3, and 201-2(4)(v), (vii), and (xxi).

177. Plaintiffs allege that all of the practices described above were performed willfully. Accordingly, and pursuant to Section 201.9 of the UTPCPL, Plaintiffs are entitled to seek reimbursement for all actual damages sustained and costs incurred as a result of Defendants'

violation of the UTPCPL, and to seek trebled damages and reasonable attorneys' fees.

**WHEREFORE,** the Plaintiffs demand judgment in their favor and against Defendants, in an amount in excess of $50,000.00, including reimbursement of actual damages and costs, plus treble damages, reasonable attorneys' fees, court costs, and cost of future health monitoring.

## COUNT VI
## UNJUST ENRICHMENT
### (*Plaintiff Stewart v. All Defendants*)
### (*In the Alternative*)

178. Plaintiffs incorporate by reference all facts and allegations set forth this Complaint by reference as though fully set forth at length herein.

179. By paying Defendants monthly rent to lease units E-1 and E-2 in a safe condition for Plaintiffs to inhabit, free of known dangerous defects and conditions, Ms. Stewart has conferred a substantial monetary benefit on the Defendants.

180. At all material times, Defendants knew or should have known that Ms. Stewart was leasing the units with the expectation that they was safe for Plaintiffs to inhabit and free from known dangerous defects and conditions.

181. Since July 2021, Defendants accepted and appreciated the benefits bestowed by Ms. Stewart with knowledge that the roof over units E-1 and E-2 was leaking and causing water intrusion and mold growth and that Plaintiffs could not afford to abandon the Lease despite the conditions and risk to their health.

182. Acceptance and retention of the benefits by Defendants under such circumstances would unjustly enrich them at the expense of Plaintiff Stewart.

183. By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of Plaintiff.

184. Due to Defendants unjust enrichment, Plaintiff has suffered economic damages and

31

is entitled to proper compensation.

185. It would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained from their outrageous conduct as described herein.

**WHEREFORE**, Plaintiff Kelly Stewart respectfully requests that this Court enter judgment against Defendants, individually, jointly and/or severally, in an amount greater than $50,000.00 and in excess of the applicable arbitration limits, for all damages sustained as a result of their unjust enrichment in an amount according to proof.

Date: <u>January 12, 2026</u>                              Respectfully Submitted,

                                                      **De GISI LAW GROUP, LLC**

                                                      <u>/s/ Carmen A. De Gisi</u>
                                                      Carmen A. De Gisi, Esquire (No. 208989)
                                                      Luke T. Pepper, Esquire (No. 87100)
                                                      462 Germantown Pike, Suite 11
                                                      Lafayette Hill, PA 19444
                                                      Tel: (610) 897-8721
                                                      Fax: (610) 897-8862
                                                      cd@degisilaw.com
                                                      ltp@ltpepperlaw.com

## VERIFICATION

I, Kelly Stewart, am the Plaintiff in the foregoing matter and verify that the statements made in the Second Amended Complaint are true and correct to the best of my knowledge, information, and belief. The undersigned understands that this statement is made subject to the penalties imposed by 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Date: January 11, 2026

_Kelly Stewart_
Kelly Stewart

## VERIFICATION

I, Mackenzie Hickey, am the Plaintiff in the foregoing matter and verify that the statements made in the Second Amended Complaint are true and correct to the best of my knowledge, information, and belief. The undersigned understands that this statement is made subject to the penalties imposed by 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Date: January 11, 2026

_Mackenzie Hickey_
Mackenzie Hickey

| | | |
|---|---|---|
| Kelly Stewart and | : | COURT OF COMMON PLEAS |
| Mackenzie Hickey | : | DELAWARE COUNTY, PENNSYLVANIA |
| | : | |
| Plaintiffs, | : | CIVIL ACTION – LAW |
| | : | |
| v. | : | NO.: CV-2025-001561 |
| | : | |
| Reed Court Apts, LLC and | : | |
| Richard S. Fleming | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I, Carmen A. De Gisi, hereby certify that a true and correct copy of Plaintiffs' Second Amended Complaint has been filed with the Court and served on all counsel of record via email and the Court's e-filing notification system, as follows::

Paul C. Troy, Esquire
Jessica M. Keough, Esquire
KANE, PUGH, KNOELL,
TROY & KRAMER LLP
4 Sentry Parkway East, Suite 100
Blue Bell, PA 19422
ptroy@kanepugh.com
jkeough@kanepugh.com

De GISI LAW GROUP, LLC

/s/ Carmen A. De Gisi
Carmen A. De Gisi, Esquire
462 Germantown Pike, Suite 11
Lafayette Hill, PA 19444
Telephone: (610) 897-8721
Facsimile (610) 897-8754
cd@degisilaw.com
*Attorney for Plaintiffs*

Date: January 12, 2026

1

# EXHIBIT

# "2"

KANE, PUGH, KNOELL, TROY & KRAMER LLP
BY: **PAUL C. TROY, ESQUIRE**
ATTORNEY I.D. NO. 60875
BY: **JESSICA M. KEOUGH, ESQUIRE**     ATTORNEYS FOR DEFENDANTS
ATTORNEY I.D. NO. 318511               Reed Court Apartments, LLC and
4 SENTRY PARKWAY EAST, SUITE 100       Richard S. Fleming
BLUE BELL, PA 19422
(610) 275-2000

| | | |
|---|---|---|
| Kelly Stewart and | : | COURT OF COMMON PLEAS |
| Mackenzie Hickey | : | DELAWARE COUNTY |
| Plaintiffs, | : | |
| v. | : | CIVIL LAW - ACTION |
| Reed Court Apts, LLC and | : | |
| Richard S. Fleming | : | No. CV-2025-001561 |
| Defendants | : | |
| v. | : | |
| | : | |
| Burdett Roofing and Exteriors LLC | : | |
| Additional Defendant | : | |

## JOINDER COMPLAINT OF DEFENDANTS REED COURT APTS, LLC AND RICHARD S. FLEMING AGAINST ADDITIONAL DEFENDANT BURDETT ROOFING AND EXTERIORS LLC

Defendants, Reed Court Apts, LLC and Richard S. Fleming, by and through their attorneys, Kane, Pugh, Knoell, Troy & Kramer, LLP, hereby file this Joinder Complaint against Burdett Roofing and Exteriors LLC, and aver the following:

*Parties*

1.     Plaintiff Kelly Stewart alleges she is a citizen of the Commonwealth of Pennsylvania and is an adult individual who resides at 725 Upper Stump, Chalfont, Pennsylvania. *See* Second Amended Complaint, attached hereto as Exhibit "A".

4904-0882-1144, v. 1

2.      Plaintiff Mackenzie Hickey alleges she is a citizen of the Commonwealth of Pennsylvania and is an adult individual who resides at 22 S. Harwood Avenue, Upper Darby, Pennsylvania, and that she is the daughter of Ms. Stewart. *See* Ex. A.

3.      Defendant Reed Court Apts, LLC ("Reed Court") is a Pennsylvania limited liability company with a place for doing business at 15 Lantern Lane in Media, Pennsylvania.

4.      Defendant Richard S. Fleming is an adult individual who is a member of Reed Court.

5.      Upon information and belief, Additional Defendant, Burdett Roofing and Exteriors, LLC is a Pennsylvania Limited Liability Company with a place for doing business at 3420 Horton Road, in Newtown Square, Pennsylvania.

*Factual and Procedural History*

6.      Plaintiff initiated this litigation by filing a Writ of Summons against Reed Court and Richard S. Fleming on April 25, 2025; a Complaint was filed on November 4, 2025; an Amended Complaint was filed January 21, 2026; and a Second Amended Complaint was filed January 12, 2026. A true and correct copy of Plaintiffs' Second Amended Complaint is attached hereto as Exhibit "A".

7.      Defendants filed Preliminary Objections to the Second Amended Complaint, which are currently outstanding.

8.      Defendants incorporate by reference the factual averments contained in Plaintiffs' Second Amended Complaint; however, Defendants do not admit such facts by reason of their incorporation.

9.      Plaintiffs allege that they were injured due to water infiltration in their apartment at Reed Court. *See* Ex. A.

4904-0882-1144, v. 1

10. Specifically, Plaintiffs claim that "Defendants took no action to repair the water intrusion or remediate it." Ex. A, ¶ 25.

11. In reality, Defendant Reed Court entered into a contract with Additional Defendant Burdett Roofing and Exteriors, LLC ("Burdett"), to repair the roof. *See* Contract, attached hereto as Exhibit "B".

12. The Contract outlined the scope of Burdett's work on the roof, including that sealant and new custom metal would be placed where needed. *See* Ex. B.

13. The Contract also included a 20 Year Labor Warranty and a 30 Year Manufacture Warranty. *See* Ex. B.

14. In March and April of 2022, Mike Burdett installed new roofs for buildings A-F at Reed Court.

15. After the installation was completed, Reed Court continued to experience water infiltration.

16. Reed Court contacted Burdett on several occasions to fix the water infiltration problem, but Burdett failed to properly remediate the roof to cure the water infiltration problem.

17. Defendants ultimately had to contract with another roofing company to have the roof properly replaced.

18. Defendants Reed Court and Richard S. Fleming now file the present Joinder Complaint to add Additional Defendant Burdett Roofing and Exteriors, LLC, as a Defendant in this matter.

## COUNT I – NEGLIGENCE

19. Defendants incorporate by reference the allegations contained in the preceding Paragraphs of the Joinder Complaint as though set forth herein at length.

4904-0882-1144, v. 1

20. The acts and omissions that Plaintiffs are complaining of in their Second Amended Complaint are the result of the acts or omissions of Additional Defendant Burdett.

21. Defendants incorporates herein, as though the same were fully set forth at length, without admission, the averments of Plaintiffs' Second Amended Complaint against Defendants and aver that, should any of Plaintiffs' claimed injuries, damages, or losses of any kind be proven at trial of the above-captioned matter, then for the reasons set forth in the Second Amended Complaint attached hereto as Ex. A, said damages, losses or injuries of any kind were caused solely by the negligence and/or carelessness and/or recklessness of Additional Defendant Burdett as described in the Second Amended Complaint.

22. Accordingly, Defendants respectfully request that Additional Defendant Burdett be held solely liable to Plaintiffs, jointly and severally liable to Plaintiffs, or liable over Defendants by way of contribution and/or indemnity.

**WHEREFORE**, Defendants respectfully request that judgment be entered in their favor and/or that to the extent there is any liability to Plaintiff, Additional Defendant Burdett be held solely liable to Plaintiffs, jointly and severally liable to Plaintiffs, or liable over Defendants by way of contribution and/or indemnity.

## COUNT II – BREACH OF CONTRACT

23. Defendants incorporate by reference the allegations contained in the preceding Paragraphs of the Joinder Complaint as though set forth herein at length.

24. The acts and omissions that Plaintiffs are complaining of in their Second Amended Complaint are the result of Additional Defendant Burdett breaching their contract with Reed Court.

25. Defendant incorporates herein, as though the same were fully set forth at length, without admission, the averments of Plaintiffs' Second Amended Complaint against Defendants

4904-0882-1144, v. 1

and aver that, should any of Plaintiffs' claimed injuries, damages, or losses of any kind be proven at trial of the above-captioned matter, then for the reasons set forth in the Second Amended Complaint attached hereto as Ex. A, said damages, losses or injuries of any kind were caused solely Additional Defendant Burdett's breach of contract with Defendant.

26. Accordingly, Defendants respectfully request that Additional Defendant Burdett be held solely liable to Plaintiffs, jointly and severally liable to Plaintiffs, or liable over Defendants by way of contribution and/or indemnity.

**WHEREFORE**, Defendants respectfully request that judgment be entered in their favor and/or that to the extent there is any liability to Plaintiff, Additional Defendant Burdett be held solely liable to Plaintiffs, jointly and severally liable to Plaintiffs, or liable over Defendants by way of contribution and/or indemnity.

## COUNT III – CONTRIBUTION

27. Defendants incorporate by reference the allegations contained in the preceding Paragraphs of the Joinder Complaint as though set forth herein at length.

28. The acts and omissions that Plaintiffs are complaining of in their Second Amended Complaint are the result of the acts or omissions of Additional Defendant Burdett.

29. Defendants incorporates herein, as though the same were fully set forth at length, without admission, the averments of Plaintiffs' Second Amended Complaint against Defendants and aver that, should any of Plaintiffs' claimed injuries, damages, or losses of any kind be proven at trial of the above-captioned matter, then for the reasons set forth in the Second Amended Complaint attached hereto as Ex. A, said damages, losses or injuries of any kind were caused solely by the negligence and/or carelessness and/or recklessness of Additional Defendant Burdett as described in the Second Amended Complaint.

30. The acts and omissions that Plaintiffs are complaining of in their Second Amended Complaint are the result of Additional Defendant Burdett's failure to properly remediate the roof, as they were required to do pursuant to the contract between Burdett and Reed Court.

31. Defendants deny that they have any liability to Plaintiffs for the claims asserted in the Second Amended Complaint; however, to the extent that Defendants are determined to have any liability to Plaintiffs, then Defendants seek contribution from Additional Defendant Burdett for the same.

**WHEREFORE**, Defendants respectfully request that judgment be entered in their favor as to all claims set forth in Plaintiffs' Second Amended Complaint. In the alternative, to the extent that there is any liability against Defendants, Defendants respectfully request that Additional Defendant Burdette contribute to Defendants pursuant to Pennsylvania common law, applicable Pennsylvania statute, and/or any respective contracts and that this Court enter a judgment in their favor and Against Additional Defendant as Additional Defendant is solely liable to Plaintiffs, jointly and severally liable to Plaintiffs, or liable over Defendants to Plaintiffs.

### COUNT IV - INDEMNIFICATION

32. Defendants incorporate by reference the allegations contained in the preceding Paragraphs of this Joinder Complaint as though same were set forth more fully herein at length.

33. Defendants incorporates herein, as though the same were fully set forth at length, without admission of the truth thereof, the averments of Plaintiffs' Second Amended Complaint against Defendants, and aver that, should any of Plaintiffs' claimed injuries, damages or losses of any kind be proven at trial of the above captioned matter, Additional Defendant Burdett is obligated to indemnify Defendant for all such injuries, damages or losses asserted by Plaintiffs, in addition to all attorney fees incurred by Defendants.

4904-0882-1144, v. 1

**WHEREFORE**, Defendants respectfully request that this Honorable Court:

a.      Enter judgment in their favor and against all other parties, and Additional Defendant Burdett plus costs of this action;

b.      Enter judgment, if there is any liability to Plaintiffs, that Additional Defendant Burdett is solely liable to Plaintiffs, or;

c.      If damages are recovered by Plaintiffs against Defendant, then Additional Defendant Burdett is liable to Plaintiffs so that Defendant may recover from Additional Defendant Burdett by way of contribution and/or indemnification of the amount recovered by Plaintiffs, plus attorney fees and costs.

Respectfully submitted,

**KANE, PUGH, KNOELL, TROY & KRAMER, LLP**

BY: ___/s/ Jessica M. Keough

PAUL C. TROY, ESQUIRE
JESSICA M. KEOUGH, ESQUIRE
Attorneys for Defendants

4904-0882-1144, v. 1

# EXHIBIT

# "3"

OGIC000001

 **WESTFIELD**®

Insured:         Mike Burdett Roofing and Exteriors LLC
Claim Number:    0002735785


Policy Number:    CWP 179385Y
Policy Period(s):  10/8/2021 - 10/8/2022
Policy Cancelled:  _____



☑ NON-CERTIFIED POLICY

OGIC000002

 

# Let's start with a simple thank you.

We know you're working hard to succeed. And we're glad you chose Westfield for your business insurance.

**Let's get acquainted**

We look forward to getting to know you. In fact, we'll be sending some information about how you can access your digital My Westfield account shortly. Once you login and set up your profile, you can access your policy information, make future payments, obtain proof of insurance and more.

Did you know that Westfield was founded in 1848 by a small group of hard-working farmers who believed in the promise of the future and the power of the individual? Today, as one of the nation's leading property and casualty (P&C) companies, we remain true to their vision and are dedicated to your protection and prosperity and to the progress of our community.

Our community now includes you. And as a new Westfield customer, you've joined a caring community with experience and industry expertise that can help you solve problems and create opportunities. This caring community includes your independent agent at Brandon Insurance Group.

**Let's get started**

The first step is to review your policy - a roadmap to the products and services you selected. Your independent agent is ready and available to answer questions and provide additional details about your policy. You can contact Brandon Insurance Group at 215-256-8020 or visit their website at www.brandonins.com.

Again, it's our pleasure to do business with you. Together, let's greet the future by imagining all the possibilities.

Welcome to Westfield.

OGIC000003



# A Business Insurance Policy for
# Mike Burdett Roofing and Exteriors LLC

Prepared by

Brandon Insurance Group

of HARLEYSVILLE, Pennsylvania

OGIC000004

IN WITNESS WHEREOF, this Company has caused this policy be signed by its President and Secretary and countersigned by a duly authorized representative of the Company if required by law.

*Frank A Carrino* Secretary     *Edward J. Lungen III* President

ID 7004 08 20

OGIC000005



# Westfield Privacy Promise

Effective: 2020 January 1

We are committed to protecting your privacy. This notice describes the personal information we collect about you and how we use it. This privacy promise applies to all our Westfield Insurance companies[1].

## SUMMARY

- We gather information directly from you[2], from your transactions with us and from outside sources.
- We use your information only to provide insurance to you, to investigate and resolve claims or to improve the products and services we offer.
- We will share your information with the independent agent or insurance broker that you chose.
- We share your information with third-parties who help us deliver services to you.
- *We do not sell your personal information.* We do not share your information with other companies for their marketing purposes.
- We take measures to protect your information while it is in our custody. We require the third-parties who help us to protect your information, too.

## INFORMATION WE COLLECT

We collect information about you in order to quote and service your insurance policy and to investigate and pay claims. This includes:

- Information from your application and other forms (such as your name, address, date of birth, email address, driver's license number and type of vehicle or property).
- Information about your transactions with us, our affiliates or others (such as your insurance coverages, limits and rates, payment and claims history and information needed for billing and payment).
- Information from third parties (such as your driving record, claims history with other insurers and credit information).
- Information about your online interactions with us (such as your IP address, the kind of device you used, the time of your visit to our site and pages visited). We use this information to deliver online services to you and/or to evaluate and improve our services.

## INFORMATION ABOUT MINORS

We do not sell to or intentionally communicate with children under the age of 13. We may request specific information about a child from parents in order to properly quote an insurance policy, verify identities or deliver requested transactions. We do not retain information about minors other than what is necessary to deliver requested services.

---

[1]"Westfield" includes Ohio Farmers Insurance Company, Westfield Insurance Company, Westfield National Insurance Company, American Select Insurance Company, Old Guard Insurance Company, Westfield Champion Insurance Company, Westfield Premier Insurance Company, Westfield Superior Insurance Company, Westfield Touchstone Insurance Company and Westfield Services, Inc.

[2]For a personal lines policy, this could include information from the head of household or other family member buying insurance that covers you. For a commercial lines policy, this could include information from your company's representative.

OGIC000006

## INFORMATION WE DISCLOSE
*We do not sell or rent your personal information.* We disclose your information to third-parties only as permitted by law:
- To process transactions that you request or to service your policy.
- To investigate and pay claims.
- To prevent fraud.
- To perform marketing services on our behalf. (We do NOT allow third-parties to use the information they receive from us to market on their own or anyone else's behalf.)
- To comply with legal requirements.

Recipients include employees within our family of insurance companies, claims representatives, insurance agents or brokers, service providers, auditors, consumer reporting agencies, government agencies, law enforcement and the courts.

## HOW WE PROTECT YOUR INFORMATION
We restrict access to nonpublic personal information about you to those employees and outside services providers who need to know that information in order to provide our products or services to you. Their use of information is restricted by law, by our employee code of conduct and by written agreements where appropriate. We maintain physical, electronic and procedural safeguards that comply with applicable federal and state regulations to guard your information.

If you believe you have found a security issue with one of our products or services, please report it to InfosecAlerts@Westfieldgrp.com as quickly as possible. Please describe the issue in as much detail as possible, including the date and time you discovered the issue and how to reproduce the issue. Screenshots and videos can be especially helpful. Please also include your name and contact information in case we need additional detail.

## INTERNET PRIVACY
If you choose to communicate with us through the Internet or other electronic means, please read our Privacy Promise online at www.westfieldinsurance.com/privacy for details about how and why we use cookies, social media and other technologies.

## FORMER CUSTOMERS
If you end your relationship with us, we will continue to adhere to the policies and practices described in this privacy promise for as long as we have your information.

## CALIFORNIA RESIDENTS
California residents have the right to request an accounting of information which we hold about you, the right to request that we not sell your information and the right to request that we amend or delete your information. We may not (and will not) retaliate against you for exercising any of these rights. These rights are limited by, among other things, our obligations to comply with insurance regulations, statutes and other legal requirements. Call our Privacy Office at 1.800.243.0249 or go to www.westfieldinsurance.com/privacy and click the Do Not Sell My Personal Information link to submit a request relevant to those rights.

## PRIVACY CONTACT INFORMATION
If you have any questions, concerns or comments about our privacy promise, you may contact us by email at Privacy@Westfieldgrp.com or by mail to Privacy Officer, Westfield Insurance, One Park Circle, PO Box 5001, Westfield Center, OH 44251.

OGIC000007



# IMPORTANT NOTICE TO OUR POLICYHOLDERS

### *Westfield Insurance Fraud Hot-Line*

PLEASE READ THIS IMPORTANT INFORMATION

- Fraudulent insurance claims cost us all money.

- Call us if you have information concerning a fraudulent insurance claim.

- All information will be kept confidential.

- Call and discuss your information with a trained investigator, or leave the information anonymously on a telephone answering machine.

- We can all help fight insurance fraud.

Be a Fraud Buster

1-800-654-6482

AD 8522 (08-10)

OGIC000008



**WESTFIELD**®

THIS NOTICE DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY. IF THERE IS ANY CONFLICT BETWEEN YOUR POLICY AND THIS NOTICE, THE PROVISIONS OF YOUR POLICY SHALL PREVAIL.

## Policyholder Disclosure Notice of Terrorism Insurance Coverage and Premium

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security, and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect you coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

## PREMIUM CHARGED

During your current policy period, the portion, if any, of your premium that is attributable to coverage for acts of terrorism as defined in the Act is $ _____ (refer to the individual dec pages for the Terrorism premium).

**If you do not desire the coverage** for acts of terrorism as defined in the Act, as amended, you may reject the coverage and instruct the insurance company to remove it and refund the premium described above. **To reject the coverage, you must:**

1) advise the insurance company by letter (on your company letterhead),

2) signed by the owner, representative, or properly designated official of the named insured.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

OGIC000009

**The insurance company must receive your letter within 60 days** from the date shown at the bottom right side of the forms titled "Common Policy Declarations". Please refer to "Common Policy Declarations" for the mailing address of the insurance company.

If your policy premium is $500, that may represent a minimum premium. In that case, the portion that is attributable to acts of terrorism as defined in the Act, as amended, may be included within that minimum and your total premium will not be reduced if you reject coverage for act of terrorism. The minimum premium will still apply.

Should you have any question regarding this notice, please contact your insurance agent.

AD 85 84 07 19
Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

OGIC000010



### Premium Audit Notice – FAQ and Helpful Tips to Help Prepare You for Your Premium Audit

Westfield Insurance welcomes the opportunity to service your insurance needs. At the end of your policy term you may be contacted by our Premium Audit department, or one of our Premium Audit vendors, to complete your premium audit.

A premium audit is a review of your operations and financial records. Because your business insurance policy premiums were based upon estimated information (e.g. Payroll, Sales, Subcontract Costs, etc.) a premium audit may be conducted to help determine your final premium.

An accurate premium audit is a benefit to your business as the estimated exposures used to rate your policy will fluctuate during your policy period and maintaining accurate records will help you gain the most benefit from your premium audit. As part of the audit review the auditor will need to ask some questions about your business operations and records to ensure your operations and employees are classified correctly.

### FAQ

### Who will complete the audit?

You may be asked to complete a premium audit in one of four ways by one of our staff or vendor auditors:

- <u>Mail/Voluntary Form</u> – a premium audit form will be mailed to you and will ask a series of questions relative to your type of business and policy. You will be asked to fill out the form in its entirety and return it to Westfield via mail, fax, or email.

- <u>Telephone Audit</u> – a telephone auditor will call you to discuss your operation and review your financial records. A form may be sent to you via mail or email prior to the phone audit appointment to assist and prepare you for the premium audit.

- <u>Hybrid Audit</u> – an auditor will contact you to schedule and conduct the audit over the phone. Prior to the audit appointment you will be asked to forward necessary financial records. A review of those records and your operations will be discussed during the phone interview process.

- <u>Physical Audit</u> – a field auditor will contact you to schedule an appointment to conduct the audit at your premises. The auditor will inquire about your operations and physically review the financial records.

### What records will be needed?

The premium auditor will request and review the records needed based on your coverages and classifications. In most cases the auditor will be able to obtain the necessary audit data from two or more of the following records:

OGIC000011

- Payroll based audits – Monthly/Quarterly Payroll Journals, Quarterly State Tax Reports (State Unemployment Reports), Federal 941 Tax Reports

- Sales based audits – Monthly Sales Reports, Monthly State Sales Tax Reports, General Ledgers, Financial Statements

- Subcontract Costs/Expense – Check Disbursements Report, Vendor Payment Report, General Ledger, 1099's, Financial Statements. Certificates of insurance should be obtained for each subcontractor.

## Helpful Tips

**Payroll based audits** – Many insurance policies are based on gross payroll. Gross payroll includes many items such as wages, bonuses, holiday pay, sick pay, commissions, overtime pay, and vacation pay.

Helpful Tip – Overtime: the amount paid in excess of straight time pay can be deducted if the excess portion can be verified by your payroll records. *Your records must show summarized overtime amounts paid by employee.*

Helpful Tip – Division of Payroll: Division of an individual employee's payroll to more than one classification is not allowed except for construction or erection operations. For construction and erection operations the payroll of an employee may be allocated to each type of work performed if proper records are kept (percentages are not acceptable). Payroll cannot be divided between construction, office, and sales classifications.

**Sales based audits** – Another premium base for general liability is gross sales. Gross sales are the amount charged by you to others for all goods or products sold and distributed and for any other operations or services performed by you for others.

Helpful Tip – The following may be deducted from gross sales if properly maintained in your financial records:
- Returns and Allowances
- Freight/Delivery Income
- Sales tax collected and submitted to a government agency

This information is provided to you as assistance for proper record keeping. Other insurance companies may differ in their requirements. Please feel free to contact our Premium Audit Department if you have any questions about the Premium Audit process.

OGIC000012



# Premium Audit Notice for Contractors

The records you keep can affect the premium you pay for your insurance policy, and there are steps you can take to help control these costs.

Your insurance premiums are based on your business's direct payroll and the amounts paid to any subcontractors you may hire. Subcontract costs are an area of concern because it is an area that can substantially increase the cost of your insurance if you do not hire "adequately insured subcontractors." Any operations performed by subcontractors without a certificate of insurance or who are inadequately insured will be classified under the specific classification description for each operation which carries a higher rate.

To help control the cost of your insurance you should obtain proper certificates of insurance from every subcontractor you hire prior to the commencement of work. A valid certificate of insurance will provide evidence of Workers' Compensation or General Liability coverage for a specific policy term and can be obtained from the subcontractor's insurance agent.

Helpful Tips:

- The certificate of insurance should cover the period the subcontractor performs work for you. If the subcontractor's certificate of insurance expires on a certain date, but they will be working beyond that date, a new certificate should be required. Current and expired certificates of insurance should be kept and maintained in a binder or electronic file.

- The subcontractor's limits of liability and coverages should be at least equal to those carried by your business for the time the work was performed to be considered "adequately insured." If the subcontractor's limits are too low, you should contact the subcontractor and request their limits be raised to equal your policy's limits.

- Be especially cautious when hiring casual or 1099 type laborers as these types of independent subcontractors sometimes do not carry insurance or limits of liability that may match your policy.

- You should read or have your insurance agent or attorney review every contract before signing to ensure the subcontractor is not transferring liability back to your business.

OGIC000013



**Westfield**
One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial Common Policy
Declarations
New**

| | |
|---|---|
| **Company Providing Coverage**: Old Guard Insurance Company | |

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account No:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|

| **Policy Period:** From 10/08/2021 To 10/08/2022 | At 12:01 A.M. standard time at your mailing address shown above |
|---|---|

| **Business Of Named Insured:** Contractors | **Entity Of Named Insured:** LLC |
|---|---|

**THIS IS A NON-PARTICIPATING POLICY**

**Coverage and Premium Summary**

| | |
|---|---|
| Commercial General Liability Coverage Part | $ ▬▬ |
| **Policy Annual Premium** | $ ▬▬ |
| **Total Advance Annual Policy Premium** | $  ▬ |

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. For more detail, please refer to the individual coverage parts inside your policy.

**Forms and Endorsements Applicable to This Coverage Part:**
Refer to Schedule of Forms and Endorsements - IL DS 73

**Page 1 of 2**          IL DS 01 05 18          ISSUED DATE: 10/07/2021

OGAG000014

PLEASE REFER TO IL7097 FOR A DETAILED SUMMARY OF TAXES AND SURCHARGES BY STATE.

OGIC000015



## Westfield

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial Common Policy Schedule**

**New**

---

**Company Providing Coverage**: Old Guard Insurance Company

---

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353 |

---

**Policy Number:** 179385Y    **Billing Account No:** 6000013101    **Payment Plan:** Monthly (Paper Invoices)

---

**Policy Period:** From 10/08/2021 To 10/08/2022

At 12:01 A.M. standard time at your mailing address shown above

---

**Business Of Named Insured:** Contractors

**Entity Of Named Insured:** LLC

---

### Schedule of Insured Locations

**Loc.** 1

3420 Horton Rd
Newtown Square, PA 19073-3418

---

**Page 1 of 1**                    IL DS 02 05 18                    ISSUED DATE:10/07/2021

OGIC000016



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial General Liability
Declarations
New**

| | |
|---|---|
| **Company Providing Coverage:** Old Guard Insurance Company | |

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account Number:**<br>6000013101 | **Payment Plan:** Monthly<br>(Paper Invoices) |
|---|---|---|
| **Policy Period:** From: 10/08/2021 To: 10/08/2022 |  | At 12:01 A.M. standard time at your mailing address shown above |

## Limits of Insurance

| | |
|---|---|
| Each Occurrence Limit | $1,000,000 |
| General Aggregate Limit (Other than products/completed-operations) | $2,000,000 |
| Products/Completed-Operations Aggregate Limit | $2,000,000 |
| Personal & Advertising Injury Limit | $1,000,000 |
| Damage to Premises Rented to You Limit  (Any one premises) | $100,000 |
| Medical Expense Limit (Any one person) | $1,000 |

| | |
|---|---|
| **Total Premises/Operations Premium** | $█████ |
| **Total Products/Completed Operations Premium** | $█████ |
| **Total Additional Coverages and Endorsements Premium** | $████ |
| **Total Additional Interests Premium** | **Included** |
| **Total Terrorism Premium** | $██ |
| **Total Advance Annual General Liability Premium** | $████  |

**Forms And Endorsements Applicable To This Coverage Part:**
Refer to Schedule of Forms and Endorsements - IL DS 73

| | | |
|---|---|---|
| **Page 1 of 4** | CG DS 01 05 18 | ISSUED DATE:10/07/2021 |

OGIC000017



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial General Liability
Declarations
New**

| | |
|---|---|
| **Company Providing Coverage:** Old Guard Insurance Company | |

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account Number:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|
| **Policy Period:** From: 10/08/2021 To: 10/08/2022 | | At 12:01 A.M. standard time at your mailing address shown above |

## Classification and Premium Schedule

Location of all premises owned by, rented to, or controlled by the name insured are shown on the Schedule of Insured Locations, IL DS 02, unless otherwise indicated.

| Location | Classification Code and Description | Premium Basis | Rate | Premium |
|---|---|---|---|---|
| #1: 3420 Horton Rd, Newtown Square, PA 19073-3418 | 98967 - Siding Installation | $ ▮ | ▮ | $ ▮<br>$ ▮ |

|  |  |
|---|---|
| **Total Premises/Operations Premium** | $ ▮ |
| **Total Products/Completed Operations Premium** | $ ▮ |

OGIC000018



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial General Liability Declarations**
**New**

**Company Providing Coverage:** Old Guard Insurance Company

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account Number:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|

| **Policy Period:** From: 10/08/2021 To: 10/08/2022 | At 12:01 A.M. standard time at your mailing address shown above |
|---|---|

## Schedule of Additional Coverages and Endorsements

| Form Number/ Endorsement | Premium |
|---|---|
| CG7168 - COMMERCIAL GENERAL LIABILITY - ARTISAN CONTRACTOR ENDORSEMENT | $█ |
| CG7121 - Damage to Your Work | Included |
| CG7160 - DAMAGE TO PROPERTY-BORROWED EQUIPMENT | Included |
| CG2404 - Waiver of Transfer of Rights of Recovery Against Others to Us | Included |
| CG7202 - Contractor's Professional and Pollution Legal Liability Endorsement | Included |
| - | |

**Total Additional Coverages and Endorsements Coverage Premium:**  $

OGIC000019



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial General Liability
Declarations
New**

**Company Providing Coverage:** Old Guard Insurance Company

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account Number:**<br>6000013101 | **Payment Plan:** Monthly<br>(Paper Invoices) |
|---|---|---|
| **Policy Period:** From: 10/08/2021 To: 10/08/2022 | | At 12:01 A.M. standard time at your mailing<br>address shown above |

**Schedule of Additional Interests**

| Form Number/ Endorsement | Premium |
|---|---|
| CG2010 [Automatic status when required by written contract, agreement, or permit] -<br>Additional Insured - Owners, Lessees or Contractors - Scheduled Person or<br>Organization | Included |
| **Total Additional Interests Premium:** | **Included** |

**Page 4 of 4**      CG DS 01 05 18      ISSUED DATE:10/07/2021

OGIC000020



**Westfield**
One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Schedule of Forms and Endorsements**
**New**

| **Company Providing Coverage**: Old Guard Insurance Company | |
|---|---|

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account No:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|

| **Policy Period:** From 10/08/2021 To 10/08/2022 | At 12:01 A.M. standard time at your mailing address shown above |
|---|---|

## SCHEDULE OF FORMS AND ENDORSEMENTS

### FORMS THAT APPLY TO MULTIPLE COVERAGE PARTS

| NUMBER | EDITION DATE | TITLE |
|---|---|---|
| ILDS01 | 0518 | COMMERCIAL PACKAGE POLICY COMMON POLICY DECLARATIONS |
| ILDS02 | 0518 | COMMERCIAL PACKAGE POLICY COMMON POLICY SCHEDULE |
| IL0003 | 0908 | CALCULATION OF PREMIUM |
| IL0017 | 1198 | COMMON POLICY CONDITIONS |
| IL0021 | 0908 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| IL7013 | 1206 | EXCLUSION - LEAD |
| IL7090 | 0820 | EXCLUSION - CONTROLLED SUBSTANCES |
| IL7095 | 0820 | EXCLUSION - PRIOR WORK OR PRODUCTS |
| IL0120 | 1013 | PENNSYLVANIA CHANGES - DEFENSE COSTS |
| IL0246 | 0907 | PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL |
| IL0910 | 0702 | PENNSYLVANIA NOTICE |

### FORMS THAT APPLY TO COMMERCIAL GENERAL LIABILITY

| NUMBER | EDITION DATE | TITLE |
|---|---|---|
| CGDS01 | 0518 | COMMERCIAL GENERAL LIABILITY DECLARATIONS |
| CG0001 | 0413 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG7202 | 0721 | CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY ENDORSEMENT |
| CG2001 | 1219 | PRIMARY AND NONCONTRIBUTORY - OTHER INSURANCE CONDITION |
| CG2010 | 1219 | ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION |
| CG2106 | 0514 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| CG2132 | 0509 | COMMUNICABLE DISEASE EXCLUSION |
| CG2147 | 1207 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG2167 | 1204 | FUNGI OR BACTERIA EXCLUSION |
| CG2170 | 0115 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| CG2186 | 1204 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS |
| CG2279 | 0413 | EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY |

OGIC000021



**Westfield**
One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Schedule of Forms and
Endorsements
New**

**Company Providing Coverage**: Old Guard Insurance Company

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone:  215-256-8020 |

**Policy Number:** 179385Y   **Billing Account No:** 6000013101   **Payment Plan:** Monthly (Paper Invoices)

**Policy Period:** From  10/08/2021 To  10/08/2022    At 12:01 A.M. standard time at your mailing address shown above

| | | |
|---|---|---|
| CG2404 | 1219 | WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US |
| CG2426 | 0413 | AMENDMENT OF INSURED CONTRACT DEFINITION |
| CG2503 | 0509 | DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT |
| CG2504 | 0509 | DESIGNATED LOCATION(S) GENERAL AGGREGATE LIMIT |
| CG4015 | 1219 | CANNABIS EXCLUSION WITH HEMP EXCEPTION |
| CG7017 | 1298 | EXCLUSION-ASBESTOS |
| CG7121 | 0518 | DAMAGE TO YOUR WORK |
| CG7160 | 0518 | DAMAGE TO PROPERTY - BORROWED EQUIPMENT |
| CG9909 | 1219 | PREMIUM AUDIT NONCOMPLIANCE CHARGE |
| CG7168 | 0521 | COMMERCIAL GENERAL LIABILITY - ARTISAN CONTRACTOR ENDORSEMENT |
| CG7219 | 0521 | PENNSYLVANIA CHANGES - CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY |

Case 2:26-cv-04947-GAM Document 1-1 Filed 07/17/26 Page 287 of 577

OGIC000022

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

OGIC000023

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

OGIC000024

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

OGIC000025

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007 **IL 00 21 09 08**

OGIC000026

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - LEAD

This endorsement modifies insurance provided under the following:

> BUSINESSOWNERS COVERAGE FORM
> FARM LIABILITY COVERAGE FORM
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> FARMOWNERS-RANCHOWNERS POLICY PERSONAL LIABILITY FORM
> OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE COVERAGE PART
> FARMER'S COMPREHENSIVE PERSONAL INSURANCE COVERAGE PART
> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

This insurance does not apply to:

**(1)** "Bodily injury", "property damage", "personal injury" or "personal and advertising injury" arising out of lead poisoning, lead contamination or exposure to lead.

**(2)** Any loss, cost or expense arising out of any:

**a.** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

**b.** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

**IL 70 13** 12 06

OGIC000027

COMMERCIAL INTERLINE

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONTROLLED SUBSTANCES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

This insurance does not apply to:

**Controlled Substances**

"Bodily injury", "property damage", "personal and advertising injury" arising directly or indirectly out of or in any way related to any actual or alleged:

1. diversion, abuse, misuse, addictive use, illicit use, overuse, or unlawful distribution of:

    a. codeine, fentanyl, hydrocodone, oxycontin, hydromorphone, meperidine, methadone, oxycodone,  naloxone or any other opioid or narcotic drug, medication or substance of any type, nature, or kind; or

    b. controlled substance as defined by or included in the Schedules of the Controlled Substance Act of the  United States of America (21 U.S.C. § 801 *et seq.*) or any other judicial, statutory, regulatory or other  legal measure of any nation, province, state, municipality or other governmental division or   subdivision;

2. failure or inadequacy of any controls, practices or procedures to prevent or report behavior relating to the  actual or alleged diversion, abuse, misuse, addictive use, illicit use, overuse, or unlawful distribution of any  substance referenced in **1.a.** or **1.b.** above; or

3. failure to warn or  inadequacy of warnings related to the consequences of any diversion, abuse,  misuse,  addictive use, illicit use, overuse, or unlawful distribution of any substance referenced in **1.a.** or **1.b.** above; or

4. failure to warn or the inadequacy of any warning related to the addictive properties of any substance referenced in **1.a.** or **1.b.** above.

All other terms and conditions of the policy remain unchanged.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**IL 70 90** 08 20

OGIC000028

COMMERCIAL INTERLINE

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – PRIOR WORK OR PRODUCTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM
PRODUCTS-COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** This insurance does not apply to:

**Prior Work or Products**

"your product" or "your work" completed prior to the inception date of this policy. Specifically, this insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" included in the "products-completed operations hazard" and arising out of, or alleged to arise out of, any of "your product" manufactured, assembled, sold, handled or distributed by you or on your behalf prior to the inception date of this policy or "your work" completed by you or on your behalf prior to the inception date of this policy.

We will have no duty to defend any Insured or Additional Insured against any claim or "suit", or pay on behalf of any Insured or Additional Insured any damages, loss, expense, cost, or obligation caused directly or indirectly by, arising out of, or alleged to arise out of, resulting from, contributed to, contributed by, or related in any way to "your product" manufactured, assembled, sold, handled or distributed by or on your behalf prior to the inception date of this policy or "your work" completed by or on your behalf prior to the inception date of this policy.

"Your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by a person or organization other than another contractor or subcontractor on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Each of the following is an Additional Insured to which this Exclusion applies:

**(a)** Any person or organization shown in any Additional Insured Endorsement Schedule to this policy.

**(b)** Any person or organization with whom you have agreed in writing in a contract or agreement that such person or organization be added as an additional insured.

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**IL 70 95** 08 20

OGIC000029

IL 01 20 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDER'S ERRORS AND OMISSIONS
COVERAGE FORM
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

  **1.** Section **I** of the Commercial General Liability, Commercial Liability Umbrella, Electronic Data Liability, Employment-related Practices Liability, Farm, Liquor Liability, Medical Professional Liability, Owners And Contractors Protective Liability, Pollution Liability, Product Withdrawal, Products/Completed Operations Liability, Railroad Protective Liability and Underground Storage Tank Coverage Parts, Auto Dealers Coverage Form and the Farm Umbrella Liability Policy;

  **2.** Section **II** under the Auto Dealers, Business Auto and Motor Carrier Coverage Forms;

  **3.** Section **III** under the Auto Dealers and Motor Carrier Coverage Forms;

  **4.** Section **A.** Coverage under the Legal Liability Coverage Form; and

  **5.** Coverage **C** – Mortgageholder's Liability under the Mortgageholder's Errors And Omissions Coverage Form.

  Paragraph **B.** also applies to any other provision in the policy that sets forth a duty to defend.

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

  The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

IL 01 20 10 13 © Insurance Services Office, Inc., 2013 **Page 1 of 1**

OGIC000030

IL 02 46 09 07

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

**2. Cancellation Of Policies In Effect For Less Than 60 Days**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

**3. Cancellation Of Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

**b.** You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

**c.** A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**d.** Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

IL 02 46 09 07 © ISO Properties, Inc., 2006 **Page 1 of 2** ☐

OGIC000031

**e.** Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**f.** Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

**4.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

**5.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**6.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

**7.** If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**B.** The following are added and supersede any provisions to the contrary:

**1. Nonrenewal**

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

**2. Increase Of Premium**

If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006 IL 02 46 09 07 ☐

OGIC000032

IL 09 10 07 02

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

---

**Instruction to Policy Writers**

Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania.

---

OGIC000033

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

OGIC000034

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000035

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

OGIC000036

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000037

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

OGIC000038

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012

OGIC000039

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

OGIC000040

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

© Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000041

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

OGIC000042

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

© Insurance Services Office, Inc., 2012   CG 00 01 04 13

OGIC000043

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A;** and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

OGIC000044

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

OGIC000045

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

OGIC000046

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

  © Insurance Services Office, Inc., 2012  **CG 00 01 04 13**

OGIC000047

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

OGIC000048

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000049

COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY ENDORSEMENT

**THIS ENDORSEMENT PROVIDES CLAIMS MADE COVERAGE AND HAS DIFFERENT REPORTING REQUIREMENTS THAN OTHER PARTS OF THE POLICY. THIS ENDORSEMENT ALSO CONTAINS PROVISIONS WHICH LIMIT THE AMOUNT OF "LEGAL EXPENSES" THAT WE MAY BE RESPONSIBLE TO PAY. "LEGAL EXPENSES" WILL REDUCE EACH APPLICABLE LIMIT OF INSURANCE SHOWN IN THE SCHEDULE OF THIS ENDORSEMENT.**

**NO INSURED WILL, EXCEPT AT ITS OWN COST, VOLUNTARILY MAKE A PAYMENT, ASSUME ANY OBLIGATION, ADMIT LIABILITY OR INCUR ANY EXPENSE WITHOUT OUR WRITTEN CONSENT.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Coverage, exclusions, conditions or definitions contained in the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** do not apply to this endorsement unless specifically outlined below.

## SCHEDULE

| | |
|---|---|
| **"Named Insured":** Mike Burdett Roofing and Exteriors LLC <br> **"Named Insured" Address:** <br>    3420 Horton Rd,  Newtown Square, PA 19073-3418 | |
| **Endorsement Aggregate Limit of Insurance** | **$10,000** |
| **Contractor's Pollution Legal Liability Insurance Aggregate Limit:** | **Included** |
| **Contractor's Pollution Legal Liability Insurance Deductible for Each "Pollution Condition":** | **$500** |
| **"Commencement Date":** (*If left blank, the inception date of this endorsement*) | **2021-10-08** |
| | |
| **Professional Legal Liability Insurance Aggregate Limit:** | **Included** |
| **Professional Legal Liability Insurance Deductible for Each "Professional Loss":** | **$500** |
| **"Contracting Services":** | **All contracting services** |
| **"Professional Services":** | **Value engineering and field changes to design** |
| **"Retroactive Date":** (*If left blank, the inception date of this endorsement*) | **2021-10-08** |
| **"Automatic Extended Reporting Period":** | **90 days** |
| | |
| **Premises Pollution Legal Liability Insurance Aggregate Limit:** | **Excluded** |
| **Premises Pollution Legal Liability Insurance Deductible for Each "Pollution Condition":** | **Excluded** |
| **"Covered Location"(s):** <br>    Location 1 - 3420 Horton Rd, Newtown Square, PA  19073-3418 | |
| **"Retroactive Date":** (*If left blank, the inception date of this endorsement*) | **Excluded** |
| **"Automatic Extended Reporting Period":** | **Excluded** |
| | |
| **"Business Interruption" and "Extra Expense" Aggregate Limit:** | **Excluded** |
| **"Business Interruption" and "Extra Expense" "Deductible Period":** | **Excluded** |
| | |
| **"Pollution Emergency" Telephone Number:** | **1-800-347-4384** |

This endorsement amends the policy to provide Professional Legal Liability and Premises

Pollution Legal Liability Insurance on a claims made and reported basis and Contractor's

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 1 of 21**

OGIC000050

Pollution Legal Liability Insurance on an occurrence basis, when there is an applicable Limit of Insurance shown in the SCHEDULE. The terms and conditions of this endorsement govern the scope of coverage and your and our duties. Various provisions in this endorsement restrict coverage. Read the entire endorsement carefully to determine your rights and duties and what is and is not covered. The terms, conditions, exclusions, and limits of insurance set forth in this endorsement apply only to the coverage provided by this endorsement.

If this endorsement does not contain a cancellation provision, the terms and conditions of the cancellation provision of the policy, and any amendment to such terms, are incorporated herein and shall apply to coverage as is afforded by this endorsement, unless specifically stated otherwise in an endorsement(s) attached hereto.

Throughout this endorsement, the words "you" and "your" refer to the "named insured" under this endorsement. The words "we", "us" and "our" refer to the company providing this coverage. The word "insured" means any person or organization qualifying as such under **C. Who Is An Insured**. The term "policy" refers to the primary policy to which this endorsement is attached.

Words and phrases that appear in quotation marks have special meaning. Refer to **G. Definitions**. To the extent any words or phrases used in this endorsement are defined elsewhere in the policy, such definitions provided elsewhere do not apply to give meaning to the words or phrases used in this endorsement.

## SECTION IV -- INSURANCE

### A. Coverage

**1. Contractor's Pollution Legal Liability Insurance**

   **a.** We will pay those sums that you become legally obligated to pay as damages or "cleanup costs" because of "loss" caused by a "pollution condition" resulting from "contracting services", provided that:

   **(1)** The "pollution condition" is caused by an "occurrence" that takes place in the "coverage territory";

   **(2)** The "loss" occurs during the endorsement period;

   **(3)** The "pollution condition" is on, at, under or migrating from a "job site";

**(4)** The "pollution condition" results from "contracting services" rendered on or after the "commencement date" shown in the SCHEDULE of this endorsement and prior to the expiration of the endorsement period; and

**(5)** The "pollution condition" results in a "claim" against you, and the "claim" is brought and maintained at all times in the "coverage territory."

**b.** We have the right and duty to defend you against any "claim" seeking damages or "cleanup costs" because of "loss" to which **Contractor's Pollution Legal Liability Insurance** applies. However, we have no duty to defend you against any "claim" to which **Contractor's Pollution Legal Liability Insurance** does not apply.

**c.** When we have a duty to defend, we will pay on your behalf "legal expenses" incurred as a result of a "claim" against you seeking damages or "cleanup costs" because of "loss" to which **Contractor's Pollution Legal Liability Insurance** applies.

**d.** "Legal expenses" apply to and reduce the applicable Limit of Insurance shown in the SCHEDULE of this endorsement.

**e.** We may, at our discretion, investigate any "occurrence" or "pollution condition" and settle any "claim" that may result. However, the Endorsement Aggregate Limit of Insurance shown on the SCHEDULE is the most we will pay for damages, "cleanup costs" and "legal expenses" under **Contractor's Pollution Legal Liability Insurance**. Our right and duty to defend under this endorsement ends once the applicable Limit of Insurance shown in the SCHEDULE has been used up in the payment of "legal expenses" or settlements, judgments or any combination thereof, to which **Contractor's Pollution Legal Liability Insurance** applies.

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 2 of 21**

OGIC000051

**f.** No other obligation or liability to pay sums or perform acts or services is covered under this endorsement.

**2. Professional Legal Liability Insurance**

**a.** We will pay those sums that you become legally obligated to pay because of a "claim" resulting from an act, error, or omission in "professional services", provided that:

**(1)** A Limit of Insurance is shown as included on the SCHEDULE under **Professional Legal Liability Insurance**;

**(2)** The "claim" arises out of "professional services" rendered on or after the "retroactive date" and prior to the expiration of the endorsement period;

**(3)** The "claim" is not covered under **Contractor's Pollution Legal Liability Insurance**; and

**(4)** The "claim" is first made against the insured during the endorsement period and reported to us, in writing, during the endorsement period or, where applicable, the "automatic extended reporting period" or the "optional extended reporting period".

**b.** We have the right and duty to defend you against any "claim" seeking "professional loss" to which **Professional Legal Liability Insurance** applies, including the right to select counsel, even if any of the allegations are groundless, false or fraudulent. However, we have no duty to defend you against any "claim" to which **Professional Legal Liability Insurance** does not apply.

**c.** When we have a duty to defend, we will pay on your behalf "legal expenses" incurred as a result of a "claim" against you seeking "professional loss" to which **Professional Legal Liability Insurance** applies.

**d.** "Legal expenses" apply to and reduce the applicable Limit of Insurance shown in the SCHEDULE of this endorsement.

**e.** We may, at our discretion, investigate any "professional loss"

and settle any "claim" that may result. However, the Endorsement Aggregate Limit of Insurance shown on the SCHEDULE is the most we will pay for damages or "legal expenses" under **Professional Legal Liability Insurance**. Our right and duty to defend under this endorsement ends once the Endorsement Aggregate Limit of Insurance shown in the SCHEDULE has been used up in the payment of "legal expenses", settlements or judgments, or any combination thereof, to which **Professional Legal Liability Insurance** applies.

**f.** No other obligation or liability to pay sums or perform acts or services is covered under this endorsement.

**3. Premises Pollution Legal Liability Insurance**

**a.** We will pay those sums that you become legally obligated to pay as damages or "cleanup costs" because of "loss" caused by a "pollution condition", provided that:

**(1)** The "loss" is caused by a "pollution condition" on, at, under or migrating from a "covered location";

**(2)** The "pollution condition" results in a "claim" against you;

**(3)** The "pollution condition" takes place, and the "claim" is brought and maintained at all times, in the "coverage territory" and "covered locations";

**(4)** The "claim" is first made against you during the endorsement period and reported by you to us, in writing, during the endorsement period or, where applicable, the "automatic extended reporting period" or the "optional extended reporting period".

**b.** We have the right and duty to defend you against any "claim" seeking damages or "cleanup costs" because of "loss" to which **Premises Pollution Legal Liability Insurance** applies. However, we have no duty to defend you against any "claim" to which **Premises Pollution Legal Liability Insurance** does not apply.

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 3 of 21**

OGIC000052

c. When we have a duty to defend, we will pay on your behalf "legal expenses" incurred as a result of a "claim" against you seeking damages or "cleanup costs" because of "loss" to which **Premises Pollution Legal Liability Insurance** applies.

d. "Legal expenses" apply to and reduce the applicable Limit of Insurance shown in the SCHEDULE of this endorsement.

e. We may, at our discretion, investigate any "pollution condition" and settle any "claim" that may result. However, the Endorsement Aggregate Limit of Insurance shown on the SCHEDULE is the most we will pay for damages, "cleanup costs" and "legal expenses" under **Premises Pollution Legal Liability Insurance**. Our right and duty to defend under this endorsement ends once the Endorsement Aggregate Limit of Insurance shown in the SCHEDULE has been used up in the payment of "legal expenses", settlements or judgments, or any combination thereof, to which **Premises Pollution Legal Liability Insurance** applies.

f. No other obligation or liability to pay sums or perform acts or services is covered under this endorsement.

4. **Business Interruption and Extra Expense**

We will pay on behalf of the insured "business interruption" and "extra expense", including "rental value", solely as a result of a "claim" for a "pollution condition" covered under **Premises Pollution Legal Liability Insurance** and not otherwise excluded under the terms and conditions of this endorsement; provided that a limit of liability is shown on the SCHEDULE under Business Interruption and Extra Expense.

**B. Exclusions**

1. With respect to **Contractor's Pollution Legal Liability Insurance**, **Professional Legal Liability Insurance** and **Premises Pollution Legal Liability Insurance**, this insurance does not apply to:

a. **Workers Compensation and Similar Laws**

Any obligation of the insured under any workers' compensation, unemployment compensation or disability benefits law or similar law.

b. **Hostile Acts**

A "pollution condition", "loss" or "claim" arising from any consequence, whether direct or indirect, of war (whether declared or not declared), invasion, act of foreign enemy, hostilities, civil war, rebellion, revolution, insurrection, military action, usurped power, strike, riot or civil commotion.

c. **Fines, Penalties, Punitive and Multiplied Damages**

Any actual or alleged "claim" or liability for, or amount consisting of, a fine, penalty, punitive damages, exemplary damages or multiplied damages.

d. **Equitable and Other Types of Relief**

Any actual or alleged "claim" or liability for equitable relief, restitution or the return of money for work or services.

e. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data. As used in this exclusion, electronic data means information, facts or programs stores as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

f. **Criminal Acts**

"Loss" arising out of a criminal act committed by or at the direction of the insured.

g. **Defective Drywall**

The existence of, exposure to, required removal or abatement of:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 4 of 21**

OGIC000053

**(1)** defective drywall, which includes, but is not limited to drywall that emits gases, vapors, or fumes or any other irritant or contaminant; and

**(2)** any other building component affected by defective drywall, including drywall that emits gases, vapors, fumes, or any other irritant or contaminant.

For purposes of this exclusion, drywall includes, but is not limited to any product known as gypsum board, wall board, and plaster board, drywall manufactured outside the United States and used for interior building material.

**2.** With respect to **Contractor's Pollution Legal Liability Insurance** and **Premises Pollution Legal Liability Insurance**, this insurance does not apply to:

**a. Known Circumstances or Conditions**

**(1)** A "pollution condition", "loss" or "claim" known by any insured prior to the endorsement period;

**(2)** A circumstance or condition known by any insured prior to the inception of the endorsement period where an insured should have reasonably foreseen that a "pollution condition", "loss" or "claim" would result.

**b. Employers Liability**

"Bodily injury" to

**(1)** An "employee" of any insured arising out of and in the course of employment by any insured or the performance of duties related to the conduct of any insured's business; or

**(2)** To the spouse (including the domestic partner or civil union partner recognized under the law of any applicable jurisdiction in the "coverage territory"), child, parent, brother or sister of that "employee" as a consequence of (1) above.

This exclusion applies whether any insured may be liable as an employer or in any other capacity

and to any obligation to share damages with or repay someone else who must pay damages as a result of the injury.

This exclusion does not apply to liability assumed by you under an "insured contract", provided that:

**(1)** The "insured contract" is in writing and signed by you;

**(2)** The "pollution condition" first commenced after you signed the "insured contract"; and

**(3)** The "pollution condition" is caused, in whole or in part, by you or those acting on your behalf.

**c. Contractual Liability**

"Loss" for which any insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement This exclusion does not apply to liability for damages:

**(1)** That you would have in the absence of the contract or agreement; or

**(2)** Assumed by you in a contract or agreement that is an "insured contract", provided that:

**(a)** The "insured contract" is in writing and signed by you;

**(b)** The "pollution condition" first commenced after you signed the "insured contract"; and the "pollution condition" is caused, in whole or in part, by you or by those acting on your behalf.

**d. Goods, Products or Materials**

A "pollution condition", "loss" or "claim" arising out of any goods, materials or products manufactured, sold, distributed, designed, handled, supplied, altered, repaired or disposed of by any insured or by others under license or trading under an insured's name.

**e. Intentional Acts**

A "pollution condition", "loss" or "claim" arising out of any actual or alleged:

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 5 of 21**

OGIC000054

**(1)** Intentional disregard of, or non-compliance with, any statute, regulation, ordinance, law or order by or at the direction of any insured or its agent; or

**(2)** Fraudulent, dishonest or malicious conduct by or at the direction of any insured or its agent.

**e. Professional Liability**

A "pollution condition", "loss" or "claim" arising out of the rendering of or failure to render professional services.

**f. Asbestos**

Any "loss", "pollution condition", cost, expense or "claim" which would not have occurred, in whole or in part, but for the actual, alleged or threatened existence of, presence of, inhalation of, ingestion of, use of, handling of, contact with or exposure to asbestos in any form, including products containing asbestos, asbestos fibers, asbestos dust and asbestos containing materials. This exclusion applies regardless of:

**(1)** The cause of the "loss", "pollution condition", cost, expense or "claim", or

**(2)** Whether the "loss", "pollution condition", cost, expense or "claim" is related to any product, services or operations of an insured.

**g. Lead**

Any "loss", "pollution condition", cost, expense or "claim" which would not have occurred, in whole or in part, but for the actual, alleged or threatened existence of, presence of, inhalation of, ingestion of, use of, handling of, contact with or exposure to lead, lead-based paint or any material containing lead or lead-based paint. This exclusion applies regardless of:

**(1)** The cause of the "loss", "pollution condition", cost, expense or "claim"; or

**(2)** Whether the "loss", "pollution condition", cost, expense or "claim" is related to any product,

services or operations of an insured.

**h. Nuclear or Radioactive Waste and Materials**

A "pollution condition", "loss" or "claim" which would have not occurred, in whole or in part, but for the actual, alleged or threatened contact with, exposure to, existence of or presence of any nuclear or radioactive material, waste or condition.

**i. Non-cumulation**

Any "occurrence", "claim", "loss" or "pollution condition", including the same, related, repeated or continuous "pollution condition"(s), that was:

**(1)** Reported to us or an affiliate of us under a endorsement or endorsement issued by us or an affiliate of us prior to the inception of the endorsement period of this endorsement; or

**(2)** Reported to another Insurance company or its agent prior to the inception of the endorsement period of this endorsement.

**j. Insured Versus Insured**

Any "claim" by an insured against another insured.

**k. Related Persons or Organizations**

Any "claim" by a person or organization:

**(1)** That wholly or partially owns, operates, manages or controls any insured;

**(2)** In which any insured has a direct or indirect ownership interest;

**(3)** That is controlled, operated or managed by any insured; or

**(4)** That is an affiliate of any insured;

but this exclusion will not apply to a "claim" made by an "additional insured".

**l. Mold Matter**

A "pollution condition", "loss" or "claim" which would have not occurred, in whole or in part, but for

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 6 of 21**

OGIC000055

the actual, alleged or threatened contact with, exposure to, existence of or presence of any "mold matter".

**m. Communicable Diseases**

Based upon or arising out of the exposure to infected individuals or animals, or contact with bodily fluids of infected individuals or animals.

3. With respect to **Contractor's Pollution Legal Liability Insurance**, this insurance does not apply to:

   **a. Transportation**

   A "pollution condition", "loss" or "claim" arising out of:

   **(1)** The ownership, operation, maintenance, use (including "loading or unloading") or entrustment to others of any "auto", "mobile equipment", aircraft, watercraft, rolling stock or other mode of transportation, including any machinery or apparatus attached thereto or any cargo carried thereby; or

   **(2)** Waste or materials transported, removed or taken by anyone beyond the boundaries of the "job site".

   Paragraph **(1)** of this exclusion does not apply to a "pollution condition", "loss" or "claim" arising out of the use of an "auto" or "mobile equipment" within the boundaries of a "job site", if such use is solely and directly related to "contracting services".

   **b. Faulty Workmanship/Insured's Work**

   Any "claim" for or amounts consisting of the cost to repair or replace faulty workmanship, construction, fabrication, installation, assembly, erecting, manufacturing or remediation, if such faulty workmanship, construction, fabrication, installation, assembly, erecting, manufacturing or remediation was performed, in whole or in part, by or on behalf of an insured.

   **c. Property**

   "Property damage" to:

   **(1)** Property that is or was at any time owned, rented or occupied by any insured; or

   **(2)** Personal property in the care, custody or control of any insured.

4. With respect to **Professional Legal Liability Insurance**, this insurance does not apply to:

   **a. Asbestos**

   Arising out of the existence of, require removal or abatement of asbestos, in any form, including but not limited to products containing asbestos, asbestos fibers, asbestos dust and asbestos containing materials.

   **b. Lead and Lead-Based Paint**

   Arising out of the existence of, required removal or abatement of any lead and/or lead-based paint, in any form, including, but not limited to, products containing lead, lead dust and lead containing materials.

   **c. Contractual Liability**

   Arising from the insured's:

   **(1)** Assumption of liability in a contract or agreement; or

   **(2)** Breach of contract or agreement.

   This exclusion does not apply to liability that the insured would have in the absence of the contract or agreement.

   **d. Discrimination**

   Arising from any discrimination on the basis of age, color, race, sex, creed, national origin, marital status, disability or sexual preference, unless such "claim" is based upon or arises out of the failure to make a reasonable accommodation for a disability in violation of the Americans With Disabilities Act 42 U.S.C. 12101, et seq., as amended.

   **e. Employer's Liability**

   Arising from any injury to:

   **(1)** any employee, director, officer, partner or member of any insured or "leased worker" of any insured, if such injury arises in the course of:

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 7 of 21**

OGIC000056

(a) employment by an insured; or

(b) performing duties related to the conduct of an insured's business; or

(2) the spouse, child, parent, brother or sister of such employee, director, officer, partner or member of any insured or "leased worker" of the insured, as a consequence of any injury to any of the persons described in Paragraph (1). above.

This exclusion does not apply to liability assumed by the "named insured" in a contract or agreement that is an "insured contract".

**f. Express Warranty and Guaranty**

Arising from any express warranty or guaranty. This exclusion does not apply to any warranty or guarantee by the insured that the insured's "professional services" are in conformity with the standard of care that would be applicable in the absence of such express warranty or guarantee.

**g. Fiduciary Liability**

Arising from any involvement by an insured as:

(1) An officer, director, partner, member, trustee, employer or employee of a business enterprise not shown in the SCHEDULE or any charitable organization, or pension, welfare, profit sharing, mutual or investment fund or trust; or

(2) A fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto or any other employee benefit plan.

**h. Insurance and Suretyship**

Arising out of the requiring, obtaining, maintaining, advising as to or the failure to require, obtain, maintain or advise as to any form of Insurance, suretyship or bond, either with respect to any insured or any other person or organization.

**i. Insured Versus Insured**

Any "claim" by an insured against another insured. This exclusion does not apply to a "claim" by a "client".

**j. Intentional and Dishonest Acts**

Arising from any

(1) Intentional disregard of or non-compliance with, any statute, regulation, ordinance, law or order by or at the direction of the insured or its agent; or

(2) Actual or alleged fraudulent, dishonest or malicious conduct by the insured.

This exclusion does not apply to the insured that did not allegedly commit or allegedly participate in committing any of the forgoing described above.

**k. Joint Venture or Co-Venture**

Arising out of an insured's participation in a joint venture or co-venture. This exclusion does not apply to the "named insured's" liability resulting from the rendering or failure to render "contracting services" or "professional services" as a partner or member of a joint venture or co-venture.

**l. Known Circumstances or Conditions**

Arising from:

(1) A "claim" or "professional loss" known by a "responsible insured" prior to the inception of the "endorsement period"; or

(2) A circumstance or condition known by a "responsible insured" prior to the inception of the "endorsement period" where the "responsible insured" should have reasonably foreseen that a "claim", "pollution condition" or "professional loss" would result.

**m. Mold Matter**

Arising out of the existence of, exposure to, required removal or abatement of "mold matter", in any form including but not limited to any such cause or condition involving the presence, discharge or infiltration of moisture, vapor, water or any other liquid, or any damage

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

CG 72 02 07 21
Page 8 of 21

OGIC000057

related thereto. For purposes of this exclusion, "mold matter" means mold, mildew or any type or form of fungus, including myotoxins, spores or by-products produced or released by fungi.

**n. Notices to Previous Insurers**

Arising from any "claim", act, error or omission in "professional services" or other circumstance reported by an insured under any prior endorsement issued by a person or organization other than us.

**o. Off-Site Waste Liability**

Arising out of any waste or materials transported beyond the boundaries of a "job site".

**p. Personal Injury**

Arising from the false arrest, humiliation, harassment, detention, imprisonment, wrongful entry or eviction or other invasion of private occupancy, malicious prosecution, abuse of process, libel, slander, harassment, or other defamatory or disparaging material, or a publication or an utterance in violation of an individual's right of privacy.

**q. Products**

Arising from any goods, materials or products designed, manufactured, sold, handled, distributed and/or supplied by any insured or by others under license or trade name from any insured.

**r. Professional Liability**

Arising out of the rendering of or failure to render professional services by the insured, unless there is a limit of insurance shown on the SCHEDULE for **Professional Legal Liability Insurance**.

**s. Property**

Arising out of:

**(1)** Any real property owned by the "named insured"; or

**(2)** for the repair, replacement or restoration of any personal property in the care, custody or control of the insured, other than

personal property owned or leased by, or in the care, custody or control of, the "client".

**t. Radioactive / Nuclear Material**

Arising out of:

**(1)** The radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof;

**(2)** Ionizing radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the processing or reaction of nuclear fuel;

**(3)** The existence, required removal or abatement of naturally occurring radioactive materials including, but not limited to, radon;

**(4)** High-level radioactive waste (spent nuclear fuel or the highly radioactive waste produced if spent fuel is reprocessed), uranium milling residues and waste with greater than specified quantities of elements heavier than uranium; or

**(5)** Mixed Waste as defined in Title 40 Code of Federal Regulations, Part 266.210; however, this paragraph 5. does not apply to Mixed Waste that contains Waste as defined in Title 10 Code of Federal Regulations, Part 61.2, including, but not limited to the actual, alleged or threatened exposure of any person(s) or property to any such matter.

**u. Retroactive Date**

A "claim" resulting from an act, error, or omission in "professional services" that commenced before the "retroactive date" shown in the **SCHEDULE** of this endorsement.

**v. Related Entities and Individuals**

Arising from a "claim" by an entity or individual

**(1)** that wholly or partially owns, operates or manages an insured;

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 9 of 21**

OGIC000058

**(2)** in which an insured has a direct or indirect ownership interest;

**(3)** that is controlled, operated or managed by an insured; or

**(4)** that is an affiliate of an insured;

but this exclusion will not apply to a "claim" made by an "additional insured".

**w. Securities Violation**

Arising from any violation of the Securities Act of 1933 as amended or the Securities Exchange Act of 1934 as amended or any state Blue Sky or securities law or similar State, Federal or other governmental law, statute and any regulation or order issued pursuant to any of the foregoing statutes.

**x. Transportation**

Arising from the ownership, maintenance, use, operation, loading or unloading of any motorized land vehicle, aircraft, watercraft or rolling stock, including any machinery or apparatus attached thereto or any cargo carried thereby, beyond the boundaries of a "job site".

**4.** With respect to **Premises Pollution Legal Liability Insurance**, this insurance does not apply to:

**a. Transportation**

A "pollution condition", "loss" or "claim" arising out of:

**(1)** The ownership, operation, maintenance, use (including "loading or unloading") or entrustment to others of any "auto", "mobile equipment", aircraft, watercraft, rolling stock or other mode of transportation, including any machinery or apparatus attached thereto or any cargo carried thereby; or

**(2)** Waste or materials transported, removed or taken by anyone beyond the boundaries of a "covered location".

**b. Retroactive Date**

A "loss" or "claim" arising out of a "pollution condition" that commenced before the "retroactive date" shown in the **SCHEDULE** of this endorsement. For the purpose

of this exclusion, a "pollution condition" that commenced before the "retroactive date" shown in the SCHEDULE under **Premises Pollution Legal Liability Insurance** of this endorsement includes any dispersal, migration or further movement of such "pollution condition" on or after the "retroactive date".

**c. Divested Property**

Any "claim" or "loss" arising out of "pollution condition" on, at, under or migrating from a "covered location" where the actual or alleged "pollution condition" commenced after the time the "covered location" is sold, given away or abandoned by an insured, or is condemned.

**d. Property**

"Property damage" to:

**(1)** Property that is or was at any time owned, rented or occupied by any insured; or

**(2)** Personal property in the care, custody or control of any insured.

Paragraph **(1)** of this exclusion does not apply to "cleanup costs" because of "environmental damage" caused by a "pollution condition" on, at, under or migrating from a covered location.

**e. Underground Storage Tanks**

A "pollution condition", "loss" or "claim" arising out of the past or current existence of an "underground storage tank" on, at, under or migrating from a "covered location".

**f. Material Change in Use or Operations**

A "pollution condition", "loss" or "claim" arising out of a material change in the use of, or a material change in the operations at, any "covered location" from those set forth by any insured in the Application or related materials as of the inception date of the endorsement period of this endorsement.

**C. Who Is An Insured**

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 10 of 21**

OGIC000059

1.  Insured means each of the following:

    a.  Any "named insured" and any current or former director, partner, member, executive officer, employee or "leased worker" of the "named insured", but solely while acting within the course and scope of his/her duties as such.

    b.  Solely with regard to **Contractor's Pollution Legal Liability Insurance**, the "client", but only:

        (1) if the "named insured" is required to include the "client" as an additional insured in a written contract in effect during the endorsement period and signed by the "named insured" prior to the first commencement of the "pollution condition"; and

        (2) with respect to the "client's" vicarious liability resulting from the "named insured's" "contracting services".

        (3) Any Insurance afforded to the "client" under the terms and conditions of this endorsement will be limited to the lesser of the amount of the limits of insurance required by such written contract and the limits of insurance under this endorsement. In no event will we be liable for any amounts in excess of the limits of insurance shown on the SCHEDULE.

        In the event of the insured's bankruptcy, the trustees of the insured and in the event of the insured's death or incapacity, the insured's legal representatives or executors, but only with respect to each such trustee's, representative's or executors' vicarious liability resulting from the "named insured's" "contracting services" or "professional services".

    c.  Any "additional insured", but only as respects "claims" against such person or entity for acts, errors or omissions of the "insured".

D.  **Limits of Insurance**

    1.  The **Endorsement Aggregate Limit** of Insurance shown in the SCHEDULE of this endorsement and the rules below

establish the most we will pay regardless of the number of:

    a.  Insureds;

    b.  "Claim"(s);

    c.  Persons or organizations making "claim"(s);

    d.  Governmental actions taken with respect to "cleanup costs";

    e.  "Pollution condition"(s) or

    f.  "Professional loss".

2.  The **Endorsement Aggregate Limit** of Insurance shown in the SCHEDULE of this endorsement is the most we will pay for the sum of all damages, "cleanup costs" and "legal expenses" for which insurance is afforded under **Contractor's Pollution Legal Liability Insurance** for each "pollution condition" and in the aggregate. All "loss" arising out of the same, related, repeated or continuous "pollution condition"(s) shall be deemed to arise out of a single "pollution condition."

3.  The **Endorsement Aggregate Limit** of Insurance shown in the SCHEDULE of this endorsement is the most we will pay for all "professional loss" afforded under **Professional Legal Liability Insurance** for each "professional loss" and in the aggregate. If **Professional Legal Liability Insurance** is not listed as 'included' in the SCHEDULE, then **Professional Legal Liability Insurance** is not afforded. All "professional loss" arising out of the same, related, repeated or continuous act(s), error(s) or omission(s) in rendering or failing to render "professional services" is deemed to arise out of a single act, error or omission.

4.  The **Endorsement Aggregate Limit** of Insurance shown in the SCHEDULE of this endorsement is the most we will pay for all damages, "cleanup costs" and "legal expenses" for which insurance is afforded under **Premises Pollution Legal Liability Insurance** for each "pollution condition" and in the aggregate. All "loss" arising out of the same, related, repeated or continuous "pollution condition"(s) shall be deemed to arise out of a single "pollution condition".

5.  The "Business Interruption" and "Extra Expense" Limit shown in the

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 11 of 21**

OGIC000060

SCHEDULE of this endorsement is the most we will pay for all "business interruption" and "extra expense", including "rental value" for which insurance is afforded under "business interruption" and "extra expense" coverage. This limit is part of and not in addition to the **Endorsement Aggregate Limit** of Insurance.

6. **Insurance Under Multiple Policies**

   a. Notwithstanding anything to the contrary in this endorsement or any other endorsement issued by us or a company affiliated with us, under no circumstances will more than one endorsement issued by us or a company affiliated with us apply to:

      (1) any "loss", "pollution condition" or "professional loss" that occurs or continues through more than one endorsement period of two or more policies (including this endorsement) issued by us or a company affiliated with us; or

      (2) "claim"(s) and "loss"(es) arising out of the same, related, repeated or continuous "pollution condition" or "professional loss".

   b. Subject to paragraph **c.** below, if more than one endorsement issued by us or a company affiliated with us would otherwise apply to any "loss", "pollution condition" or "professional loss" that occurs or continues through more than one endorsement period of two or more policies (including this endorsement) issued by us or a company affiliated with us, the only endorsement that will respond is the endorsement with the earliest inception date. No other endorsement will respond, even if the limits of the endorsement with the earliest inception date have been impacted or exhausted by payment(s) by us.

   c. The most we will pay for the total of all "claim"(s) and "loss"(es) arising out of the same, related, repeated or continuous "pollution condition"(s) or "professional loss"(s) under all policies issued by us or a company affiliated with us is the Each "Pollution Condition" Limit of Insurance or Each "Professional

Loss" Limit of Insurance set forth in the endorsement with the earliest inception date of all applicable policies issued by us or a company affiliated with us.

E. **Deductible**

   1. We will not pay any damages, "cleanup costs", "professional loss", "legal expenses", business interruption" or "extra expense" until the amount of damages, "cleanup costs", "professional loss", "legal expenses", "business interruption" or "extra expense" paid by the Named Insured exceeds the applicable deductible shown in the SCHEDULE.

   2. The deductible shall be satisfied by monetary payments by the Named Insured of damages, "cleanup costs", "professional loss", "legal expenses", business interruption" or "extra expense". The Named Insured shall make payments within the deductible to the appropriate parties as designated by us.

   3. The deductible shall not reduce the limit of liability shown in the SCHEDULE.

F. **Conditions**

   1. **Bankruptcy**

      Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this endorsement.

   2. **Legal Action Against Us**

      No person or organization has a right under this endorsement:

      a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

      b. To sue us on this endorsement unless all of its terms have been fully complied with.

      A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this endorsement or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 12 of 21**

OGIC000061

**3. Insurance Under Two or More Coverages**

If Insurance is available under **Contractor's Pollution Legal Liability Insurance**, **Professional Legal Liability Insurance** or **Premises Pollution Legal Liability Insurance** and also available under "other intra-endorsement Insurance" for the same "loss", damage or injury, our obligations are limited as follows:

a. Any Insurance available under **Contractor's Pollution Legal Liability Insurance, Professional Legal Liability Insurance** or **Premises Pollution Legal Liability Insurance** is primary, and there will be no contribution from or concurrent coverage with "other intra-endorsement Insurance" that would otherwise be applicable; and

b. Any available "other intra-endorsement Insurance" is excess over any Insurance available under **Contractor's Pollution Legal Liability Insurance, Professional Legal Liability Insurance** or **Premises Pollution Legal Liability Insurance** including amounts within the Deductible shown in the SCHEDULE of this endorsement.

c. When "other intra-endorsement Insurance" is excess, we will have no duty under "other intra-endorsement Insurance" to defend you against any "claim" if we have the duty to defend you under **Contractor's Pollution Legal Liability Insurance, Professional Legal Liability Insurance** or **Premises Pollution Legal Liability Insurance.**

d. If two or more of this endorsement's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**4. Duties in the Event of an "Occurrence", "Pollution Condition", "Professional Loss", "Loss" or "Claim"**

a. No insured will, except at its own cost, voluntarily make a payment, assume any obligation, admit liability, or incur any expense without our prior written consent.

b. The insured must see to it that we are notified as soon as practicable of any "occurrence", "pollution condition", "loss" or act, error or omission in "professional services" which may result in a "claim". To the extent possible, notice should include:

(1) How, when and where the "occurrence", "pollution condition", "loss" or act, error or omission in "professional services" took place;

(2) The names and addresses of any person involved and/or having knowledge of the "occurrence", "pollution condition", "loss" or act, error or omission in "professional services";

(3) The "contracting services" that may have caused such "pollution condition"; and

(4) The nature of any resulting harm, injury or damage.

c. If a "claim" is made or brought against an insured, the insured must:

(1) Immediately record the specifics of the "claim" and the date it was received;

(2) Notify us as soon as practicable;

(3) Provide written notice of the "claim" as soon as practicable;

(4) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with a "claim";

(5) Authorize us to obtain records and other information;

(6) Cooperate with us in the investigation, settlement or defense of the "claim"; and

(7) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "loss" to which the Insurance under this endorsement applies;

(8) With respect to **Professional Legal Liability Insurance**, the

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 13 of 21**

OGIC000062

insured must also provide the date and details of all actual and alleged acts, errors or omissions in "professional services" which took place, along with the specific nature, date and extent of any injury or damage which has been sustained, copies of any contracts that have been entered into by any insured that are related to the "professional services" and details explaining how the "insured" first became aware of the circumstance.

**d.** In the case of a "pollution emergency", the insured must report any claim or potential claim as soon as practicable by contacting us at the telephone number specified in the SCHEDULE.

**5. Concealment, Misrepresentation or Fraud**

This endorsement is void in any case of fraud by you as it relates to this endorsement at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This endorsement;

**b.** The "covered location";

**c.** Your interest in the "covered location"; or

**d.** A "claim" under this endorsement.

**6. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this endorsement at any time during the endorsement period and up to three years afterward.

**7. Liberalization**

If we adopt any revision that would broaden the coverage under this endorsement without additional premium within 45 days prior to or during the endorsement period, the broadened coverage will immediately apply to this endorsement.

**8. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this endorsement has rights to recover

damages from another, those rights are transferred to us to the extent of our payment. If the insured has rights to recover all or part of any payment we have made under this endorsement, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. Subrogation**

In the event of any payment under this endorsement, we will be subrogated to all of the insured's rights of recovery against any person or organization and the insured will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured will do nothing at any time to prejudice our subrogation rights. However, we waive our right(s) of recovery against any person or organization if and to the extent the "named insured" has agreed to waive its right(s) of recovery against such person or organization in a written contract signed by the "named insured" prior to:

**a.** The first commencement of a "pollution condition" out of which the "claim" arises under **Contractor's Pollution Legal Liability Insurance**, or

**b.** The act, error or omission in "professional services" out of which the "claim" arises under **Professional Legal Liability Insurance**.

**G. Definitions**

**1.** "Additional insured" means any person or entity that the insured has agreed in writing to add as an "additional insured" under the Endorsement, prior to the commission of any act for which such person or entity would be provided coverage under the endorsement, but only to the extent the insured would have been liable and coverage would have been afforded under the terms and conditions of the endorsement had such "claim" been made against the "insured".

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 14 of 21**

OGIC000063

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle Insurance or motor vehicle registration law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Automatic Extended reporting period" means the 90 day period of time set forth under the Extended Reporting Periods section

4. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

5. "Business Interruption" means the sum of the following:

   a. Net income, which is net profit, if any, that would have been earned before taxes (or if there is a net loss before taxes, the net loss is deducted), and

   b. Continuing normal operating expenses incurred excluding payroll not deducted in a. above,

   due to the reasonably and necessary suspension of the insured's operations during the "period of restoration" at a "covered location".

6. "Claim" means a lawsuit or governmental action alleging legal liability on the part of the insured.

7. "Cleanup costs" means

   a. reasonable and necessary costs, charges and expenses incurred, with our prior written consent, in the investigation, assessment, removal, disposal, abatement, containment, treatment, remediation (including the associated testing and monitoring) or neutralization of a "pollution condition", to the extent required by "environmental laws", required by a "licensed site professional" or required to satisfy the insured's obligations under a federal or state cleanup program;

   b. Reasonable and necessary fees charged by an attorney designated or consented to by us incurred in connection with any such "cleanup costs";

c. Reasonable and necessary "restoration costs";

d. Reasonable and necessary "mitigation costs"; and/or;

e. Reasonable and necessary expenses incurred to respond to an imminent and substantial endangerment to the public health or welfare or to the environment because of a "pollution condition"; provided that, as a condition precedent to coverage, the "named insured" shall forward written notice to us of any action taken and expense incurred pursuant to this section as soon as practicable after any such "cleanup costs" have been incurred or assumed.

8. "Client" means the person or organization that directly hires the "named insured", by written contract signed by the "named insured", to render "contracting services" and for whom the "named insured" renders such services.

9. "Commencement date" means the date listed under "commencement date" on the SCHEDULE for each applicable coverage.

10. "Contracting services" means those contracting operations performed by you or on your behalf as disclosed to us as of the inception of the endorsement period, or as disclosed to us during the endorsement period and approved by us, in writing, in our sole and absolute discretion.

11. "Coverage territory" means the United States and its territories and possessions.

12. "Covered location" means each location shown in the SCHEDULE of this endorsement and all newly acquired locations during the endorsement period which are disclosed to us in writing during the endorsement period.

13. "Damages" means a monetary judgment, award or settlement. The term "damages" shall not include or mean:

   a. future profits, restitution, disgorgement of unjust enrichment or profits by an insured, or the costs of complying with orders granting injunctive or equitable relief;

OGIC000064

**b.** return or offset of fees, charges, or commissions charged by or owed to an insured for goods or services already provided or contracted to be provided;

**c.** taxes or loss of tax benefits;

**d.** fines, sanctions or penalties;

**e.** punitive or exemplary damages, or any damages which are a multiple of compensatory damages, unless insurable by law in any applicable venue that most favors coverage for such punitive, exemplary or multiple damages;

**f.** discounts, coupons, prizes, awards or other incentives offered to the insured's customers or clients;

**g.** liquidated damages, but only to the extent that such damages exceed the amount for which the insured would have been liable in the absence of such liquidated damages agreement; or

**h.** any amounts for which the insured is not liable, or for which there is no legal recourse against the insured.

**14.** "Deductible period" means the period of time that begins at the date and time that the we receive and record written notice of the necessary suspension of the insured's operations due to a "pollution condition" on, at, under or migrating from the a "covered location" and ends within the time frame shown on the SCHEDULE.

**15.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**16.** "Environmental damage" means the injurious presence in or upon land, the atmosphere, or any watercourse or body of water of "pollutants".

**17.** "Environmental laws" means any federal, state, provincial or local laws, including but not limited to statutes, rules, regulations, ordinances, guidance documents, and governmental, judicial or administrative orders and directives that are applicable to "pollution conditions" to which this Endorsement applies.

**18.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**19.** "Extra Expense" means the necessary expenses incurred by the insured, over and above the insured's continuing normal operating expenses, during the "period of restoration", that the insured would not have incurred had there been no "pollution condition" discovered at the "covered location", provided that the expenses are incurred to avoid or minimize the suspension of business and to continue operations:

**a.** at the "covered location", or

**b.** at replacement or temporary location(s), including:

**(1)** relocation expenses; and

**(2)** cost to equip and operate the replacement or temporary location(s).

Subject to the terms and conditions of this endorsement, we will pay no more for "extra expenses" than the percentage shown below multiplied by the Limit of Insurance stated in the SCHEDULE. If the "period of restoration" is:

**a.** 30 days or less, the percentage applied to the Limit of Liability shall be 40%;

**b.** 31-60 days, the percentage applied to the Limit of Liability shall be 80%;

**c.** 61 days or more, the percentage applied to the Limit of Liability shall be 100%.

**20.** "Field changes to design" includes but is not limited to, when a contractor discovers a minor physical job situation that makes it imprudent or impossible to complete the task, from the existing contract documents, the contractor then adjusts the job task, using practical construction knowledge, which does not inhibit the quality of the project, and leads to a field solution. This definition does not include any design that is required to be done by a licensed architect or engineer, and it does not include design related to construction means, methods, or jobsite safety precautions.

**21.** "Insured contract" mans that party of any written contract or written agreement under which the "named

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 16 of 21**

OGIC000065

insured" assume the tort liability of another party to pay compensatory damages for "loss" to a third person or organization, provided that such written contract or written agreement is signed by the "named insured" prior to the "loss". Tort liability means a liability that would be imposed by law in the absence of any contract or agreement. However, "insured contract" does not include any tortious conduct that would otherwise not be covered by this endorsement, nor if the tortious conduct was solely that of the person or persons for whom such liability under the insured contract was assumed.

22. "Job site" means the location where the "contracting services" are being performed. "Job site" does not include any location which currently is or was, at the time the insured or subcontractor working directly or indirectly on the insured's behalf were working on the location, owned, rented, used or occupied by the insured.

23. "Leased worker" means a person leased to the insured, by a labor leasing firm under an agreement between the insured and the labor leasing firm to perform duties related to the conduct of the insured's business.

24. "Legal expenses" means reasonable and necessary legal fees, charges and expenses incurred in the investigation and defense of a "claim", provided such costs, charges and expenses are authorized by us. "Legal expenses" does not include any expense that is incurred by an insured in assisting in the investigation, defense or resolution of a "claim".

25. "Licensed site professional" means a licensed environmental scientist or engineer that is in good standing with, and acting under the authority of federal, state, provincial or local laws for the purpose of addressing "pollution conditions" at a "covered location".

26. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

27. "Loss" means "bodily injury", "property damage" or "environmental damage".

28. "Mitigations costs" means expenses incurred to clean up or mitigate a "pollution condition" resulting from a "pollution emergency" at a "covered location" or covered "job site", as required by a federal or state regulatory agency, prior to the initiation of a formal "claim" against the insured. "Mitigation costs" may only be covered with our prior approval and if notification of such "pollution condition" is provided as soon as practicable. "Mitigation costs" will not be covered where the "pollution condition" does not result in a "claim" or where the "pollution condition" would not otherwise be covered under the terms and conditions of this endorsement. "Mitigation expenses" shall not exceed $25,000.00 and are subject to and will reduce the aggregate limit of liability. **Refer to Paragraph F, 4. Duties in the Event of an "Occurrence", "Pollution Condition", "Professional Loss", "Loss" or "Claim"** for information on "pollution emergency" reporting.

29. "Mold matter" means mold, mildew or any type or form of fungus, including mycotoxins, spores or by-products produced or released by fungi.

30. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, on which are permanently mounted:

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

CG 72 02 07 21
Page 17 of 21

OGIC000066

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle Insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle Insurance law or motor

vehicle registration law are considered "autos".

**31.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**32.** "Optional Extended reporting period" means the 1-year period of time set forth under the Extended Reporting Periods section

**33.** "Other intra-endorsement Insurance" means insurance provided under the terms of the endorsement other than the **Premises Pollution Legal Liability Insurance**, **Contactor's Pollution Legal Liability Insurance** or **Professional Legal Liability Insurance** afforded by this endorsement.

**34.** "Period of restoration" means the period of time that begins after the "deductible period" and ends when the "covered location(s)" should be restored to operation with reasonable speed and quality or when business activities resume at the new permanent location. The expiration date of this endorsement will not reduce the "period of restoration", nor shall the "extended reporting period" extend it.

**35.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**36.** "Pollution condition" means the discharge, dispersal, release, escape, seepage or migration of "pollutants" into or upon land, the atmosphere, or any watercourse or body of water.

**37.** "Pollution emergency" means any "pollution condition" where immediate action is required to respond to a potential or actual "claim".

**38.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

OGIC000067

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**39.** "Professional loss" means:

**a.** A monetary judgment, award or settlement of compensatory damages;

**b.** "Legal expenses" associated with the above paragraph.

"Professional loss" does not include:

**a.** Civil or criminal fines and penalties;

**b.** Punitive, exemplary or multiplied damages;

**c.** Injunctive or equitable relief;

**d.** The return of fees or charges for services rendered;

**e.** Costs and expenses incurred by the "insured" to redo, change, supplement or fix the "insured's" work or services, including redesign; or

**f.** Any of the "insured's" overhead, mark-up, or profit.

**40.** "Professional Services" means those activities listed under Professional Services in the SCHEDULE that are rendered by or on behalf of the "named insured".

**41.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this Insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**42.** "Rental Value" means the loss of any anticipated rental income the insured would have earned during the "period of restoration" by renting all or a portion of the "covered location(s)" to a third party not owned by, affiliated with, or connected in any way to the insured, less any rental income the insured actually earned or could have earned during the "period of restoration" by renting all or a portion of the "covered location(s)" or by making use of other

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 19 of 21**

OGIC000068

property. "Rental value" does not apply to any loss included in the definition of "business interruption" and "extra expense".

43. "Responsible insured" means any officer, director, partner, member, manager, supervisor or foreman of any insured of any employee of an insured that has responsibility, in whole or in part, for risk control, risk management, health and safety or environmental affairs, control or compliance.

44. "Restoration costs" means expenses required to restore, repair or replace real or personal property to substantially the same condition it was in prior to being damaged during the course of responding to a "pollution condition" to which this endorsement applies. These costs will not exceed the actual cash value of such real or personal property immediately prior to such damage, or include costs associated with improvements or betterments. Actual cash value shall mean the cost to replace such real or personal property, immediately prior to such damage, minus the accumulated depreciation of the real or personal property.

45. "Retroactive date" means the date listed under "Retroactive date" on the SCHEDULE for each applicable coverage.

46. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this Insurance applies. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

47. "Transportation" means the movement of waste or material by "auto" or "mobile equipment" (including "loading or unloading") provided that the person or entity transporting the waste or material is properly licensed to transport such waste or material by "auto" or "mobile equipment".

48. "Underground storage tank" means a stationary container or vessel, including the associated piping connected thereto, which is ten percent (10%) or more beneath the surface of the ground and is:

a. Constructed primarily of non-earthen materials; and

b. Designed to contain any substance.

49. "Value engineering" means an organized effort directed at analyzing designed building features, systems, equipment, and material selections for the purpose of achieving essential functions at the lowest life cycle cost consistent with required performance, quality, reliability, and safety.

50. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

51. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CG 72 02 07 21
Page 20 of 21

OGIC000069

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

## H. Extended Reporting Periods

With respect to **Premises Pollution Legal Liability Insurance** or **Professional Legal Liability Insurance**:

**a.** You are entitled to an automatic ninety (90) day "automatic extended reporting period", commencing on the last day of the endorsement period. The ninety (90) day "automatic extended reporting period" applies to a "claim" first made during the endorsement period and reported to us, in writing, during the ninety (90) day "automatic extended reporting period". The ninety (90) day "automatic extended reporting period" applies only if we cancel or non-renew the **Professional Legal Liability Insurance** or the **Premises Pollution Legal Liability Insurance** for a reason other than non-payment of premium, non-payment of deductible, fraud or misrepresentation.

**b.** Upon non-renewal or cancellation of this endorsement for any reason except the non-payment of premium, the insured will have the right to purchase, for one hundred percent (100%) of the expiring annual premium, an "optional extended reporting period" of twelve (12) months. Coverage provided by such "optional extended reporting period" will only apply to "claims" first made against any insured during the endorsement period and reported to us, in writing, during the "optional extended reporting period", and arising out of any act, error or omission committed on or after the "retroactive date" and before the end of the endorsement period. In order for the insured to invoke the "optional extended reporting period", the payment of the additional premium for the must be paid to us within 60 days of the termination of this endorsement.

**c.** The purchase of the "optional extended reporting period" will in no way increase the Endorsement Aggregate Limit of Liability or any sublimit of liability. At the commencement of the "optional extended reporting period". the entire contribution will be deemed earned, and in the event the insured terminates the "optional extended reporting period" for any reason prior to its natural expiration, we will not be liable to return any contribution paid for the "optional extended reporting period"

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 21 of 21**

OGIC000070

COMMERCIAL GENERAL LIABILITY
CG 20 01 12 19

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PRIMARY AND NONCONTRIBUTORY – OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

**CG 20 01 12 19** © Insurance Services Office, Inc., 2018 **Page 1 of 1**

OGIC000071

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| All persons or organizations when you have agreed in writing in a contract or agreement that such persons or organizations be added as an additional insured. | All Locations |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.

Page **1** of **2**

© Insurance Services Office, Inc., 2012

**CG 20 10 12 19**

OGIC000072

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012 **CG 20 10 12 19**

OGIC000073

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

OGIC000074

**COMMERCIAL GENERAL LIABILITY**
**CG 21 32 05 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

OGIC000075

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

OGIC000076

**COMMERCIAL GENERAL LIABILITY**
**CG 21 67 12 04**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

---

**CG 21 67 12 04**            © ISO Properties, Inc.,  2003            **Page 1 of 1**            ☐

OGIC000077

COMMERCIAL GENERAL LIABILITY
CG 21 70 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

**CG 21 70 01 15**        © Insurance Services Office, Inc., 2015        **Page 1 of 1**

OGIC000078

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

  **1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

  **2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

  **1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

  **2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

  **3.** A reinforced or unreinforced base coat;

  **4.** A finish coat providing surface texture to which color may be added; and

  **5.** Any flashing, caulking or sealant used with the system for any purpose.

© ISO Properties, Inc., 2003

OGIC000079

**COMMERCIAL GENERAL LIABILITY**
**CG 22 79 04 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

2. Subject to Paragraph **3.** below, professional services include:

   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

**CG 22 79 04 13**                    © Insurance Services Office, Inc., 2012                    **Page 1 of 1**

OGIC000080

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (WAIVER OF SUBROGATION)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART DESIGNATED SITES
POLLUTION LIABILITY LIMITED COVERAGE PART DESIGNATED SITES
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY DESIGNATED TANKS

**SCHEDULE**

| **Name Of Person(s) Or Organization(s):** |
|---|
| Automatic status when required by written contract, agreement or permit |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery against the person(s) or organization(s) shown in the Schedule above because of payments we make under this Coverage Part. Such waiver by us applies only to the extent that the insured has waived its right of recovery against such person(s) or organization(s) prior to loss. This endorsement applies only to the person(s) or organization(s) shown in the Schedule above.

**CG 24 04 12 19**  © Insurance Services Office, Inc., 2018  **Page 1 of 1**

OGIC000081

COMMERCIAL GENERAL LIABILITY
CG 24 26 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

CG 24 26 04 13 © Insurance Services Office, Inc., 2012 **Page 1 of 1**

OGIC000082

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY**
**CG 25 03 05 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Designated Construction Project(s):** <br> All Projects |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

**1.** A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

**2.** The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

**4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

OGIC000083

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

**1.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

**2.** Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

**D.** If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

**E.** The provisions of Section **III** – Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

 © Insurance Services Office, Inc., 2008 **CG 25 03 05 09** ☐

OGIC000084

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY**
**CG 25 04 05 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED LOCATION(S) GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Designated Location(s): |
| --- |
| All rented, owned and occupied locations other than construction projects. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which can be attributed only to operations at a single designated "location" shown in the Schedule above:

**1.** A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

**2.** The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

**4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

OGIC000085

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

**1.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

**2.** Such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Section **III** – Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

© Insurance Services Office, Inc., 2008    **CG 25 04 05 09**    ☐

OGIC000086

COMMERCIAL GENERAL LIABILITY
CG 40 15 12 19

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CANNABIS EXCLUSION WITH HEMP EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of:

  **a.** The design, cultivation, manufacture, storage, processing, packaging, handling, testing, distribution, sale, serving, furnishing, possession or disposal of "cannabis"; or

  **b.** The actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "cannabis"; or

**2.** "Property damage" to "cannabis".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **A.1.** or **A.2.** above.

However, Paragraph **A.1.b.** does not apply to "bodily injury" or "property damage" arising out of the actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, or contact with, "cannabis" by:

  **(1)** An insured; or

  **(2)** Any other person for whom you are legally responsible

but only if the "bodily injury" or "property damage" does not arise out of your selling, serving or furnishing of "cannabis" to any person described above.

**B.** The exclusion in Paragraph **A.** does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of goods or products containing or derived from hemp, including, but not limited to:

  **a.** Seeds;

  **b.** Food;

  **c.** Clothing;

  **d.** Lotions, oils or extracts;

  **e.** Building Materials; or

  **f.** Paper.

**2.** "Property damage" to goods or products described in Paragraph **B.1.** above.

However, Paragraphs **B.1.** and **B.2.** above do not apply to the extent any such goods or products are prohibited under an applicable state or local statute, regulation or ordinance in the state wherein:

  **(1)** The "bodily injury" or "property damage" occurs;

  **(2)** The "occurrence" which caused the "bodily injury" or "property damage" takes place; or

  **(3)** The offense which caused the "personal and advertising injury" was committed;

**3.** "Personal and advertising injury" arising out of the following offenses:

  **a.** False arrest, detention or imprisonment; or

  **b.** The wrongful eviction from, wrongful entry into, or invasion of the right or private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

 © Insurance Services Office, Inc., 2018

OGIC000087

**C.** The following definition is added to the **Definitions** section:

"Cannabis":

**1.** Means:

Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC or cannabinoid is natural or synthetic.

**2.** Paragraph **C.1.** above includes, but is not limited to, any of the following containing such THC or cannabinoid:

**a.** Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or

**b.** Any compound, byproduct, extract, derivative, mixture or combination, such as:

**(1)** Resin, oil or wax;

**(2)** Hash or hemp; or

**(3)** Infused liquid or edible cannabis;

whether or not derived from any plant or part of any plant set forth in Paragraph **C.2.a.**

---

**Page 2 of 2** © Insurance Services Office, Inc., 2018 **CG 40 15 12 19**

OGIC000088

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ASBESTOS

This endorsement modifies insurance under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury", "personal and advertising injury" or "property damage" arising out of:

1. Inhaling, ingesting or physical exposure to asbestos or goods or products containing asbestos; or

2. The use of asbestos in constructing or manufacturing any goods, product or structure; or

3. The removal, repair, encapsulation, enclosure, abatement or maintenance of asbestos in or from any goods, product or structure; or

4. The manufacture, sale, distribution, transportation, storage or disposal of asbestos or goods or products containing asbestos.

This insurance does not apply to payment for the investigation or defense of any claim, injury, loss, fine, penalty or lawsuit related to any of the foregoing items **1.** thru **4.** Nor do we have a duty to investigate or defend any such claim, injury, loss or lawsuit.

This insurance also does not apply to any loss, cost or expense incurred in complying with any federal, state, or local provision of law regarding the inspection, monitoring, or control of asbestos in any goods, products or structures.

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 70 17** 12 98

OGIC000089

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DAMAGE TO YOUR WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILTIY COVERAGE PART

1. The following is added to **SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** paragraph **1. Insuring Agreement:**

    f. Damages because of "property damage" include damages the insured becomes legally obligated to pay because of "property damage" to "your work" and shall be deemed to be caused by an "occurrence", but only if:

    (1) The "property damage" is the result of work performed on your behalf by a subcontractor(s) that is not a Named Insured;

    (2) The work performed by the subcontractor(s) is within the "products-completed operations hazard"; and

    (3) The "property damage" is unexpected or unintended from the standpoint of the insured.

    We will not be obligated to pay any sums to repair or replace the defective work performed on your behalf by a subcontractor.

2. The following amendment supersedes all other amendments to Coverage A, Exclusion l.:

    **Coverage A, Exclusion l.** is replaced by the following:

    l. **Damage To Your Work**

    "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

    This exclusion does not apply to "property damage" to "your work" resulting from work performed on your behalf by a subcontractor and included in the "products-completed operations hazard", however we will not be obligated to pay any sums to repair or replace the defective work performed on your behalf by a subcontractor.

    This endorsement applies only to the Named Insured and no other party.

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 71 21** 05 18

OGIC000090

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DAMAGE TO PROPERTY-BORROWED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Under **SECTION 1, COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Item **2. Exclusions j.** is deleted and replaced by the following:

**j.  Damage To Property:**

(1) Property you own, rent or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of any real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any real property that must be restored, replaced, or repaired because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to:

(i) "property damage" to tools or equipment loaned to you if the tools or equipment are not being used to perform operations at the time of loss; or

(ii) "property damage" (other than damage by fire) to premises rented to you or temporarily occupied by you with the permission of the owner including contents of such premises rented to you for a period of seven (7) or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in **Section III - Limits Of Insurance.**

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were not occupied, rented or held for rental by you beyond one year from the date "your work" was completed.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 71 60** 05 18

OGIC000091

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY**
**CG 99 09 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PREMIUM AUDIT NONCOMPLIANCE CHARGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK LIABILITY COVERAGE PART

### SCHEDULE

| | |
|---|---|
| **Total Advance Premium:** | $ ▉▉▉ |
| **Audit Noncompliance Charge Factor:** | UP TO 200% |
| **Number Of Written Attempts To Obtain Audit Information:** | 2 |
| **Reassessment Charge:** | $ 0 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

Paragraph **5.c.** of the **Premium Audit** Condition under **Section IV – Conditions** is replaced by the following:

**c.** The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request. If the first Named Insured fails to comply with this request at the close of an audit period, an Audit Noncompliance Charge will be assessed, and notice will be sent to the first Named Insured.

The additional charge will be determined by multiplying the Total Advance Premium by the Audit Noncompliance Charge Factor indicated in the Schedule of this endorsement. (The following example is for illustration purposes only.)

Example:

Total Advance Premium: $25,000

Audit Noncompliance Charge Factor: 1

Audit Noncompliance Charge: $25,000

**(1)** We will only assess the Audit Noncompliance Charge:

**(a)** For audits conducted after the end of the policy period; and

**(b)** When we have made the number of written attempts indicated in the Schedule of this endorsement to obtain audit information from the first Named Insured.

The due date for the Audit Noncompliance Charge is the date shown as the due date on the bill.

**(2) Subsequent Compliance And Reassessment Charge**

**(a)** The first Named Insured may notify us in writing, prior to the due date on the bill for the Audit Noncompliance Charge, that the Named Insured agrees to comply with the audit request.

**(b)** A Reassessment Charge may apply if this charge is indicated in the Schedule.

**(c)** The first Named Insured must comply with the audit within 30 days of our receipt of the written notification described in Paragraph **(2)(a)** above, and then the Audit Noncompliance Charge will no longer apply. If a Reassessment Charge is indicated in the Schedule of this endorsement, that charge will remain applicable.

OGIC000092

**(d)** If the first Named Insured fails to comply with the premium audit after 30 days of our receipt of the notification described in Paragraph **(2)(a)** above, a subsequent notice will be sent to the first Named Insured indicating that the Audit Noncompliance Charge and the Reassessment Charge (if applicable) will be final. The due date for the Audit Noncompliance Charge and the Reassessment Charge is the date shown as the due date on the bill.

 © Insurance Services Office, Inc., 2018 CG 99 09 12 19

OGIC000093

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**.

# COMMERCIAL GENERAL LIABILITY
# ARTISAN CONTRACTORS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SCHEDULE**

The coverage provided by this endorsement is summarized below and is intended to provide a general coverage description only. For the details affecting each coverage please refer to the terms and conditions in the endorsements listed.

**The endorsements listed below will automatically be attached to your policy to complete the coverage provided by the Commercial General Liability Endorsement:**

- Additional Insured – Owners, Lessees or Contractors – Scheduled Person Of Organization - CG 20 10
- Contractor's Professional and Pollution Legal Liability – CG 72 02
- Damage To Your Work – CG 71 21
- Damage To Property – Borrowed Equipment – CG 71 60
- Primary And Noncontributory – Other Insurance Condition – CG 20 01
- Waiver of Transfer of Rights – CG 24 04

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 71 68** 05 21

OGIC000094

COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PENNSYLVANIA CHANGES - CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY

This endorsement modifies insurance provided under the following:

CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY FORM

**SECTION IV. INSURANCE, H. Extended Reporting Periods,** paragraph **b.** is replaced by the following:

1. Upon non-renewal or cancellation of this endorsement for any reason, the insured will have the right to purchase, for one hundred percent (100%) of the expiring annual premium, an " optional extended reporting period" of twelve (12) months. Coverage provided by such "optional extended reporting period" will only apply to "claims" first made against any insured during the endorsement period and reported to us, in writing, during the "optional extended reporting period", and arising out of any act, error or omission committed on or after the "retroactive date" and before the end of the endorsement period. In order for the insured to invoke the "optional extended reporting period", the payment of the additional premium for the must be paid to us within 60 days of the termination of this endorsement.

**CG 72 19** 05 21
Page **1** of **1**

OGIC000095

**Westfield**
One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial Common Policy
Declarations
Amended**

| | |
|---|---|
| **Company Providing Coverage**: Old Guard Insurance Company | |

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone:  215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account No:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|

| **Policy Period:**  From  10/08/2021 To  10/08/2022 | At 12:01 A.M. standard time at your mailing address shown above |
|---|---|

| **Business Of Named Insured:** Contractors | **Entity Of Named Insured:** LLC |
|---|---|

**THIS IS A NON-PARTICIPATING POLICY**

**Coverage and Premium Summary**

Commercial General Liability Coverage Part $

**Policy Annual Premium** $

**Total Advance Annual Policy Premium** $ 

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.  For more detail, please refer to the individual coverage parts inside your policy.

**Forms and Endorsements Applicable to This Coverage Part:**
Refer to Schedule of Forms and Endorsements - IL DS 73

PLEASE REFER TO IL7097 FOR A DETAILED SUMMARY OF TAXES AND SURCHARGES BY STATE.

**Page 1 of 1**                     IL DS 01 05 18                     ISSUED DATE: 01/12/2023

OGIC000096



**Westfield**
One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Amended**
**Common Policy Declarations**

| | |
|---|---|
| **Company Providing Coverage:** Old Guard Insurance Company | |

| **Named Insured And Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd,<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST,<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account No:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|

| **Policy Period:** From 10/08/2021 To 10/08/2022 | At 12:01 A.M. standard time at your mailing address shown above |
|---|---|

Effective 10/08/2021, this Common Policy Declarations amends all prior Common Policy declarations and endorsements as shown below.

**THE COVERAGE PARTS BELOW HAVE BEEN ENDORSED AS FOLLOWS:**

**Net  Premium**                                    $ ▮

** This Endorsement changes your policy. Please attach it to your original policy**

Page 1 of 1                    IL DS 71 05 18                    ISSUED DATE: 01/12/2023

OGIC000097

# WESTFIELD™

**Westfield**
One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Endorsement Summary**

| | |
|---|---|
| **Company Providing Coverage:** Old Guard Insurance Company | |

| **Named Insured And Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd,<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST,<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account No:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|
| **Policy Period:** From 10/08/2021 To 10/08/2022 | At 12:01 A.M. standard time at your mailing address shown above | |

### THE COVERAGE PARTS BELOW HAVE BEEN ENDORSED AS FOLLOWS:

| **Effective Date** | | **Description** |
|---|---|---|
| 10/08/2021 | Not otherwise classified | Removing inadvertently added Controlled Substances Exclusion - IL7090 (ID 266) |

** This Endorsement changes your policy. Please attach it to your original policy**

| Page 1 of 1 | IL DS 72 05 18 | ISSUED DATE: 01/12/2023 |
|---|---|---|

OGIC000098



**WESTFIELD™**

**Westfield**
One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Schedule of Forms and Endorsements Amended**

**Company Providing Coverage**: Old Guard Insurance Company

| Named Insured and Mailing Address: | Agency: 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| Policy Number: 179385Y | Billing Account No: 6000013101 | Payment Plan: Monthly (Paper Invoices) |
|---|---|---|

| Policy Period: From 10/08/2021 To 10/08/2022 | At 12:01 A.M. standard time at your mailing address shown above |
|---|---|

## SCHEDULE OF FORMS AND ENDORSEMENTS

*The following forms have been added or amended:*

### FORMS THAT APPLY TO MULTIPLE COVERAGE PARTS

| NUMBER | EDITION DATE | TITLE |
|---|---|---|
| ILDS01 | 0518 | COMMERCIAL PACKAGE POLICY COMMON POLICY DECLARATIONS |
| ILDS71 | 0518 | AMENDED COMMON POLICY DECLARATIONS |
| ILDS72 | 0518 | ENDORSEMENT SUMMARY |
| ILDS02 | 0518 | COMMERCIAL PACKAGE POLICY COMMON POLICY SCHEDULE |
| IL0003 | 0908 | CALCULATION OF PREMIUM |
| IL0017 | 1198 | COMMON POLICY CONDITIONS |
| IL0021 | 0908 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| IL7013 | 1206 | EXCLUSION - LEAD |
| IL7090 | 0820 | EXCLUSION - CONTROLLED SUBSTANCES |
| IL0120 | 1013 | PENNSYLVANIA CHANGES - DEFENSE COSTS |
| IL0246 | 0907 | PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL |
| IL0910 | 0702 | PENNSYLVANIA NOTICE |

### FORMS THAT APPLY TO COMMERCIAL GENERAL LIABILITY

| NUMBER | EDITION DATE | TITLE |
|---|---|---|
| CG2101 | 1219 | EXCLUSION - ATHLETIC OR SPORTS PARTICIPANTS |

Page 1 of 1                IL DS 73 05 18                ISSUED DATE:01/12/23

OGIC000099

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY**
**CG 21 01 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ATHLETIC OR SPORTS PARTICIPANTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| **Description Of Operations:** |
| --- |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

With respect to any operations shown in the Schedule, this insurance does not apply to "bodily injury" to any person arising out of practicing for or participating in any sports or athletic contest or exhibition that you sponsor.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" involved practicing for or participating in any sports or athletic contest or exhibition that you sponsor.

**CG 21 01 12 19** © Insurance Services Office, Inc., 2018 **Page 1 of 1**

# EXHIBIT

# "4"

OGIC000100



Insured:          Mike Burdett Roofing and Exteriors LLC
Claim Number:    0002735785


Policy Number:    CWP 179385Y
Policy Period(s):  10/8/2022 - 10/8/2026
Policy Cancelled:  _____


☑ NON-CERTIFIED POLICY

OGIC000101



## Your passion. Our promise. Imagine the possibilities.

Congratulations on the continued success of your business and thank you for again choosing Westfield to be a partner in your progress.

Along with the Brandon Insurance Group, it's our privilege to not only help you avoid risk, but see how it can present business opportunities.

If you have questions or concerns about your policy, simply contact Brandon Insurance Group at 215-256-8020 or visit their website at www.brandonins.com. You can also visit us at **westfieldinsurance.com** for useful information about your policy such as:

- Detailed policy and coverage information
- ID cards or proof of insurance
- Bill pay services
- Claims information and status
- Business insights and risk management resources

Again, thank you for your business. Together, let's greet the future by imagining all the possibilities.

OGIC000102



# WESTFIELD®

# A Business Insurance Policy for
# Mike Burdett Roofing and Exteriors LLC

Prepared by

Brandon Insurance Group

of HARLEYSVILLE, Pennsylvania

OGIC000103

IN WITNESS WHEREOF, this Company has caused this policy be signed by its President and Secretary and countersigned by a duly authorized representative of the Company if required by law.

*Frank A Carrino* Secretary　　　*Edward J. Lungen III* President

ID 7004 08 20

OGIC000104



# Westfield Privacy Promise

Effective: 2020 January 1

We are committed to protecting your privacy. This notice describes the personal information we collect about you and how we use it. This privacy promise applies to all our Westfield Insurance companies[1].

## SUMMARY

- We gather information directly from you[2], from your transactions with us and from outside sources.
- We use your information only to provide insurance to you, to investigate and resolve claims or to improve the products and services we offer.
- We will share your information with the independent agent or insurance broker that you chose.
- We share your information with third-parties who help us deliver services to you.
- *We do not sell your personal information.* We do not share your information with other companies for their marketing purposes.
- We take measures to protect your information while it is in our custody. We require the third-parties who help us to protect your information, too.

## INFORMATION WE COLLECT

We collect information about you in order to quote and service your insurance policy and to investigate and pay claims. This includes:

- Information from your application and other forms (such as your name, address, date of birth, email address, driver's license number and type of vehicle or property).
- Information about your transactions with us, our affiliates or others (such as your insurance coverages, limits and rates, payment and claims history and information needed for billing and payment).
- Information from third parties (such as your driving record, claims history with other insurers and credit information).
- Information about your online interactions with us (such as your IP address, the kind of device you used, the time of your visit to our site and pages visited). We use this information to deliver online services to you and/or to evaluate and improve our services.

## INFORMATION ABOUT MINORS

We do not sell to or intentionally communicate with children under the age of 13. We may request specific information about a child from parents in order to properly quote an insurance policy, verify identities or deliver requested transactions. We do not retain information about minors other than what is necessary to deliver requested services.

---

[1]"Westfield" includes Ohio Farmers Insurance Company, Westfield Insurance Company, Westfield National Insurance Company, American Select Insurance Company, Old Guard Insurance Company, Westfield Champion Insurance Company, Westfield Premier Insurance Company, Westfield Superior Insurance Company, Westfield Touchstone Insurance Company and Westfield Services, Inc.

[2]For a personal lines policy, this could include information from the head of household or other family member buying insurance that covers you. For a commercial lines policy, this could include information from your company's representative.

AD 83 86 01 20

OGIC000105

## INFORMATION WE DISCLOSE

*We do not sell or rent your personal information.* We disclose your information to third-parties only as permitted by law:

- To process transactions that you request or to service your policy.
- To investigate and pay claims.
- To prevent fraud.
- To perform marketing services on our behalf. (We do NOT allow third-parties to use the information they receive from us to market on their own or anyone else's behalf.)
- To comply with legal requirements.

Recipients include employees within our family of insurance companies, claims representatives, insurance agents or brokers, service providers, auditors, consumer reporting agencies, government agencies, law enforcement and the courts.

## HOW WE PROTECT YOUR INFORMATION

We restrict access to nonpublic personal information about you to those employees and outside services providers who need to know that information in order to provide our products or services to you. Their use of information is restricted by law, by our employee code of conduct and by written agreements where appropriate. We maintain physical, electronic and procedural safeguards that comply with applicable federal and state regulations to guard your information.

If you believe you have found a security issue with one of our products or services, please report it to InfosecAlerts@Westfieldgrp.com as quickly as possible. Please describe the issue in as much detail as possible, including the date and time you discovered the issue and how to reproduce the issue. Screenshots and videos can be especially helpful. Please also include your name and contact information in case we need additional detail.

## INTERNET PRIVACY

If you choose to communicate with us through the Internet or other electronic means, please read our Privacy Promise online at www.westfieldinsurance.com/privacy for details about how and why we use cookies, social media and other technologies.

## FORMER CUSTOMERS

If you end your relationship with us, we will continue to adhere to the policies and practices described in this privacy promise for as long as we have your information.

## CALIFORNIA RESIDENTS

California residents have the right to request an accounting of information which we hold about you, the right to request that we not sell your information and the right to request that we amend or delete your information. We may not (and will not) retaliate against you for exercising any of these rights. These rights are limited by, among other things, our obligations to comply with insurance regulations, statutes and other legal requirements. Call our Privacy Office at 1.800.243.0249 or go to www.westfieldinsurance.com/privacy and click the Do Not Sell My Personal Information link to submit a request relevant to those rights.

## PRIVACY CONTACT INFORMATION

If you have any questions, concerns or comments about our privacy promise, you may contact us by email at Privacy@Westfieldgrp.com or by mail to Privacy Officer, Westfield Insurance, One Park Circle, PO Box 5001, Westfield Center, OH 44251.

OGIC000106



# IMPORTANT NOTICE TO OUR POLICYHOLDERS

### *Westfield Insurance Fraud Hot-Line*

PLEASE READ THIS IMPORTANT INFORMATION

- Fraudulent insurance claims cost us all money.

- Call us if you have information concerning a fraudulent insurance claim.

- All information will be kept confidential.

- Call and discuss your information with a trained investigator, or leave the information anonymously on a telephone answering machine.

- We can all help fight insurance fraud.

Be a Fraud Buster

1-800-654-6482

Case 2:26-cv-04972-GAM Document 1-41 Filed 07/17/26 Page 173 of 577

OGIC000107



THIS NOTICE DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY. IF THERE IS ANY CONFLICT BETWEEN YOUR POLICY AND THIS NOTICE, THE PROVISIONS OF YOUR POLICY SHALL PREVAIL.

## Policyholder Disclosure Notice of Terrorism Insurance Coverage and Premium

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security, and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect you coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

## PREMIUM CHARGED

During your current policy period, the portion, if any, of your premium that is attributable to coverage for acts of terrorism as defined in the Act is $ _____ (refer to the individual dec pages for the Terrorism premium).

**If you do not desire the coverage** for acts of terrorism as defined in the Act, as amended, you may reject the coverage and instruct the insurance company to remove it and refund the premium described above. **To reject the coverage, you must:**

1) advise the insurance company by letter (on your company letterhead),

2) signed by the owner, representative, or properly designated official of the named insured.

AD 85 84 07 19
Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

Page 1 of 2

OGIC000108

**The insurance company must receive your letter within 60 days** from the date shown at the bottom right side of the forms titled "Common Policy Declarations". Please refer to "Common Policy Declarations" for the mailing address of the insurance company.

If your policy premium is $500, that may represent a minimum premium. In that case, the portion that is attributable to acts of terrorism as defined in the Act, as amended, may be included within that minimum and your total premium will not be reduced if you reject coverage for act of terrorism. The minimum premium will still apply.

Should you have any question regarding this notice, please contact your insurance agent.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

OGIC000109



# TERRORISM REJECTION AUTHORIZATION

During your current policy period, the portion of your premium that is attributable to coverage for acts of terrorism can be found in the Declarations.

**If you do not desire the coverage** for acts of terrorism, you may reject the coverage and instruct the insurance company to remove it at issuance by submitting a letter on your letterhead or by completing and submitting this Terrorism Rejection Authorization form.

If your policy premium is $500, that may represent a minimum premium. In that case, the portion that is attributable to coverage for acts of terrorism may be included within that minimum, and your total premium will not be reduced if you reject coverage for acts of terrorism. The minimum premium will still apply.

The rejection of coverage for Terrorism is valid and binding on all insureds and persons claiming benefits under the policy/application for the policy term as shown below.

This rejection of coverage for Terrorism will apply to any reinstatement, amended, altered, or modified policy with this company or with any affiliated company unless the Named Insured makes a written request to the company to exercise a different option.

After careful review of the Terrorism Coverage provided, I wish to reject coverage for acts of terrorism. Following is my signature authorizing the removal of this coverage from the policy noted below:

| | |
|---|---|
| **Policy Number:** 179385Y | **Policy Term:** 10/08/2022 - 10/08/2023 |
| **Agency:** Brandon Insurance Group | **Named Insured:** Mike Burdett Roofing and Exteriors LLC |
| **Signature:** | **Name:** |
| **Title:** | **Date:** |

***The insurance company must receive this notice within 60 days from policy issuance.***

OGIC000110



# CANNABIS EXCLUSION -
# ADVISORY NOTICE TO POLICYHOLDERS

This notice does not form a part of your insurance contract. No coverage is provided by this notice nor can it be construed to replace any provisions of your policy or endorsements. You should read your policy and review your declarations for complete information on the coverages you are provided. If there is any conflict between the policy (including its endorsements) and this notice, **THE PROVISIONS OF THE POLICY (INCLUDING ITS ENDORSEMENTS) SHALL PREVAIL.**

Changes are highlighted below. This Notice does not reference every editorial change made in your policy. The material in this Notice makes reference to endorsement numbers and lines of business; however, not all endorsements and lines of business may be included in a particular policy.

## GENERAL LIABILITY CHANGES

**One of the following forms has been attached to your policy:**

CG 40 14 - Cannabis Exclusion

This endorsement excludes Liability arising out of the design, cultivation, manufacture, storage, processing, packaging, handling, testing, distribution, sale, serving, furnishing, possession or disposal of cannabis, the actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of cannabis, and property damage to cannabis.

CG 40 15 - Cannabis Exclusion with Hemp Exception

This endorsement excludes Liability arising out of the design, cultivation, manufacture, storage, processing, packaging, handling, testing, distribution, sale, serving, furnishing, possession or disposal of cannabis, the actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of cannabis, and property damage to cannabis, may be excluded, **with a hemp exception.**

CG 40 16 - Cannabis Exclusion with Hemp and Lessors Risk Exception

This endorsement excludes Liability arising out of the design, cultivation, manufacture, storage, processing, packaging, handling, testing, distribution, sale, serving, furnishing, possession or disposal of cannabis and the actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of cannabis may be excluded, with a **hemp and lessor's risk exception**. This **exclusion does not include the property damage** to cannabis exclusion that is included in Endorsements CG 40 14 and CG 40 16.

OGIC000111

---

## UMBRELLA CHANGES

---

**One of the following forms has been attached to your policy:**

CU 34 22 - Cannabis Exclusion

This endorsement excludes Liability arising out of the design, cultivation, manufacture, storage, processing, packaging, handling, testing, distribution, sale, serving, furnishing, possession or disposal of cannabis, the actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of cannabis, and property damage to cannabis.

CU 34 23 - Cannabis Exclusion with Hemp Exception

This endorsement excludes Liability arising out of the design, cultivation, manufacture, storage, processing, packaging, handling, testing, distribution, sale, serving, furnishing, possession or disposal of cannabis, the actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of cannabis, and property damage to cannabis, may be excluded, **with a hemp exception**.

CU 34 24 - Cannabis Exclusion with Hemp and Lessors Risk Exception

This endorsement excludes Liability arising out of the design, cultivation, manufacture, storage, processing, packaging, handling, testing, distribution, sale, serving, furnishing, possession or disposal of cannabis and the actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of cannabis may be excluded, **with a hemp and lessor's risk exception**. This **exclusion does not include the property damage** to cannabis exclusion that is included in Endorsements CU 34 22 and CU 34 23.

---

## PROPERTY CHANGES

---

**One of the following forms has been attached to your policy:**

CP 99 03 - Cannabis Exclusion

Cannabis is added to **Property Not Covered**. When Business Income (And Extra Expense) Coverage Form CP 00 30, Business Income (Without Extra Expense) Coverage Form CP 00 32 and/or Extra Expense Coverage Form CP 00 50 are provided under this Policy this endorsement excludes coverage due to a suspension of operations which is attributable to the design, cultivation, manufacture, storage, processing, packaging, handling, testing, distribution, sale, serving, furnishing, possession or disposal of cannabis.

CP 99 04 - Cannabis Exclusion with Hemp Exception

Cannabis is added to **Property Not Covered**. When Business Income (And Extra Expense) Coverage Form CP 00 30, Business Income (Without Extra Expense) Coverage Form CP 00 32 and/or Extra Expense Coverage Form CP 00 50 are provided under this Policy this endorsement excludes coverage due to a suspension of operations which is attributable to the design, cultivation, manufacture,

AD 93 40 07 21

OGIC000112

storage, processing, packaging, handling, testing, distribution, sale, serving, furnishing, possession or disposal of cannabis. This endorsement contains a **hemp exception** addressing certain goods or products containing or derived from hemp.

---

## INLAND MARINE CHANGES

**One of the following forms has been attached to your policy:**

CM 90 06 - Cannabis Exclusion

Cannabis is considered property **not covered** with this endorsement.

CM 90 07 - Cannabis Exclusion with Hemp Exception

Cannabis is considered property **not covered** with this endorsement. There is a hemp exception for products containing or derived from hemp, including but not limited to: seeds, food, clothing, lotions, oils, extracts, building materials or paper. However the hemp exception does not apply to the extent any such goods or products have been recommended or prescribed for medicinal purposes or are prohibited under an applicable state or local statute, regulation or ordinance in the state where located.

**Please contact your Westfield independent agent with any questions or for more information.**

OGIC000113



**<u>Premium Audit Notice – FAQ and Helpful Tips to Help Prepare You for Your Premium Audit</u>**

Westfield Insurance welcomes the opportunity to service your insurance needs. At the end of your policy term you may be contacted by our Premium Audit department, or one of our Premium Audit vendors, to complete your premium audit.

A premium audit is a review of your operations and financial records. Because your business insurance policy premiums were based upon estimated information (e.g. Payroll, Sales, Subcontract Costs, etc.) a premium audit may be conducted to help determine your final premium.

An accurate premium audit is a benefit to your business as the estimated exposures used to rate your policy will fluctuate during your policy period and maintaining accurate records will help you gain the most benefit from your premium audit. As part of the audit review the auditor will need to ask some questions about your business operations and records to ensure your operations and employees are classified correctly.

## **<u>FAQ</u>**

### **Who will complete the audit?**

You may be asked to complete a premium audit in one of four ways by one of our staff or vendor auditors:

- <u>Mail/Voluntary Form</u> – a premium audit form will be mailed to you and will ask a series of questions relative to your type of business and policy. You will be asked to fill out the form in its entirety and return it to Westfield via mail, fax, or email.

- <u>Telephone Audit</u> – a telephone auditor will call you to discuss your operation and review your financial records. A form may be sent to you via mail or email prior to the phone audit appointment to assist and prepare you for the premium audit.

- <u>Hybrid Audit</u> – an auditor will contact you to schedule and conduct the audit over the phone. Prior to the audit appointment you will be asked to forward necessary financial records. A review of those records and your operations will be discussed during the phone interview process.

- <u>Physical Audit</u> – a field auditor will contact you to schedule an appointment to conduct the audit at your premises. The auditor will inquire about your operations and physically review the financial records.

### **What records will be needed?**

The premium auditor will request and review the records needed based on your coverages and classifications. In most cases the auditor will be able to obtain the necessary audit data from two or more of the following records:

OGIC000114

- Payroll based audits – Monthly/Quarterly Payroll Journals, Quarterly State Tax Reports (State Unemployment Reports), Federal 941 Tax Reports

- Sales based audits – Monthly Sales Reports, Monthly State Sales Tax Reports, General Ledgers, Financial Statements

- Subcontract Costs/Expense – Check Disbursements Report, Vendor Payment Report, General Ledger, 1099's, Financial Statements. Certificates of insurance should be obtained for each subcontractor.

**Helpful Tips**

**Payroll based audits** – Many insurance policies are based on gross payroll. Gross payroll includes many items such as wages, bonuses, holiday pay, sick pay, commissions, overtime pay, and vacation pay.

> Helpful Tip – Overtime: the amount paid in excess of straight time pay can be deducted if the excess portion can be verified by your payroll records. *Your records must show summarized overtime amounts paid by employee.*

> Helpful Tip – Division of Payroll: Division of an individual employee's payroll to more than one classification is not allowed except for construction or erection operations. For construction and erection operations the payroll of an employee may be allocated to each type of work performed if proper records are kept (percentages are not acceptable). Payroll cannot be divided between construction, office, and sales classifications.

**Sales based audits** – Another premium base for general liability is gross sales. Gross sales are the amount charged by you to others for all goods or products sold and distributed and for any other operations or services performed by you for others.

> Helpful Tip – The following may be deducted from gross sales if properly maintained in your financial records:
> - Returns and Allowances
> - Freight/Delivery Income
> - Sales tax collected and submitted to a government agency

This information is provided to you as assistance for proper record keeping. Other insurance companies may differ in their requirements. Please feel free to contact our Premium Audit Department if you have any questions about the Premium Audit process.

OGIC000115



# Premium Audit Notice for Contractors

The records you keep can affect the premium you pay for your insurance policy, and there are steps you can take to help control these costs.

Your insurance premiums are based on your business's direct payroll and the amounts paid to any subcontractors you may hire. Subcontract costs are an area of concern because it is an area that can substantially increase the cost of your insurance if you do not hire "adequately insured subcontractors." Any operations performed by subcontractors without a certificate of insurance or who are inadequately insured will be classified under the specific classification description for each operation which carries a higher rate.

To help control the cost of your insurance you should obtain proper certificates of insurance from every subcontractor you hire prior to the commencement of work. A valid certificate of insurance will provide evidence of Workers' Compensation or General Liability coverage for a specific policy term and can be obtained from the subcontractor's insurance agent.

Helpful Tips:

- The certificate of insurance should cover the period the subcontractor performs work for you. If the subcontractor's certificate of insurance expires on a certain date, but they will be working beyond that date, a new certificate should be required. Current and expired certificates of insurance should be kept and maintained in a binder or electronic file.

- The subcontractor's limits of liability and coverages should be at least equal to those carried by your business for the time the work was performed to be considered "adequately insured." If the subcontractor's limits are too low, you should contact the subcontractor and request their limits be raised to equal your policy's limits.

- Be especially cautious when hiring casual or 1099 type laborers as these types of independent subcontractors sometimes do not carry insurance or limits of liability that may match your policy.

- You should read or have your insurance agent or attorney review every contract before signing to ensure the subcontractor is not transferring liability back to your business.

OGIC000116



**WESTFIELD**®

Re: Named Insured: Mike Burdett Roofing and Exteriors LLC
Policy Number: 179385Y
Agency Name: Brandon Insurance Group

# NOTICE: REDUCED COVERAGE
# COMMUNICABLE DISEASE EXCLUSION

This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construedto replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between thePolicy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

The material in this Notice refers to endorsement numbers; **however, not all endorsements are included in a particular policy.**

Here are the changes:

We've attached the following endorsements:

- CG 21 32 05 09 - Communicable Disease Exclusion for policies with the Commercial General Liability Coverage Form

- CG 33 76 05 09 - Communicable Disease Exclusion for policies with the Products/Completed Operations Coverage Form.

- CA 25 57 10 13 - Communicable Disease Exclusion for General Liability Coverages for policies with the Auto Dealers Coverage Form.

We've attached the following endorsement for policies that include the Commercial Umbrella Liability Coverage Form with the underlying Communicable Disease Exclusion:

- CU 21 58 05 09 - Communicable Disease Exclusion.

The Communicable Disease exclusions specifically exclude coverage related to the actual or alleged transmission of a communicable disease, including viruses. Please refer to the endorsement for additional details.

AD 92 96 10 20

OGIC000117

**Westfield**
One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial Common Policy
Declarations
Renewal**

**Company Providing Coverage**: Old Guard Insurance Company

| Named Insured and Mailing Address: | Agency: 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| Policy Number: 179385Y | Billing Account No: 6000013101 | Payment Plan: Monthly (Paper Invoices) |
|---|---|---|

| Policy Period: From 10/08/2022 To 10/08/2023 | At 12:01 A.M. standard time at your mailing address shown above |
|---|---|

| Business Of Named Insured: Contractors | Entity Of Named Insured: LLC |
|---|---|

### THIS IS A NON-PARTICIPATING POLICY

### Coverage and Premium Summary

Commercial General Liability Coverage Part                                      $

**Policy Annual Premium**                                                      $

**Total Advance Annual Policy Premium**                                         $

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. For more detail, please refer to the individual coverage parts inside your policy.

**Forms and Endorsements Applicable to This Coverage Part:**
Refer to Schedule of Forms and Endorsements - IL DS 73

PLEASE REFER TO IL7097 FOR A DETAILED SUMMARY OF TAXES AND SURCHARGES BY STATE.

**Page 1 of 1**                    IL DS 01 05 18                    ISSUED DATE: 07/28/2022

OGIC000118



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial Common Policy
Schedule**

**Renewal**

| | |
|---|---|
| **Company Providing Coverage**: Old Guard Insurance Company | |

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353 |

| **Policy Number:** 179385Y | **Billing Account No:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|

| **Policy Period:** From 10/08/2022 To 10/08/2023 | At 12:01 A.M. standard time at your mailing address shown above |
|---|---|

| **Business Of Named Insured:** Contractors | **Entity Of Named Insured:** LLC |
|---|---|

## Schedule of Insured Locations

**Loc.** 1

3420 Horton Rd
Newtown Square, PA 19073-3418

OGIC000119



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial General Liability**
**Declarations**
**Renewal**

**Company Providing Coverage:** Old Guard Insurance Company

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account Number:**<br>6000013101 | **Payment Plan:** Monthly<br>(Paper Invoices) |
|---|---|---|
| **Policy Period:** From: 10/08/2022 To: 10/08/2023 | | At 12:01 A.M. standard time at your mailing address shown above |

**Limits of Insurance**

| | |
|---|---|
| Each Occurrence Limit | $1,000,000 |
| General Aggregate Limit (Other than products/completed-operations) | $2,000,000 |
| Products/Completed-Operations Aggregate Limit | $2,000,000 |
| Personal & Advertising Injury Limit | $1,000,000 |
| Damage to Premises Rented to You Limit  (Any one premises) | $100,000 |
| Medical Expense Limit (Any one person) | $1,000 |

| | |
|---|---|
| **Total Premises/Operations Premium** | $ ▆▆▆ |
| **Total Products/Completed Operations Premium** | $ ▆▆▆ |
| **Total Additional Coverages and Endorsements Premium** | $ ▆▆▆ |
| **Total Additional Interests Premium** | **Included** |
| **Total Terrorism Premium** | $ ▆ |
| **Total Advance Annual General Liability Premium** | $ ▆▆  |

**Forms And Endorsements Applicable To This Coverage Part:**
Refer to Schedule of Forms and Endorsements - IL DS 73

**Page 1 of 4**          CG DS 01 05 18          ISSUED DATE:07/28/2022

OGIC000120



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial General Liability
Declarations
Renewal**

| | |
|---|---|
| **Company Providing Coverage:** Old Guard Insurance Company | |

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account Number:**<br>6000013101 | **Payment Plan:** Monthly<br>(Paper Invoices) |
|---|---|---|
| **Policy Period:** From: 10/08/2022 To: 10/08/2023 | At 12:01 A.M. standard time at your mailing address shown above | |

## Classification and Premium Schedule

Location of all premises owned by, rented to, or controlled by the name insured are shown on the Schedule of Insured Locations, IL DS 02, unless otherwise indicated.

| Location | Classification Code and Description | Premium Basis | Rate | Premium |
|---|---|---|---|---|
| #1: 3420 Horton Rd,<br>    Newtown Square, PA<br>    19073-3418 | 98967 - Siding Installation | $ ■ | ■ | $ ■<br>$ ■ |

| | |
|---|---|
| **Total Premises/Operations Premium** | $ ■ |
| **Total Products/Completed Operations Premium** | $ ■ |

OGIC000121



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial General Liability
Declarations
Renewal**

| | |
|---|---|
| **Company Providing Coverage:** Old Guard Insurance Company | |

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account Number:**<br>6000013101 | **Payment Plan:** Monthly<br>(Paper Invoices) |
|---|---|---|
| **Policy Period:** From: 10/08/2022 To: 10/08/2023 | | At 12:01 A.M. standard time at your mailing<br>address shown above |

## Schedule of Additional Coverages and Endorsements

| Form Number/ Endorsement | Premium |
|---|---|
| CG7168 - COMMERCIAL GENERAL LIABILITY - ARTISAN CONTRACTOR ENDORSEMENT | $ ■ |
| CG7121 - Damage to Your Work | Included |
| CG7160 - DAMAGE TO PROPERTY-BORROWED EQUIPMENT | Included |
| CG2404 - Waiver of Transfer of Rights of Recovery Against Others to Us | Included |
| CG7202 - Contractor's Professional and Pollution Legal Liability Endorsement | Included |
| - | |
| **Total Additional Coverages and Endorsements Coverage Premium:** | $  |

OGIC000122



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial General Liability**
**Declarations**
**Renewal**

| | |
|---|---|
| **Company Providing Coverage:** Old Guard Insurance Company | |

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account Number:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|
| **Policy Period:** From: 10/08/2022 To: 10/08/2023 | At 12:01 A.M. standard time at your mailing address shown above | |

## Schedule of Additional Interests

| Form Number/ Endorsement | Premium |
|---|---|
| CG2010 [Automatic status when required by written contract, agreement, or permit] - Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization | Included |
| **Total Additional Interests Premium:** | **Included** |

OGIC000123



**Westfield**
One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Schedule of Forms and Endorsements Renewal**

**Company Providing Coverage**: Old Guard Insurance Company

| Named Insured and Mailing Address: | Agency: 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

**Policy Number:** 179385Y    **Billing Account No:** 6000013101    **Payment Plan:** Monthly (Paper Invoices)

**Policy Period:** From 10/08/2022 To 10/08/2023    At 12:01 A.M. standard time at your mailing address shown above

## SCHEDULE OF FORMS AND ENDORSEMENTS

### FORMS THAT APPLY TO MULTIPLE COVERAGE PARTS

| NUMBER | EDITION DATE | TITLE |
|---|---|---|
| ILDS01 | 0518 | COMMERCIAL PACKAGE POLICY COMMON POLICY DECLARATIONS |
| ILDS02 | 0518 | COMMERCIAL PACKAGE POLICY COMMON POLICY SCHEDULE |
| IL0003 | 0908 | CALCULATION OF PREMIUM |
| IL0017 | 1198 | COMMON POLICY CONDITIONS |
| IL0021 | 0908 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| IL7013 | 1206 | EXCLUSION - LEAD |
| IL7090 | 0820 | EXCLUSION - CONTROLLED SUBSTANCES |
| IL0120 | 1013 | PENNSYLVANIA CHANGES - DEFENSE COSTS |
| IL0246 | 0907 | PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL |
| IL0910 | 0702 | PENNSYLVANIA NOTICE |

### FORMS THAT APPLY TO COMMERCIAL GENERAL LIABILITY

| NUMBER | EDITION DATE | TITLE |
|---|---|---|
| CGDS01 | 0518 | COMMERCIAL GENERAL LIABILITY DECLARATIONS |
| CG0001 | 0413 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG2001 | 1219 | PRIMARY AND NONCONTRIBUTORY - OTHER INSURANCE CONDITION |
| CG2010 | 1219 | ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION |
| CG2101 | 1219 | EXCLUSION - ATHLETIC OR SPORTS PARTICIPANTS |
| CG2106 | 0514 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| CG2132 | 0509 | COMMUNICABLE DISEASE EXCLUSION |
| CG2147 | 1207 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG2167 | 1204 | FUNGI OR BACTERIA EXCLUSION |
| CG2170 | 0115 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| CG2186 | 1204 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS |
| CG2279 | 0413 | EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY |
| CG2404 | 1219 | WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US |
| CG2426 | 0413 | AMENDMENT OF INSURED CONTRACT DEFINITION |

OGIC000124



| | | |
|---|---|---|
| **Westfield**<br>One Park Circle, P.O. Box 5001<br>Westfield Center, OH 44251<br>800-243-0210<br>WestfieldInsurance.com | | **Schedule of Forms and Endorsements**<br>**Renewal** |

**Company Providing Coverage**: Old Guard Insurance Company

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone:  215-256-8020 |

| **Policy Number:**  179385Y | **Billing Account No:** 6000013101 | **Payment Plan:**  Monthly (Paper Invoices) |
|---|---|---|

| **Policy Period:**  From  10/08/2022 To  10/08/2023 | At 12:01 A.M. standard time at your mailing address shown above |
|---|---|

| | | |
|---|---|---|
| CG2503 | 0509 | DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT |
| CG2504 | 0509 | DESIGNATED LOCATION(S) GENERAL AGGREGATE LIMIT |
| CG4015 | 1219 | CANNABIS EXCLUSION WITH HEMP EXCEPTION |
| CG7017 | 1298 | EXCLUSION-ASBESTOS |
| CG7121 | 0518 | DAMAGE TO YOUR WORK |
| CG7160 | 0518 | DAMAGE TO PROPERTY - BORROWED EQUIPMENT |
| CG9909 | 1219 | PREMIUM AUDIT NONCOMPLIANCE CHARGE |
| CG7168 | 0521 | COMMERCIAL GENERAL LIABILITY - ARTISAN CONTRACTOR ENDORSEMENT |
| CG7202 | 0721 | CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY ENDORSEMENT |
| CG7219 | 0521 | PENNSYLVANIA CHANGES - CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY |

IL DS 73 05 18                    ISSUED DATE:07/28/22

OGIC000125

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

 © ISO Properties, Inc., 2007 **Page 1 of 1** ☐

OGIC000126

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

OGIC000127

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage":

    (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

    (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

    (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

    (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property threat.

2. As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "special nuclear material" or "by-product material".

---

IL 00 21 09 08 © ISO Properties, Inc., 2007 **Page 1 of 2**

OGIC000128

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007 IL 00 21 09 08 ☐

OGIC000129

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - LEAD

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM
FARM LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY COVERAGE FORM
FARMOWNERS-RANCHOWNERS POLICY PERSONAL LIABILITY FORM
OWNERS′, LANDLORDS′ AND TENANTS′ LIABILITY INSURANCE COVERAGE PART
FARMER′S COMPREHENSIVE PERSONAL INSURANCE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

This insurance does not apply to:

**(1)** ″Bodily injury″, ″property damage″, ″personal injury″ or ″personal and advertising injury″ arising out of lead poisoning, lead contamination or exposure to lead.

**(2)** Any loss, cost or expense arising out of any:

**a.** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

**b.** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

**IL 70 13** 12 06

OGIC000130

IL 01 20 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDER'S ERRORS AND OMISSIONS
COVERAGE FORM
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

  **1.** Section **I** of the Commercial General Liability, Commercial Liability Umbrella, Electronic Data Liability, Employment-related Practices Liability, Farm, Liquor Liability, Medical Professional Liability, Owners And Contractors Protective Liability, Pollution Liability, Product Withdrawal, Products/Completed Operations Liability, Railroad Protective Liability and Underground Storage Tank Coverage Parts, Auto Dealers Coverage Form and the Farm Umbrella Liability Policy;

  **2.** Section **II** under the Auto Dealers, Business Auto and Motor Carrier Coverage Forms;

  **3.** Section **III** under the Auto Dealers and Motor Carrier Coverage Forms;

  **4.** Section **A.** Coverage under the Legal Liability Coverage Form; and

  **5.** Coverage **C** – Mortgageholder's Liability under the Mortgageholder's Errors And Omissions Coverage Form.

  Paragraph **B.** also applies to any other provision in the policy that sets forth a duty to defend.

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

  The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

IL 01 20 10 13 © Insurance Services Office, Inc., 2013 **Page 1 of 1**

OGIC000131

IL 02 46 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

**2. Cancellation Of Policies In Effect For Less Than 60 Days**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

**3. Cancellation Of Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

**b.** You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

**c.** A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**d.** Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

---

© ISO Properties, Inc., 2006   ☐

OGIC000132

e. Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

f. Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

B. The following are added and supersede any provisions to the contrary:

1. **Nonrenewal**

   If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

2. **Increase Of Premium**

   If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006  **IL 02 46 09 07**  ☐

OGIC000133

IL 09 10 07 02

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

---

**Instruction to Policy Writers**

Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania.

---

**IL 09 10 07 02** © ISO Properties, Inc., 2001 **Page 1 of 1** ☐

OGIC000134

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

OGIC000135

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

  © Insurance Services Office, Inc., 2012  CG 00 01 04 13

OGIC000136

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000138

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

OGIC000139

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000140

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

OGIC000141

## COVERAGE C – MEDICAL PAYMENTS

### 1. Insuring Agreement

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000142

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

OGIC000143

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000144

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

OGIC000145

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

OGIC000146

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

### 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

### 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

### 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

### SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

OGIC000147

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012

OGIC000148

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

OGIC000149

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012  **CG 00 01 04 13**

OGIC000150

COMMERCIAL GENERAL LIABILITY
CG 20 01 12 19

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PRIMARY AND NONCONTRIBUTORY – OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

**CG 20 01 12 19** © Insurance Services Office, Inc., 2018 **Page 1 of 1**

OGIC000151

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY
CG 20 10 12 19**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| All persons or organizations when you have agreed in writing in a contract or agreement that such persons or organizations be added as an additional insured. | All Locations |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.

Page **1** of **2**

© Insurance Services Office, Inc., 2012

**CG 20 10 12 19**

OGIC000152

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012
**CG 20 10 12 19**

OGIC000153

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY**
**CG 21 01 12 19**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – ATHLETIC OR SPORTS PARTICIPANTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Description Of Operations: |
|---|
|  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

With respect to any operations shown in the Schedule, this insurance does not apply to "bodily injury" to any person arising out of practicing for or participating in any sports or athletic contest or exhibition that you sponsor.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" involved practicing for or participating in any sports or athletic contest or exhibition that you sponsor.

**CG 21 01 12 19**                                      © Insurance Services Office, Inc., 2018                                      **Page 1 of 1**

OGIC000154

**COMMERCIAL GENERAL LIABILITY**
**CG 21 06 05 14**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

**CG 21 06 05 14** © Insurance Services Office, Inc., 2013 **Page 1 of 1**

OGIC000155

COMMERCIAL GENERAL LIABILITY
CG 21 32 05 09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

OGIC000156

**COMMERCIAL GENERAL LIABILITY**
**CG 21 47 12 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

OGIC000157

**COMMERCIAL GENERAL LIABILITY**
**CG 21 67 12 04**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

---

CG 21 67 12 04                    © ISO Properties, Inc.,  2003                    **Page 1 of 1**                    ☐

OGIC000158

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

**CG 21 70 01 15**                    © Insurance Services Office, Inc., 2015                    **Page 1 of 1**

OGIC000159

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

**1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

**2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**3.** A reinforced or unreinforced base coat;

**4.** A finish coat providing surface texture to which color may be added; and

**5.** Any flashing, caulking or sealant used with the system for any purpose.

 © ISO Properties, Inc., 2003

OGIC000160

**COMMERCIAL GENERAL LIABILITY**
**CG 22 79 04 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

    a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

    b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

2. Subject to Paragraph **3.** below, professional services include:

    a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

    b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

---

**CG 22 79 04 13**                    © Insurance Services Office, Inc., 2012                    **Page 1 of 1**

OGIC000161

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (WAIVER OF SUBROGATION)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART DESIGNATED SITES
POLLUTION LIABILITY LIMITED COVERAGE PART DESIGNATED SITES
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY DESIGNATED TANKS

**SCHEDULE**

| **Name Of Person(s) Or Organization(s):** |
| --- |
| Automatic status when required by written contract, agreement or permit |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery against the person(s) or organization(s) shown in the Schedule above because of payments we make under this Coverage Part. Such waiver by us applies only to the extent that the insured has waived its right of recovery against such person(s) or organization(s) prior to loss. This endorsement applies only to the person(s) or organization(s) shown in the Schedule above.

OGIC000162

**COMMERCIAL GENERAL LIABILITY**
**CG 24 26 04 13**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

OGIC000163

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY**
**CG 25 03 05 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Designated Construction Project(s):** <br> All Projects |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

**1.** A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

**2.** The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

**4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

OGIC000164

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

**1.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

**2.** Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

**D.** If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

**E.** The provisions of Section **III** – Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

---

Page 2 of 2 © Insurance Services Office, Inc., 2008 **CG 25 03 05 09** ☐

OGIC000165

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY**
**CG 25 04 05 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED LOCATION(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

---

**Designated Location(s):**
All rented, owned and occupied locations other than construction projects.

---

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

---

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which can be attributed only to operations at a single designated "location" shown in the Schedule above:

**1.** A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

**2.** The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

  **a.** Insureds;

  **b.** Claims made or "suits" brought; or

  **c.** Persons or organizations making claims or bringing "suits".

**3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

**4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

---

OGIC000166

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

**1.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

**2.** Such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Section **III** – Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

 © Insurance Services Office, Inc., 2008 **CG 25 04 05 09** ☐

OGIC000167

**COMMERCIAL GENERAL LIABILITY**
**CG 40 15 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CANNABIS EXCLUSION WITH HEMP EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of:

**a.** The design, cultivation, manufacture, storage, processing, packaging, handling, testing, distribution, sale, serving, furnishing, possession or disposal of "cannabis"; or

**b.** The actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "cannabis"; or

**2.** "Property damage" to "cannabis".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **A.1.** or **A.2.** above.

However, Paragraph **A.1.b.** does not apply to "bodily injury" or "property damage" arising out of the actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, or contact with, "cannabis" by:

**(1)** An insured; or

**(2)** Any other person for whom you are legally responsible

but only if the "bodily injury" or "property damage" does not arise out of your selling, serving or furnishing of "cannabis" to any person described above.

**B.** The exclusion in Paragraph **A.** does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of goods or products containing or derived from hemp, including, but not limited to:

**a.** Seeds;

**b.** Food;

**c.** Clothing;

**d.** Lotions, oils or extracts;

**e.** Building Materials; or

**f.** Paper.

**2.** "Property damage" to goods or products described in Paragraph **B.1.** above.

However, Paragraphs **B.1.** and **B.2.** above do not apply to the extent any such goods or products are prohibited under an applicable state or local statute, regulation or ordinance in the state wherein:

**(1)** The "bodily injury" or "property damage" occurs;

**(2)** The "occurrence" which caused the "bodily injury" or "property damage" takes place; or

**(3)** The offense which caused the "personal and advertising injury" was committed;

**3.** "Personal and advertising injury" arising out of the following offenses:

**a.** False arrest, detention or imprisonment; or

**b.** The wrongful eviction from, wrongful entry into, or invasion of the right or private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

OGIC000168

**C.** The following definition is added to the **Definitions** section:

"Cannabis":

**1.** Means:

Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC or cannabinoid is natural or synthetic.

**2.** Paragraph **C.1.** above includes, but is not limited to, any of the following containing such THC or cannabinoid:

  **a.** Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or

  **b.** Any compound, byproduct, extract, derivative, mixture or combination, such as:

    **(1)** Resin, oil or wax;

    **(2)** Hash or hemp; or

    **(3)** Infused liquid or edible cannabis;

  whether or not derived from any plant or part of any plant set forth in Paragraph **C.2.a.**

© Insurance Services Office, Inc., 2018 **CG 40 15 12 19**

OGIC000169

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - ASBESTOS

This endorsement modifies insurance under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury", "personal and advertising injury" or "property damage" arising out of:

1. Inhaling, ingesting or physical exposure to asbestos or goods or products containing asbestos; or

2. The use of asbestos in constructing or manufacturing any goods, product or structure; or

3. The removal, repair, encapsulation, enclosure, abatement or maintenance of asbestos in or from any goods, product or structure; or

4. The manufacture, sale, distribution, transportation, storage or disposal of asbestos or goods or products containing asbestos.

This insurance does not apply to payment for the investigation or defense of any claim, injury, loss, fine, penalty or lawsuit related to any of the foregoing items **1.** thru **4.** Nor do we have a duty to investigate or defend any such claim, injury, loss or lawsuit.

This insurance also does not apply to any loss, cost or expense incurred in complying with any federal, state, or local provision of law regarding the inspection, monitoring, or control of asbestos in any goods, products or structures.

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 70 17** 12 98

OGIC000170

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DAMAGE TO YOUR WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILTIY COVERAGE PART

1. The following is added to **SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** paragraph **1. Insuring Agreement:**

   f. Damages because of "property damage" include damages the insured becomes legally obligated to pay because of "property damage" to "your work" and shall be deemed to be caused by an "occurrence", but only if:

      (1) The "property damage" is the result of work performed on your behalf by a subcontractor(s) that is not a Named Insured;

      (2) The work performed by the subcontractor(s) is within the "products-completed operations hazard"; and

      (3) The "property damage" is unexpected or unintended from the standpoint of the insured.

   We will not be obligated to pay any sums to repair or replace the defective work performed on your behalf by a subcontractor.

2. **The following amendment supersedes all other amendments to Coverage A, Exclusion l.:**

   **Coverage A, Exclusion l.** is replaced by the following:

   l. **Damage To Your Work**

   "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

   This exclusion does not apply to "property damage" to "your work" resulting from work performed on your behalf by a subcontractor and included in the "products-completed operations hazard", however we will not be obligated to pay any sums to repair or replace the defective work performed on your behalf by a subcontractor.

   This endorsement applies only to the Named Insured and no other party.

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 71 21** 05 18

OGIC000171

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DAMAGE TO PROPERTY-BORROWED EQUIPMENT

This endorsement modifies insurance provided under the following**:**

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Under **SECTION 1, COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Item **2. Exclusions j.** is deleted and replaced by the following:

**j.  Damage To Property:**

**(1)** Property you own, rent or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of any real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any real property that must be restored, replaced, or repaired because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to:

**(i)** "property damage" to tools or equipment loaned to you if the tools or equipment are not being used to perform operations at the time of loss; or

**(ii)** "property damage" (other than damage by fire) to premises rented to you or temporarily occupied by you with the permission of the owner including contents of such premises rented to you for a period of seven (7) or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in **Section III - Limits Of Insurance.**

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were not occupied, rented or held for rental by you beyond one year from the date "your work" was completed.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 71 60** 05 18

OGIC000172

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY**
**CG 99 09 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PREMIUM AUDIT NONCOMPLIANCE CHARGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK LIABILITY COVERAGE PART

**SCHEDULE**

| | |
|---|---|
| **Total Advance Premium:** | $ ▮▮▮▮ |
| **Audit Noncompliance Charge Factor:** | UP TO 200% |
| **Number Of Written Attempts To Obtain Audit Information:** | 2 |
| **Reassessment Charge:** | $ 0 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

Paragraph **5.c.** of the **Premium Audit** Condition under **Section IV – Conditions** is replaced by the following:

**c.** The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request. If the first Named Insured fails to comply with this request at the close of an audit period, an Audit Noncompliance Charge will be assessed, and notice will be sent to the first Named Insured.

The additional charge will be determined by multiplying the Total Advance Premium by the Audit Noncompliance Charge Factor indicated in the Schedule of this endorsement. (The following example is for illustration purposes only.)

Example:

Total Advance Premium: $25,000

Audit Noncompliance Charge Factor: 1

Audit Noncompliance Charge: $25,000

**(1)** We will only assess the Audit Noncompliance Charge:

**(a)** For audits conducted after the end of the policy period; and

**(b)** When we have made the number of written attempts indicated in the Schedule of this endorsement to obtain audit information from the first Named Insured.

The due date for the Audit Noncompliance Charge is the date shown as the due date on the bill.

**(2) Subsequent Compliance And Reassessment Charge**

**(a)** The first Named Insured may notify us in writing, prior to the due date on the bill for the Audit Noncompliance Charge, that the Named Insured agrees to comply with the audit request.

**(b)** A Reassessment Charge may apply if this charge is indicated in the Schedule.

**(c)** The first Named Insured must comply with the audit within 30 days of our receipt of the written notification described in Paragraph **(2)(a)** above, and then the Audit Noncompliance Charge will no longer apply. If a Reassessment Charge is indicated in the Schedule of this endorsement, that charge will remain applicable.

**CG 99 09 12 19**             © Insurance Services Office, Inc., 2018             **Page 1 of 2**

OGIC000173

**(d)** If the first Named Insured fails to comply with the premium audit after 30 days of our receipt of the notification described in Paragraph **(2)(a)** above, a subsequent notice will be sent to the first Named Insured indicating that the Audit Noncompliance Charge and the Reassessment Charge (if applicable) will be final. The due date for the Audit Noncompliance Charge and the Reassessment Charge is the date shown as the due date on the bill.

© Insurance Services Office, Inc., 2018 **CG 99 09 12 19**

OGIC000174

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**.

# COMMERCIAL GENERAL LIABILITY
# ARTISAN CONTRACTORS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SCHEDULE**

The coverage provided by this endorsement is summarized below and is intended to provide a general coverage description only. For the details affecting each coverage please refer to the terms and conditions in the endorsements listed.

**The endorsements listed below will automatically be attached to your policy to complete the coverage provided by the Commercial General Liability Endorsement:**

- Additional Insured – Owners, Lessees or Contractors – Scheduled Person Of Organization - CG 20 10
- Contractor's Professional and Pollution Legal Liability – CG 72 02
- Damage To Your Work – CG 71 21
- Damage To Property – Borrowed Equipment – CG 71 60
- Primary And Noncontributory – Other Insurance Condition – CG 20 01
- Waiver of Transfer of Rights – CG 24 04

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 71 68** 05 21

OGIC000175

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY ENDORSEMENT

**THIS ENDORSEMENT PROVIDES CLAIMS MADE COVERAGE AND HAS DIFFERENT REPORTING REQUIREMENTS THAN OTHER PARTS OF THE POLICY. THIS ENDORSEMENT ALSO CONTAINS PROVISIONS WHICH LIMIT THE AMOUNT OF "LEGAL EXPENSES" THAT WE MAY BE RESPONSIBLE TO PAY. "LEGAL EXPENSES" WILL REDUCE EACH APPLICABLE LIMIT OF INSURANCE SHOWN IN THE SCHEDULE OF THIS ENDORSEMENT.**

**NO INSURED WILL, EXCEPT AT ITS OWN COST, VOLUNTARILY MAKE A PAYMENT, ASSUME ANY OBLIGATION, ADMIT LIABILITY OR INCUR ANY EXPENSE WITHOUT OUR WRITTEN CONSENT.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Coverage, exclusions, conditions or definitions contained in the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** do not apply to this endorsement unless specifically outlined below.

## SCHEDULE

| | |
|---|---|
| **"Named Insured":** Mike Burdett Roofing and Exteriors LLC<br>**"Named Insured" Address:**<br>   3420 Horton Rd,  Newtown Square, PA 19073-3418 | |
| **Endorsement Aggregate Limit of Insurance** | **$10,000** |
| **Contractor's Pollution Legal Liability Insurance Aggregate Limit:** | **Included** |
| **Contractor's Pollution Legal Liability Insurance Deductible for Each "Pollution Condition":** | **$500** |
| **"Commencement Date":** (*If left blank, the inception date of this endorsement*) | **2021-10-08** |
| | |
| **Professional Legal Liability Insurance Aggregate Limit:** | **Included** |
| **Professional Legal Liability Insurance Deductible for Each "Professional Loss":** | **$500** |
| **"Contracting Services":** | **All contracting services** |
| **"Professional Services":** | **Value engineering and field changes to design** |
| **"Retroactive Date":** (*If left blank, the inception date of this endorsement*) | **2021-10-08** |
| **"Automatic Extended Reporting Period":** | **90 days** |
| | |
| **Premises Pollution Legal Liability Insurance Aggregate Limit:** | **Excluded** |
| **Premises Pollution Legal Liability Insurance Deductible for Each "Pollution Condition":** | **Excluded** |
| **"Covered Location"(s):**<br>   Location 1 - 3420 Horton Rd, Newtown Square, PA  19073-3418 | |
| **"Retroactive Date":** (*If left blank, the inception date of this endorsement*) | **Excluded** |
| **"Automatic Extended Reporting Period":** | **Excluded** |
| | |
| **"Business Interruption" and "Extra Expense" Aggregate Limit:** | **Excluded** |
| **"Business Interruption" and "Extra Expense" "Deductible Period":** | **Excluded** |
| | |
| **"Pollution Emergency" Telephone Number:** | **1-800-347-4384** |

This endorsement amends the policy to provide Professional Legal Liability and Premises

Pollution Legal Liability Insurance on a claims made and reported basis and Contractor's

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 1 of 21**

OGIC000176

Pollution Legal Liability Insurance on an occurrence basis, when there is an applicable Limit of Insurance shown in the SCHEDULE. The terms and conditions of this endorsement govern the scope of coverage and your and our duties. Various provisions in this endorsement restrict coverage. Read the entire endorsement carefully to determine your rights and duties and what is and is not covered. The terms, conditions, exclusions, and limits of insurance set forth in this endorsement apply only to the coverage provided by this endorsement.

If this endorsement does not contain a cancellation provision, the terms and conditions of the cancellation provision of the policy, and any amendment to such terms, are incorporated herein and shall apply to coverage as is afforded by this endorsement, unless specifically stated otherwise in an endorsement(s) attached hereto.

Throughout this endorsement, the words "you" and "your" refer to the "named insured" under this endorsement. The words "we", "us" and "our" refer to the company providing this coverage. The word "insured" means any person or organization qualifying as such under **C. Who Is An Insured**. The term "policy" refers to the primary policy to which this endorsement is attached.

Words and phrases that appear in quotation marks have special meaning. Refer to **G. Definitions**. To the extent any words or phrases used in this endorsement are defined elsewhere in the policy, such definitions provided elsewhere do not apply to give meaning to the words or phrases used in this endorsement.

## SECTION IV -- INSURANCE

### A. Coverage

**1. Contractor's Pollution Legal Liability Insurance**

    **a.** We will pay those sums that you become legally obligated to pay as damages or "cleanup costs" because of "loss" caused by a "pollution condition" resulting from "contracting services", provided that:

        **(1)** The "pollution condition" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "loss" occurs during the endorsement period;

        **(3)** The "pollution condition" is on, at, under or migrating from a "job site";

        **(4)** The "pollution condition" results from "contracting services" rendered on or after the "commencement date" shown in the SCHEDULE of this endorsement and prior to the expiration of the endorsement period; and

        **(5)** The "pollution condition" results in a "claim" against you, and the "claim" is brought and maintained at all times in the "coverage territory."

    **b.** We have the right and duty to defend you against any "claim" seeking damages or "cleanup costs" because of "loss" to which **Contractor's Pollution Legal Liability Insurance** applies. However, we have no duty to defend you against any "claim" to which **Contractor's Pollution Legal Liability Insurance** does not apply.

    **c.** When we have a duty to defend, we will pay on your behalf "legal expenses" incurred as a result of a "claim" against you seeking damages or "cleanup costs" because of "loss" to which **Contractor's Pollution Legal Liability Insurance** applies.

    **d.** "Legal expenses" apply to and reduce the applicable Limit of Insurance shown in the SCHEDULE of this endorsement.

    **e.** We may, at our discretion, investigate any "occurrence" or "pollution condition" and settle any "claim" that may result. However, the Endorsement Aggregate Limit of Insurance shown on the SCHEDULE is the most we will pay for damages, "cleanup costs" and "legal expenses" under **Contractor's Pollution Legal Liability Insurance**. Our right and duty to defend under this endorsement ends once the applicable Limit of Insurance shown in the SCHEDULE has been used up in the payment of "legal expenses" or settlements, judgments or any combination thereof, to which **Contractor's Pollution Legal Liability Insurance** applies.

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

OGIC000177

**f.** No other obligation or liability to pay sums or perform acts or services is covered under this endorsement.

2. **Professional Legal Liability Insurance**

**a.** We will pay those sums that you become legally obligated to pay because of a "claim" resulting from an act, error, or omission in "professional services", provided that:

**(1)** A Limit of Insurance is shown as included on the SCHEDULE under **Professional Legal Liability Insurance**;

**(2)** The "claim" arises out of "professional services" rendered on or after the "retroactive date" and prior to the expiration of the endorsement period;

**(3)** The "claim" is not covered under **Contractor's Pollution Legal Liability Insurance**; and

**(4)** The "claim" is first made against the insured during the endorsement period and reported to us, in writing, during the endorsement period or, where applicable, the "automatic extended reporting period" or the "optional extended reporting period".

**b.** We have the right and duty to defend you against any "claim" seeking "professional loss" to which **Professional Legal Liability Insurance** applies, including the right to select counsel, even if any of the allegations are groundless, false or fraudulent. However, we have no duty to defend you against any "claim" to which **Professional Legal Liability Insurance** does not apply.

**c.** When we have a duty to defend, we will pay on your behalf "legal expenses" incurred as a result of a "claim" against you seeking "professional loss" to which **Professional Legal Liability Insurance** applies.

**d.** "Legal expenses" apply to and reduce the applicable Limit of Insurance shown in the SCHEDULE of this endorsement.

**e.** We may, at our discretion, investigate any "professional loss"

and settle any "claim" that may result. However, the Endorsement Aggregate Limit of Insurance shown on the SCHEDULE is the most we will pay for damages or "legal expenses" under **Professional Legal Liability Insurance**. Our right and duty to defend under this endorsement ends once the Endorsement Aggregate Limit of Insurance shown in the SCHEDULE has been used up in the payment of "legal expenses", settlements or judgments, or any combination thereof, to which **Professional Legal Liability Insurance** applies.

**f.** No other obligation or liability to pay sums or perform acts or services is covered under this endorsement.

3. **Premises Pollution Legal Liability Insurance**

**a.** We will pay those sums that you become legally obligated to pay as damages or "cleanup costs" because of "loss" caused by a "pollution condition", provided that:

**(1)** The "loss" is caused by a "pollution condition" on, at, under or migrating from a "covered location";

**(2)** The "pollution condition" results in a "claim" against you;

**(3)** The "pollution condition" takes place, and the "claim" is brought and maintained at all times, in the "coverage territory" and "covered locations";

**(4)** The "claim" is first made against you during the endorsement period and reported by you to us, in writing, during the endorsement period or, where applicable, the "automatic extended reporting period" or the "optional extended reporting period".

**b.** We have the right and duty to defend you against any "claim" seeking damages or "cleanup costs" because of "loss" to which **Premises Pollution Legal Liability Insurance** applies. However, we have no duty to defend you against any "claim" to which **Premises Pollution Legal Liability Insurance** does not apply.

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 3 of 21**

OGIC000178

c. When we have a duty to defend, we will pay on your behalf "legal expenses" incurred as a result of a "claim" against you seeking damages or "cleanup costs" because of "loss" to which **Premises Pollution Legal Liability Insurance** applies.

d. "Legal expenses" apply to and reduce the applicable Limit of Insurance shown in the SCHEDULE of this endorsement.

e. We may, at our discretion, investigate any "pollution condition" and settle any "claim" that may result. However, the Endorsement Aggregate Limit of Insurance shown on the SCHEDULE is the most we will pay for damages, "cleanup costs" and "legal expenses" under **Premises Pollution Legal Liability Insurance**. Our right and duty to defend under this endorsement ends once the Endorsement Aggregate Limit of Insurance shown in the SCHEDULE has been used up in the payment of "legal expenses", settlements or judgments, or any combination thereof, to which **Premises Pollution Legal Liability Insurance** applies.

f. No other obligation or liability to pay sums or perform acts or services is covered under this endorsement.

4. **Business Interruption and Extra Expense**

We will pay on behalf of the insured "business interruption" and "extra expense", including "rental value", solely as a result of a "claim" for a "pollution condition" covered under **Premises Pollution Legal Liability Insurance** and not otherwise excluded under the terms and conditions of this endorsement; provided that a limit of liability is shown on the SCHEDULE under Business Interruption and Extra Expense.

B. **Exclusions**

1. With respect to **Contractor's Pollution Legal Liability Insurance**, **Professional Legal Liability Insurance** and **Premises Pollution Legal Liability Insurance**, this insurance does not apply to:

a. **Workers Compensation and Similar Laws**

Any obligation of the insured under any workers' compensation, unemployment compensation or disability benefits law or similar law.

b. **Hostile Acts**

A "pollution condition", "loss" or "claim" arising from any consequence, whether direct or indirect, of war (whether declared or not declared), invasion, act of foreign enemy, hostilities, civil war, rebellion, revolution, insurrection, military action, usurped power, strike, riot or civil commotion.

c. **Fines, Penalties, Punitive and Multiplied Damages**

Any actual or alleged "claim" or liability for, or amount consisting of, a fine, penalty, punitive damages, exemplary damages or multiplied damages.

d. **Equitable and Other Types of Relief**

Any actual or alleged "claim" or liability for equitable relief, restitution or the return of money for work or services.

e. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data. As used in this exclusion, electronic data means information, facts or programs stores as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

f. **Criminal Acts**

"Loss" arising out of a criminal act committed by or at the direction of the insured.

g. **Defective Drywall**

The existence of, exposure to, required removal or abatement of:

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

OGIC000179

**(1)** defective drywall, which includes, but is not limited to drywall that emits gases, vapors, or fumes or any other irritant or contaminant; and

**(2)** any other building component affected by defective drywall, including drywall that emits gases, vapors, fumes, or any other irritant or contaminant.

For purposes of this exclusion, drywall includes, but is not limited to any product known as gypsum board, wall board, and plaster board, drywall manufactured outside the United States and used for interior building material.

2. With respect to **Contractor's Pollution Legal Liability Insurance** and **Premises Pollution Legal Liability Insurance**, this insurance does not apply to:

**a. Known Circumstances or Conditions**

**(1)** A "pollution condition", "loss" or "claim" known by any insured prior to the endorsement period;

**(2)** A circumstance or condition known by any insured prior to the inception of the endorsement period where an insured should have reasonably foreseen that a "pollution condition", "loss" or "claim" would result.

**b. Employers Liability**

"Bodily injury" to

**(1)** An "employee" of any insured arising out of and in the course of employment by any insured or the performance of duties related to the conduct of any insured's business; or

**(2)** To the spouse (including the domestic partner or civil union partner recognized under the law of any applicable jurisdiction in the "coverage territory"), child, parent, brother or sister of that "employee" as a consequence of (1) above.

This exclusion applies whether any insured may be liable as an employer or in any other capacity

and to any obligation to share damages with or repay someone else who must pay damages as a result of the injury.

This exclusion does not apply to liability assumed by you under an "insured contract", provided that:

**(1)** The "insured contract" is in writing and signed by you;

**(2)** The "pollution condition" first commenced after you signed the "insured contract"; and

**(3)** The "pollution condition" is caused, in whole or in part, by you or those acting on your behalf.

**c. Contractual Liability**

"Loss" for which any insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement This exclusion does not apply to liability for damages:

**(1)** That you would have in the absence of the contract or agreement; or

**(2)** Assumed by you in a contract or agreement that is an "insured contract", provided that:

**(a)** The "insured contract" is in writing and signed by you;

**(b)** The "pollution condition" first commenced after you signed the "insured contract"; and the "pollution condition" is caused, in whole or in part, by you or by those acting on your behalf.

**d. Goods, Products or Materials**

A "pollution condition", "loss" or "claim" arising out of any goods, materials or products manufactured, sold, distributed, designed, handled, supplied, altered, repaired or disposed of by any insured or by others under license or trading under an insured's name.

**e. Intentional Acts**

A "pollution condition", "loss" or "claim" arising out of any actual or alleged:

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 5 of 21**

OGIC000180

**(1)** Intentional disregard of, or non-compliance with, any statute, regulation, ordinance, law or order by or at the direction of any insured or its agent; or

**(2)** Fraudulent, dishonest or malicious conduct by or at the direction of any insured or its agent.

**e. Professional Liability**

A "pollution condition", "loss" or "claim" arising out of the rendering of or failure to render professional services.

**f. Asbestos**

Any "loss", "pollution condition", cost, expense or "claim" which would not have occurred, in whole or in part, but for the actual, alleged or threatened existence of, presence of, inhalation of, ingestion of, use of, handling of, contact with or exposure to asbestos in any form, including products containing asbestos, asbestos fibers, asbestos dust and asbestos containing materials. This exclusion applies regardless of:

**(1)** The cause of the "loss", "pollution condition", cost, expense or "claim", or

**(2)** Whether the "loss", "pollution condition", cost, expense or "claim" is related to any product, services or operations of an insured.

**g. Lead**

Any "loss", "pollution condition", cost, expense or "claim" which would not have occurred, in whole or in part, but for the actual, alleged or threatened existence of, presence of, inhalation of, ingestion of, use of, handling of, contact with or exposure to lead, lead-based paint or any material containing lead or lead-based paint. This exclusion applies regardless of:

**(1)** The cause of the "loss", "pollution condition", cost, expense or "claim"; or

**(2)** Whether the "loss", "pollution condition", cost, expense or "claim" is related to any product,

services or operations of an insured.

**h. Nuclear or Radioactive Waste and Materials**

A "pollution condition", "loss" or "claim" which would have not occurred, in whole or in part, but for the actual, alleged or threatened contact with, exposure to, existence of or presence of any nuclear or radioactive material, waste or condition.

**i. Non-cumulation**

Any "occurrence", "claim", "loss" or "pollution condition", including the same, related, repeated or continuous "pollution condition"(s), that was:

**(1)** Reported to us or an affiliate of us under a endorsement or endorsement issued by us or an affiliate of us prior to the inception of the endorsement period of this endorsement; or

**(2)** Reported to another Insurance company or its agent prior to the inception of the endorsement period of this endorsement.

**j. Insured Versus Insured**

Any "claim" by an insured against another insured.

**k. Related Persons or Organizations**

Any "claim" by a person or organization:

**(1)** That wholly or partially owns, operates, manages or controls any insured;

**(2)** In which any insured has a direct or indirect ownership interest;

**(3)** That is controlled, operated or managed by any insured; or

**(4)** That is an affiliate of any insured;

but this exclusion will not apply to a "claim" made by an "additional insured".

**l. Mold Matter**

A "pollution condition", "loss" or "claim" which would have not occurred, in whole or in part, but for

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 6 of 21**

OGIC000181

the actual, alleged or threatened contact with, exposure to, existence of or presence of any "mold matter".

m. **Communicable Diseases**

Based upon or arising out of the exposure to infected individuals or animals, or contact with bodily fluids of infected individuals or animals.

3. With respect to **Contractor's Pollution Legal Liability Insurance**, this insurance does not apply to:

a. **Transportation**

A "pollution condition", "loss" or "claim" arising out of:

(1) The ownership, operation, maintenance, use (including "loading or unloading") or entrustment to others of any "auto", "mobile equipment", aircraft, watercraft, rolling stock or other mode of transportation, including any machinery or apparatus attached thereto or any cargo carried thereby; or

(2) Waste or materials transported, removed or taken by anyone beyond the boundaries of the "job site".

Paragraph (1) of this exclusion does not apply to a "pollution condition", "loss" or "claim" arising out of the use of an "auto" or "mobile equipment" within the boundaries of a "job site", if such use is solely and directly related to "contracting services".

b. **Faulty Workmanship/Insured's Work**

Any "claim" for or amounts consisting of the cost to repair or replace faulty workmanship, construction, fabrication, installation, assembly, erecting, manufacturing or remediation, if such faulty workmanship, construction, fabrication, installation, assembly, erecting, manufacturing or remediation was performed, in whole or in part, by or on behalf of an insured.

c. **Property**

"Property damage" to:

(1) Property that is or was at any time owned, rented or occupied by any insured; or

(2) Personal property in the care, custody or control of any insured.

4. With respect to **Professional Legal Liability Insurance**, this insurance does not apply to:

a. **Asbestos**

Arising out of the existence of, require removal or abatement of asbestos, in any form, including but not limited to products containing asbestos, asbestos fibers, asbestos dust and asbestos containing materials.

b. **Lead and Lead-Based Paint**

Arising out of the existence of, required removal or abatement of any lead and/or lead-based paint, in any form, including, but not limited to, products containing lead, lead dust and lead containing materials.

c. **Contractual Liability**

Arising from the insured's:

(1) Assumption of liability in a contract or agreement; or

(2) Breach of contract or agreement.

This exclusion does not apply to liability that the insured would have in the absence of the contract or agreement.

d. **Discrimination**

Arising from any discrimination on the basis of age, color, race, sex, creed, national origin, marital status, disability or sexual preference, unless such "claim" is based upon or arises out of the failure to make a reasonable accommodation for a disability in violation of the Americans With Disabilities Act 42 U.S.C. 12101, et seq., as amended.

e. **Employer's Liability**

Arising from any injury to:

(1) any employee, director, officer, partner or member of any insured or "leased worker" of any insured, if such injury arises in the course of:

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

OGIC000182

**(a)** employment by an insured; or

**(b)** performing duties related to the conduct of an insured's business; or

**(2)** the spouse, child, parent, brother or sister of such employee, director, officer, partner or member of any insured or "leased worker" of the insured, as a consequence of any injury to any of the persons described in Paragraph **(1)**. above.

This exclusion does not apply to liability assumed by the "named insured" in a contract or agreement that is an "insured contract".

**f. Express Warranty and Guaranty**

Arising from any express warranty or guaranty. This exclusion does not apply to any warranty or guarantee by the insured that the insured's "professional services" are in conformity with the standard of care that would be applicable in the absence of such express warranty or guarantee.

**g. Fiduciary Liability**

Arising from any involvement by an insured as:

**(1)** An officer, director, partner, member, trustee, employer or employee of a business enterprise not shown in the SCHEDULE or any charitable organization, or pension, welfare, profit sharing, mutual or investment fund or trust; or

**(2)** A fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto or any other employee benefit plan.

**h. Insurance and Suretyship**

Arising out of the requiring, obtaining, maintaining, advising as to or the failure to require, obtain, maintain or advise as to any form of Insurance, suretyship or bond, either with respect to any insured or any other person or organization.

**i. Insured Versus Insured**

Any "claim" by an insured against another insured. This exclusion does not apply to a "claim" by a "client".

**j. Intentional and Dishonest Acts**

Arising from any

**(1)** Intentional disregard of or non-compliance with, any statute, regulation, ordinance, law or order by or at the direction of the insured or its agent; or

**(2)** Actual or alleged fraudulent, dishonest or malicious conduct by the insured.

This exclusion does not apply to the insured that did not allegedly commit or allegedly participate in committing any of the forgoing described above.

**k. Joint Venture or Co-Venture**

Arising out of an insured's participation in a joint venture or co-venture. This exclusion does not apply to the "named insured's" liability resulting from the rendering or failure to render "contracting services" or "professional services" as a partner or member of a joint venture or co-venture.

**l. Known Circumstances or Conditions**

Arising from:

**(1)** A "claim" or "professional loss" known by a "responsible insured" prior to the inception of the "endorsement period"; or

**(2)** A circumstance or condition known by a "responsible insured" prior to the inception of the "endorsement period" where the "responsible insured" should have reasonably foreseen that a "claim", "pollution condition" or "professional loss" would result.

**m. Mold Matter**

Arising out of the existence of, exposure to, required removal or abatement of "mold matter", in any form including but not limited to any such cause or condition involving the presence, discharge or infiltration of moisture, vapor, water or any other liquid, or any damage

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 8 of 21**

OGIC000183

related thereto. For purposes of this exclusion, "mold matter" means mold, mildew or any type or form of fungus, including myotoxins, spores or by-products produced or released by fungi.

**n.** **Notices to Previous Insurers**

Arising from any "claim", act, error or omission in "professional services" or other circumstance reported by an insured under any prior endorsement issued by a person or organization other than us.

**o.** **Off-Site Waste Liability**

Arising out of any waste or materials transported beyond the boundaries of a "job site".

**p.** **Personal Injury**

Arising from the false arrest, humiliation, harassment, detention, imprisonment, wrongful entry or eviction or other invasion of private occupancy, malicious prosecution, abuse of process, libel, slander, harassment, or other defamatory or disparaging material, or a publication or an utterance in violation of an individual's right of privacy.

**q.** **Products**

Arising from any goods, materials or products designed, manufactured, sold, handled, distributed and/or supplied by any insured or by others under license or trade name from any insured.

**r.** **Professional Liability**

Arising out of the rendering of or failure to render professional services by the insured, unless there is a limit of insurance shown on the SCHEDULE for **Professional Legal Liability Insurance**.

**s.** **Property**

Arising out of:

**(1)** Any real property owned by the "named insured"; or

**(2)** for the repair, replacement or restoration of any personal property in the care, custody or control of the insured, other than

personal property owned or leased by, or in the care, custody or control of, the "client".

**t.** **Radioactive / Nuclear Material**

Arising out of:

**(1)** The radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof;

**(2)** Ionizing radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the processing or reaction of nuclear fuel;

**(3)** The existence, required removal or abatement of naturally occurring radioactive materials including, but not limited to, radon;

**(4)** High-level radioactive waste (spent nuclear fuel or the highly radioactive waste produced if spent fuel is reprocessed), uranium milling residues and waste with greater than specified quantities of elements heavier than uranium; or

**(5)** Mixed Waste as defined in Title 40 Code of Federal Regulations, Part 266.210; however, this paragraph 5. does not apply to Mixed Waste that contains Waste as defined in Title 10 Code of Federal Regulations, Part 61.2, including, but not limited to the actual, alleged or threatened exposure of any person(s) or property to any such matter.

**u.** **Retroactive Date**

A "claim" resulting from an act, error, or omission in "professional services" that commenced before the "retroactive date" shown in the **SCHEDULE** of this endorsement.

**v.** **Related Entities and Individuals**

Arising from a "claim" by an entity or individual

**(1)** that wholly or partially owns, operates or manages an insured;

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 9 of 21**

OGIC000184

**(2)** in which an insured has a direct or indirect ownership interest;

**(3)** that is controlled, operated or managed by an insured; or

**(4)** that is an affiliate of an insured;

but this exclusion will not apply to a "claim" made by an "additional insured".

**w. Securities Violation**

Arising from any violation of the Securities Act of 1933 as amended or the Securities Exchange Act of 1934 as amended or any state Blue Sky or securities law or similar State, Federal or other governmental law, statute and any regulation or order issued pursuant to any of the foregoing statutes.

**x. Transportation**

Arising from the ownership, maintenance, use, operation, loading or unloading of any motorized land vehicle, aircraft, watercraft or rolling stock, including any machinery or apparatus attached thereto or any cargo carried thereby, beyond the boundaries of a "job site".

**4.** With respect to **Premises Pollution Legal Liability Insurance**, this insurance does not apply to:

**a. Transportation**

A "pollution condition", "loss" or "claim" arising out of:

**(1)** The ownership, operation, maintenance, use (including "loading or unloading") or entrustment to others of any "auto", "mobile equipment", aircraft, watercraft, rolling stock or other mode of transportation, including any machinery or apparatus attached thereto or any cargo carried thereby; or

**(2)** Waste or materials transported, removed or taken by anyone beyond the boundaries of a "covered location".

**b. Retroactive Date**

A "loss" or "claim" arising out of a "pollution condition" that commenced before the "retroactive date" shown in the **SCHEDULE** of this endorsement. For the purpose

of this exclusion, a "pollution condition" that commenced before the "retroactive date" shown in the SCHEDULE under **Premises Pollution Legal Liability Insurance** of this endorsement includes any dispersal, migration or further movement of such "pollution condition" on or after the "retroactive date".

**c. Divested Property**

Any "claim" or "loss" arising out of "pollution condition" on, at, under or migrating from a "covered location" where the actual or alleged "pollution condition" commenced after the time the "covered location" is sold, given away or abandoned by an insured, or is condemned.

**d. Property**

"Property damage" to:

**(1)** Property that is or was at any time owned, rented or occupied by any insured; or

**(2)** Personal property in the care, custody or control of any insured.

Paragraph **(1)** of this exclusion does not apply to "cleanup costs" because of "environmental damage" caused by a "pollution condition" on, at, under or migrating from a covered location.

**e. Underground Storage Tanks**

A "pollution condition", "loss" or "claim" arising out of the past or current existence of an "underground storage tank" on, at, under or migrating from a "covered location".

**f. Material Change in Use or Operations**

A "pollution condition", "loss" or "claim" arising out of a material change in the use of, or a material change in the operations at, any "covered location" from those set forth by any insured in the Application or related materials as of the inception date of the endorsement period of this endorsement.

**C. Who Is An Insured**

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 10 of 21**

OGIC000185

1. Insured means each of the following:

   a. Any "named insured" and any current or former director, partner, member, executive officer, employee or "leased worker" of the "named insured", but solely while acting within the course and scope of his/her duties as such.

   b. Solely with regard to **Contractor's Pollution Legal Liability Insurance**, the "client", but only:

      (1) if the "named insured" is required to include the "client" as an additional insured in a written contract in effect during the endorsement period and signed by the "named insured" prior to the first commencement of the "pollution condition"; and

      (2) with respect to the "client's" vicarious liability resulting from the "named insured's" "contracting services".

      (3) Any Insurance afforded to the "client" under the terms and conditions of this endorsement will be limited to the lesser of the amount of the limits of insurance required by such written contract and the limits of insurance under this endorsement. In no event will we be liable for any amounts in excess of the limits of insurance shown on the SCHEDULE.

      In the event of the insured's bankruptcy, the trustees of the insured and in the event of the insured's death or incapacity, the insured's legal representatives or executors, but only with respect to each such trustee's, representative's or executors' vicarious liability resulting from the "named insured's" "contracting services" or "professional services".

   c. Any "additional insured", but only as respects "claims" against such person or entity for acts, errors or omissions of the "insured".

**D. Limits of Insurance**

   1. The **Endorsement Aggregate Limit** of Insurance shown in the SCHEDULE of this endorsement and the rules below establish the most we will pay regardless of the number of:

      a. Insureds;

      b. "Claim"(s);

      c. Persons or organizations making "claim"(s);

      d. Governmental actions taken with respect to "cleanup costs";

      e. "Pollution condition"(s) or

      f. "Professional loss".

   2. The **Endorsement Aggregate Limit** of Insurance shown in the SCHEDULE of this endorsement is the most we will pay for the sum of all damages, "cleanup costs" and "legal expenses" for which insurance is afforded under **Contractor's Pollution Legal Liability Insurance** for each "pollution condition" and in the aggregate. All "loss" arising out of the same, related, repeated or continuous "pollution condition"(s) shall be deemed to arise out of a single "pollution condition."

   3. The **Endorsement Aggregate Limit** of Insurance shown in the SCHEDULE of this endorsement is the most we will pay for all "professional loss" afforded under **Professional Legal Liability Insurance** for each "professional loss" and in the aggregate. If **Professional Legal Liability Insurance** is not listed as 'included' in the SCHEDULE, then **Professional Legal Liability Insurance** is not afforded. All "professional loss" arising out of the same, related, repeated or continuous act(s), error(s) or omission(s) in rendering or failing to render "professional services" is deemed to arise out of a single act, error or omission.

   4. The **Endorsement Aggregate Limit** of Insurance shown in the SCHEDULE of this endorsement is the most we will pay for all damages, "cleanup costs" and "legal expenses" for which insurance is afforded under **Premises Pollution Legal Liability Insurance** for each "pollution condition" and in the aggregate. All "loss" arising out of the same, related, repeated or continuous "pollution condition"(s) shall be deemed to arise out of a single "pollution condition".

   5. The "Business Interruption" and "Extra Expense" Limit shown in the

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 11 of 21**

OGIC000186

SCHEDULE of this endorsement is the most we will pay for all "business interruption" and "extra expense", including "rental value" for which insurance is afforded under "business interruption" and "extra expense" coverage. This limit is part of and not in addition to the **Endorsement Aggregate Limit** of Insurance.

6. **Insurance Under Multiple Policies**

   a. Notwithstanding anything to the contrary in this endorsement or any other endorsement issued by us or a company affiliated with us, under no circumstances will more than one endorsement issued by us or a company affiliated with us apply to:

      (1) any "loss", "pollution condition" or "professional loss" that occurs or continues through more than one endorsement period of two or more policies (including this endorsement) issued by us or a company affiliated with us; or

      (2) "claim"(s) and "loss"(es) arising out of the same, related, repeated or continuous "pollution condition" or "professional loss".

   b. Subject to paragraph **c.** below, if more than one endorsement issued by us or a company affiliated with us would otherwise apply to any "loss", "pollution condition" or "professional loss" that occurs or continues through more than one endorsement period of two or more policies (including this endorsement) issued by us or a company affiliated with us, the only endorsement that will respond is the endorsement with the earliest inception date. No other endorsement will respond, even if the limits of the endorsement with the earliest inception date have been impacted or exhausted by payment(s) by us.

   c. The most we will pay for the total of all "claim"(s) and "loss"(es) arising out of the same, related, repeated or continuous "pollution condition"(s) or "professional loss"(s) under all policies issued by us or a company affiliated with us is the Each "Pollution Condition" Limit of Insurance or Each "Professional

Loss" Limit of Insurance set forth in the endorsement with the earliest inception date of all applicable policies issued by us or a company affiliated with us.

E. **Deductible**

   1. We will not pay any damages, "cleanup costs", "professional loss", "legal expenses", business interruption" or "extra expense" until the amount of damages, "cleanup costs", "professional loss", "legal expenses", "business interruption" or "extra expense" paid by the Named Insured exceeds the applicable deductible shown in the SCHEDULE.

   2. The deductible shall be satisfied by monetary payments by the Named Insured of damages, "cleanup costs", "professional loss", "legal expenses", business interruption" or "extra expense". The Named Insured shall make payments within the deductible to the appropriate parties as designated by us.

   3. The deductible shall not reduce the limit of liability shown in the SCHEDULE.

F. **Conditions**

   1. **Bankruptcy**

      Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this endorsement.

   2. **Legal Action Against Us**

      No person or organization has a right under this endorsement:

      a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

      b. To sue us on this endorsement unless all of its terms have been fully complied with.

      A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this endorsement or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 12 of 21**

OGIC000187

**3. Insurance Under Two or More Coverages**

If Insurance is available under **Contractor's Pollution Legal Liability Insurance, Professional Legal Liability Insurance** or **Premises Pollution Legal Liability Insurance** and also available under "other intra-endorsement Insurance" for the same "loss", damage or injury, our obligations are limited as follows:

   a. Any Insurance available under **Contractor's Pollution Legal Liability Insurance, Professional Legal Liability Insurance** or **Premises Pollution Legal Liability Insurance** is primary, and there will be no contribution from or concurrent coverage with "other intra-endorsement Insurance" that would otherwise be applicable; and

   b. Any available "other intra-endorsement Insurance" is excess over any Insurance available under **Contractor's Pollution Legal Liability Insurance, Professional Legal Liability Insurance** or **Premises Pollution Legal Liability Insurance** including amounts within the Deductible shown in the SCHEDULE of this endorsement.

   c. When "other intra-endorsement Insurance" is excess, we will have no duty under "other intra-endorsement Insurance" to defend you against any "claim" if we have the duty to defend you under **Contractor's Pollution Legal Liability Insurance, Professional Legal Liability Insurance** or **Premises Pollution Legal Liability Insurance.**

   d. If two or more of this endorsement's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**4. Duties in the Event of an "Occurrence", "Pollution Condition", "Professional Loss", "Loss" or "Claim"**

   a. No insured will, except at its own cost, voluntarily make a payment, assume any obligation, admit liability, or incur any expense without our prior written consent.

   b. The insured must see to it that we are notified as soon as practicable of any "occurrence", "pollution condition", "loss" or act, error or omission in "professional services" which may result in a "claim". To the extent possible, notice should include:

   (1) How, when and where the "occurrence", "pollution condition", "loss" or act, error or omission in "professional services" took place;

   (2) The names and addresses of any person involved and/or having knowledge of the "occurrence", "pollution condition", "loss" or act, error or omission in "professional services";

   (3) The "contracting services" that may have caused such "pollution condition"; and

   (4) The nature of any resulting harm, injury or damage.

   c. If a "claim" is made or brought against an insured, the insured must:

   (1) Immediately record the specifics of the "claim" and the date it was received;

   (2) Notify us as soon as practicable;

   (3) Provide written notice of the "claim" as soon as practicable;

   (4) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with a "claim";

   (5) Authorize us to obtain records and other information;

   (6) Cooperate with us in the investigation, settlement or defense of the "claim"; and

   (7) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "loss" to which the Insurance under this endorsement applies;

   (8) With respect to **Professional Legal Liability Insurance**, the

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 13 of 21**

OGIC000188

insured must also provide the date and details of all actual and alleged acts, errors or omissions in "professional services" which took place, along with the specific nature, date and extent of any injury or damage which has been sustained, copies of any contracts that have been entered into by any insured that are related to the "professional services" and details explaining how the "insured" first became aware of the circumstance.

**d.** In the case of a "pollution emergency", the insured must report any claim or potential claim as soon as practicable by contacting us at the telephone number specified in the SCHEDULE.

**5. Concealment, Misrepresentation or Fraud**

This endorsement is void in any case of fraud by you as it relates to this endorsement at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This endorsement;

**b.** The "covered location";

**c.** Your interest in the "covered location"; or

**d.** A "claim" under this endorsement.

**6. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this endorsement at any time during the endorsement period and up to three years afterward.

**7. Liberalization**

If we adopt any revision that would broaden the coverage under this endorsement without additional premium within 45 days prior to or during the endorsement period, the broadened coverage will immediately apply to this endorsement.

**8. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this endorsement has rights to recover

damages from another, those rights are transferred to us to the extent of our payment. If the insured has rights to recover all or part of any payment we have made under this endorsement, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. Subrogation**

In the event of any payment under this endorsement, we will be subrogated to all of the insured's rights of recovery against any person or organization and the insured will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured will do nothing at any time to prejudice our subrogation rights. However, we waive our right(s) of recovery against any person or organization if and to the extent the "named insured" has agreed to waive its right(s) of recovery against such person or organization in a written contract signed by the "named insured" prior to:

**a.** The first commencement of a "pollution condition" out of which the "claim" arises under **Contractor's Pollution Legal Liability Insurance**, or

**b.** The act, error or omission in "professional services" out of which the "claim" arises under **Professional Legal Liability Insurance**.

**G. Definitions**

**1.** "Additional insured" means any person or entity that the insured has agreed in writing to add as an "additional insured" under the Endorsement, prior to the commission of any act for which such person or entity would be provided coverage under the endorsement, but only to the extent the insured would have been liable and coverage would have been afforded under the terms and conditions of the endorsement had such "claim" been made against the "insured".

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 14 of 21**

OGIC000189

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle Insurance or motor vehicle registration law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Automatic Extended reporting period" means the 90 day period of time set forth under the Extended Reporting Periods section

**4.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.** "Business Interruption" means the sum of the following:

   **a.** Net income, which is net profit, if any, that would have been earned before taxes (or if there is a net loss before taxes, the net loss is deducted), and

   **b.** Continuing normal operating expenses incurred excluding payroll not deducted in a. above,

due to the reasonably and necessary suspension of the insured's operations during the "period of restoration" at a "covered location".

**6.** "Claim" means a lawsuit or governmental action alleging legal liability on the part of the insured.

**7.** "Cleanup costs" means

   **a.** reasonable and necessary costs, charges and expenses incurred, with our prior written consent, in the investigation, assessment, removal, disposal, abatement, containment, treatment, remediation (including the associated testing and monitoring) or neutralization of a "pollution condition", to the extent required by "environmental laws", required by a "licensed site professional" or required to satisfy the insured's obligations under a federal or state cleanup program;

   **b.** Reasonable and necessary fees charged by an attorney designated or consented to by us incurred in connection with any such "cleanup costs";

**c.** Reasonable and necessary "restoration costs";

**d.** Reasonable and necessary "mitigation costs"; and/or;

**e.** Reasonable and necessary expenses incurred to respond to an imminent and substantial endangerment to the public health or welfare or to the environment because of a "pollution condition"; provided that, as a condition precedent to coverage, the "named insured" shall forward written notice to us of any action taken and expense incurred pursuant to this section as soon as practicable after any such "cleanup costs" have been incurred or assumed.

**8.** "Client" means the person or organization that directly hires the "named insured", by written contract signed by the "named insured", to render "contracting services" and for whom the "named insured" renders such services.

**9.** "Commencement date" means the date listed under "commencement date" on the SCHEDULE for each applicable coverage.

**10.** "Contracting services" means those contracting operations performed by you or on your behalf as disclosed to us as of the inception of the endorsement period, or as disclosed to us during the endorsement period and approved by us, in writing, in our sole and absolute discretion.

**11.** "Coverage territory" means the United States and its territories and possessions.

**12.** "Covered location" means each location shown in the SCHEDULE of this endorsement and all newly acquired locations during the endorsement period which are disclosed to us in writing during the endorsement period.

**13.** "Damages" means a monetary judgment, award or settlement. The term "damages" shall not include or mean:

   **a.** future profits, restitution, disgorgement of unjust enrichment or profits by an insured, or the costs of complying with orders granting injunctive or equitable relief;

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 15 of 21**

OGIC000190

b. return or offset of fees, charges, or commissions charged by or owed to an insured for goods or services already provided or contracted to be provided;

c. taxes or loss of tax benefits;

d. fines, sanctions or penalties;

e. punitive or exemplary damages, or any damages which are a multiple of compensatory damages, unless insurable by law in any applicable venue that most favors coverage for such punitive, exemplary or multiple damages;

f. discounts, coupons, prizes, awards or other incentives offered to the insured's customers or clients;

g. liquidated damages, but only to the extent that such damages exceed the amount for which the insured would have been liable in the absence of such liquidated damages agreement; or

h. any amounts for which the insured is not liable, or for which there is no legal recourse against the insured.

14. "Deductible period" means the period of time that begins at the date and time that the we receive and record written notice of the necessary suspension of the insured's operations due to a "pollution condition" on, at, under or migrating from the a "covered location" and ends within the time frame shown on the SCHEDULE.

15. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

16. "Environmental damage" means the injurious presence in or upon land, the atmosphere, or any watercourse or body of water of "pollutants".

17. "Environmental laws" means any federal, state, provincial or local laws, including but not limited to statutes, rules, regulations, ordinances, guidance documents, and governmental, judicial or administrative orders and directives that are applicable to "pollution conditions" to which this Endorsement applies.

18. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

19. "Extra Expense" means the necessary expenses incurred by the insured, over and above the insured's continuing normal operating expenses, during the "period of restoration", that the insured would not have incurred had there been no "pollution condition" discovered at the "covered location", provided that the expenses are incurred to avoid or minimize the suspension of business and to continue operations:

a. at the "covered location", or

b. at replacement or temporary location(s), including:

(1) relocation expenses; and

(2) cost to equip and operate the replacement or temporary location(s).

Subject to the terms and conditions of this endorsement, we will pay no more for "extra expenses" than the percentage shown below multiplied by the Limit of Insurance stated in the SCHEDULE. If the "period of restoration" is:

a. 30 days or less, the percentage applied to the Limit of Liability shall be 40%;

b. 31-60 days, the percentage applied to the Limit of Liability shall be 80%;

c. 61 days or more, the percentage applied to the Limit of Liability shall be 100%.

20. "Field changes to design" includes but is not limited to, when a contractor discovers a minor physical job situation that makes it imprudent or impossible to complete the task, from the existing contract documents, the contractor then adjusts the job task, using practical construction knowledge, which does not inhibit the quality of the project, and leads to a field solution. This definition does not include any design that is required to be done by a licensed architect or engineer, and it does not include design related to construction means, methods, or jobsite safety precautions.

21. "Insured contract" mans that party of any written contract or written agreement under which the "named

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

CG 72 02 07 21
Page 16 of 21

OGIC000191

insured" assume the tort liability of another party to pay compensatory damages for "loss" to a third person or organization, provided that such written contract or written agreement is signed by the "named insured" prior to the "loss". Tort liability means a liability that would be imposed by law in the absence of any contract or agreement. However, "insured contract" does not include any tortious conduct that would otherwise not be covered by this endorsement, nor if the tortious conduct was solely that of the person or persons for whom such liability under the insured contract was assumed.

22. "Job site" means the location where the "contracting services" are being performed. "Job site" does not include any location which currently is or was, at the time the insured or subcontractor working directly or indirectly on the insured's behalf were working on the location, owned, rented, used or occupied by the insured.

23. "Leased worker" means a person leased to the insured, by a labor leasing firm under an agreement between the insured and the labor leasing firm to perform duties related to the conduct of the insured's business.

24. "Legal expenses" means reasonable and necessary legal fees, charges and expenses incurred in the investigation and defense of a "claim", provided such costs, charges and expenses are authorized by us. "Legal expenses" does not include any expense that is incurred by an insured in assisting in the investigation, defense or resolution of a "claim".

25. "Licensed site professional" means a licensed environmental scientist or engineer that is in good standing with, and acting under the authority of federal, state, provincial or local laws for the purpose of addressing "pollution conditions" at a "covered location".

26. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

27. "Loss" means "bodily injury", "property damage" or "environmental damage".

28. "Mitigations costs" means expenses incurred to clean up or mitigate a "pollution condition" resulting from a "pollution emergency" at a "covered location" or covered "job site", as required by a federal or state regulatory agency, prior to the initiation of a formal "claim" against the insured. "Mitigation costs" may only be covered with our prior approval and if notification of such "pollution condition" is provided as soon as practicable. "Mitigation costs" will not be covered where the "pollution condition" does not result in a "claim" or where the "pollution condition" would not otherwise be covered under the terms and conditions of this endorsement. "Mitigation expenses" shall not exceed $25,000.00 and are subject to and will reduce the aggregate limit of liability. **Refer to Paragraph F, 4. Duties in the Event of an "Occurrence", "Pollution Condition", "Professional Loss", "Loss" or "Claim"** for information on "pollution emergency" reporting.

29. "Mold matter" means mold, mildew or any type or form of fungus, including mycotoxins, spores or by-products produced or released by fungi.

30. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, on which are permanently mounted:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CG 72 02 07 21
Page 17 of 21

OGIC000192

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle Insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle Insurance law or motor vehicle registration law are considered "autos".

**31.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**32.** "Optional Extended reporting period" means the 1-year period of time set forth under the Extended Reporting Periods section

**33.** "Other intra-endorsement Insurance" means insurance provided under the terms of the endorsement other than the **Premises Pollution Legal Liability Insurance**, **Contactor's Pollution Legal Liability Insurance** or **Professional Legal Liability Insurance** afforded by this endorsement.

**34.** "Period of restoration" means the period of time that begins after the "deductible period" and ends when the "covered location(s)" should be restored to operation with reasonable speed and quality or when business activities resume at the new permanent location. The expiration date of this endorsement will not reduce the "period of restoration", nor shall the "extended reporting period" extend it.

**35.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**36.** "Pollution condition" means the discharge, dispersal, release, escape, seepage or migration of "pollutants" into or upon land, the atmosphere, or any watercourse or body of water.

**37.** "Pollution emergency" means any "pollution condition" where immediate action is required to respond to a potential or actual "claim".

**38.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

OGIC000193

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**39.** "Professional loss" means:

**a.** A monetary judgment, award or settlement of compensatory damages;

**b.** "Legal expenses" associated with the above paragraph.

"Professional loss" does not include:

**a.** Civil or criminal fines and penalties;

**b.** Punitive, exemplary or multiplied damages;

**c.** Injunctive or equitable relief;

**d.** The return of fees or charges for services rendered;

**e.** Costs and expenses incurred by the "insured" to redo, change, supplement or fix the "insured's" work or services, including redesign; or

**f.** Any of the "insured's" overhead, mark-up, or profit.

**40.** "Professional Services" means those activities listed under Professional Services in the SCHEDULE that are rendered by or on behalf of the "named insured".

**41.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this Insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**42.** "Rental Value" means the loss of any anticipated rental income the insured would have earned during the "period of restoration" by renting all or a portion of the "covered location(s)" to a third party not owned by, affiliated with, or connected in any way to the insured, less any rental income the insured actually earned or could have earned during the "period of restoration" by renting all or a portion of the "covered location(s)" or by making use of other

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 19 of 21**

OGIC000194

property. "Rental value" does not apply to any loss included in the definition of "business interruption" and "extra expense".

**43.** "Responsible insured" means any officer, director, partner, member, manager, supervisor or foreman of any insured of any employee of an insured that has responsibility, in whole or in part, for risk control, risk management, health and safety or environmental affairs, control or compliance.

**44.** "Restoration costs" means expenses required to restore, repair or replace real or personal property to substantially the same condition it was in prior to being damaged during the course of responding to a "pollution condition" to which this endorsement applies. These costs will not exceed the actual cash value of such real or personal property immediately prior to such damage, or include costs associated with improvements or betterments. Actual cash value shall mean the cost to replace such real or personal property, immediately prior to such damage, minus the accumulated depreciation of the real or personal property.

**45.** "Retroactive date" means the date listed under "Retroactive date" on the SCHEDULE for each applicable coverage.

**46.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this Insurance applies. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**47.** "Transportation" means the movement of waste or material by "auto" or "mobile equipment" (including "loading or unloading") provided that the person or entity transporting the waste or material is properly licensed to transport such waste or material by "auto" or "mobile equipment".

**48.** "Underground storage tank" means a stationary container or vessel, including the associated piping connected thereto, which is ten percent (10%) or more beneath the surface of the ground and is:

**a.** Constructed primarily of non-earthen materials; and

**b.** Designed to contain any substance.

**49.** "Value engineering" means an organized effort directed at analyzing designed building features, systems, equipment, and material selections for the purpose of achieving essential functions at the lowest life cycle cost consistent with required performance, quality, reliability, and safety.

**50.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**51.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 20 of 21**

OGIC000195

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

## H. Extended Reporting Periods

With respect to **Premises Pollution Legal Liability Insurance** or **Professional Legal Liability Insurance**:

**a.** You are entitled to an automatic ninety (90) day "automatic extended reporting period", commencing on the last day of the endorsement period. The ninety (90) day "automatic extended reporting period" applies to a "claim" first made during the endorsement period and reported to us, in writing, during the ninety (90) day "automatic extended reporting period". The ninety (90) day "automatic extended reporting period" applies only if we cancel or non-renew the **Professional Legal Liability Insurance** or the **Premises Pollution Legal Liability Insurance** for a reason other than non-payment of premium, non-payment of deductible, fraud or misrepresentation.

**b.** Upon non-renewal or cancellation of this endorsement for any reason except the non-payment of premium, the insured will have the right to purchase, for one hundred percent (100%) of the expiring annual premium, an "optional extended reporting period" of twelve (12) months. Coverage provided by such "optional extended reporting period" will only apply to "claims" first made against any insured during the endorsement period and reported to us, in writing, during the "optional extended reporting period", and arising out of any act, error or omission committed on or after the "retroactive date" and before the end of the endorsement period. In order for the insured to invoke the "optional extended reporting period", the payment of the additional premium for the must be paid to us within 60 days of the termination of this endorsement.

**c.** The purchase of the "optional extended reporting period" will in no way increase the Endorsement Aggregate Limit of Liability or any sublimit of liability. At the commencement of the "optional extended reporting period". the entire contribution will be deemed earned, and in the event the insured terminates the "optional extended reporting period" for any reason prior to its natural expiration, we will not be liable to return any contribution paid for the "optional extended reporting period"

---

OGIC000196

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES - CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY

This endorsement modifies insurance provided under the following:

CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY FORM

**SECTION IV. INSURANCE, H. Extended Reporting Periods,** paragraph **b.** is replaced by the following:

1. Upon non-renewal or cancellation of this endorsement for any reason, the insured will have the right to purchase, for one hundred percent (100%) of the expiring annual premium, an " optional extended reporting period" of twelve (12) months. Coverage provided by such "optional extended reporting period" will only apply to "claims" first made against any insured during the endorsement period and reported to us, in writing, during the "optional extended reporting period", and arising out of any act, error or omission committed on or after the "retroactive date" and before the end of the endorsement period. In order for the insured to invoke the "optional extended reporting period", the payment of the additional premium for the must be paid to us within 60 days of the termination of this endorsement.

**CG 72 19** 05 21
Page **1** of **1**

OGIC000197



**Westfield**
One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial Common Policy Declarations Amended**

**Company Providing Coverage**: Old Guard Insurance Company

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account No:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|

| **Policy Period:** From 10/08/2022 To 10/08/2023 | At 12:01 A.M. standard time at your mailing address shown above |
|---|---|

| **Business Of Named Insured:** Contractors | **Entity Of Named Insured:** LLC |
|---|---|

**THIS IS A NON-PARTICIPATING POLICY**

**Coverage and Premium Summary**

Commercial General Liability Coverage Part      $

**Policy Annual Premium**      $

**Total Advance Annual Policy Premium**      $

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. For more detail, please refer to the individual coverage parts inside your policy.

**Forms and Endorsements Applicable to This Coverage Part:**
Refer to Schedule of Forms and Endorsements - IL DS 73

PLEASE REFER TO IL7097 FOR A DETAILED SUMMARY OF TAXES AND SURCHARGES BY STATE.

**Page 1 of 1**      IL DS 01 05 18      ISSUED DATE: 01/12/2023

OGIC000198



**Westfield**
One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Amended
Common Policy Declarations**

| | |
|---|---|
| **Company Providing Coverage:** Old Guard Insurance Company | |

| **Named Insured And Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd,<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST,<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account No:** 6000013101 | **Payment Plan:** Monthly<br>(Paper Invoices) |
|---|---|---|

| **Policy Period:** From 10/08/2022 To 10/08/2023 | At 12:01 A.M. standard time at your mailing address shown above |
|---|---|

Effective 10/08/2022, this Common Policy Declarations amends all prior Common Policy declarations and endorsements as shown below.

### THE COVERAGE PARTS BELOW HAVE BEEN ENDORSED AS FOLLOWS:

**Net Premium**  $▮

** This Endorsement changes your policy. Please attach it to your original policy**

Page 1 of 1    IL DS 71 05 18    ISSUED DATE: 01/12/2023

OGIC000199



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Endorsement Summary**

| | |
|---|---|
| **Company Providing Coverage:** Old Guard Insurance Company | |

| **Named Insured And Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd,<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST,<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

**Policy Number:** 179385Y        **Billing Account No:** 6000013101        **Payment Plan:** Monthly (Paper Invoices)

**Policy Period:** From 10/08/2022 To 10/08/2023        At 12:01 A.M. standard time at your mailing address shown above

### THE COVERAGE PARTS BELOW HAVE BEEN ENDORSED AS FOLLOWS:

| **Effective Date** | | **Description** |
|---|---|---|
| 10/08/2022 | Not otherwise classified | Removing inadvertently added Controlled Substances Exclusion - IL7090 (ID 266) |

** This Endorsement changes your policy. Please attach it to your original policy**

Page 1 of 1                IL DS 72 05 18                ISSUED DATE: 01/12/2023

OGIC000200



**Westfield**
One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Schedule of Forms and
Endorsements
Amended**

**Company Providing Coverage**: Old Guard Insurance Company

| Named Insured and Mailing Address: | Agency: 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC
3420 Horton Rd
Newtown Square, PA 19073-3418 | Brandon Insurance Group
409 MAIN ST
HARLEYSVILLE, PA 19438-2353
Telephone:  215-256-8020 |

**Policy Number:**  179385Y     **Billing Account No:** 6000013101     **Payment Plan:**  Monthly (Paper Invoices)

**Policy Period:**  From  10/08/2022 To  10/08/2023       At 12:01 A.M. standard time at your mailing address shown above

## SCHEDULE OF FORMS AND ENDORSEMENTS

*The following forms have been added or amended:*

### FORMS THAT APPLY TO MULTIPLE COVERAGE PARTS

| NUMBER | EDITION DATE | TITLE |
|---|---|---|
| ILDS01 | 0518 | COMMERCIAL PACKAGE POLICY COMMON POLICY DECLARATIONS |
| ILDS71 | 0518 | AMENDED COMMON POLICY DECLARATIONS |
| ILDS72 | 0518 | ENDORSEMENT SUMMARY |
| ILDS02 | 0518 | COMMERCIAL PACKAGE POLICY COMMON POLICY SCHEDULE |
| IL0003 | 0908 | CALCULATION OF PREMIUM |
| IL0017 | 1198 | COMMON POLICY CONDITIONS |
| IL0021 | 0908 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| IL7013 | 1206 | EXCLUSION - LEAD |
| IL7090 | 0820 | EXCLUSION - CONTROLLED SUBSTANCES |
| IL0120 | 1013 | PENNSYLVANIA CHANGES - DEFENSE COSTS |
| IL0246 | 0907 | PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL |
| IL0910 | 0702 | PENNSYLVANIA NOTICE |

### FORMS THAT APPLY TO COMMERCIAL GENERAL LIABILITY

| NUMBER | EDITION DATE | TITLE |
|---|---|---|

Page 1 of 1                    IL DS 73 05 18                    ISSUED DATE:01/12/23

# EXHIBIT

# "5"

Case 2:26-cv-04972-AM   Document 1-5   Filed 07/17/26   Page 268 of 577

OGIC000200



Insured:          Mike Burdett Roofing and Exteriors LLC
Claim Number:     0002735785


Policy Number:    CWP 179385Y
Policy Period(s): 10/8/2022 - 10/8/2026
Policy Cancelled: _____


☑ NON-CERTIFIED POLICY

OGIC000201



## Your passion. Our promise. Imagine the possibilities.

Congratulations on the continued success of your business and thank you for again choosing Westfield to be a partner in your progress.

Along with the Brandon Insurance Group, it's our privilege to not only help you avoid risk, but see how it can present business opportunities.

If you have questions or concerns about your policy, simply contact Brandon Insurance Group at 215-256-8020 or visit their website at www.brandonins.com. You can also visit us at **westfieldinsurance.com** for useful information about your policy such as:

- Detailed policy and coverage information
- ID cards or proof of insurance
- Bill pay services
- Claims information and status
- Business insights and risk management resources

Again, thank you for your business. Together, let's greet the future by imagining all the possibilities.

OGIC000202



# A Business Insurance Policy for
# Mike Burdett Roofing and Exteriors LLC

Prepared by

Brandon Insurance Group

of HARLEYSVILLE, Pennsylvania

OGIC000203

IN WITNESS WHEREOF, this Company has caused this policy be signed by its President and Secretary and countersigned by a duly authorized representative of the Company if required by law.

*Frank A Carrino* Secretary          *Edward J. Lungen III* President

ID 7004 08 20

OGIC000204



# Westfield Privacy Promise

Effective: 2020 January 1

We are committed to protecting your privacy. This notice describes the personal information we collect about you and how we use it. This privacy promise applies to all our Westfield Insurance companies[1].

## SUMMARY

- We gather information directly from you[2], from your transactions with us and from outside sources.
- We use your information only to provide insurance to you, to investigate and resolve claims or to improve the products and services we offer.
- We will share your information with the independent agent or insurance broker that you chose.
- We share your information with third-parties who help us deliver services to you.
- *We do not sell your personal information.* We do not share your information with other companies for their marketing purposes.
- We take measures to protect your information while it is in our custody. We require the third-parties who help us to protect your information, too.

## INFORMATION WE COLLECT

We collect information about you in order to quote and service your insurance policy and to investigate and pay claims. This includes:

- Information from your application and other forms (such as your name, address, date of birth, email address, driver's license number and type of vehicle or property).
- Information about your transactions with us, our affiliates or others (such as your insurance coverages, limits and rates, payment and claims history and information needed for billing and payment).
- Information from third parties (such as your driving record, claims history with other insurers and credit information).
- Information about your online interactions with us (such as your IP address, the kind of device you used, the time of your visit to our site and pages visited). We use this information to deliver online services to you and/or to evaluate and improve our services.

## INFORMATION ABOUT MINORS

We do not sell to or intentionally communicate with children under the age of 13. We may request specific information about a child from parents in order to properly quote an insurance policy, verify identities or deliver requested transactions. We do not retain information about minors other than what is necessary to deliver requested services.

---

[1]"Westfield" includes Ohio Farmers Insurance Company, Westfield Insurance Company, Westfield National Insurance Company, American Select Insurance Company, Old Guard Insurance Company, Westfield Champion Insurance Company, Westfield Premier Insurance Company, Westfield Superior Insurance Company, Westfield Touchstone Insurance Company and Westfield Services, Inc.

[2]For a personal lines policy, this could include information from the head of household or other family member buying insurance that covers you. For a commercial lines policy, this could include information from your company's representative.

AD 83 86 01 20

OGIC000205

## INFORMATION WE DISCLOSE

*We do not sell or rent your personal information.* We disclose your information to third-parties only as permitted by law:

- To process transactions that you request or to service your policy.
- To investigate and pay claims.
- To prevent fraud.
- To perform marketing services on our behalf. (We do NOT allow third-parties to use the information they receive from us to market on their own or anyone else's behalf.)
- To comply with legal requirements.

Recipients include employees within our family of insurance companies, claims representatives, insurance agents or brokers, service providers, auditors, consumer reporting agencies, government agencies, law enforcement and the courts.

## HOW WE PROTECT YOUR INFORMATION

We restrict access to nonpublic personal information about you to those employees and outside services providers who need to know that information in order to provide our products or services to you. Their use of information is restricted by law, by our employee code of conduct and by written agreements where appropriate. We maintain physical, electronic and procedural safeguards that comply with applicable federal and state regulations to guard your information.

If you believe you have found a security issue with one of our products or services, please report it to InfosecAlerts@Westfieldgrp.com as quickly as possible. Please describe the issue in as much detail as possible, including the date and time you discovered the issue and how to reproduce the issue. Screenshots and videos can be especially helpful. Please also include your name and contact information in case we need additional detail.

## INTERNET PRIVACY

If you choose to communicate with us through the Internet or other electronic means, please read our Privacy Promise online at www.westfieldinsurance.com/privacy for details about how and why we use cookies, social media and other technologies.

## FORMER CUSTOMERS

If you end your relationship with us, we will continue to adhere to the policies and practices described in this privacy promise for as long as we have your information.

## CALIFORNIA RESIDENTS

California residents have the right to request an accounting of information which we hold about you, the right to request that we not sell your information and the right to request that we amend or delete your information. We may not (and will not) retaliate against you for exercising any of these rights. These rights are limited by, among other things, our obligations to comply with insurance regulations, statutes and other legal requirements. Call our Privacy Office at 1.800.243.0249 or go to www.westfieldinsurance.com/privacy and click the Do Not Sell My Personal Information link to submit a request relevant to those rights.

## PRIVACY CONTACT INFORMATION

If you have any questions, concerns or comments about our privacy promise, you may contact us by email at Privacy@Westfieldgrp.com or by mail to Privacy Officer, Westfield Insurance, One Park Circle, PO Box 5001, Westfield Center, OH 44251.

OGIC000206



# IMPORTANT NOTICE TO OUR POLICYHOLDERS

### *Westfield Insurance Fraud Hot-Line*

PLEASE READ THIS IMPORTANT INFORMATION

- Fraudulent insurance claims cost us all money.

- Call us if you have information concerning a fraudulent insurance claim.

- All information will be kept confidential.

- Call and discuss your information with a trained investigator, or leave the information anonymously on a telephone answering machine.

- We can all help fight insurance fraud.

Be a Fraud Buster

1-800-654-6482

OGIC000207



**WESTFIELD**®

THIS NOTICE DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY. IF THERE IS ANY CONFLICT BETWEEN YOUR POLICY AND THIS NOTICE, THE PROVISIONS OF YOUR POLICY SHALL PREVAIL.

## Policyholder Disclosure Notice of Terrorism Insurance Coverage and Premium

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security, and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect you coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

## PREMIUM CHARGED

During your current policy period, the portion, if any, of your premium that is attributable to coverage for acts of terrorism as defined in the Act is $ _____ (refer to the individual dec pages for the Terrorism premium).

**If you do not desire the coverage** for acts of terrorism as defined in the Act, as amended, you may reject the coverage and instruct the insurance company to remove it and refund the premium described above. **To reject the coverage, you must:**

1) advise the insurance company by letter (on your company letterhead),

2) signed by the owner, representative, or properly designated official of the named insured.

AD 85 84 07 19
Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

Page 1 of 2

OGIC000208

**The insurance company must receive your letter within 60 days** from the date shown at the bottom right side of the forms titled "Common Policy Declarations". Please refer to "Common Policy Declarations" for the mailing address of the insurance company.

If your policy premium is $500, that may represent a minimum premium. In that case, the portion that is attributable to acts of terrorism as defined in the Act, as amended, may be included within that minimum and your total premium will not be reduced if you reject coverage for act of terrorism. The minimum premium will still apply.

Should you have any question regarding this notice, please contact your insurance agent.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

OGIC000209



**WESTFIELD**®

# TERRORISM REJECTION AUTHORIZATION

During your current policy period, the portion of your premium that is attributable to coverage for acts of terrorism can be found in the Declarations.

**If you do not desire the coverage** for acts of terrorism, you may reject the coverage and instruct the insurance company to remove it at issuance by submitting a letter on your letterhead or by completing and submitting this Terrorism Rejection Authorization form.

If your policy premium is $500, that may represent a minimum premium. In that case, the portion that is attributable to coverage for acts of terrorism may be included within that minimum, and your total premium will not be reduced if you reject coverage for acts of terrorism. The minimum premium will still apply.

The rejection of coverage for Terrorism is valid and binding on all insureds and persons claiming benefits under the policy/application for the policy term as shown below.

This rejection of coverage for Terrorism will apply to any reinstatement, amended, altered, or modified policy with this company or with any affiliated company unless the Named Insured makes a written request to the company to exercise a different option.

After careful review of the Terrorism Coverage provided, I wish to reject coverage for acts of terrorism. Following is my signature authorizing the removal of this coverage from the policy noted below:

| | |
|---|---|
| **Policy Number:** 179385Y | **Policy Term:** 10/08/2023 - 10/08/2024 |
| **Agency:** Brandon Insurance Group | **Named Insured:** Mike Burdett Roofing and Exteriors LLC |
| **Signature:** | **Name:** |
| **Title:** | **Date:** |

*The insurance company must receive this notice within 60 days from policy issuance.*

OGIC000210



## Premium Audit Notice – FAQ and Helpful Tips to Help Prepare You for Your Premium Audit

Westfield Insurance welcomes the opportunity to service your insurance needs. At the end of your policy term you may be contacted by our Premium Audit department, or one of our Premium Audit vendors, to complete your premium audit.

A premium audit is a review of your operations and financial records. Because your business insurance policy premiums were based upon estimated information (e.g. Payroll, Sales, Subcontract Costs, etc.) a premium audit may be conducted to help determine your final premium.

An accurate premium audit is a benefit to your business as the estimated exposures used to rate your policy will fluctuate during your policy period and maintaining accurate records will help you gain the most benefit from your premium audit. As part of the audit review the auditor will need to ask some questions about your business operations and records to ensure your operations and employees are classified correctly.

## FAQ

### Who will complete the audit?

You may be asked to complete a premium audit in one of four ways by one of our staff or vendor auditors:

- Mail/Voluntary Form – a premium audit form will be mailed to you and will ask a series of questions relative to your type of business and policy. You will be asked to fill out the form in its entirety and return it to Westfield via mail, fax, or email.

- Telephone Audit – a telephone auditor will call you to discuss your operation and review your financial records. A form may be sent to you via mail or email prior to the phone audit appointment to assist and prepare you for the premium audit.

- Hybrid Audit – an auditor will contact you to schedule and conduct the audit over the phone. Prior to the audit appointment you will be asked to forward necessary financial records. A review of those records and your operations will be discussed during the phone interview process.

- Physical Audit – a field auditor will contact you to schedule an appointment to conduct the audit at your premises. The auditor will inquire about your operations and physically review the financial records.

### What records will be needed?

The premium auditor will request and review the records needed based on your coverages and classifications. In most cases the auditor will be able to obtain the necessary audit data from two or more of the following records:

AD 80 12 11 17

OGIC000211

- Payroll based audits – Monthly/Quarterly Payroll Journals, Quarterly State Tax Reports (State Unemployment Reports), Federal 941 Tax Reports

- Sales based audits – Monthly Sales Reports, Monthly State Sales Tax Reports, General Ledgers, Financial Statements

- Subcontract Costs/Expense – Check Disbursements Report, Vendor Payment Report, General Ledger, 1099's, Financial Statements. Certificates of insurance should be obtained for each subcontractor.

## Helpful Tips

**Payroll based audits** – Many insurance policies are based on gross payroll. Gross payroll includes many items such as wages, bonuses, holiday pay, sick pay, commissions, overtime pay, and vacation pay.

> Helpful Tip – Overtime: the amount paid in excess of straight time pay can be deducted if the excess portion can be verified by your payroll records. *Your records must show summarized overtime amounts paid by employee.*

> Helpful Tip – Division of Payroll: Division of an individual employee's payroll to more than one classification is not allowed except for construction or erection operations. For construction and erection operations the payroll of an employee may be allocated to each type of work performed if proper records are kept (percentages are not acceptable). Payroll cannot be divided between construction, office, and sales classifications.

**Sales based audits** – Another premium base for general liability is gross sales. Gross sales are the amount charged by you to others for all goods or products sold and distributed and for any other operations or services performed by you for others.

> Helpful Tip – The following may be deducted from gross sales if properly maintained in your financial records:
> - Returns and Allowances
> - Freight/Delivery Income
> - Sales tax collected and submitted to a government agency

This information is provided to you as assistance for proper record keeping. Other insurance companies may differ in their requirements. Please feel free to contact our Premium Audit Department if you have any questions about the Premium Audit process.

OGIC000212



# Premium Audit Notice for Contractors

The records you keep can affect the premium you pay for your insurance policy, and there are steps you can take to help control these costs.

Your insurance premiums are based on your business's direct payroll and the amounts paid to any subcontractors you may hire. Subcontract costs are an area of concern because it is an area that can substantially increase the cost of your insurance if you do not hire "adequately insured subcontractors." Any operations performed by subcontractors without a certificate of insurance or who are inadequately insured will be classified under the specific classification description for each operation which carries a higher rate.

To help control the cost of your insurance you should obtain proper certificates of insurance from every subcontractor you hire prior to the commencement of work. A valid certificate of insurance will provide evidence of Workers' Compensation or General Liability coverage for a specific policy term and can be obtained from the subcontractor's insurance agent.

Helpful Tips:

- The certificate of insurance should cover the period the subcontractor performs work for you. If the subcontractor's certificate of insurance expires on a certain date, but they will be working beyond that date, a new certificate should be required. Current and expired certificates of insurance should be kept and maintained in a binder or electronic file.

- The subcontractor's limits of liability and coverages should be at least equal to those carried by your business for the time the work was performed to be considered "adequately insured." If the subcontractor's limits are too low, you should contact the subcontractor and request their limits be raised to equal your policy's limits.

- Be especially cautious when hiring casual or 1099 type laborers as these types of independent subcontractors sometimes do not carry insurance or limits of liability that may match your policy.

- You should read or have your insurance agent or attorney review every contract before signing to ensure the subcontractor is not transferring liability back to your business.

AD 80 13 11 17

OGIC000213



**Westfield**
One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial Common Policy Declarations Renewal**

| | |
|---|---|
| **Company Providing Coverage**: Old Guard Insurance Company | |

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone:  215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account No:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|

| **Policy Period:**  From  10/08/2023 To  10/08/2024 | At 12:01 A.M. standard time at your mailing address shown above |
|---|---|

| **Business Of Named Insured:** Contractors | **Entity Of Named Insured:** LLC |
|---|---|

**THIS IS A NON-PARTICIPATING POLICY**

**Coverage and Premium Summary**

Commercial General Liability Coverage Part $ █████

**Policy Annual Premium** $ █████

**Total Advance Annual Policy Premium** $ █████

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.  For more detail, please refer to the individual coverage parts inside your policy.

**Forms and Endorsements Applicable to This Coverage Part:**
Refer to Schedule of Forms and Endorsements - IL DS 73

PLEASE REFER TO IL7097 FOR A DETAILED SUMMARY OF TAXES AND SURCHARGES BY STATE.

**Page 1 of 1**                    IL DS 01 05 18                    ISSUED DATE: 08/17/2023

OGIC000214



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial Common Policy Schedule**

**Renewal**

---

**Company Providing Coverage**: Old Guard Insurance Company

---

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353 |

---

**Policy Number:** 179385Y    **Billing Account No:** 6000013101    **Payment Plan:** Monthly (Paper Invoices)

---

**Policy Period:** From 10/08/2023 To 10/08/2024    At 12:01 A.M. standard time at your mailing address shown above

---

**Business Of Named Insured:** Contractors    **Entity Of Named Insured:** LLC

---

### Schedule of Insured Locations

**Loc.** 1

3420 Horton Rd
Newtown Square, PA 19073-3418

---

**Page 1 of 1**                    IL DS 02 05 18                    ISSUED DATE:08/17/2023

OGIC000215



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial General Liability
Declarations
Renewal**

| | |
|---|---|
| **Company Providing Coverage:** Old Guard Insurance Company | |

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC
3420 Horton Rd
Newtown Square, PA 19073-3418 | Brandon Insurance Group
409 MAIN ST
HARLEYSVILLE, PA 19438-2353
Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account Number:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|
| **Policy Period:** From: 10/08/2023 To: 10/08/2024 | **At 12:01 A.M. standard time at your mailing address shown above** | |

## Limits of Insurance

| | |
|---|---|
| Each Occurrence Limit | $1,000,000 |
| General Aggregate Limit (Other than products/completed-operations) | $2,000,000 |
| Products/Completed-Operations Aggregate Limit | $2,000,000 |
| Personal & Advertising Injury Limit | $1,000,000 |
| Damage to Premises Rented to You Limit  (Any one premises) | $100,000 |
| Medical Expense Limit (Any one person) | $1,000 |

| | |
|---|---|
| **Total Premises/Operations Premium** | $▮ |
| **Total Products/Completed Operations Premium** | $▮ |
| **Total Additional Coverages and Endorsements Premium** | $▮ |
| **Total Additional Interests Premium** | **Included** |
| **Total Terrorism Premium** | $▮ |
| **Total Advance Annual General Liability Premium** |  $▮ |

**Forms And Endorsements Applicable To This Coverage Part:**
Refer to Schedule of Forms and Endorsements - IL DS 73

| | | |
|---|---|---|
| **Page 1 of 4** | CG DS 01 05 18 | ISSUED DATE:08/17/2023 |

OGIC000216



**WESTFIELD**™

**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial General Liability**
**Declarations**
**Renewal**

**Company Providing Coverage:** Old Guard Insurance Company

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account Number:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|

**Policy Period:** From: 10/08/2023 To: 10/08/2024 | At 12:01 A.M. standard time at your mailing address shown above

**Classification and Premium Schedule**

Location of all premises owned by, rented to, or controlled by the name insured are shown on the Schedule of Insured Locations, IL DS 02, unless otherwise indicated.

| Location | Classification Code and Description | Premium Basis | Rate | Premium |
|---|---|---|---|---|
| #1: 3420 Horton Rd,<br>Newtown Square, PA<br>19073-3418 | 98967 - Siding Installation | $ █ | █ | $ █<br>$ █ |

| | | |
|---|---|---|
| **Total Premises/Operations Premium** | | $ █ |
| **Total Products/Completed Operations Premium** | | $ █ |

OGIC000217



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial General Liability**
**Declarations**
**Renewal**

**Company Providing Coverage:** Old Guard Insurance Company

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account Number:**<br>6000013101 | **Payment Plan:** Monthly<br>(Paper Invoices) |
|---|---|---|
| **Policy Period:** From: 10/08/2023 To: 10/08/2024 | | At 12:01 A.M. standard time at your mailing address shown above |

## Schedule of Additional Coverages and Endorsements

| Form Number/ Endorsement | Premium |
|---|---|
| CG7168 - COMMERCIAL GENERAL LIABILITY - ARTISAN CONTRACTOR ENDORSEMENT | $█ |
| CG7121 - Damage to Your Work | Included |
| CG7160 - DAMAGE TO PROPERTY-BORROWED EQUIPMENT | Included |
| CG2404 - Waiver of Transfer of Rights of Recovery Against Others to Us | Included |
| CG7202 - Contractor's Professional and Pollution Legal Liability Endorsement | Included |

-

**Total Additional Coverages and Endorsements Coverage Premium:** $█

Case 2:26-cv-04972-CAM Document 1-51 Filed 07/17/26 Page 286 of 577

OGIC000218



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial General Liability
Declarations
Renewal**

| | |
|---|---|
| **Company Providing Coverage:** Old Guard Insurance Company | |

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account Number:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|
| **Policy Period:** From: 10/08/2023 To: 10/08/2024 | At 12:01 A.M. standard time at your mailing address shown above | |

## Schedule of Additional Interests

| Form Number/ Endorsement | Premium |
|---|---|
| CG2010 [Automatic status when required by written contract, agreement, or permit] - Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization | Included |
| **Total Additional Interests Premium:** | **Included** |

OGIC000219



**Westfield**
One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Schedule of Forms and Endorsements Renewal**

**Company Providing Coverage**: Old Guard Insurance Company

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

**Policy Number:** 179385Y    **Billing Account No:** 6000013101    **Payment Plan:** Monthly (Paper Invoices)

**Policy Period:** From 10/08/2023 To 10/08/2024    At 12:01 A.M. standard time at your mailing address shown above

## SCHEDULE OF FORMS AND ENDORSEMENTS

### FORMS THAT APPLY TO MULTIPLE COVERAGE PARTS

| NUMBER | EDITION DATE | TITLE |
|---|---|---|
| ILDS01 | 0518 | COMMERCIAL PACKAGE POLICY COMMON POLICY DECLARATIONS |
| ILDS02 | 0518 | COMMERCIAL PACKAGE POLICY COMMON POLICY SCHEDULE |
| IL0003 | 0908 | CALCULATION OF PREMIUM |
| IL0017 | 1198 | COMMON POLICY CONDITIONS |
| IL0021 | 0908 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| IL7013 | 1206 | EXCLUSION - LEAD |
| IL0120 | 1013 | PENNSYLVANIA CHANGES - DEFENSE COSTS |
| IL0246 | 0907 | PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL |
| IL0910 | 0702 | PENNSYLVANIA NOTICE |

### FORMS THAT APPLY TO COMMERCIAL GENERAL LIABILITY

| NUMBER | EDITION DATE | TITLE |
|---|---|---|
| CGDS01 | 0518 | COMMERCIAL GENERAL LIABILITY DECLARATIONS |
| CG0001 | 0413 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG2001 | 1219 | PRIMARY AND NONCONTRIBUTORY - OTHER INSURANCE CONDITION |
| CG2010 | 1219 | ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION |
| CG2106 | 0514 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| CG2132 | 0509 | COMMUNICABLE DISEASE EXCLUSION |
| CG2147 | 1207 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG2167 | 1204 | FUNGI OR BACTERIA EXCLUSION |
| CG2170 | 0115 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| CG2186 | 1204 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS |
| CG2279 | 0413 | EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY |
| CG2404 | 1219 | WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US |
| CG2426 | 0413 | AMENDMENT OF INSURED CONTRACT DEFINITION |
| CG2503 | 0509 | DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT |
| CG2504 | 0509 | DESIGNATED LOCATION(S) GENERAL AGGREGATE LIMIT |

OGIC000220



**WESTFIELD**™

**Westfield**
One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Schedule of Forms and Endorsements Renewal**

| | |
|---|---|
| **Company Providing Coverage**: Old Guard Insurance Company | |

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone:  215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account No:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|

| **Policy Period:** From  10/08/2023 To  10/08/2024 | At 12:01 A.M. standard time at your mailing address shown above |
|---|---|

| | | |
|---|---|---|
| CG4015 | 1219 | CANNABIS EXCLUSION WITH HEMP EXCEPTION |
| CG7017 | 1298 | EXCLUSION-ASBESTOS |
| CG7121 | 0518 | DAMAGE TO YOUR WORK |
| CG7160 | 0518 | DAMAGE TO PROPERTY - BORROWED EQUIPMENT |
| CG9909 | 1219 | PREMIUM AUDIT NONCOMPLIANCE CHARGE |
| CG7168 | 0521 | COMMERCIAL GENERAL LIABILITY - ARTISAN CONTRACTOR ENDORSEMENT |
| CG7202 | 0721 | CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY ENDORSEMENT |
| CG7219 | 0521 | PENNSYLVANIA CHANGES - CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY |

IL DS 73 05 18 ISSUED DATE:08/17/23

OGIC000221

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

OGIC000222

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

**1.** We have the right to:

    **a.** Make inspections and surveys at any time;

    **b.** Give you reports on the conditions we find; and

    **c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    **a.** Are safe or healthful; or

    **b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

**1.** Is responsible for the payment of all premiums; and

**2.** Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

---

**IL 00 17 11 98**      Copyright, Insurance Services Office, Inc., 1998      **Page 1 of 1**    □

OGIC000223

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

IL 00 21 09 08 © ISO Properties, Inc., 2007 **Page 1 of 2** ☐

OGIC000224

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007 **IL 00 21 09 08** ☐

OGIC000225

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - LEAD

This endorsement modifies insurance provided under the following:

> BUSINESSOWNERS COVERAGE FORM
> FARM LIABILITY COVERAGE FORM
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> FARMOWNERS-RANCHOWNERS POLICY PERSONAL LIABILITY FORM
> OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE COVERAGE PART
> FARMER'S COMPREHENSIVE PERSONAL INSURANCE COVERAGE PART
> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

This insurance does not apply to:

**(1)** "Bodily injury", "property damage", "personal injury" or "personal and advertising injury" arising out of lead poisoning, lead contamination or exposure to lead.

**(2)** Any loss, cost or expense arising out of any:

**a.** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

**b.** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

**IL 70 13** 12 06

OGIC000226

IL 01 20 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDER'S ERRORS AND OMISSIONS
COVERAGE FORM
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

**1.** Section **I** of the Commercial General Liability, Commercial Liability Umbrella, Electronic Data Liability, Employment-related Practices Liability, Farm, Liquor Liability, Medical Professional Liability, Owners And Contractors Protective Liability, Pollution Liability, Product Withdrawal, Products/Completed Operations Liability, Railroad Protective Liability and Underground Storage Tank Coverage Parts, Auto Dealers Coverage Form and the Farm Umbrella Liability Policy;

**2.** Section **II** under the Auto Dealers, Business Auto and Motor Carrier Coverage Forms;

**3.** Section **III** under the Auto Dealers and Motor Carrier Coverage Forms;

**4.** Section **A.** Coverage under the Legal Liability Coverage Form; and

**5.** Coverage **C** – Mortgageholder's Liability under the Mortgageholder's Errors And Omissions Coverage Form.

Paragraph **B.** also applies to any other provision in the policy that sets forth a duty to defend.

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

IL 01 20 10 13 © Insurance Services Office, Inc., 2013 **Page 1 of 1**

OGIC000227

IL 02 46 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

**2. Cancellation Of Policies In Effect For Less Than 60 Days**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

**3. Cancellation Of Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

**b.** You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

**c.** A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**d.** Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

IL 02 46 09 07 © ISO Properties, Inc., 2006 **Page 1 of 2** ☐

OGIC000228

**e.** Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**f.** Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

**4.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

**5.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**6.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

**7.** If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**B.** The following are added and supersede any provisions to the contrary:

**1. Nonrenewal**

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

**2. Increase Of Premium**

If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006 **IL 02 46 09 07** ☐

OGIC000229

IL 09 10 07 02

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

| **Instruction to Policy Writers** |
| --- |
| Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania. |

OGIC000230

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

© Insurance Services Office, Inc., 2012

OGIC000231

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012 **CG 00 01 04 13**

OGIC000232

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

OGIC000233

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

© Insurance Services Office, Inc., 2012

OGIC000234

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

OGIC000235

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000236

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

OGIC000237

## COVERAGE C – MEDICAL PAYMENTS

### 1. Insuring Agreement

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000238

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

  **(1)** Agrees in writing to:

   **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

   **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

   **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

   **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

  **(2)** Provides us with written authorization to:

   **(a)** Obtain records and other information related to the "suit"; and

   **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

OGIC000239

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

OGIC000240

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

OGIC000241

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

© Insurance Services Office, Inc., 2012
CG 00 01 04 13

OGIC000242

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

OGIC000243

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000244

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

OGIC000245

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

  **a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      **(a)** You;

      **(b)** Others trading under your name; or

      **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **(2)** The providing of or failure to provide warnings or instructions.

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000246

**COMMERCIAL GENERAL LIABILITY**
**CG 20 01 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PRIMARY AND NONCONTRIBUTORY – OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

**CG 20 01 12 19**                    © Insurance Services Office, Inc., 2018                    **Page 1 of 1**

OGIC000247

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| All persons or organizations when you have agreed in writing in a contract or agreement that such persons or organizations be added as an additional insured. | All Locations |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or
2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or
2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or
2. Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.

Page **1** of **2**    © Insurance Services Office, Inc., 2012    **CG 20 10 12 19**

OGIC000248

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

**CG 20 10 12 19**

OGIC000249

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

OGIC000250

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

© Insurance Services Office, Inc., 2008  ☐

OGIC000251

**COMMERCIAL GENERAL LIABILITY**
**CG 21 47 12 07**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**CG 21 47 12 07**  © ISO Properties, Inc., 2006  **Page 1 of 1**  ☐

OGIC000252

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Fungi Or Bacteria**

   **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

   **b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

   This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Fungi Or Bacteria**

   **a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

   **b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

   "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

CG 21 67 12 04                          © ISO Properties, Inc.,  2003                          **Page 1 of 1**     ☐

OGIC000253

**COMMERCIAL GENERAL LIABILITY**
**CG 21 70 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

**CG 21 70 01 15**                    © Insurance Services Office, Inc., 2015                    **Page 1 of 1**

OGIC000254

**COMMERCIAL GENERAL LIABILITY**
**CG 21 86 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

**1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

**2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**3.** A reinforced or unreinforced base coat;

**4.** A finish coat providing surface texture to which color may be added; and

**5.** Any flashing, caulking or sealant used with the system for any purpose.

---

 © ISO Properties, Inc., 2003

OGIC000255

**COMMERCIAL GENERAL LIABILITY**
**CG 22 79 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**1.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

**a.** Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

**b.** Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

**2.** Subject to Paragraph **3.** below, professional services include:

**a.** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

**b.** Supervisory or inspection activities performed as part of any related architectural or engineering activities.

**3.** Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

**CG 22 79 04 13** © Insurance Services Office, Inc., 2012 **Page 1 of 1**

OGIC000256

POLICY NUMBER:179385Y                                    **COMMERCIAL GENERAL LIABILITY**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (WAIVER OF SUBROGATION)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILIITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART DESIGNATED SITES
PLLUTION LIABILITY LIMITED COVERAGE PART DESIGNATED SITES
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLIICY DESIGNATED TANKS

### SCHEDULE

| |
|---|
| **Name Of Person(s) Or Organization(s):** Automatic status when required by written contract, agreement or permit |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make under this Coverage Part. Such waiver by us applies only to the extent that the insured has waived its right of recovery against such person(s) or organization(s) prior to loss. This endorsement applies only to the person(s) or organization(s) shown in the Schedule above.

© Insurance Services Office, Inc., 2019                                    **CG 24 04 12 19**    ☐

OGIC000257

**COMMERCIAL GENERAL LIABILITY**
**CG 24 26 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**CG 24 26 04 13**                    © Insurance Services Office, Inc., 2012                    **Page 1 of 1**

OGIC000258

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY**
**CG 25 03 05 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED CONSTRUCTION PROJECT(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Designated Construction Project(s):**<br>All Projects<br>  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

**1.** A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

**2.** The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

**4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

**CG 25 03 05 09**        © Insurance Services Office, Inc., 2008        **Page 1 of 2**    ☐

OGIC000259

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

**1.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

**2.** Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

**D.** If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

**E.** The provisions of Section **III** – Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

© Insurance Services Office, Inc., 2008

**CG 25 03 05 09**   ☐

OGIC000260

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY**
**CG 25 04 05 09**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DESIGNATED LOCATION(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **Designated Location(s):**<br>All rented, owned and occupied locations other than construction projects. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which can be attributed only to operations at a single designated "location" shown in the Schedule above:

**1.** A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

**2.** The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

    **a.** Insureds;

    **b.** Claims made or "suits" brought; or

    **c.** Persons or organizations making claims or bringing "suits".

**3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

**4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

**CG 25 04 05 09**

© Insurance Services Office, Inc., 2008

**Page 1 of 2**  ☐

OGIC000261

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

   **1.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

   **2.** Such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Section **III** – Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

     © Insurance Services Office, Inc., 2008     **CG 25 04 05 09**    ☐

OGIC000262

**COMMERCIAL GENERAL LIABILITY**
**CG 40 15 12 19**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CANNABIS EXCLUSION WITH HEMP EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of:

**a.** The design, cultivation, manufacture, storage, processing, packaging, handling, testing, distribution, sale, serving, furnishing, possession or disposal of "cannabis"; or

**b.** The actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "cannabis"; or

**2.** "Property damage" to "cannabis".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **A.1.** or **A.2.** above.

However, Paragraph **A.1.b.** does not apply to "bodily injury" or "property damage" arising out of the actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, or contact with, "cannabis" by:

**(1)** An insured; or

**(2)** Any other person for whom you are legally responsible

but only if the "bodily injury" or "property damage" does not arise out of your selling, serving or furnishing of "cannabis" to any person described above.

**B.** The exclusion in Paragraph **A.** does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of goods or products containing or derived from hemp, including, but not limited to:

**a.** Seeds;

**b.** Food;

**c.** Clothing;

**d.** Lotions, oils or extracts;

**e.** Building Materials; or

**f.** Paper.

**2.** "Property damage" to goods or products described in Paragraph **B.1.** above.

However, Paragraphs **B.1.** and **B.2.** above do not apply to the extent any such goods or products are prohibited under an applicable state or local statute, regulation or ordinance in the state wherein:

**(1)** The "bodily injury" or "property damage" occurs;

**(2)** The "occurrence" which caused the "bodily injury" or "property damage" takes place; or

**(3)** The offense which caused the "personal and advertising injury" was committed;

**3.** "Personal and advertising injury" arising out of the following offenses:

**a.** False arrest, detention or imprisonment; or

**b.** The wrongful eviction from, wrongful entry into, or invasion of the right or private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

OGIC000263

**C.** The following definition is added to the **Definitions** section:

"Cannabis":

**1.** Means:

Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC or cannabinoid is natural or synthetic.

**2.** Paragraph **C.1.** above includes, but is not limited to, any of the following containing such THC or cannabinoid:

  **a.** Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or

  **b.** Any compound, byproduct, extract, derivative, mixture or combination, such as:

  **(1)** Resin, oil or wax;

  **(2)** Hash or hemp; or

  **(3)** Infused liquid or edible cannabis;

  whether or not derived from any plant or part of any plant set forth in Paragraph **C.2.a.**

© Insurance Services Office, Inc., 2018 **CG 40 15 12 19**

OGIC000264

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - ASBESTOS

This endorsement modifies insurance under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury", "personal and advertising injury" or "property damage" arising out of:

1. Inhaling, ingesting or physical exposure to asbestos or goods or products containing asbestos; or

2. The use of asbestos in constructing or manufacturing any goods, product or structure; or

3. The removal, repair, encapsulation, enclosure, abatement or maintenance of asbestos in or from any goods, product or structure; or

4. The manufacture, sale, distribution, transportation, storage or disposal of asbestos or goods or products containing asbestos.

This insurance does not apply to payment for the investigation or defense of any claim, injury, loss, fine, penalty or lawsuit related to any of the foregoing items **1.** thru **4.** Nor do we have a duty to investigate or defend any such claim, injury, loss or lawsuit.

This insurance also does not apply to any loss, cost or expense incurred in complying with any federal, state, or local provision of law regarding the inspection, monitoring, or control of asbestos in any goods, products or structures.

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 70 17** 12 98

OGIC000265

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DAMAGE TO YOUR WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILTIY COVERAGE PART

1. The following is added to **SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** paragraph **1. Insuring Agreement:**

   f. Damages because of "property damage" include damages the insured becomes legally obligated to pay because of "property damage" to "your work" and shall be deemed to be caused by an "occurrence", but only if:

   (1) The "property damage" is the result of work performed on your behalf by a subcontractor(s) that is not a Named Insured;

   (2) The work performed by the subcontractor(s) is within the "products-completed operations hazard"; and

   (3) The "property damage" is unexpected or unintended from the standpoint of the insured.

   We will not be obligated to pay any sums to repair or replace the defective work performed on your behalf by a subcontractor.

2. **The following amendment supersedes all other amendments to Coverage A, Exclusion l.:**

   **Coverage A, Exclusion l.** is replaced by the following:

   l. **Damage To Your Work**

   "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

   This exclusion does not apply to "property damage" to "your work" resulting from work performed on your behalf by a subcontractor and included in the "products-completed operations hazard", however we will not be obligated to pay any sums to repair or replace the defective work performed on your behalf by a subcontractor.

   This endorsement applies only to the Named Insured and no other party.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 71 21** 05 18

OGIC000266

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DAMAGE TO PROPERTY-BORROWED EQUIPMENT

This endorsement modifies insurance provided under the following**:**

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Under **SECTION 1, COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Item **2. Exclusions j.** is deleted and replaced by the following:

**j.  Damage To Property:**

**(1)** Property you own, rent or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of any real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any real property that must be restored, replaced, or repaired because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to:

**(i)** "property damage" to tools or equipment loaned to you if the tools or equipment are not being used to perform operations at the time of loss; or

**(ii)** "property damage" (other than damage by fire) to premises rented to you or temporarily occupied by you with the permission of the owner including contents of such premises rented to you for a period of seven (7) or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in **Section III - Limits Of Insurance.**

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were not occupied, rented or held for rental by you beyond one year from the date "your work" was completed.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 71 60** 05 18

OGIC000267

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY**
**CG 99 09 12 19**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PREMIUM AUDIT NONCOMPLIANCE CHARGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK LIABILITY COVERAGE PART

### SCHEDULE

| | |
|---|---|
| **Total Advance Premium:** | $ ▮▮▮▮ |
| **Audit Noncompliance Charge Factor:** | UP TO 200% |
| **Number Of Written Attempts To Obtain Audit Information:** | 2 |
| **Reassessment Charge:** | $ 0 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

Paragraph **5.c.** of the **Premium Audit** Condition under **Section IV – Conditions** is replaced by the following:

**c.** The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request. If the first Named Insured fails to comply with this request at the close of an audit period, an Audit Noncompliance Charge will be assessed, and notice will be sent to the first Named Insured.

The additional charge will be determined by multiplying the Total Advance Premium by the Audit Noncompliance Charge Factor indicated in the Schedule of this endorsement. (The following example is for illustration purposes only.)

Example:

Total Advance Premium: $25,000

Audit Noncompliance Charge Factor: 1

Audit Noncompliance Charge: $25,000

**(1)** We will only assess the Audit Noncompliance Charge:

**(a)** For audits conducted after the end of the policy period; and

**(b)** When we have made the number of written attempts indicated in the Schedule of this endorsement to obtain audit information from the first Named Insured.

The due date for the Audit Noncompliance Charge is the date shown as the due date on the bill.

**(2) Subsequent Compliance And Reassessment Charge**

**(a)** The first Named Insured may notify us in writing, prior to the due date on the bill for the Audit Noncompliance Charge, that the Named Insured agrees to comply with the audit request.

**(b)** A Reassessment Charge may apply if this charge is indicated in the Schedule.

**(c)** The first Named Insured must comply with the audit within 30 days of our receipt of the written notification described in Paragraph **(2)(a)** above, and then the Audit Noncompliance Charge will no longer apply. If a Reassessment Charge is indicated in the Schedule of this endorsement, that charge will remain applicable.

**CG 99 09 12 19**                © Insurance Services Office, Inc., 2018                **Page 1 of 2**

OGIC000268

**(d)** If the first Named Insured fails to comply with the premium audit after 30 days of our receipt of the notification described in Paragraph **(2)(a)** above, a subsequent notice will be sent to the first Named Insured indicating that the Audit Noncompliance Charge and the Reassessment Charge (if applicable) will be final. The due date for the Audit Noncompliance Charge and the Reassessment Charge is the date shown as the due date on the bill.

© Insurance Services Office, Inc., 2018  **CG 99 09 12 19**

OGIC000269

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**.

# COMMERCIAL GENERAL LIABILITY
# ARTISAN CONTRACTORS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SCHEDULE**

The coverage provided by this endorsement is summarized below and is intended to provide a general coverage description only. For the details affecting each coverage please refer to the terms and conditions in the endorsements listed.

**The endorsements listed below will automatically be attached to your policy to complete the coverage provided by the Commercial General Liability Endorsement:**

- Additional Insured – Owners, Lessees or Contractors – Scheduled Person Of Organization - CG 20 10
- Contractor's Professional and Pollution Legal Liability – CG 72 02
- Damage To Your Work – CG 71 21
- Damage To Property – Borrowed Equipment – CG 71 60
- Primary And Noncontributory – Other Insurance Condition – CG 20 01
- Waiver of Transfer of Rights – CG 24 04

Case 2:26-cv-04974-GAM Document 1-51 Filed 07/11/26 Page 338 of 577

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 71 68** 05 21

OGIC000270

COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY ENDORSEMENT

**THIS ENDORSEMENT PROVIDES CLAIMS MADE COVERAGE AND HAS DIFFERENT REPORTING REQUIREMENTS THAN OTHER PARTS OF THE POLICY. THIS ENDORSEMENT ALSO CONTAINS PROVISIONS WHICH LIMIT THE AMOUNT OF "LEGAL EXPENSES" THAT WE MAY BE RESPONSIBLE TO PAY. "LEGAL EXPENSES" WILL REDUCE EACH APPLICABLE LIMIT OF INSURANCE SHOWN IN THE SCHEDULE OF THIS ENDORSEMENT.**

**NO INSURED WILL, EXCEPT AT ITS OWN COST, VOLUNTARILY MAKE A PAYMENT, ASSUME ANY OBLIGATION, ADMIT LIABILITY OR INCUR ANY EXPENSE WITHOUT OUR WRITTEN CONSENT.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Coverage, exclusions, conditions or definitions contained in the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** do not apply to this endorsement unless specifically outlined below.

### SCHEDULE

| | |
|---|---|
| **"Named Insured":** Mike Burdett Roofing and Exteriors LLC<br>**"Named Insured" Address:**<br>   3420 Horton Rd,  Newtown Square, PA 19073-3418 | |
| **Endorsement Aggregate Limit of Insurance** | **$10,000** |
| **Contractor's Pollution Legal Liability Insurance Aggregate Limit:** | **Included** |
| **Contractor's Pollution Legal Liability Insurance Deductible for Each "Pollution Condition":** | **$500** |
| **"Commencement Date":** (*If left blank, the inception date of this endorsement*) | **2021-10-08** |
| | |
| **Professional Legal Liability Insurance Aggregate Limit:** | **Included** |
| **Professional Legal Liability Insurance Deductible for Each "Professional Loss":** | **$500** |
| **"Contracting Services":** | **All contracting services** |
| **"Professional Services":** | **Value engineering and field changes to design** |
| **"Retroactive Date":** (*If left blank, the inception date of this endorsement*) | **2021-10-08** |
| **"Automatic Extended Reporting Period":** | **90 days** |
| | |
| **Premises Pollution Legal Liability Insurance Aggregate Limit:** | **Excluded** |
| **Premises Pollution Legal Liability Insurance Deductible for Each "Pollution Condition":** | **Excluded** |
| **"Covered Location"(s):**<br>   Location 1 - 3420 Horton Rd, Newtown Square, PA  19073-3418 | |
| **"Retroactive Date":** (*If left blank, the inception date of this endorsement*) | **Excluded** |
| **"Automatic Extended Reporting Period":** | **Excluded** |
| | |
| **"Business Interruption" and "Extra Expense" Aggregate Limit:** | **Excluded** |
| **"Business Interruption" and "Extra Expense" "Deductible Period":** | **Excluded** |
| | |
| **"Pollution Emergency" Telephone Number:** | **1-800-347-4384** |

This endorsement amends the policy to provide Professional Legal Liability and Premises

Pollution Legal Liability Insurance on a claims made and reported basis and Contractor's

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 1 of 21**

OGIC000271

Pollution Legal Liability Insurance on an occurrence basis, when there is an applicable Limit of Insurance shown in the SCHEDULE. The terms and conditions of this endorsement govern the scope of coverage and your and our duties. Various provisions in this endorsement restrict coverage. Read the entire endorsement carefully to determine your rights and duties and what is and is not covered. The terms, conditions, exclusions, and limits of insurance set forth in this endorsement apply only to the coverage provided by this endorsement.

If this endorsement does not contain a cancellation provision, the terms and conditions of the cancellation provision of the policy, and any amendment to such terms, are incorporated herein and shall apply to coverage as is afforded by this endorsement, unless specifically stated otherwise in an endorsement(s) attached hereto.

Throughout this endorsement, the words "you" and "your" refer to the "named insured" under this endorsement. The words "we", "us" and "our" refer to the company providing this coverage. The word "insured" means any person or organization qualifying as such under **C. Who Is An Insured**. The term "policy" refers to the primary policy to which this endorsement is attached.

Words and phrases that appear in quotation marks have special meaning. Refer to **G. Definitions**. To the extent any words or phrases used in this endorsement are defined elsewhere in the policy, such definitions provided elsewhere do not apply to give meaning to the words or phrases used in this endorsement.

## SECTION IV -- INSURANCE

### A. Coverage

1. **Contractor's Pollution Legal Liability Insurance**

   a. We will pay those sums that you become legally obligated to pay as damages or "cleanup costs" because of "loss" caused by a "pollution condition" resulting from "contracting services", provided that:

      **(1)** The "pollution condition" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)** The "loss" occurs during the endorsement period;

      **(3)** The "pollution condition" is on, at, under or migrating from a "job site";

      **(4)** The "pollution condition" results from "contracting services" rendered on or after the "commencement date" shown in the SCHEDULE of this endorsement and prior to the expiration of the endorsement period; and

      **(5)** The "pollution condition" results in a "claim" against you, and the "claim" is brought and maintained at all times in the "coverage territory."

   b. We have the right and duty to defend you against any "claim" seeking damages or "cleanup costs" because of "loss" to which **Contractor's Pollution Legal Liability Insurance** applies. However, we have no duty to defend you against any "claim" to which **Contractor's Pollution Legal Liability Insurance** does not apply.

   c. When we have a duty to defend, we will pay on your behalf "legal expenses" incurred as a result of a "claim" against you seeking damages or "cleanup costs" because of "loss" to which **Contractor's Pollution Legal Liability Insurance** applies.

   d. "Legal expenses" apply to and reduce the applicable Limit of Insurance shown in the SCHEDULE of this endorsement.

   e. We may, at our discretion, investigate any "occurrence" or "pollution condition" and settle any "claim" that may result. However, the Endorsement Aggregate Limit of Insurance shown on the SCHEDULE is the most we will pay for damages, "cleanup costs" and "legal expenses" under **Contractor's Pollution Legal Liability Insurance**. Our right and duty to defend under this endorsement ends once the applicable Limit of Insurance shown in the SCHEDULE has been used up in the payment of "legal expenses" or settlements, judgments or any combination thereof, to which **Contractor's Pollution Legal Liability Insurance** applies.

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 2 of 21**

OGIC000272

**f.** No other obligation or liability to pay sums or perform acts or services is covered under this endorsement.

**2. Professional Legal Liability Insurance**

**a.** We will pay those sums that you become legally obligated to pay because of a "claim" resulting from an act, error, or omission in "professional services", provided that:

**(1)** A Limit of Insurance is shown as included on the SCHEDULE under **Professional Legal Liability Insurance**;

**(2)** The "claim" arises out of "professional services" rendered on or after the "retroactive date" and prior to the expiration of the endorsement period;

**(3)** The "claim" is not covered under **Contractor's Pollution Legal Liability Insurance**; and

**(4)** The "claim" is first made against the insured during the endorsement period and reported to us, in writing, during the endorsement period or, where applicable, the "automatic extended reporting period" or the "optional extended reporting period".

**b.** We have the right and duty to defend you against any "claim" seeking "professional loss" to which **Professional Legal Liability Insurance** applies, including the right to select counsel, even if any of the allegations are groundless, false or fraudulent. However, we have no duty to defend you against any "claim" to which **Professional Legal Liability Insurance** does not apply.

**c.** When we have a duty to defend, we will pay on your behalf "legal expenses" incurred as a result of a "claim" against you seeking "professional loss" to which **Professional Legal Liability Insurance** applies.

**d.** "Legal expenses" apply to and reduce the applicable Limit of Insurance shown in the SCHEDULE of this endorsement.

**e.** We may, at our discretion, investigate any "professional loss"

and settle any "claim" that may result. However, the Endorsement Aggregate Limit of Insurance shown on the SCHEDULE is the most we will pay for damages or "legal expenses" under **Professional Legal Liability Insurance**. Our right and duty to defend under this endorsement ends once the Endorsement Aggregate Limit of Insurance shown in the SCHEDULE has been used up in the payment of "legal expenses", settlements or judgments, or any combination thereof, to which **Professional Legal Liability Insurance** applies.

**f.** No other obligation or liability to pay sums or perform acts or services is covered under this endorsement.

**3. Premises Pollution Legal Liability Insurance**

**a.** We will pay those sums that you become legally obligated to pay as damages or "cleanup costs" because of "loss" caused by a "pollution condition", provided that:

**(1)** The "loss" is caused by a "pollution condition" on, at, under or migrating from a "covered location";

**(2)** The "pollution condition" results in a "claim" against you;

**(3)** The "pollution condition" takes place, and the "claim" is brought and maintained at all times, in the "coverage territory" and "covered locations";

**(4)** The "claim" is first made against you during the endorsement period and reported by you to us, in writing, during the endorsement period or, where applicable, the "automatic extended reporting period" or the "optional extended reporting period".

**b.** We have the right and duty to defend you against any "claim" seeking damages or "cleanup costs" because of "loss" to which **Premises Pollution Legal Liability Insurance** applies. However, we have no duty to defend you against any "claim" to which **Premises Pollution Legal Liability Insurance** does not apply.

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 3 of 21**

OGIC000273

c. When we have a duty to defend, we will pay on your behalf "legal expenses" incurred as a result of a "claim" against you seeking damages or "cleanup costs" because of "loss" to which **Premises Pollution Legal Liability Insurance** applies.

d. "Legal expenses" apply to and reduce the applicable Limit of Insurance shown in the SCHEDULE of this endorsement.

e. We may, at our discretion, investigate any "pollution condition" and settle any "claim" that may result. However, the Endorsement Aggregate Limit of Insurance shown on the SCHEDULE is the most we will pay for damages, "cleanup costs" and "legal expenses" under **Premises Pollution Legal Liability Insurance**. Our right and duty to defend under this endorsement ends once the Endorsement Aggregate Limit of Insurance shown in the SCHEDULE has been used up in the payment of "legal expenses", settlements or judgments, or any combination thereof, to which **Premises Pollution Legal Liability Insurance** applies.

f. No other obligation or liability to pay sums or perform acts or services is covered under this endorsement.

4. **Business Interruption and Extra Expense**

   We will pay on behalf of the insured "business interruption" and "extra expense", including "rental value", solely as a result of a "claim" for a "pollution condition" covered under **Premises Pollution Legal Liability Insurance** and not otherwise excluded under the terms and conditions of this endorsement; provided that a limit of liability is shown on the SCHEDULE under Business Interruption and Extra Expense.

B. **Exclusions**

1. With respect to **Contractor's Pollution Legal Liability Insurance**, **Professional Legal Liability Insurance** and **Premises Pollution Legal Liability Insurance**, this insurance does not apply to:

a. **Workers Compensation and Similar Laws**

   Any obligation of the insured under any workers' compensation, unemployment compensation or disability benefits law or similar law.

b. **Hostile Acts**

   A "pollution condition", "loss" or "claim" arising from any consequence, whether direct or indirect, of war (whether declared or not declared), invasion, act of foreign enemy, hostilities, civil war, rebellion, revolution, insurrection, military action, usurped power, strike, riot or civil commotion.

c. **Fines, Penalties, Punitive and Multiplied Damages**

   Any actual or alleged "claim" or liability for, or amount consisting of, a fine, penalty, punitive damages, exemplary damages or multiplied damages.

d. **Equitable and Other Types of Relief**

   Any actual or alleged "claim" or liability for equitable relief, restitution or the return of money for work or services.

e. **Electronic Data**

   Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data. As used in this exclusion, electronic data means information, facts or programs stores as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

f. **Criminal Acts**

   "Loss" arising out of a criminal act committed by or at the direction of the insured.

g. **Defective Drywall**

   The existence of, exposure to, required removal or abatement of:

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 4 of 21**

OGIC000274

**(1)** defective drywall, which includes, but is not limited to drywall that emits gases, vapors, or fumes or any other irritant or contaminant; and

**(2)** any other building component affected by defective drywall, including drywall that emits gases, vapors, fumes, or any other irritant or contaminant.

For purposes of this exclusion, drywall includes, but is not limited to any product known as gypsum board, wall board, and plaster board, drywall manufactured outside the United States and used for interior building material.

**2.** With respect to **Contractor's Pollution Legal Liability Insurance** and **Premises Pollution Legal Liability Insurance**, this insurance does not apply to:

**a. Known Circumstances or Conditions**

**(1)** A "pollution condition", "loss" or "claim" known by any insured prior to the endorsement period;

**(2)** A circumstance or condition known by any insured prior to the inception of the endorsement period where an insured should have reasonably foreseen that a "pollution condition", "loss" or "claim" would result.

**b. Employers Liability**

"Bodily injury" to

**(1)** An "employee" of any insured arising out of and in the course of employment by any insured or the performance of duties related to the conduct of any insured's business; or

**(2)** To the spouse (including the domestic partner or civil union partner recognized under the law of any applicable jurisdiction in the "coverage territory"), child, parent, brother or sister of that "employee" as a consequence of (1) above.

This exclusion applies whether any insured may be liable as an employer or in any other capacity

and to any obligation to share damages with or repay someone else who must pay damages as a result of the injury.

This exclusion does not apply to liability assumed by you under an "insured contract", provided that:

**(1)** The "insured contract" is in writing and signed by you;

**(2)** The "pollution condition" first commenced after you signed the "insured contract"; and

**(3)** The "pollution condition" is caused, in whole or in part, by you or those acting on your behalf.

**c. Contractual Liability**

"Loss" for which any insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement This exclusion does not apply to liability for damages:

**(1)** That you would have in the absence of the contract or agreement; or

**(2)** Assumed by you in a contract or agreement that is an "insured contract", provided that:

**(a)** The "insured contract" is in writing and signed by you;

**(b)** The "pollution condition" first commenced after you signed the "insured contract"; and the "pollution condition" is caused, in whole or in part, by you or by those acting on your behalf.

**d. Goods, Products or Materials**

A "pollution condition", "loss" or "claim" arising out of any goods, materials or products manufactured, sold, distributed, designed, handled, supplied, altered, repaired or disposed of by any insured or by others under license or trading under an insured's name.

**e. Intentional Acts**

A "pollution condition", "loss" or "claim" arising out of any actual or alleged:

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 5 of 21**

OGIC000275

**(1)** Intentional disregard of, or non-compliance with, any statute, regulation, ordinance, law or order by or at the direction of any insured or its agent; or

**(2)** Fraudulent, dishonest or malicious conduct by or at the direction of any insured or its agent.

**e. Professional Liability**

A "pollution condition", "loss" or "claim" arising out of the rendering of or failure to render professional services.

**f. Asbestos**

Any "loss", "pollution condition", cost, expense or "claim" which would not have occurred, in whole or in part, but for the actual, alleged or threatened existence of, presence of, inhalation of, ingestion of, use of, handling of, contact with or exposure to asbestos in any form, including products containing asbestos, asbestos fibers, asbestos dust and asbestos containing materials. This exclusion applies regardless of:

**(1)** The cause of the "loss", "pollution condition", cost, expense or "claim", or

**(2)** Whether the "loss", "pollution condition", cost, expense or "claim" is related to any product, services or operations of an insured.

**g. Lead**

Any "loss", "pollution condition", cost, expense or "claim" which would not have occurred, in whole or in part, but for the actual, alleged or threatened existence of, presence of, inhalation of, ingestion of, use of, handling of, contact with or exposure to lead, lead-based paint or any material containing lead or lead-based paint. This exclusion applies regardless of:

**(1)** The cause of the "loss", "pollution condition", cost, expense or "claim"; or

**(2)** Whether the "loss", "pollution condition", cost, expense or "claim" is related to any product,

services or operations of an insured.

**h. Nuclear or Radioactive Waste and Materials**

A "pollution condition", "loss" or "claim" which would have not occurred, in whole or in part, but for the actual, alleged or threatened contact with, exposure to, existence of or presence of any nuclear or radioactive material, waste or condition.

**i. Non-cumulation**

Any "occurrence", "claim", "loss" or "pollution condition", including the same, related, repeated or continuous "pollution condition"(s), that was:

**(1)** Reported to us or an affiliate of us under a endorsement or endorsement issued by us or an affiliate of us prior to the inception of the endorsement period of this endorsement; or

**(2)** Reported to another Insurance company or its agent prior to the inception of the endorsement period of this endorsement.

**j. Insured Versus Insured**

Any "claim" by an insured against another insured.

**k. Related Persons or Organizations**

Any "claim" by a person or organization:

**(1)** That wholly or partially owns, operates, manages or controls any insured;

**(2)** In which any insured has a direct or indirect ownership interest;

**(3)** That is controlled, operated or managed by any insured; or

**(4)** That is an affiliate of any insured;

but this exclusion will not apply to a "claim" made by an "additional insured".

**l. Mold Matter**

A "pollution condition", "loss" or "claim" which would have not occurred, in whole or in part, but for

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 6 of 21**

OGIC000276

the actual, alleged or threatened contact with, exposure to, existence of or presence of any "mold matter".

m. **Communicable Diseases**

Based upon or arising out of the exposure to infected individuals or animals, or contact with bodily fluids of infected individuals or animals.

3. With respect to **Contractor's Pollution Legal Liability Insurance**, this insurance does not apply to:

a. **Transportation**

A "pollution condition", "loss" or "claim" arising out of:

(1) The ownership, operation, maintenance, use (including "loading or unloading") or entrustment to others of any "auto", "mobile equipment", aircraft, watercraft, rolling stock or other mode of transportation, including any machinery or apparatus attached thereto or any cargo carried thereby; or

(2) Waste or materials transported, removed or taken by anyone beyond the boundaries of the "job site".

Paragraph (1) of this exclusion does not apply to a "pollution condition", "loss" or "claim" arising out of the use of an "auto" or "mobile equipment" within the boundaries of a "job site", if such use is solely and directly related to "contracting services".

b. **Faulty Workmanship/Insured's Work**

Any "claim" for or amounts consisting of the cost to repair or replace faulty workmanship, construction, fabrication, installation, assembly, erecting, manufacturing or remediation, if such faulty workmanship, construction, fabrication, installation, assembly, erecting, manufacturing or remediation was performed, in whole or in part, by or on behalf of an insured.

c. **Property**

"Property damage" to:

(1) Property that is or was at any time owned, rented or occupied by any insured; or

(2) Personal property in the care, custody or control of any insured.

4. With respect to **Professional Legal Liability Insurance**, this insurance does not apply to:

a. **Asbestos**

Arising out of the existence of, require removal or abatement of asbestos, in any form, including but not limited to products containing asbestos, asbestos fibers, asbestos dust and asbestos containing materials.

b. **Lead and Lead-Based Paint**

Arising out of the existence of, required removal or abatement of any lead and/or lead-based paint, in any form, including, but not limited to, products containing lead, lead dust and lead containing materials.

c. **Contractual Liability**

Arising from the insured's:

(1) Assumption of liability in a contract or agreement; or

(2) Breach of contract or agreement.

This exclusion does not apply to liability that the insured would have in the absence of the contract or agreement.

d. **Discrimination**

Arising from any discrimination on the basis of age, color, race, sex, creed, national origin, marital status, disability or sexual preference, unless such "claim" is based upon or arises out of the failure to make a reasonable accommodation for a disability in violation of the Americans With Disabilities Act 42 U.S.C. 12101, et seq., as amended.

e. **Employer's Liability**

Arising from any injury to:

(1) any employee, director, officer, partner or member of any insured or "leased worker" of any insured, if such injury arises in the course of:

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

OGIC000277

(a) employment by an insured; or

(b) performing duties related to the conduct of an insured's business; or

(2) the spouse, child, parent, brother or sister of such employee, director, officer, partner or member of any insured or "leased worker" of the insured, as a consequence of any injury to any of the persons described in Paragraph (1). above.

This exclusion does not apply to liability assumed by the "named insured" in a contract or agreement that is an "insured contract".

**f. Express Warranty and Guaranty**

Arising from any express warranty or guaranty. This exclusion does not apply to any warranty or guarantee by the insured that the insured's "professional services" are in conformity with the standard of care that would be applicable in the absence of such express warranty or guarantee.

**g. Fiduciary Liability**

Arising from any involvement by an insured as:

(1) An officer, director, partner, member, trustee, employer or employee of a business enterprise not shown in the SCHEDULE or any charitable organization, or pension, welfare, profit sharing, mutual or investment fund or trust; or

(2) A fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto or any other employee benefit plan.

**h. Insurance and Suretyship**

Arising out of the requiring, obtaining, maintaining, advising as to or the failure to require, obtain, maintain or advise as to any form of Insurance, suretyship or bond, either with respect to any insured or any other person or organization.

**i. Insured Versus Insured**

Any "claim" by an insured against another insured. This exclusion does not apply to a "claim" by a "client".

**j. Intentional and Dishonest Acts**

Arising from any

(1) Intentional disregard of or non-compliance with, any statute, regulation, ordinance, law or order by or at the direction of the insured or its agent; or

(2) Actual or alleged fraudulent, dishonest or malicious conduct by the insured.

This exclusion does not apply to the insured that did not allegedly commit or allegedly participate in committing any of the forgoing described above.

**k. Joint Venture or Co-Venture**

Arising out of an insured's participation in a joint venture or co-venture. This exclusion does not apply to the "named insured's" liability resulting from the rendering or failure to render "contracting services" or "professional services" as a partner or member of a joint venture or co-venture.

**l. Known Circumstances or Conditions**

Arising from:

(1) A "claim" or "professional loss" known by a "responsible insured" prior to the inception of the "endorsement period"; or

(2) A circumstance or condition known by a "responsible insured" prior to the inception of the "endorsement period" where the "responsible insured" should have reasonably foreseen that a "claim", "pollution condition" or "professional loss" would result.

**m. Mold Matter**

Arising out of the existence of, exposure to, required removal or abatement of "mold matter", in any form including but not limited to any such cause or condition involving the presence, discharge or infiltration of moisture, vapor, water or any other liquid, or any damage

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 8 of 21**

OGIC000278

related thereto. For purposes of this exclusion, "mold matter" means mold, mildew or any type or form of fungus, including myotoxins, spores or by-products produced or released by fungi.

**n.  Notices to Previous Insurers**

Arising from any "claim", act, error or omission in "professional services" or other circumstance reported by an insured under any prior endorsement issued by a person or organization other than us.

**o.  Off-Site Waste Liability**

Arising out of any waste or materials transported beyond the boundaries of a "job site".

**p.  Personal Injury**

Arising from the false arrest, humiliation, harassment, detention, imprisonment, wrongful entry or eviction or other invasion of private occupancy, malicious prosecution, abuse of process, libel, slander, harassment, or other defamatory or disparaging material, or a publication or an utterance in violation of an individual's right of privacy.

**q.  Products**

Arising from any goods, materials or products designed, manufactured, sold, handled, distributed and/or supplied by any insured or by others under license or trade name from any insured.

**r.  Professional Liability**

Arising out of the rendering of or failure to render professional services by the insured, unless there is a limit of insurance shown on the SCHEDULE for **Professional Legal Liability Insurance**.

**s.  Property**

Arising out of:

**(1)** Any real property owned by the "named insured"; or

**(2)** for the repair, replacement or restoration of any personal property in the care, custody or control of the insured, other than

personal property owned or leased by, or in the care, custody or control of, the "client".

**t.  Radioactive / Nuclear Material**

Arising out of:

**(1)** The radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof;

**(2)** Ionizing radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the processing or reaction of nuclear fuel;

**(3)** The existence, required removal or abatement of naturally occurring radioactive materials including, but not limited to, radon;

**(4)** High-level radioactive waste (spent nuclear fuel or the highly radioactive waste produced if spent fuel is reprocessed), uranium milling residues and waste with greater than specified quantities of elements heavier than uranium; or

**(5)** Mixed Waste as defined in Title 40 Code of Federal Regulations, Part 266.210; however, this paragraph 5. does not apply to Mixed Waste that contains Waste as defined in Title 10 Code of Federal Regulations, Part 61.2, including, but not limited to the actual, alleged or threatened exposure of any person(s) or property to any such matter.

**u.  Retroactive Date**

A "claim" resulting from an act, error, or omission in "professional services" that commenced before the "retroactive date" shown in the **SCHEDULE** of this endorsement.

**v.  Related Entities and Individuals**

Arising from a "claim" by an entity or individual

**(1)** that wholly or partially owns, operates or manages an insured;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 9 of 21**

OGIC000279

**(2)** in which an insured has a direct or indirect ownership interest;

**(3)** that is controlled, operated or managed by an insured; or

**(4)** that is an affiliate of an insured;

but this exclusion will not apply to a "claim" made by an "additional insured".

**w. Securities Violation**

Arising from any violation of the Securities Act of 1933 as amended or the Securities Exchange Act of 1934 as amended or any state Blue Sky or securities law or similar State, Federal or other governmental law, statute and any regulation or order issued pursuant to any of the foregoing statutes.

**x. Transportation**

Arising from the ownership, maintenance, use, operation, loading or unloading of any motorized land vehicle, aircraft, watercraft or rolling stock, including any machinery or apparatus attached thereto or any cargo carried thereby, beyond the boundaries of a "job site".

**4.** With respect to **Premises Pollution Legal Liability Insurance**, this insurance does not apply to:

**a. Transportation**

A "pollution condition", "loss" or "claim" arising out of:

**(1)** The ownership, operation, maintenance, use (including "loading or unloading") or entrustment to others of any "auto", "mobile equipment", aircraft, watercraft, rolling stock or other mode of transportation, including any machinery or apparatus attached thereto or any cargo carried thereby; or

**(2)** Waste or materials transported, removed or taken by anyone beyond the boundaries of a "covered location".

**b. Retroactive Date**

A "loss" or "claim" arising out of a "pollution condition" that commenced before the "retroactive date" shown in the **SCHEDULE** of this endorsement. For the purpose

of this exclusion, a "pollution condition" that commenced before the "retroactive date" shown in the SCHEDULE under **Premises Pollution Legal Liability Insurance** of this endorsement includes any dispersal, migration or further movement of such "pollution condition" on or after the "retroactive date".

**c. Divested Property**

Any "claim" or "loss" arising out of "pollution condition" on, at, under or migrating from a "covered location" where the actual or alleged "pollution condition" commenced after the time the "covered location" is sold, given away or abandoned by an insured, or is condemned.

**d. Property**

"Property damage" to:

**(1)** Property that is or was at any time owned, rented or occupied by any insured; or

**(2)** Personal property in the care, custody or control of any insured.

Paragraph **(1)** of this exclusion does not apply to "cleanup costs" because of "environmental damage" caused by a "pollution condition" on, at, under or migrating from a covered location.

**e. Underground Storage Tanks**

A "pollution condition", "loss" or "claim" arising out of the past or current existence of an "underground storage tank" on, at, under or migrating from a "covered location".

**f. Material Change in Use or Operations**

A "pollution condition", "loss" or "claim" arising out of a material change in the use of, or a material change in the operations at, any "covered location" from those set forth by any insured in the Application or related materials as of the inception date of the endorsement period of this endorsement.

**C. Who Is An Insured**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 10 of 21**

OGIC000280

1. Insured means each of the following:

   a. Any "named insured" and any current or former director, partner, member, executive officer, employee or "leased worker" of the "named insured", but solely while acting within the course and scope of his/her duties as such.

   b. Solely with regard to **Contractor's Pollution Legal Liability Insurance**, the "client", but only:

      (1) if the "named insured" is required to include the "client" as an additional insured in a written contract in effect during the endorsement period and signed by the "named insured" prior to the first commencement of the "pollution condition"; and

      (2) with respect to the "client's" vicarious liability resulting from the "named insured's" "contracting services".

      (3) Any Insurance afforded to the "client" under the terms and conditions of this endorsement will be limited to the lesser of the amount of the limits of insurance required by such written contract and the limits of insurance under this endorsement. In no event will we be liable for any amounts in excess of the limits of insurance shown on the SCHEDULE.

      In the event of the insured's bankruptcy, the trustees of the insured and in the event of the insured's death or incapacity, the insured's legal representatives or executors, but only with respect to each such trustee's, representative's or executors' vicarious liability resulting from the "named insured's" "contracting services" or "professional services".

   c. Any "additional insured", but only as respects "claims" against such person or entity for acts, errors or omissions of the "insured".

**D. Limits of Insurance**

   1. The **Endorsement Aggregate Limit** of Insurance shown in the SCHEDULE of this endorsement and the rules below establish the most we will pay regardless of the number of:

      a. Insureds;

      b. "Claim"(s);

      c. Persons or organizations making "claim"(s);

      d. Governmental actions taken with respect to "cleanup costs";

      e. "Pollution condition"(s) or

      f. "Professional loss".

   2. The **Endorsement Aggregate Limit** of Insurance shown in the SCHEDULE of this endorsement is the most we will pay for the sum of all damages, "cleanup costs" and "legal expenses" for which insurance is afforded under **Contractor's Pollution Legal Liability Insurance** for each "pollution condition" and in the aggregate. All "loss" arising out of the same, related, repeated or continuous "pollution condition"(s) shall be deemed to arise out of a single "pollution condition."

   3. The **Endorsement Aggregate Limit** of Insurance shown in the SCHEDULE of this endorsement is the most we will pay for all "professional loss" afforded under **Professional Legal Liability Insurance** for each "professional loss" and in the aggregate. If **Professional Legal Liability Insurance** is not listed as 'included' in the SCHEDULE, then **Professional Legal Liability Insurance** is not afforded. All "professional loss" arising out of the same, related, repeated or continuous act(s), error(s) or omission(s) in rendering or failing to render "professional services" is deemed to arise out of a single act, error or omission.

   4. The **Endorsement Aggregate Limit** of Insurance shown in the SCHEDULE of this endorsement is the most we will pay for all damages, "cleanup costs" and "legal expenses" for which insurance is afforded under **Premises Pollution Legal Liability Insurance** for each "pollution condition" and in the aggregate. All "loss" arising out of the same, related, repeated or continuous "pollution condition"(s) shall be deemed to arise out of a single "pollution condition".

   5. The "Business Interruption" and "Extra Expense" Limit shown in the

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 11 of 21**

OGIC000281

SCHEDULE of this endorsement is the most we will pay for all "business interruption" and "extra expense", including "rental value" for which insurance is afforded under "business interruption" and "extra expense" coverage. This limit is part of and not in addition to the **Endorsement Aggregate Limit** of Insurance.

**6. Insurance Under Multiple Policies**

    **a.** Notwithstanding anything to the contrary in this endorsement or any other endorsement issued by us or a company affiliated with us, under no circumstances will more than one endorsement issued by us or a company affiliated with us apply to:

        **(1)** any "loss", "pollution condition" or "professional loss" that occurs or continues through more than one endorsement period of two or more policies (including this endorsement) issued by us or a company affiliated with us; or

        **(2)** "claim"(s) and "loss"(es) arising out of the same, related, repeated or continuous "pollution condition" or "professional loss".

    **b.** Subject to paragraph **c.** below, if more than one endorsement issued by us or a company affiliated with us would otherwise apply to any "loss", "pollution condition" or "professional loss" that occurs or continues through more than one endorsement period of two or more policies (including this endorsement) issued by us or a company affiliated with us, the only endorsement that will respond is the endorsement with the earliest inception date. No other endorsement will respond, even if the limits of the endorsement with the earliest inception date have been impacted or exhausted by payment(s) by us.

    **c.** The most we will pay for the total of all "claim"(s) and "loss"(es) arising out of the same, related, repeated or continuous "pollution condition"(s) or "professional loss"(s) under all policies issued by us or a company affiliated with us is the Each "Pollution Condition" Limit of Insurance or Each "Professional Loss" Limit of Insurance set forth in the endorsement with the earliest inception date of all applicable policies issued by us or a company affiliated with us.

**E. Deductible**

    **1.** We will not pay any damages, "cleanup costs", "professional loss", "legal expenses", business interruption" or "extra expense" until the amount of damages, "cleanup costs", "professional loss", "legal expenses", "business interruption" or "extra expense" paid by the Named Insured exceeds the applicable deductible shown in the SCHEDULE.

    **2.** The deductible shall be satisfied by monetary payments by the Named Insured of damages, "cleanup costs", "professional loss", "legal expenses", business interruption" or "extra expense". The Named Insured shall make payments within the deductible to the appropriate parties as designated by us.

    **3.** The deductible shall not reduce the limit of liability shown in the SCHEDULE.

**F. Conditions**

    **1. Bankruptcy**

    Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this endorsement.

    **2. Legal Action Against Us**

    No person or organization has a right under this endorsement:

        **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

        **b.** To sue us on this endorsement unless all of its terms have been fully complied with.

    A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this endorsement or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 12 of 21**

OGIC000282

**3. Insurance Under Two or More Coverages**

If Insurance is available under **Contractor's Pollution Legal Liability Insurance, Professional Legal Liability Insurance** or **Premises Pollution Legal Liability Insurance** and also available under "other intra-endorsement Insurance" for the same "loss", damage or injury, our obligations are limited as follows:

a. Any Insurance available under **Contractor's Pollution Legal Liability Insurance, Professional Legal Liability Insurance** or **Premises Pollution Legal Liability Insurance** is primary, and there will be no contribution from or concurrent coverage with "other intra-endorsement Insurance" that would otherwise be applicable; and

b. Any available "other intra-endorsement Insurance" is excess over any Insurance available under **Contractor's Pollution Legal Liability Insurance, Professional Legal Liability Insurance** or **Premises Pollution Legal Liability Insurance** including amounts within the Deductible shown in the SCHEDULE of this endorsement.

c. When "other intra-endorsement Insurance" is excess, we will have no duty under "other intra-endorsement Insurance" to defend you against any "claim" if we have the duty to defend you under **Contractor's Pollution Legal Liability Insurance, Professional Legal Liability Insurance** or **Premises Pollution Legal Liability Insurance.**

d. If two or more of this endorsement's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**4. Duties in the Event of an "Occurrence", "Pollution Condition", "Professional Loss", "Loss" or "Claim"**

a. No insured will, except at its own cost, voluntarily make a payment, assume any obligation, admit liability, or incur any expense without our prior written consent.

b. The insured must see to it that we are notified as soon as practicable of any "occurrence", "pollution condition", "loss" or act, error or omission in "professional services" which may result in a "claim". To the extent possible, notice should include:

(1) How, when and where the "occurrence", "pollution condition", "loss" or act, error or omission in "professional services" took place;

(2) The names and addresses of any person involved and/or having knowledge of the "occurrence", "pollution condition", "loss" or act, error or omission in "professional services";

(3) The "contracting services" that may have caused such "pollution condition"; and

(4) The nature of any resulting harm, injury or damage.

c. If a "claim" is made or brought against an insured, the insured must:

(1) Immediately record the specifics of the "claim" and the date it was received;

(2) Notify us as soon as practicable;

(3) Provide written notice of the "claim" as soon as practicable;

(4) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with a "claim";

(5) Authorize us to obtain records and other information;

(6) Cooperate with us in the investigation, settlement or defense of the "claim"; and

(7) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "loss" to which the Insurance under this endorsement applies;

(8) With respect to **Professional Legal Liability Insurance**, the

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 13 of 21**

OGIC000283

insured must also provide the date and details of all actual and alleged acts, errors or omissions in "professional services" which took place, along with the specific nature, date and extent of any injury or damage which has been sustained, copies of any contracts that have been entered into by any insured that are related to the "professional services" and details explaining how the "insured" first became aware of the circumstance.

**d.** In the case of a "pollution emergency", the insured must report any claim or potential claim as soon as practicable by contacting us at the telephone number specified in the SCHEDULE.

**5. Concealment, Misrepresentation or Fraud**

This endorsement is void in any case of fraud by you as it relates to this endorsement at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This endorsement;

**b.** The "covered location";

**c.** Your interest in the "covered location"; or

**d.** A "claim" under this endorsement.

**6. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this endorsement at any time during the endorsement period and up to three years afterward.

**7. Liberalization**

If we adopt any revision that would broaden the coverage under this endorsement without additional premium within 45 days prior to or during the endorsement period, the broadened coverage will immediately apply to this endorsement.

**8. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this endorsement has rights to recover damages from another, those rights are transferred to us to the extent of our payment. If the insured has rights to recover all or part of any payment we have made under this endorsement, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. Subrogation**

In the event of any payment under this endorsement, we will be subrogated to all of the insured's rights of recovery against any person or organization and the insured will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured will do nothing at any time to prejudice our subrogation rights. However, we waive our right(s) of recovery against any person or organization if and to the extent the "named insured" has agreed to waive its right(s) of recovery against such person or organization in a written contract signed by the "named insured" prior to:

**a.** The first commencement of a "pollution condition" out of which the "claim" arises under **Contractor's Pollution Legal Liability Insurance**, or

**b.** The act, error or omission in "professional services" out of which the "claim" arises under **Professional Legal Liability Insurance**.

**G. Definitions**

**1.** "Additional insured" means any person or entity that the insured has agreed in writing to add as an "additional insured" under the Endorsement, prior to the commission of any act for which such person or entity would be provided coverage under the endorsement, but only to the extent the insured would have been liable and coverage would have been afforded under the terms and conditions of the endorsement had such "claim" been made against the "insured".

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

OGIC000284

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle Insurance or motor vehicle registration law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Automatic Extended reporting period" means the 90 day period of time set forth under the Extended Reporting Periods section

**4.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.** "Business Interruption" means the sum of the following:

**a.** Net income, which is net profit, if any, that would have been earned before taxes (or if there is a net loss before taxes, the net loss is deducted), and

**b.** Continuing normal operating expenses incurred excluding payroll not deducted in a. above,

due to the reasonably and necessary suspension of the insured's operations during the "period of restoration" at a "covered location".

**6.** "Claim" means a lawsuit or governmental action alleging legal liability on the part of the insured.

**7.** "Cleanup costs" means

**a.** reasonable and necessary costs, charges and expenses incurred, with our prior written consent, in the investigation, assessment, removal, disposal, abatement, containment, treatment, remediation (including the associated testing and monitoring) or neutralization of a "pollution condition", to the extent required by "environmental laws", required by a "licensed site professional" or required to satisfy the insured's obligations under a federal or state cleanup program;

**b.** Reasonable and necessary fees charged by an attorney designated or consented to by us incurred in connection with any such "cleanup costs";

**c.** Reasonable and necessary "restoration costs";

**d.** Reasonable and necessary "mitigation costs"; and/or;

**e.** Reasonable and necessary expenses incurred to respond to an imminent and substantial endangerment to the public health or welfare or to the environment because of a "pollution condition"; provided that, as a condition precedent to coverage, the "named insured" shall forward written notice to us of any action taken and expense incurred pursuant to this section as soon as practicable after any such "cleanup costs" have been incurred or assumed.

**8.** "Client" means the person or organization that directly hires the "named insured", by written contract signed by the "named insured", to render "contracting services" and for whom the "named insured" renders such services.

**9.** "Commencement date" means the date listed under "commencement date" on the SCHEDULE for each applicable coverage.

**10.** "Contracting services" means those contracting operations performed by you or on your behalf as disclosed to us as of the inception of the endorsement period, or as disclosed to us during the endorsement period and approved by us, in writing, in our sole and absolute discretion.

**11.** "Coverage territory" means the United States and its territories and possessions.

**12.** "Covered location" means each location shown in the SCHEDULE of this endorsement and all newly acquired locations during the endorsement period which are disclosed to us in writing during the endorsement period.

**13.** "Damages" means a monetary judgment, award or settlement. The term "damages" shall not include or mean:

**a.** future profits, restitution, disgorgement of unjust enrichment or profits by an insured, or the costs of complying with orders granting injunctive or equitable relief;

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 15 of 21**

OGIC000285

b. return or offset of fees, charges, or commissions charged by or owed to an insured for goods or services already provided or contracted to be provided;

c. taxes or loss of tax benefits;

d. fines, sanctions or penalties;

e. punitive or exemplary damages, or any damages which are a multiple of compensatory damages, unless insurable by law in any applicable venue that most favors coverage for such punitive, exemplary or multiple damages;

f. discounts, coupons, prizes, awards or other incentives offered to the insured's customers or clients;

g. liquidated damages, but only to the extent that such damages exceed the amount for which the insured would have been liable in the absence of such liquidated damages agreement; or

h. any amounts for which the insured is not liable, or for which there is no legal recourse against the insured.

14. "Deductible period" means the period of time that begins at the date and time that the we receive and record written notice of the necessary suspension of the insured's operations due to a "pollution condition" on, at, under or migrating from the a "covered location" and ends within the time frame shown on the SCHEDULE.

15. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

16. "Environmental damage" means the injurious presence in or upon land, the atmosphere, or any watercourse or body of water of "pollutants".

17. "Environmental laws" means any federal, state, provincial or local laws, including but not limited to statutes, rules, regulations, ordinances, guidance documents, and governmental, judicial or administrative orders and directives that are applicable to "pollution conditions" to which this Endorsement applies.

18. "Executive officer" means a person holding any of the officer positions created by your charter, constitution,

bylaws or any other similar governing document.

19. "Extra Expense" means the necessary expenses incurred by the insured, over and above the insured's continuing normal operating expenses, during the "period of restoration", that the insured would not have incurred had there been no "pollution condition" discovered at the "covered location", provided that the expenses are incurred to avoid or minimize the suspension of business and to continue operations:

a. at the "covered location", or

b. at replacement or temporary location(s), including:

(1) relocation expenses; and

(2) cost to equip and operate the replacement or temporary location(s).

Subject to the terms and conditions of this endorsement, we will pay no more for "extra expenses" than the percentage shown below multiplied by the Limit of Insurance stated in the SCHEDULE. If the "period of restoration" is:

a. 30 days or less, the percentage applied to the Limit of Liability shall be 40%;

b. 31-60 days, the percentage applied to the Limit of Liability shall be 80%;

c. 61 days or more, the percentage applied to the Limit of Liability shall be 100%.

20. "Field changes to design" includes but is not limited to, when a contractor discovers a minor physical job situation that makes it imprudent or impossible to complete the task, from the existing contract documents, the contractor then adjusts the job task, using practical construction knowledge, which does not inhibit the quality of the project, and leads to a field solution. This definition does not include any design that is required to be done by a licensed architect or engineer, and it does not include design related to construction means, methods, or jobsite safety precautions.

21. "Insured contract" mans that party of any written contract or written agreement under which the "named

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

OGIC000286

insured" assume the tort liability of another party to pay compensatory damages for "loss" to a third person or organization, provided that such written contract or written agreement is signed by the "named insured" prior to the "loss". Tort liability means a liability that would be imposed by law in the absence of any contract or agreement. However, "insured contract" does not include any tortious conduct that would otherwise not be covered by this endorsement, nor if the tortious conduct was solely that of the person or persons for whom such liability under the insured contract was assumed.

22. "Job site" means the location where the "contracting services" are being performed. "Job site" does not include any location which currently is or was, at the time the insured or subcontractor working directly or indirectly on the insured's behalf were working on the location, owned, rented, used or occupied by the insured.

23. "Leased worker" means a person leased to the insured, by a labor leasing firm under an agreement between the insured and the labor leasing firm to perform duties related to the conduct of the insured's business.

24. "Legal expenses" means reasonable and necessary legal fees, charges and expenses incurred in the investigation and defense of a "claim", provided such costs, charges and expenses are authorized by us. "Legal expenses" does not include any expense that is incurred by an insured in assisting in the investigation, defense or resolution of a "claim".

25. "Licensed site professional" means a licensed environmental scientist or engineer that is in good standing with, and acting under the authority of federal, state, provincial or local laws for the purpose of addressing "pollution conditions" at a "covered location".

26. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

27. "Loss" means "bodily injury", "property damage" or "environmental damage".

28. "Mitigations costs" means expenses incurred to clean up or mitigate a "pollution condition" resulting from a "pollution emergency" at a "covered location" or covered "job site", as required by a federal or state regulatory agency, prior to the initiation of a formal "claim" against the insured. "Mitigation costs" may only be covered with our prior approval and if notification of such "pollution condition" is provided as soon as practicable. "Mitigation costs" will not be covered where the "pollution condition" does not result in a "claim" or where the "pollution condition" would not otherwise be covered under the terms and conditions of this endorsement. "Mitigation expenses" shall not exceed $25,000.00 and are subject to and will reduce the aggregate limit of liability. **Refer to Paragraph F, 4. Duties in the Event of an "Occurrence", "Pollution Condition", "Professional Loss", "Loss" or "Claim"** for information on "pollution emergency" reporting.

29. "Mold matter" means mold, mildew or any type or form of fungus, including mycotoxins, spores or by-products produced or released by fungi.

30. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, on which are permanently mounted:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 17 of 21**

OGIC000287

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle Insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle Insurance law or motor vehicle registration law are considered "autos".

**31.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**32.** "Optional Extended reporting period" means the 1-year period of time set forth under the Extended Reporting Periods section

**33.** "Other intra-endorsement Insurance" means insurance provided under the terms of the endorsement other than the **Premises Pollution Legal Liability Insurance**, **Contactor's Pollution Legal Liability Insurance** or **Professional Legal Liability Insurance** afforded by this endorsement.

**34.** "Period of restoration" means the period of time that begins after the "deductible period" and ends when the "covered location(s)" should be restored to operation with reasonable speed and quality or when business activities resume at the new permanent location. The expiration date of this endorsement will not reduce the "period of restoration", nor shall the "extended reporting period" extend it.

**35.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**36.** "Pollution condition" means the discharge, dispersal, release, escape, seepage or migration of "pollutants" into or upon land, the atmosphere, or any watercourse or body of water.

**37.** "Pollution emergency" means any "pollution condition" where immediate action is required to respond to a potential or actual "claim".

**38.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

OGIC000288

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**39.** "Professional loss" means:

**a.** A monetary judgment, award or settlement of compensatory damages;

**b.** "Legal expenses" associated with the above paragraph.

"Professional loss" does not include:

**a.** Civil or criminal fines and penalties;

**b.** Punitive, exemplary or multiplied damages;

**c.** Injunctive or equitable relief;

**d.** The return of fees or charges for services rendered;

**e.** Costs and expenses incurred by the "insured" to redo, change, supplement or fix the "insured's" work or services, including redesign; or

**f.** Any of the "insured's" overhead, mark-up, or profit.

**40.** "Professional Services" means those activities listed under Professional Services in the SCHEDULE that are rendered by or on behalf of the "named insured".

**41.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this Insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**42.** "Rental Value" means the loss of any anticipated rental income the insured would have earned during the "period of restoration" by renting all or a portion of the "covered location(s)" to a third party not owned by, affiliated with, or connected in any way to the insured, less any rental income the insured actually earned or could have earned during the "period of restoration" by renting all or a portion of the "covered location(s)" or by making use of other

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

CG 72 02 07 21
**Page 19 of 21**

OGIC000289

property. "Rental value" does not apply to any loss included in the definition of "business interruption" and "extra expense".

43. "Responsible insured" means any officer, director, partner, member, manager, supervisor or foreman of any insured of any employee of an insured that has responsibility, in whole or in part, for risk control, risk management, health and safety or environmental affairs, control or compliance.

44. "Restoration costs" means expenses required to restore, repair or replace real or personal property to substantially the same condition it was in prior to being damaged during the course of responding to a "pollution condition" to which this endorsement applies. These costs will not exceed the actual cash value of such real or personal property immediately prior to such damage, or include costs associated with improvements or betterments. Actual cash value shall mean the cost to replace such real or personal property, immediately prior to such damage, minus the accumulated depreciation of the real or personal property.

45. "Retroactive date" means the date listed under "Retroactive date" on the SCHEDULE for each applicable coverage.

46. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this Insurance applies. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

47. "Transportation" means the movement of waste or material by "auto" or "mobile equipment" (including "loading or unloading") provided that the person or entity transporting the waste or material is properly licensed to transport such waste or material by "auto" or "mobile equipment".

48. "Underground storage tank" means a stationary container or vessel, including the associated piping connected thereto, which is ten percent (10%) or more beneath the surface of the ground and is:

a. Constructed primarily of non-earthen materials; and

b. Designed to contain any substance.

49. "Value engineering" means an organized effort directed at analyzing designed building features, systems, equipment, and material selections for the purpose of achieving essential functions at the lowest life cycle cost consistent with required performance, quality, reliability, and safety.

50. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

51. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 20 of 21**

OGIC000290

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

## H. Extended Reporting Periods

With respect to **Premises Pollution Legal Liability Insurance** or **Professional Legal Liability Insurance**:

**a.** You are entitled to an automatic ninety (90) day "automatic extended reporting period", commencing on the last day of the endorsement period. The ninety (90) day "automatic extended reporting period" applies to a "claim" first made during the endorsement period and reported to us, in writing, during the ninety (90) day "automatic extended reporting period". The ninety (90) day "automatic extended reporting period" applies only if we cancel or non-renew the **Professional Legal Liability Insurance** or the **Premises Pollution Legal Liability Insurance** for a reason other than non-payment of premium, non-payment of deductible, fraud or misrepresentation.

**b.** Upon non-renewal or cancellation of this endorsement for any reason except the non-payment of premium, the insured will have the right to purchase, for one hundred percent (100%) of the expiring annual premium, an "optional extended reporting period" of twelve (12) months. Coverage provided by such "optional extended reporting period" will only apply to "claims" first made against any insured during the endorsement period and reported to us, in writing, during the "optional extended reporting period", and arising out of any act, error or omission committed on or after the "retroactive date" and before the end of the endorsement period. In order for the insured to invoke the "optional extended reporting period", the payment of the additional premium for the must be paid to us within 60 days of the termination of this endorsement.

**c.** The purchase of the "optional extended reporting period" will in no way increase the Endorsement Aggregate Limit of Liability or any sublimit of liability. At the commencement of the "optional extended reporting period". the entire contribution will be deemed earned, and in the event the insured terminates the "optional extended reporting period" for any reason prior to its natural expiration, we will not be liable to return any contribution paid for the "optional extended reporting period"

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 21 of 21**

OGIC000291

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES - CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY

This endorsement modifies insurance provided under the following:

CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY FORM

**SECTION IV. INSURANCE, H. Extended Reporting Periods,** paragraph **b.** is replaced by the following:

1. Upon non-renewal or cancellation of this endorsement for any reason, the insured will have the right to purchase, for one hundred percent (100%) of the expiring annual premium, an " optional extended reporting period" of twelve (12) months. Coverage provided by such "optional extended reporting period" will only apply to "claims" first made against any insured during the endorsement period and reported to us, in writing, during the "optional extended reporting period", and arising out of any act, error or omission committed on or after the "retroactive date" and before the end of the endorsement period. In order for the insured to invoke the "optional extended reporting period", the payment of the additional premium for the must be paid to us within 60 days of the termination of this endorsement.

**CG 72 19** 05 21

Page **1** of **1**

# EXHIBIT

# "6"

OGIC000292



Insured: Mike Burdett Roofing and Exteriors LLC
Claim Number: 0002735785


Policy Number: CWP 179385Y
Policy Period(s): 10/8/2022 - 10/8/2026
Policy Cancelled: _____


☑ NON-CERTIFIED POLICY

OGIC000293



## Your passion. Our promise. Imagine the possibilities.

Congratulations on the continued success of your business and thank you for again choosing Westfield to be a partner in your progress.

Along with the Brandon Insurance Group, it's our privilege to not only help you avoid risk, but see how it can present business opportunities.

If you have questions or concerns about your policy, simply contact Brandon Insurance Group at 215-256-8020 or visit their website at www.brandonins.com. You can also visit us at **westfieldinsurance.com** for useful information about your policy such as:

- Detailed policy and coverage information
- ID cards or proof of insurance
- Bill pay services
- Claims information and status
- Business insights and risk management resources

Again, thank you for your business. Together, let's greet the future by imagining all the possibilities.

OGIC000294



# A Business Insurance Policy for
# Mike Burdett Roofing and Exteriors LLC

Prepared by

Brandon Insurance Group

of HARLEYSVILLE, Pennsylvania

OGIC000295

IN WITNESS WHEREOF, this Company has caused this policy be signed by its President and Secretary and countersigned by a duly authorized representative of the Company if required by law.

*Frank A Carrino* Secretary     *Edward J. Luzgert III* President

ID 7004 08 20

OGIC000296



# Westfield Privacy Promise

Effective: 2020 January 1

We are committed to protecting your privacy. This notice describes the personal information we collect about you and how we use it. This privacy promise applies to all our Westfield Insurance companies[1].

## SUMMARY
- We gather information directly from you[2], from your transactions with us and from outside sources.
- We use your information only to provide insurance to you, to investigate and resolve claims or to improve the products and services we offer.
- We will share your information with the independent agent or insurance broker that you chose.
- We share your information with third-parties who help us deliver services to you.
- *We do not sell your personal information.* We do not share your information with other companies for their marketing purposes.
- We take measures to protect your information while it is in our custody. We require the third-parties who help us to protect your information, too.

## INFORMATION WE COLLECT
We collect information about you in order to quote and service your insurance policy and to investigate and pay claims. This includes:

- Information from your application and other forms (such as your name, address, date of birth, email address, driver's license number and type of vehicle or property).
- Information about your transactions with us, our affiliates or others (such as your insurance coverages, limits and rates, payment and claims history and information needed for billing and payment).
- Information from third parties (such as your driving record, claims history with other insurers and credit information).
- Information about your online interactions with us (such as your IP address, the kind of device you used, the time of your visit to our site and pages visited). We use this information to deliver online services to you and/or to evaluate and improve our services.

## INFORMATION ABOUT MINORS
We do not sell to or intentionally communicate with children under the age of 13. We may request specific information about a child from parents in order to properly quote an insurance policy, verify identities or deliver requested transactions. We do not retain information about minors other than what is necessary to deliver requested services.

---

[1]"Westfield" includes Ohio Farmers Insurance Company, Westfield Insurance Company, Westfield National Insurance Company, American Select Insurance Company, Old Guard Insurance Company, Westfield Champion Insurance Company, Westfield Premier Insurance Company, Westfield Superior Insurance Company, Westfield Touchstone Insurance Company and Westfield Services, Inc.

[2]For a personal lines policy, this could include information from the head of household or other family member buying insurance that covers you. For a commercial lines policy, this could include information from your company's representative.

OGIC000297

**INFORMATION WE DISCLOSE**
*We do not sell or rent your personal information.* We disclose your information to third-parties only as permitted by law:

- To process transactions that you request or to service your policy.
- To investigate and pay claims.
- To prevent fraud.
- To perform marketing services on our behalf. (We do NOT allow third-parties to use the information they receive from us to market on their own or anyone else's behalf.)
- To comply with legal requirements.

Recipients include employees within our family of insurance companies, claims representatives, insurance agents or brokers, service providers, auditors, consumer reporting agencies, government agencies, law enforcement and the courts.

**HOW WE PROTECT YOUR INFORMATION**
We restrict access to nonpublic personal information about you to those employees and outside services providers who need to know that information in order to provide our products or services to you. Their use of information is restricted by law, by our employee code of conduct and by written agreements where appropriate. We maintain physical, electronic and procedural safeguards that comply with applicable federal and state regulations to guard your information.

If you believe you have found a security issue with one of our products or services, please report it to InfosecAlerts@Westfieldgrp.com as quickly as possible. Please describe the issue in as much detail as possible, including the date and time you discovered the issue and how to reproduce the issue. Screenshots and videos can be especially helpful. Please also include your name and contact information in case we need additional detail.

**INTERNET PRIVACY**
If you choose to communicate with us through the Internet or other electronic means, please read our Privacy Promise online at www.westfieldinsurance.com/privacy for details about how and why we use cookies, social media and other technologies.

**FORMER CUSTOMERS**
If you end your relationship with us, we will continue to adhere to the policies and practices described in this privacy promise for as long as we have your information.

**CALIFORNIA RESIDENTS**
California residents have the right to request an accounting of information which we hold about you, the right to request that we not sell your information and the right to request that we amend or delete your information. We may not (and will not) retaliate against you for exercising any of these rights. These rights are limited by, among other things, our obligations to comply with insurance regulations, statutes and other legal requirements. Call our Privacy Office at 1.800.243.0249 or go to www.westfieldinsurance.com/privacy and click the Do Not Sell My Personal Information link to submit a request relevant to those rights.

**PRIVACY CONTACT INFORMATION**
If you have any questions, concerns or comments about our privacy promise, you may contact us by email at Privacy@Westfieldgrp.com or by mail to Privacy Officer, Westfield Insurance, One Park Circle, PO Box 5001, Westfield Center, OH 44251.

OGIC000298



# IMPORTANT NOTICE TO OUR POLICYHOLDERS

### *Westfield Insurance Fraud Hot-Line*

PLEASE READ THIS IMPORTANT INFORMATION

- Fraudulent insurance claims cost us all money.

- Call us if you have information concerning a fraudulent insurance claim.

- All information will be kept confidential.

- Call and discuss your information with a trained investigator, or leave the information anonymously on a telephone answering machine.

- We can all help fight insurance fraud.


## Be a Fraud Buster

## 1-800-654-6482

AD 8522 (08-10)

OGIC000299



**WESTFIELD**®

THIS NOTICE DOES NOT GRANT ANY COVERAGE OR CHANGE
THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE
POLICY. IF THERE IS ANY CONFLICT BETWEEN YOUR POLICY AND
THIS NOTICE, THE PROVISIONS OF YOUR POLICY SHALL PREVAIL.

## Policyholder Disclosure Notice of Terrorism Insurance Coverage and Premium

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security, and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect you coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

## PREMIUM CHARGED

During your current policy period, the portion, if any, of your premium that is attributable to coverage for acts of terrorism as defined in the Act is $ _____ (refer to the individual dec pages for the Terrorism premium).

**If you do not desire the coverage** for acts of terrorism as defined in the Act, as amended, you may reject the coverage and instruct the insurance company to remove it and refund the premium described above. **To reject the coverage, you must:**

1) advise the insurance company by letter (on your company letterhead),

2) signed by the owner, representative, or properly designated official of the named insured.

AD 85 84 07 19
Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

Page 1 of 2

OGIC000300

**The insurance company must receive your letter within 60 days** from the date shown at the bottom right side of the forms titled "Common Policy Declarations". Please refer to "Common Policy Declarations" for the mailing address of the insurance company.

If your policy premium is $500, that may represent a minimum premium. In that case, the portion that is attributable to acts of terrorism as defined in the Act, as amended, may be included within that minimum and your total premium will not be reduced if you reject coverage for act of terrorism. The minimum premium will still apply.

Should you have any question regarding this notice, please contact your insurance agent.

AD 85 84 07 19
Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

OGIC000301



# TERRORISM REJECTION AUTHORIZATION

During your current policy period, the portion of your premium that is attributable to coverage for acts of terrorism can be found in the Declarations.

**If you do not desire the coverage** for acts of terrorism, you may reject the coverage and instruct the insurance company to remove it at issuance by submitting a letter on your letterhead or by completing and submitting this Terrorism Rejection Authorization form.

If your policy premium is $500, that may represent a minimum premium. In that case, the portion that is attributable to coverage for acts of terrorism may be included within that minimum, and your total premium will not be reduced if you reject coverage for acts of terrorism. The minimum premium will still apply.

The rejection of coverage for Terrorism is valid and binding on all insureds and persons claiming benefits under the policy/application for the policy term as shown below.

This rejection of coverage for Terrorism will apply to any reinstatement, amended, altered, or modified policy with this company or with any affiliated company unless the Named Insured makes a written request to the company to exercise a different option.

After careful review of the Terrorism Coverage provided, I wish to reject coverage for acts of terrorism. Following is my signature authorizing the removal of this coverage from the policy noted below:

| **Policy Number:** 179385Y | **Policy Term:** 10/08/2024 - 10/08/2025 |
|---|---|
| **Agency:** Brandon Insurance Group | **Named Insured:** Mike Burdett Roofing and Exteriors LLC |
| **Signature:** | **Name:** |
| **Title:** | **Date:** |

***The insurance company must receive this notice within 60 days from policy issuance.***

AD 93 41 03 21

Page 1 of 1

OGIC000302



**WESTFIELD**®

Re: Mike Burdett Roofing and Exteriors LLC
Policy Number: 179385Y
Agency Name: Brandon Insurance Group

## NOTICE: REDUCE COVERAGE
## EXCLUSION-PERFLUOROALKYL AND POLYFLUOROALKYL
## SUBSTANCES (PFAS)

This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

The material in this Notice refers to endorsement numbers; **however, not all endorsements are included in a particular policy**.

Here are the changes:

We've attached the following endorsements:

- **CG 40 32 05 23** Exclusion-Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS) (for use with the Commercial General Liability Coverage Part)

- **CU 34 54 05 23** Exclusion-Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS) (for use with the Commercial Liability Umbrella Coverage Part)

When these endorsements are attached to your policy, they generally exclude coverage for bodily injury, property damage and personal and advertising injury related exposures associated with perfluoroalkyl or polyfluoroalkyl substances (PFAS), including any loss, cost or expense arising out of abating, testing for, monitoring, cleaning up, or other related activities, of PFAS by any insured or by any other person or entity.

To the extent that current policy exclusions do not apply to liability arising out of PFAS, these endorsements represent a reduction of coverage.

AD 93 77 09 23

Page 1 of 1

OGIC000303



<u>**Premium Audit Notice – FAQ and Helpful Tips to Help Prepare You for Your Premium Audit**</u>

Westfield Insurance welcomes the opportunity to service your insurance needs. At the end of your policy term you may be contacted by our Premium Audit department, or one of our Premium Audit vendors, to complete your premium audit.

A premium audit is a review of your operations and financial records. Because your business insurance policy premiums were based upon estimated information (e.g. Payroll, Sales, Subcontract Costs, etc.) a premium audit may be conducted to help determine your final premium.

An accurate premium audit is a benefit to your business as the estimated exposures used to rate your policy will fluctuate during your policy period and maintaining accurate records will help you gain the most benefit from your premium audit. As part of the audit review the auditor will need to ask some questions about your business operations and records to ensure your operations and employees are classified correctly.

<u>**FAQ**</u>

**Who will complete the audit?**

You may be asked to complete a premium audit in one of four ways by one of our staff or vendor auditors:

- <u>Mail/Voluntary Form</u> – a premium audit form will be mailed to you and will ask a series of questions relative to your type of business and policy. You will be asked to fill out the form in its entirety and return it to Westfield via mail, fax, or email.

- <u>Telephone Audit</u> – a telephone auditor will call you to discuss your operation and review your financial records. A form may be sent to you via mail or email prior to the phone audit appointment to assist and prepare you for the premium audit.

- <u>Hybrid Audit</u> – an auditor will contact you to schedule and conduct the audit over the phone. Prior to the audit appointment you will be asked to forward necessary financial records. A review of those records and your operations will be discussed during the phone interview process.

- <u>Physical Audit</u> – a field auditor will contact you to schedule an appointment to conduct the audit at your premises. The auditor will inquire about your operations and physically review the financial records.

**What records will be needed?**

The premium auditor will request and review the records needed based on your coverages and classifications. In most cases the auditor will be able to obtain the necessary audit data from two or more of the following records:

OGIC000304

- Payroll based audits – Monthly/Quarterly Payroll Journals, Quarterly State Tax Reports (State Unemployment Reports), Federal 941 Tax Reports

- Sales based audits – Monthly Sales Reports, Monthly State Sales Tax Reports, General Ledgers, Financial Statements

- Subcontract Costs/Expense – Check Disbursements Report, Vendor Payment Report, General Ledger, 1099's, Financial Statements. Certificates of insurance should be obtained for each subcontractor.

### Helpful Tips

**Payroll based audits** – Many insurance policies are based on gross payroll. Gross payroll includes many items such as wages, bonuses, holiday pay, sick pay, commissions, overtime pay, and vacation pay.

Helpful Tip – Overtime: the amount paid in excess of straight time pay can be deducted if the excess portion can be verified by your payroll records. *Your records must show summarized overtime amounts paid by employee.*

Helpful Tip – Division of Payroll: Division of an individual employee's payroll to more than one classification is not allowed except for construction or erection operations. For construction and erection operations the payroll of an employee may be allocated to each type of work performed if proper records are kept (percentages are not acceptable). Payroll cannot be divided between construction, office, and sales classifications.

**Sales based audits** – Another premium base for general liability is gross sales. Gross sales are the amount charged by you to others for all goods or products sold and distributed and for any other operations or services performed by you for others.

Helpful Tip – The following may be deducted from gross sales if properly maintained in your financial records:
- Returns and Allowances
- Freight/Delivery Income
- Sales tax collected and submitted to a government agency

This information is provided to you as assistance for proper record keeping. Other insurance companies may differ in their requirements. Please feel free to contact our Premium Audit Department if you have any questions about the Premium Audit process.

OGIC000305



# Premium Audit Notice for Contractors

The records you keep can affect the premium you pay for your insurance policy, and there are steps you can take to help control these costs.

Your insurance premiums are based on your business's direct payroll and the amounts paid to any subcontractors you may hire. Subcontract costs are an area of concern because it is an area that can substantially increase the cost of your insurance if you do not hire "adequately insured subcontractors." Any operations performed by subcontractors without a certificate of insurance or who are inadequately insured will be classified under the specific classification description for each operation which carries a higher rate.

To help control the cost of your insurance you should obtain proper certificates of insurance from every subcontractor you hire prior to the commencement of work. A valid certificate of insurance will provide evidence of Workers' Compensation or General Liability coverage for a specific policy term and can be obtained from the subcontractor's insurance agent.

Helpful Tips:

- The certificate of insurance should cover the period the subcontractor performs work for you. If the subcontractor's certificate of insurance expires on a certain date, but they will be working beyond that date, a new certificate should be required. Current and expired certificates of insurance should be kept and maintained in a binder or electronic file.

- The subcontractor's limits of liability and coverages should be at least equal to those carried by your business for the time the work was performed to be considered "adequately insured." If the subcontractor's limits are too low, you should contact the subcontractor and request their limits be raised to equal your policy's limits.

- Be especially cautious when hiring casual or 1099 type laborers as these types of independent subcontractors sometimes do not carry insurance or limits of liability that may match your policy.

- You should read or have your insurance agent or attorney review every contract before signing to ensure the subcontractor is not transferring liability back to your business.

OGIC000306

**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial Common Policy
Declarations
Renewal**

**Company Providing Coverage**: Old Guard Insurance Company

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone:  215-256-8020 |

**Policy Number:** 179385Y     **Billing Account No:** 6000013101     **Payment Plan:** Monthly (Paper Invoices)

**Policy Period:**  From  10/08/2024 To  10/08/2025     At 12:01 A.M. standard time at your mailing address shown above

**Business Of Named Insured:** Contractors     **Entity Of Named Insured:** LLC

### THIS IS A NON-PARTICIPATING POLICY

### Coverage and Premium Summary

Commercial General Liability Coverage Part                                      $

**Policy Annual Premium**                                                         $

**Total Advance Annual Policy Premium**                                      $

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.  For more detail, please refer to the individual coverage parts inside your policy.

**Forms and Endorsements Applicable to This Coverage Part:**
Refer to Schedule of Forms and Endorsements - IL DS 73

PLEASE REFER TO IL7097 FOR A DETAILED SUMMARY OF TAXES AND SURCHARGES BY STATE.

**Page 1 of 1**                    IL DS 01 05 18                    ISSUED DATE: 08/17/2024

OGIC000307



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial Common Policy Schedule**

**Renewal**

| | |
|---|---|
| **Company Providing Coverage**: Old Guard Insurance Company | |

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353 |

**Policy Number:** 179385Y  **Billing Account No:** 6000013101  **Payment Plan:** Monthly (Paper Invoices)

**Policy Period:** From 10/08/2024 To 10/08/2025

At 12:01 A.M. standard time at your mailing address shown above

**Business Of Named Insured:** Contractors  **Entity Of Named Insured:** LLC

## Schedule of Insured Locations

**Loc.** 1

3420 Horton Rd
Newtown Square, PA 19073-3418

**Page 1 of 1**  IL DS 02 05 18  ISSUED DATE:08/17/2024

OGIC000308



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial General Liability
Declarations
Renewal**

| | |
|---|---|
| **Company Providing Coverage:** Old Guard Insurance Company | |

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account Number:**<br>6000013101 | **Payment Plan:** Monthly<br>(Paper Invoices) |
|---|---|---|
| **Policy Period:** From: 10/08/2024 To: 10/08/2025 |  | At 12:01 A.M. standard time at your mailing address shown above |

**Limits of Insurance**

| | |
|---|---|
| Each Occurrence Limit | $1,000,000 |
| General Aggregate Limit (Other than products/completed-operations) | $2,000,000 |
| Products/Completed-Operations Aggregate Limit | $2,000,000 |
| Personal & Advertising Injury Limit | $1,000,000 |
| Damage to Premises Rented to You Limit  (Any one premises) | $100,000 |
| Medical Expense Limit (Any one person) | $1,000 |

| | |
|---|---|
| **Total Premises/Operations Premium** | $ ▮ |
| **Total Products/Completed Operations Premium** | $ ▮ |
| **Total Additional Coverages and Endorsements Premium** | $ ▮ |
| **Total Additional Interests Premium** | **Included** |
| **Total Terrorism Premium** | $ ▮ |
| **Total Advance Annual General Liability Premium** | $  |

**Forms And Endorsements Applicable To This Coverage Part:**
Refer to Schedule of Forms and Endorsements - IL DS 73

OGIC000309



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial General Liability**
**Declarations**
**Renewal**

| **Company Providing Coverage:** Old Guard Insurance Company |
|---|

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account Number:**<br>6000013101 | **Payment Plan:** Monthly<br>(Paper Invoices) |
|---|---|---|
| **Policy Period:** From: 10/08/2024 To: 10/08/2025 | At 12:01 A.M. standard time at your mailing<br>address shown above | |

**Classification and Premium Schedule**

Location of all premises owned by, rented to, or controlled by the name insured are shown on the Schedule of Insured Locations, IL DS 02, unless otherwise indicated.

| Location | Classification Code and Description | Premium Basis | Rate | Premium |
|---|---|---|---|---|
| #1: 3420 Horton Rd,<br>Newtown Square, PA<br>19073-3418 | 98967 - Siding Installation | $ ▮ | ▮ | $ ▮<br>$ ▮ |

|  | |
|---|---|
| **Total Premises/Operations Premium** | $ ▮ |
| **Total Products/Completed Operations Premium** | $ ▮ |

OGIC000310



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial General Liability
Declarations
Renewal**

| | |
|---|---|
| **Company Providing Coverage:** Old Guard Insurance Company | |

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account Number:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|
| **Policy Period:** From: 10/08/2024 To: 10/08/2025 | | At 12:01 A.M. standard time at your mailing address shown above |

## Schedule of Additional Coverages and Endorsements

| Form Number/ Endorsement | Premium |
|---|---|
| CG7168 - COMMERCIAL GENERAL LIABILITY - ARTISAN CONTRACTOR ENDORSEMENT | $ |
| CG7121 - Damage to Your Work | Included |
| CG7160 - DAMAGE TO PROPERTY-BORROWED EQUIPMENT | Included |
| CG2404 - Waiver of Transfer of Rights of Recovery Against Others to Us | Included |
| CG7202 - Contractor's Professional and Pollution Legal Liability Endorsement | Included |

**Total Additional Coverages and Endorsements Coverage Premium:**     $▮

**Page 3 of 4**       CG DS 01 05 18       ISSUED DATE:08/17/2024

OGIC000311



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial General Liability
Declarations
Renewal**

**Company Providing Coverage:** Old Guard Insurance Company

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account Number:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|
| **Policy Period:** From: 10/08/2024 To: 10/08/2025 | At 12:01 A.M. standard time at your mailing address shown above | |

## Schedule of Additional Interests

| Form Number/ Endorsement | Premium |
|---|---|
| CG2010 [Automatic status when required by written contract, agreement, or permit] - Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization | Included |
| **Total Additional Interests Premium:** | **Included** |

OGIC000312



**Westfield**
One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Schedule of Forms and Endorsements Renewal**

**Company Providing Coverage**: Old Guard Insurance Company

| Named Insured and Mailing Address: | Agency: 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| Policy Number: 179385Y | Billing Account No: 6000013101 | Payment Plan: Monthly (Paper Invoices) |
|---|---|---|

| Policy Period: From 10/08/2024 To 10/08/2025 | At 12:01 A.M. standard time at your mailing address shown above |
|---|---|

## SCHEDULE OF FORMS AND ENDORSEMENTS

### FORMS THAT APPLY TO MULTIPLE COVERAGE PARTS

| NUMBER | EDITION DATE | TITLE |
|---|---|---|
| ILDS01 | 0518 | COMMERCIAL PACKAGE POLICY COMMON POLICY DECLARATIONS |
| ILDS02 | 0518 | COMMERCIAL PACKAGE POLICY COMMON POLICY SCHEDULE |
| IL0003 | 0908 | CALCULATION OF PREMIUM |
| IL0017 | 1198 | COMMON POLICY CONDITIONS |
| IL0021 | 0908 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| IL7013 | 1206 | EXCLUSION - LEAD |
| IL0120 | 1013 | PENNSYLVANIA CHANGES - DEFENSE COSTS |
| IL0246 | 0907 | PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL |

### FORMS THAT APPLY TO COMMERCIAL GENERAL LIABILITY

| NUMBER | EDITION DATE | TITLE |
|---|---|---|
| CGDS01 | 0518 | COMMERCIAL GENERAL LIABILITY DECLARATIONS |
| CG0001 | 0413 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG2001 | 1219 | PRIMARY AND NONCONTRIBUTORY - OTHER INSURANCE CONDITION |
| CG2010 | 1219 | ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION |
| CG2106 | 0514 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| CG2147 | 1207 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG2167 | 1204 | FUNGI OR BACTERIA EXCLUSION |
| CG2170 | 0115 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| CG2186 | 1204 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS |
| CG2279 | 0413 | EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY |
| CG2404 | 1219 | WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US |
| CG2426 | 0413 | AMENDMENT OF INSURED CONTRACT DEFINITION |
| CG2503 | 0509 | DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT |
| CG2504 | 0509 | DESIGNATED LOCATION(S) GENERAL AGGREGATE LIMIT |
| CG4015 | 1219 | CANNABIS EXCLUSION WITH HEMP EXCEPTION |

　IL DS 73 05 18　ISSUED DATE:08/17/24

OGIC000313



**Westfield**
One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Schedule of Forms and Endorsements Renewal**

**Company Providing Coverage**: Old Guard Insurance Company

| Named Insured and Mailing Address: | Agency: 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

**Policy Number:** 179385Y          **Billing Account No:** 6000013101          **Payment Plan:** Monthly (Paper Invoices)

**Policy Period:** From 10/08/2024 To 10/08/2025          At 12:01 A.M. standard time at your mailing address shown above

| | | |
|---|---|---|
| CG4032 | 0523 | EXCLUSION - PERFLUOROALKYL AND POLYFLUOROALKYL SUBSTANCES (PFAS) |
| CG7017 | 1298 | EXCLUSION-ASBESTOS |
| CG7121 | 0518 | DAMAGE TO YOUR WORK |
| CG7160 | 0518 | DAMAGE TO PROPERTY - BORROWED EQUIPMENT |
| CG9909 | 1219 | PREMIUM AUDIT NONCOMPLIANCE CHARGE |
| CG7168 | 0521 | COMMERCIAL GENERAL LIABILITY - ARTISAN CONTRACTOR ENDORSEMENT |
| CG7202 | 0721 | CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY ENDORSEMENT |
| CG7219 | 0521 | PENNSYLVANIA CHANGES - CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY |
| CG7230 | 0722 | COMMUNICABLE DISEASE EXCLUSION - FOODBORNE ILLNESS EXCEPTION |

OGIC000314

**IL 00 03 09 08**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

  CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
  COMMERCIAL AUTOMOBILE COVERAGE PART
  COMMERCIAL GENERAL LIABILITY COVERAGE PART
  COMMERCIAL INLAND MARINE COVERAGE PART
  COMMERCIAL PROPERTY COVERAGE PART
  CRIME AND FIDELITY COVERAGE PART
  EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
  EQUIPMENT BREAKDOWN COVERAGE PART
  FARM COVERAGE PART
  LIQUOR LIABILITY COVERAGE PART
  MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
  OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
  POLLUTION LIABILITY COVERAGE PART
  PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
  RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

© ISO Properties, Inc., 2007  ☐

OGIC000315

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

OGIC000316

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

IL 00 21 09 08 | © ISO Properties, Inc., 2007 | **Page 1 of 2** | ☐

OGIC000317

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007    IL 00 21 09 08    ☐

OGIC000318

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - LEAD

This endorsement modifies insurance provided under the following:

> BUSINESSOWNERS COVERAGE FORM
> FARM LIABILITY COVERAGE FORM
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> FARMOWNERS-RANCHOWNERS POLICY PERSONAL LIABILITY FORM
> OWNERS′, LANDLORDS′ AND TENANTS′ LIABILITY INSURANCE COVERAGE PART
> FARMER′S COMPREHENSIVE PERSONAL INSURANCE COVERAGE PART
> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

This insurance does not apply to:

**(1)** ″Bodily injury″, ″property damage″, ″personal injury″ or ″personal and advertising injury″ arising out of lead poisoning, lead contamination or exposure to lead.

**(2)** Any loss, cost or expense arising out of any:

  **a.** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

  **b.** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

**IL 70 13** 12 06

OGIC000319

IL 01 20 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDER'S ERRORS AND OMISSIONS
COVERAGE FORM
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

**1.** Section **I** of the Commercial General Liability, Commercial Liability Umbrella, Electronic Data Liability, Employment-related Practices Liability, Farm, Liquor Liability, Medical Professional Liability, Owners And Contractors Protective Liability, Pollution Liability, Product Withdrawal, Products/Completed Operations Liability, Railroad Protective Liability and Underground Storage Tank Coverage Parts, Auto Dealers Coverage Form and the Farm Umbrella Liability Policy;

**2.** Section **II** under the Auto Dealers, Business Auto and Motor Carrier Coverage Forms;

**3.** Section **III** under the Auto Dealers and Motor Carrier Coverage Forms;

**4.** Section **A.** Coverage under the Legal Liability Coverage Form; and

**5.** Coverage **C** – Mortgageholder's Liability under the Mortgageholder's Errors And Omissions Coverage Form.

Paragraph **B.** also applies to any other provision in the policy that sets forth a duty to defend.

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

IL 01 20 10 13 © Insurance Services Office, Inc., 2013 **Page 1 of 1**

OGIC000320

IL 02 46 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

**2. Cancellation Of Policies In Effect For Less Than 60 Days**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

**3. Cancellation Of Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

**b.** You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

**c.** A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**d.** Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

IL 02 46 09 07 © ISO Properties, Inc., 2006 **Page 1 of 2** ☐

OGIC000321

**e.** Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**f.** Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

**4.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

**5.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**6.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

**7.** If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**B.** The following are added and supersede any provisions to the contrary:

**1. Nonrenewal**

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

**2. Increase Of Premium**

If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

OGIC000322

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

   **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

   **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

 © Insurance Services Office, Inc., 2012

OGIC000323

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

OGIC000324

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

OGIC000325

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000326

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

OGIC000327

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000328

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

OGIC000329

## COVERAGE C – MEDICAL PAYMENTS

### 1. Insuring Agreement

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

 © Insurance Services Office, Inc., 2012 **CG 00 01 04 13**

OGIC000330

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

© Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000332

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

OGIC000334

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012    CG 00 01 04 13

OGIC000336

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

OGIC000337

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000338

COMMERCIAL GENERAL LIABILITY
CG 20 01 12 19

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PRIMARY AND NONCONTRIBUTORY – OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

OGIC000339

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| All persons or organizations when you have agreed in writing in a contract or agreement that such persons or organizations be added as an additional insured. | All Locations |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional  exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.

Page **1** of **2**

© Insurance Services Office, Inc., 2012

**CG 20 10 12 19**

OGIC000340

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012
**CG 20 10 12 19**

OGIC000341

**COMMERCIAL GENERAL LIABILITY**
**CG 21 06 05 14**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

**CG 21 06 05 14** © Insurance Services Office, Inc., 2013 **Page 1 of 1**

OGIC000342

**COMMERCIAL GENERAL LIABILITY**
**CG 21 47 12 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 © ISO Properties, Inc., 2006

OGIC000343

**COMMERCIAL GENERAL LIABILITY**
**CG 21 67 12 04**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

---

OGIC000344

**COMMERCIAL GENERAL LIABILITY**
**CG 21 70 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

**CG 21 70 01 15**                    © Insurance Services Office, Inc., 2015                    **Page 1 of 1**

OGIC000345

**COMMERCIAL GENERAL LIABILITY**
**CG 21 86 12 04**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

**1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

**2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**3.** A reinforced or unreinforced base coat;

**4.** A finish coat providing surface texture to which color may be added; and

**5.** Any flashing, caulking or sealant used with the system for any purpose.

**CG 21 86 12 04** © ISO Properties, Inc., 2003 **Page 1 of 1**

OGIC000346

**COMMERCIAL GENERAL LIABILITY**
**CG 22 79 04 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

2. Subject to Paragraph **3.** below, professional services include:

   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

CG 22 79 04 13 © Insurance Services Office, Inc., 2012 **Page 1 of 1**

OGIC000347

POLICY NUMBER:179385Y                                COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (WAIVER OF SUBROGATION)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILIITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART DESIGNATED SITES
PLLUTION LIABILITY LIMITED COVERAGE PART DESIGNATED SITES
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLIICY DESIGNATED TANKS

### SCHEDULE

| |
|---|
| **Name Of Person(s) Or Organization(s):** Automatic status when required by written contract, agreement or permit |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make under this Coverage Part. Such waiver by us applies only to the extent that the insured has waived its right of recovery against such person(s) or organization(s) prior to loss. This endorsement applies only to the person(s) or organization(s) shown in the Schedule above.

© Insurance Services Office, Inc., 2019                              **CG 24 04 12 19**          □

OGIC000348

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

OGIC000349

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY**
**CG 25 03 05 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Designated Construction Project(s):** <br> All Projects |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

**1.** A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

**2.** The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

**4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

**CG 25 03 05 09**  © Insurance Services Office, Inc., 2008  **Page 1 of 2**  ☐

OGIC000350

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

**1.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

**2.** Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

**D.** If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

**E.** The provisions of Section **III** – Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

© Insurance Services Office, Inc., 2008 **CG 25 03 05 09** ☐

OGIC000351

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY**
**CG 25 04 05 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED LOCATION(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Designated Location(s):**<br>All rented, owned and occupied locations other than construction projects. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which can be attributed only to operations at a single designated "location" shown in the Schedule above:

**1.** A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

**2.** The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

**3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

**4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

---

OGIC000352

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

1. Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Section **III** – Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

 © Insurance Services Office, Inc., 2008 **CG 25 04 05 09** ☐

OGIC000353

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CANNABIS EXCLUSION WITH HEMP EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of:

**a.** The design, cultivation, manufacture, storage, processing, packaging, handling, testing, distribution, sale, serving, furnishing, possession or disposal of "cannabis"; or

**b.** The actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "cannabis"; or

**2.** "Property damage" to "cannabis".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **A.1.** or **A.2.** above.

However, Paragraph **A.1.b.** does not apply to "bodily injury" or "property damage" arising out of the actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, or contact with, "cannabis" by:

**(1)** An insured; or

**(2)** Any other person for whom you are legally responsible

but only if the "bodily injury" or "property damage" does not arise out of your selling, serving or furnishing of "cannabis" to any person described above.

**B.** The exclusion in Paragraph **A.** does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of goods or products containing or derived from hemp, including, but not limited to:

**a.** Seeds;

**b.** Food;

**c.** Clothing;

**d.** Lotions, oils or extracts;

**e.** Building Materials; or

**f.** Paper.

**2.** "Property damage" to goods or products described in Paragraph **B.1.** above.

However, Paragraphs **B.1.** and **B.2.** above do not apply to the extent any such goods or products are prohibited under an applicable state or local statute, regulation or ordinance in the state wherein:

**(1)** The "bodily injury" or "property damage" occurs;

**(2)** The "occurrence" which caused the "bodily injury" or "property damage" takes place; or

**(3)** The offense which caused the "personal and advertising injury" was committed;

**3.** "Personal and advertising injury" arising out of the following offenses:

**a.** False arrest, detention or imprisonment; or

**b.** The wrongful eviction from, wrongful entry into, or invasion of the right or private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

OGIC000354

**C.** The following definition is added to the **Definitions** section:

"Cannabis":

**1.** Means:

Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC or cannabinoid is natural or synthetic.

**2.** Paragraph **C.1.** above includes, but is not limited to, any of the following containing such THC or cannabinoid:

**a.** Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or

**b.** Any compound, byproduct, extract, derivative, mixture or combination, such as:

**(1)** Resin, oil or wax;

**(2)** Hash or hemp; or

**(3)** Infused liquid or edible cannabis;

whether or not derived from any plant or part of any plant set forth in Paragraph **C.2.a.**

 © Insurance Services Office, Inc., 2018 **CG 40 15 12 19**

OGIC000355

COMMERCIAL GENERAL LIABILITY
CG 40 32 05 23

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – PERFLUOROALKYL AND POLYFLUOROALKYL SUBSTANCES (PFAS)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Perfluoroalkyl And Polyfluoroalkyl Substances**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged, threatened or suspected inhalation, ingestion, absorption, consumption, discharge, dispersal, seepage, migration, release or escape of, contact with, exposure to, existence of, or presence of, any "perfluoroalkyl or polyfluoroalkyl substances".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "perfluoroalkyl or polyfluoroalkyl substances", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Perfluoroalkyl And Polyfluoroalkyl Substances**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged, threatened or suspected inhalation, ingestion, absorption, consumption, discharge, dispersal, seepage, migration, release or escape of, contact with, exposure to, existence of, or presence of, any "perfluoroalkyl or polyfluoroalkyl substances".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "perfluoroalkyl or polyfluoroalkyl substances", by any insured or by any other person or entity.

OGIC000356

**C.** The following definition is added to the **Definitions** Section:

"Perfluoroalkyl or polyfluoroalkyl substances" means any:

**1.** Chemical or substance that contains one or more alkyl carbons on which hydrogen atoms have been partially or completely replaced by fluorine atoms, including but not limited to:

    **a.** Polymer, oligomer, monomer or nonpolymer chemicals and their homologues, isomers, telomers, salts, derivatives, precursor chemicals, degradation products or by-products;

    **b.** Perfluoroalkyl acids (PFAA), such as perfluorooctanoic acid (PFOA) and its salts, or perfluorooctane sulfonic acid (PFOS) and its salts;

    **c.** Perfluoropolyethers (PFPE);

    **d.** Fluorotelomer-based substances; or

    **e.** Side-chain fluorinated polymers; or

**2.** Good or product, including containers, materials, parts or equipment furnished in connection with such goods or products, that consists of or contains any chemical or substance described in Paragraph **C.1.**

© Insurance Services Office, Inc., 2022 **CG 40 32 05 23**

OGIC000357

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ASBESTOS

This endorsement modifies insurance under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury", "personal and advertising injury" or "property damage" arising out of:

1. Inhaling, ingesting or physical exposure to asbestos or goods or products containing asbestos; or

2. The use of asbestos in constructing or manufacturing any goods, product or structure; or

3. The removal, repair, encapsulation, enclosure, abatement or maintenance of asbestos in or from any goods, product or structure; or

4. The manufacture, sale, distribution, transportation, storage or disposal of asbestos or goods or products containing asbestos.

This insurance does not apply to payment for the investigation or defense of any claim, injury, loss, fine, penalty or lawsuit related to any of the foregoing items **1.** thru **4.** Nor do we have a duty to investigate or defend any such claim, injury, loss or lawsuit.

This insurance also does not apply to any loss, cost or expense incurred in complying with any federal, state, or local provision of law regarding the inspection, monitoring, or control of asbestos in any goods, products or structures.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 70 17** 12 98

OGIC000358

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DAMAGE TO YOUR WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILTIY COVERAGE PART

1.  The following is added to **SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** paragraph **1. Insuring Agreement:**

    f.  Damages because of "property damage" include damages the insured becomes legally obligated to pay because of "property damage" to "your work" and shall be deemed to be caused by an "occurrence", but only if:

        (1) The "property damage" is the result of work performed on your behalf by a subcontractor(s) that is not a Named Insured;

        (2) The work performed by the subcontractor(s) is within the "products-completed operations hazard"; and

        (3) The "property damage" is unexpected or unintended from the standpoint of the insured.

    We will not be obligated to pay any sums to repair or replace the defective work performed on your behalf by a subcontractor.

2.  The following amendment supersedes all other amendments to Coverage A, Exclusion l.:

    **Coverage A, Exclusion l.** is replaced by the following:

    l.  **Damage To Your Work**

        "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

        This exclusion does not apply to "property damage" to "your work" resulting from work performed on your behalf by a subcontractor and included in the "products-completed operations hazard", however we will not be obligated to pay any sums to repair or replace the defective work performed on your behalf by a subcontractor.

        This endorsement applies only to the Named Insured and no other party.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 71 21** 05 18

OGIC000359

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DAMAGE TO PROPERTY-BORROWED EQUIPMENT

This endorsement modifies insurance provided under the following**:**

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Under **SECTION 1, COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Item **2. Exclusions j.** is deleted and replaced by the following:

**j.   Damage To Property:**

**(1)**   Property you own, rent or occupy;

**(2)**   Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)**   Property loaned to you;

**(4)**   Personal property in the care, custody or control of the insured;

**(5)**   That particular part of any real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**   That particular part of any real property that must be restored, replaced, or repaired because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to:

**(i)**   "property damage" to tools or equipment loaned to you if the tools or equipment are not being used to perform operations at the time of loss; or

**(ii)**   "property damage" (other than damage by fire) to premises rented to you or temporarily occupied by you with the permission of the owner including contents of such premises rented to you for a period of seven (7) or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in **Section III - Limits Of Insurance.**

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were not occupied, rented or held for rental by you beyond one year from the date "your work" was completed.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 71 60** 05 18

OGIC000360

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY**
**CG 99 09 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PREMIUM AUDIT NONCOMPLIANCE CHARGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK LIABILITY COVERAGE PART

**SCHEDULE**

| | |
|---|---|
| **Total Advance Premium:** | $ ▮▮▮▮ |
| **Audit Noncompliance Charge Factor:** | UP TO 200% |
| **Number Of Written Attempts To Obtain Audit Information:** | 2 |
| **Reassessment Charge:** | $ 0 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

Paragraph **5.c.** of the **Premium Audit** Condition under **Section IV – Conditions** is replaced by the following:

  **c.** The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request. If the first Named Insured fails to comply with this request at the close of an audit period, an Audit Noncompliance Charge will be assessed, and notice will be sent to the first Named Insured.

    The additional charge will be determined by multiplying the Total Advance Premium by the Audit Noncompliance Charge Factor indicated in the Schedule of this endorsement. (The following example is for illustration purposes only.)

    Example:

      Total Advance Premium: $25,000

      Audit Noncompliance Charge Factor: 1

      Audit Noncompliance Charge: $25,000

  **(1)** We will only assess the Audit Noncompliance Charge:

    **(a)** For audits conducted after the end of the policy period; and

    **(b)** When we have made the number of written attempts indicated in the Schedule of this endorsement to obtain audit information from the first Named Insured.

    The due date for the Audit Noncompliance Charge is the date shown as the due date on the bill.

  **(2)** **Subsequent Compliance And Reassessment Charge**

    **(a)** The first Named Insured may notify us in writing, prior to the due date on the bill for the Audit Noncompliance Charge, that the Named Insured agrees to comply with the audit request.

    **(b)** A Reassessment Charge may apply if this charge is indicated in the Schedule.

    **(c)** The first Named Insured must comply with the audit within 30 days of our receipt of the written notification described in Paragraph **(2)(a)** above, and then the Audit Noncompliance Charge will no longer apply. If a Reassessment Charge is indicated in the Schedule of this endorsement, that charge will remain applicable.

© Insurance Services Office, Inc., 2018

OGIC000361

    **(d)** If the first Named Insured fails to comply with the premium audit after 30 days of our receipt of the notification described in Paragraph **(2)(a)** above, a subsequent notice will be sent to the first Named Insured indicating that the Audit Noncompliance Charge and the Reassessment Charge (if applicable) will be final. The due date for the Audit Noncompliance Charge and the Reassessment Charge is the date shown as the due date on the bill.

© Insurance Services Office, Inc., 2018 **CG 99 09 12 19**

OGIC000362

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**.

# COMMERCIAL GENERAL LIABILITY
# ARTISAN CONTRACTORS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SCHEDULE**

The coverage provided by this endorsement is summarized below and is intended to provide a general coverage description only. For the details affecting each coverage please refer to the terms and conditions in the endorsements listed.

**The endorsements listed below will automatically be attached to your policy to complete the coverage provided by the Commercial General Liability Endorsement:**

- Additional Insured – Owners, Lessees or Contractors – Scheduled Person Of Organization - CG 20 10
- Contractor's Professional and Pollution Legal Liability – CG 72 02
- Damage To Your Work – CG 71 21
- Damage To Property – Borrowed Equipment – CG 71 60
- Primary And Noncontributory – Other Insurance Condition – CG 20 01
- Waiver of Transfer of Rights – CG 24 04

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 71 68** 05 21

OGIC000363

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY ENDORSEMENT

**THIS ENDORSEMENT PROVIDES CLAIMS MADE COVERAGE AND HAS DIFFERENT REPORTING REQUIREMENTS THAN OTHER PARTS OF THE POLICY. THIS ENDORSEMENT ALSO CONTAINS PROVISIONS WHICH LIMIT THE AMOUNT OF "LEGAL EXPENSES" THAT WE MAY BE RESPONSIBLE TO PAY. "LEGAL EXPENSES" WILL REDUCE EACH APPLICABLE LIMIT OF INSURANCE SHOWN IN THE SCHEDULE OF THIS ENDORSEMENT.**

**NO INSURED WILL, EXCEPT AT ITS OWN COST, VOLUNTARILY MAKE A PAYMENT, ASSUME ANY OBLIGATION, ADMIT LIABILITY OR INCUR ANY EXPENSE WITHOUT OUR WRITTEN CONSENT.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Coverage, exclusions, conditions or definitions contained in the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** do not apply to this endorsement unless specifically outlined below.

## SCHEDULE

| | |
|---|---|
| **"Named Insured":** Mike Burdett Roofing and Exteriors LLC<br>**"Named Insured" Address:**<br> 3420 Horton Rd,  Newtown Square, PA 19073-3418 | |
| **Endorsement Aggregate Limit of Insurance** | **$10,000** |
| **Contractor's Pollution Legal Liability Insurance Aggregate Limit:** | **Included** |
| **Contractor's Pollution Legal Liability Insurance Deductible for Each "Pollution Condition":** | **$500** |
| **"Commencement Date":** (*If left blank, the inception date of this endorsement*) | **2021-10-08** |
| | |
| **Professional Legal Liability Insurance Aggregate Limit:** | **Included** |
| **Professional Legal Liability Insurance Deductible for Each "Professional Loss":** | **$500** |
| **"Contracting Services":** | **All contracting services** |
| **"Professional Services":** | **Value engineering and field changes to design** |
| **"Retroactive Date":** (*If left blank, the inception date of this endorsement*) | **2021-10-08** |
| **"Automatic Extended Reporting Period":** | **90 days** |
| | |
| **Premises Pollution Legal Liability Insurance Aggregate Limit:** | **Excluded** |
| **Premises Pollution Legal Liability Insurance Deductible for Each "Pollution Condition":** | **Excluded** |
| **"Covered Location"(s):**<br> Location 1 - 3420 Horton Rd, Newtown Square, PA  19073-3418 | |
| **"Retroactive Date":** (*If left blank, the inception date of this endorsement*) | **Excluded** |
| **"Automatic Extended Reporting Period":** | **Excluded** |
| | |
| **"Business Interruption" and "Extra Expense" Aggregate Limit:** | **Excluded** |
| **"Business Interruption" and "Extra Expense" "Deductible Period":** | **Excluded** |
| | |
| **"Pollution Emergency" Telephone Number:** | **1-800-347-4384** |

This endorsement amends the policy to provide Professional Legal Liability and Premises

Pollution Legal Liability Insurance on a claims made and reported basis and Contractor's

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 1 of 21**

OGIC000364

Pollution Legal Liability Insurance on an occurrence basis, when there is an applicable Limit of Insurance shown in the SCHEDULE. The terms and conditions of this endorsement govern the scope of coverage and your and our duties. Various provisions in this endorsement restrict coverage. Read the entire endorsement carefully to determine your rights and duties and what is and is not covered. The terms, conditions, exclusions, and limits of insurance set forth in this endorsement apply only to the coverage provided by this endorsement.

If this endorsement does not contain a cancellation provision, the terms and conditions of the cancellation provision of the policy, and any amendment to such terms, are incorporated herein and shall apply to coverage as is afforded by this endorsement, unless specifically stated otherwise in an endorsement(s) attached hereto.

Throughout this endorsement, the words "you" and "your" refer to the "named insured" under this endorsement. The words "we", "us" and "our" refer to the company providing this coverage. The word "insured" means any person or organization qualifying as such under **C. Who Is An Insured**. The term "policy" refers to the primary policy to which this endorsement is attached.

Words and phrases that appear in quotation marks have special meaning. Refer to **G. Definitions**. To the extent any words or phrases used in this endorsement are defined elsewhere in the policy, such definitions provided elsewhere do not apply to give meaning to the words or phrases used in this endorsement.

## SECTION IV -- INSURANCE

### A. Coverage

1. **Contractor's Pollution Legal Liability Insurance**

   a. We will pay those sums that you become legally obligated to pay as damages or "cleanup costs" because of "loss" caused by a "pollution condition" resulting from "contracting services", provided that:

      (1) The "pollution condition" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "loss" occurs during the endorsement period;

      (3) The "pollution condition" is on, at, under or migrating from a "job site";

      (4) The "pollution condition" results from "contracting services" rendered on or after the "commencement date" shown in the SCHEDULE of this endorsement and prior to the expiration of the endorsement period; and

      (5) The "pollution condition" results in a "claim" against you, and the "claim" is brought and maintained at all times in the "coverage territory."

   b. We have the right and duty to defend you against any "claim" seeking damages or "cleanup costs" because of "loss" to which **Contractor's Pollution Legal Liability Insurance** applies. However, we have no duty to defend you against any "claim" to which **Contractor's Pollution Legal Liability Insurance** does not apply.

   c. When we have a duty to defend, we will pay on your behalf "legal expenses" incurred as a result of a "claim" against you seeking damages or "cleanup costs" because of "loss" to which **Contractor's Pollution Legal Liability Insurance** applies.

   d. "Legal expenses" apply to and reduce the applicable Limit of Insurance shown in the SCHEDULE of this endorsement.

   e. We may, at our discretion, investigate any "occurrence" or "pollution condition" and settle any "claim" that may result. However, the Endorsement Aggregate Limit of Insurance shown on the SCHEDULE is the most we will pay for damages, "cleanup costs" and "legal expenses" under **Contractor's Pollution Legal Liability Insurance**. Our right and duty to defend under this endorsement ends once the applicable Limit of Insurance shown in the SCHEDULE has been used up in the payment of "legal expenses" or settlements, judgments or any combination thereof, to which **Contractor's Pollution Legal Liability Insurance** applies.

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 2 of 21**

OGIC000365

**f.** No other obligation or liability to pay sums or perform acts or services is covered under this endorsement.

**2. Professional Legal Liability Insurance**

**a.** We will pay those sums that you become legally obligated to pay because of a "claim" resulting from an act, error, or omission in "professional services", provided that:

**(1)** A Limit of Insurance is shown as included on the SCHEDULE under **Professional Legal Liability Insurance**;

**(2)** The "claim" arises out of "professional services" rendered on or after the "retroactive date" and prior to the expiration of the endorsement period;

**(3)** The "claim" is not covered under **Contractor's Pollution Legal Liability Insurance**; and

**(4)** The "claim" is first made against the insured during the endorsement period and reported to us, in writing, during the endorsement period or, where applicable, the "automatic extended reporting period" or the "optional extended reporting period".

**b.** We have the right and duty to defend you against any "claim" seeking "professional loss" to which **Professional Legal Liability Insurance** applies, including the right to select counsel, even if any of the allegations are groundless, false or fraudulent. However, we have no duty to defend you against any "claim" to which **Professional Legal Liability Insurance** does not apply.

**c.** When we have a duty to defend, we will pay on your behalf "legal expenses" incurred as a result of a "claim" against you seeking "professional loss" to which **Professional Legal Liability Insurance** applies.

**d.** "Legal expenses" apply to and reduce the applicable Limit of Insurance shown in the SCHEDULE of this endorsement.

**e.** We may, at our discretion, investigate any "professional loss"

and settle any "claim" that may result. However, the Endorsement Aggregate Limit of Insurance shown on the SCHEDULE is the most we will pay for damages or "legal expenses" under **Professional Legal Liability Insurance**. Our right and duty to defend under this endorsement ends once the Endorsement Aggregate Limit of Insurance shown in the SCHEDULE has been used up in the payment of "legal expenses", settlements or judgments, or any combination thereof, to which **Professional Legal Liability Insurance** applies.

**f.** No other obligation or liability to pay sums or perform acts or services is covered under this endorsement.

**3. Premises Pollution Legal Liability Insurance**

**a.** We will pay those sums that you become legally obligated to pay as damages or "cleanup costs" because of "loss" caused by a "pollution condition", provided that:

**(1)** The "loss" is caused by a "pollution condition" on, at, under or migrating from a "covered location";

**(2)** The "pollution condition" results in a "claim" against you;

**(3)** The "pollution condition" takes place, and the "claim" is brought and maintained at all times, in the "coverage territory" and "covered locations";

**(4)** The "claim" is first made against you during the endorsement period and reported by you to us, in writing, during the endorsement period or, where applicable, the "automatic extended reporting period" or the "optional extended reporting period".

**b.** We have the right and duty to defend you against any "claim" seeking damages or "cleanup costs" because of "loss" to which **Premises Pollution Legal Liability Insurance** applies. However, we have no duty to defend you against any "claim" to which **Premises Pollution Legal Liability Insurance** does not apply.

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21

OGIC000366

c. When we have a duty to defend, we will pay on your behalf "legal expenses" incurred as a result of a "claim" against you seeking damages or "cleanup costs" because of "loss" to which **Premises Pollution Legal Liability Insurance** applies.

d. "Legal expenses" apply to and reduce the applicable Limit of Insurance shown in the SCHEDULE of this endorsement.

e. We may, at our discretion, investigate any "pollution condition" and settle any "claim" that may result. However, the Endorsement Aggregate Limit of Insurance shown on the SCHEDULE is the most we will pay for damages, "cleanup costs" and "legal expenses" under **Premises Pollution Legal Liability Insurance**. Our right and duty to defend under this endorsement ends once the Endorsement Aggregate Limit of Insurance shown in the SCHEDULE has been used up in the payment of "legal expenses", settlements or judgments, or any combination thereof, to which **Premises Pollution Legal Liability Insurance** applies.

f. No other obligation or liability to pay sums or perform acts or services is covered under this endorsement.

4. **Business Interruption and Extra Expense**

   We will pay on behalf of the insured "business interruption" and "extra expense", including "rental value", solely as a result of a "claim" for a "pollution condition" covered under **Premises Pollution Legal Liability Insurance** and not otherwise excluded under the terms and conditions of this endorsement; provided that a limit of liability is shown on the SCHEDULE under Business Interruption and Extra Expense.

B. **Exclusions**

   1. With respect to **Contractor's Pollution Legal Liability Insurance**, **Professional Legal Liability Insurance** and **Premises Pollution Legal Liability Insurance**, this insurance does not apply to:

   a. **Workers Compensation and Similar Laws**

      Any obligation of the insured under any workers' compensation, unemployment compensation or disability benefits law or similar law.

   b. **Hostile Acts**

      A "pollution condition", "loss" or "claim" arising from any consequence, whether direct or indirect, of war (whether declared or not declared), invasion, act of foreign enemy, hostilities, civil war, rebellion, revolution, insurrection, military action, usurped power, strike, riot or civil commotion.

   c. **Fines, Penalties, Punitive and Multiplied Damages**

      Any actual or alleged "claim" or liability for, or amount consisting of, a fine, penalty, punitive damages, exemplary damages or multiplied damages.

   d. **Equitable and Other Types of Relief**

      Any actual or alleged "claim" or liability for equitable relief, restitution or the return of money for work or services.

   e. **Electronic Data**

      Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data. As used in this exclusion, electronic data means information, facts or programs stores as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

   f. **Criminal Acts**

      "Loss" arising out of a criminal act committed by or at the direction of the insured.

   g. **Defective Drywall**

      The existence of, exposure to, required removal or abatement of:

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 4 of 21**

OGIC000367

**(1)** defective drywall, which includes, but is not limited to drywall that emits gases, vapors, or fumes or any other irritant or contaminant; and

**(2)** any other building component affected by defective drywall, including drywall that emits gases, vapors, fumes, or any other irritant or contaminant.

For purposes of this exclusion, drywall includes, but is not limited to any product known as gypsum board, wall board, and plaster board, drywall manufactured outside the United States and used for interior building material.

2. With respect to **Contractor's Pollution Legal Liability Insurance** and **Premises Pollution Legal Liability Insurance**, this insurance does not apply to:

a. **Known Circumstances or Conditions**

**(1)** A "pollution condition", "loss" or "claim" known by any insured prior to the endorsement period;

**(2)** A circumstance or condition known by any insured prior to the inception of the endorsement period where an insured should have reasonably foreseen that a "pollution condition", "loss" or "claim" would result.

b. **Employers Liability**

"Bodily injury" to

**(1)** An "employee" of any insured arising out of and in the course of employment by any insured or the performance of duties related to the conduct of any insured's business; or

**(2)** To the spouse (including the domestic partner or civil union partner recognized under the law of any applicable jurisdiction in the "coverage territory"), child, parent, brother or sister of that "employee" as a consequence of (1) above.

This exclusion applies whether any insured may be liable as an employer or in any other capacity

and to any obligation to share damages with or repay someone else who must pay damages as a result of the injury.

This exclusion does not apply to liability assumed by you under an "insured contract", provided that:

**(1)** The "insured contract" is in writing and signed by you;

**(2)** The "pollution condition" first commenced after you signed the "insured contract"; and

**(3)** The "pollution condition" is caused, in whole or in part, by you or those acting on your behalf.

c. **Contractual Liability**

"Loss" for which any insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement This exclusion does not apply to liability for damages:

**(1)** That you would have in the absence of the contract or agreement; or

**(2)** Assumed by you in a contract or agreement that is an "insured contract", provided that:

**(a)** The "insured contract" is in writing and signed by you;

**(b)** The "pollution condition" first commenced after you signed the "insured contract"; and the "pollution condition" is caused, in whole or in part, by you or by those acting on your behalf.

d. **Goods, Products or Materials**

A "pollution condition", "loss" or "claim" arising out of any goods, materials or products manufactured, sold, distributed, designed, handled, supplied, altered, repaired or disposed of by any insured or by others under license or trading under an insured's name.

e. **Intentional Acts**

A "pollution condition", "loss" or "claim" arising out of any actual or alleged:

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 5 of 21**

OGIC000368

**(1)** Intentional disregard of, or non-compliance with, any statute, regulation, ordinance, law or order by or at the direction of any insured or its agent; or

**(2)** Fraudulent, dishonest or malicious conduct by or at the direction of any insured or its agent.

**e. Professional Liability**

A "pollution condition", "loss" or "claim" arising out of the rendering of or failure to render professional services.

**f. Asbestos**

Any "loss", "pollution condition", cost, expense or "claim" which would not have occurred, in whole or in part, but for the actual, alleged or threatened existence of, presence of, inhalation of, ingestion of, use of, handling of, contact with or exposure to asbestos in any form, including products containing asbestos, asbestos fibers, asbestos dust and asbestos containing materials. This exclusion applies regardless of:

**(1)** The cause of the "loss", "pollution condition", cost, expense or "claim", or

**(2)** Whether the "loss", "pollution condition", cost, expense or "claim" is related to any product, services or operations of an insured.

**g. Lead**

Any "loss", "pollution condition", cost, expense or "claim" which would not have occurred, in whole or in part, but for the actual, alleged or threatened existence of, presence of, inhalation of, ingestion of, use of, handling of, contact with or exposure to lead, lead-based paint or any material containing lead or lead-based paint. This exclusion applies regardless of:

**(1)** The cause of the "loss", "pollution condition", cost, expense or "claim"; or

**(2)** Whether the "loss", "pollution condition", cost, expense or "claim" is related to any product,

services or operations of an insured.

**h. Nuclear or Radioactive Waste and Materials**

A "pollution condition", "loss" or "claim" which would have not occurred, in whole or in part, but for the actual, alleged or threatened contact with, exposure to, existence of or presence of any nuclear or radioactive material, waste or condition.

**i. Non-cumulation**

Any "occurrence", "claim", "loss" or "pollution condition", including the same, related, repeated or continuous "pollution condition"(s), that was:

**(1)** Reported to us or an affiliate of us under a endorsement or endorsement issued by us or an affiliate of us prior to the inception of the endorsement period of this endorsement; or

**(2)** Reported to another Insurance company or its agent prior to the inception of the endorsement period of this endorsement.

**j. Insured Versus Insured**

Any "claim" by an insured against another insured.

**k. Related Persons or Organizations**

Any "claim" by a person or organization:

**(1)** That wholly or partially owns, operates, manages or controls any insured;

**(2)** In which any insured has a direct or indirect ownership interest;

**(3)** That is controlled, operated or managed by any insured; or

**(4)** That is an affiliate of any insured;

but this exclusion will not apply to a "claim" made by an "additional insured".

**l. Mold Matter**

A "pollution condition", "loss" or "claim" which would have not occurred, in whole or in part, but for

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 6 of 21**

OGIC000369

the actual, alleged or threatened contact with, exposure to, existence of or presence of any "mold matter".

**m. Communicable Diseases**

Based upon or arising out of the exposure to infected individuals or animals, or contact with bodily fluids of infected individuals or animals.

3. With respect to **Contractor's Pollution Legal Liability Insurance**, this insurance does not apply to:

**a. Transportation**

A "pollution condition", "loss" or "claim" arising out of:

**(1)** The ownership, operation, maintenance, use (including "loading or unloading") or entrustment to others of any "auto", "mobile equipment", aircraft, watercraft, rolling stock or other mode of transportation, including any machinery or apparatus attached thereto or any cargo carried thereby; or

**(2)** Waste or materials transported, removed or taken by anyone beyond the boundaries of the "job site".

Paragraph **(1)** of this exclusion does not apply to a "pollution condition", "loss" or "claim" arising out of the use of an "auto" or "mobile equipment" within the boundaries of a "job site", if such use is solely and directly related to "contracting services".

**b. Faulty Workmanship/Insured's Work**

Any "claim" for or amounts consisting of the cost to repair or replace faulty workmanship, construction, fabrication, installation, assembly, erecting, manufacturing or remediation, if such faulty workmanship, construction, fabrication, installation, assembly, erecting, manufacturing or remediation was performed, in whole or in part, by or on behalf of an insured.

**c. Property**

"Property damage" to:

**(1)** Property that is or was at any time owned, rented or occupied by any insured; or

**(2)** Personal property in the care, custody or control of any insured.

4. With respect to **Professional Legal Liability Insurance**, this insurance does not apply to:

**a. Asbestos**

Arising out of the existence of, require removal or abatement of asbestos, in any form, including but not limited to products containing asbestos, asbestos fibers, asbestos dust and asbestos containing materials.

**b. Lead and Lead-Based Paint**

Arising out of the existence of, required removal or abatement of any lead and/or lead-based paint, in any form, including, but not limited to, products containing lead, lead dust and lead containing materials.

**c. Contractual Liability**

Arising from the insured's:

**(1)** Assumption of liability in a contract or agreement; or

**(2)** Breach of contract or agreement.

This exclusion does not apply to liability that the insured would have in the absence of the contract or agreement.

**d. Discrimination**

Arising from any discrimination on the basis of age, color, race, sex, creed, national origin, marital status, disability or sexual preference, unless such "claim" is based upon or arises out of the failure to make a reasonable accommodation for a disability in violation of the Americans With Disabilities Act 42 U.S.C. 12101, et seq., as amended.

**e. Employer's Liability**

Arising from any injury to:

**(1)** any employee, director, officer, partner or member of any insured or "leased worker" of any insured, if such injury arises in the course of:

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 7 of 21**

OGIC000370

**(a)** employment by an insured; or

**(b)** performing duties related to the conduct of an insured's business; or

**(2)** the spouse, child, parent, brother or sister of such employee, director, officer, partner or member of any insured or "leased worker" of the insured, as a consequence of any injury to any of the persons described in Paragraph **(1).** above.

This exclusion does not apply to liability assumed by the "named insured" in a contract or agreement that is an "insured contract".

**f. Express Warranty and Guaranty**

Arising from any express warranty or guaranty. This exclusion does not apply to any warranty or guarantee by the insured that the insured's "professional services" are in conformity with the standard of care that would be applicable in the absence of such express warranty or guarantee.

**g. Fiduciary Liability**

Arising from any involvement by an insured as:

**(1)** An officer, director, partner, member, trustee, employer or employee of a business enterprise not shown in the SCHEDULE or any charitable organization, or pension, welfare, profit sharing, mutual or investment fund or trust; or

**(2)** A fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto or any other employee benefit plan.

**h. Insurance and Suretyship**

Arising out of the requiring, obtaining, maintaining, advising as to or the failure to require, obtain, maintain or advise as to any form of Insurance, suretyship or bond, either with respect to any insured or any other person or organization.

**i. Insured Versus Insured**

Any "claim" by an insured against another insured. This exclusion does not apply to a "claim" by a "client".

**j. Intentional and Dishonest Acts**

Arising from any

**(1)** Intentional disregard of or non-compliance with, any statute, regulation, ordinance, law or order by or at the direction of the insured or its agent; or

**(2)** Actual or alleged fraudulent, dishonest or malicious conduct by the insured.

This exclusion does not apply to the insured that did not allegedly commit or allegedly participate in committing any of the forgoing described above.

**k. Joint Venture or Co-Venture**

Arising out of an insured's participation in a joint venture or co-venture. This exclusion does not apply to the "named insured's" liability resulting from the rendering or failure to render "contracting services" or "professional services" as a partner or member of a joint venture or co-venture.

**l. Known Circumstances or Conditions**

Arising from:

**(1)** A "claim" or "professional loss" known by a "responsible insured" prior to the inception of the "endorsement period"; or

**(2)** A circumstance or condition known by a "responsible insured" prior to the inception of the "endorsement period" where the "responsible insured" should have reasonably foreseen that a "claim", "pollution condition" or "professional loss" would result.

**m. Mold Matter**

Arising out of the existence of, exposure to, required removal or abatement of "mold matter", in any form including but not limited to any such cause or condition involving the presence, discharge or infiltration of moisture, vapor, water or any other liquid, or any damage

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 8 of 21**

OGIC000371

related thereto. For purposes of this exclusion, "mold matter" means mold, mildew or any type or form of fungus, including myotoxins, spores or by-products produced or released by fungi.

### n. Notices to Previous Insurers

Arising from any "claim", act, error or omission in "professional services" or other circumstance reported by an insured under any prior endorsement issued by a person or organization other than us.

### o. Off-Site Waste Liability

Arising out of any waste or materials transported beyond the boundaries of a "job site".

### p. Personal Injury

Arising from the false arrest, humiliation, harassment, detention, imprisonment, wrongful entry or eviction or other invasion of private occupancy, malicious prosecution, abuse of process, libel, slander, harassment, or other defamatory or disparaging material, or a publication or an utterance in violation of an individual's right of privacy.

### q. Products

Arising from any goods, materials or products designed, manufactured, sold, handled, distributed and/or supplied by any insured or by others under license or trade name from any insured.

### r. Professional Liability

Arising out of the rendering of or failure to render professional services by the insured, unless there is a limit of insurance shown on the SCHEDULE for **Professional Legal Liability Insurance**.

### s. Property

Arising out of:

**(1)** Any real property owned by the "named insured"; or

**(2)** for the repair, replacement or restoration of any personal property in the care, custody or control of the insured, other than

personal property owned or leased by, or in the care, custody or control of, the "client".

### t. Radioactive / Nuclear Material

Arising out of:

**(1)** The radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof;

**(2)** Ionizing radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the processing or reaction of nuclear fuel;

**(3)** The existence, required removal or abatement of naturally occurring radioactive materials including, but not limited to, radon;

**(4)** High-level radioactive waste (spent nuclear fuel or the highly radioactive waste produced if spent fuel is reprocessed), uranium milling residues and waste with greater than specified quantities of elements heavier than uranium; or

**(5)** Mixed Waste as defined in Title 40 Code of Federal Regulations, Part 266.210; however, this paragraph 5. does not apply to Mixed Waste that contains Waste as defined in Title 10 Code of Federal Regulations, Part 61.2, including, but not limited to the actual, alleged or threatened exposure of any person(s) or property to any such matter.

### u. Retroactive Date

A "claim" resulting from an act, error, or omission in "professional services" that commenced before the "retroactive date" shown in the **SCHEDULE** of this endorsement.

### v. Related Entities and Individuals

Arising from a "claim" by an entity or individual

**(1)** that wholly or partially owns, operates or manages an insured;

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 9 of 21**

OGIC000372

**(2)** in which an insured has a direct or indirect ownership interest;

**(3)** that is controlled, operated or managed by an insured; or

**(4)** that is an affiliate of an insured;

but this exclusion will not apply to a "claim" made by an "additional insured".

**w. Securities Violation**

Arising from any violation of the Securities Act of 1933 as amended or the Securities Exchange Act of 1934 as amended or any state Blue Sky or securities law or similar State, Federal or other governmental law, statute and any regulation or order issued pursuant to any of the foregoing statutes.

**x. Transportation**

Arising from the ownership, maintenance, use, operation, loading or unloading of any motorized land vehicle, aircraft, watercraft or rolling stock, including any machinery or apparatus attached thereto or any cargo carried thereby, beyond the boundaries of a "job site".

**4.** With respect to **Premises Pollution Legal Liability Insurance**, this insurance does not apply to:

**a. Transportation**

A "pollution condition", "loss" or "claim" arising out of:

**(1)** The ownership, operation, maintenance, use (including "loading or unloading") or entrustment to others of any "auto", "mobile equipment", aircraft, watercraft, rolling stock or other mode of transportation, including any machinery or apparatus attached thereto or any cargo carried thereby; or

**(2)** Waste or materials transported, removed or taken by anyone beyond the boundaries of a "covered location".

**b. Retroactive Date**

A "loss" or "claim" arising out of a "pollution condition" that commenced before the "retroactive date" shown in the **SCHEDULE** of this endorsement. For the purpose of this exclusion, a "pollution condition" that commenced before the "retroactive date" shown in the SCHEDULE under **Premises Pollution Legal Liability Insurance** of this endorsement includes any dispersal, migration or further movement of such "pollution condition" on or after the "retroactive date".

**c. Divested Property**

Any "claim" or "loss" arising out of "pollution condition" on, at, under or migrating from a "covered location" where the actual or alleged "pollution condition" commenced after the time the "covered location" is sold, given away or abandoned by an insured, or is condemned.

**d. Property**

"Property damage" to:

**(1)** Property that is or was at any time owned, rented or occupied by any insured; or

**(2)** Personal property in the care, custody or control of any insured.

Paragraph **(1)** of this exclusion does not apply to "cleanup costs" because of "environmental damage" caused by a "pollution condition" on, at, under or migrating from a covered location.

**e. Underground Storage Tanks**

A "pollution condition", "loss" or "claim" arising out of the past or current existence of an "underground storage tank" on, at, under or migrating from a "covered location".

**f. Material Change in Use or Operations**

A "pollution condition", "loss" or "claim" arising out of a material change in the use of, or a material change in the operations at, any "covered location" from those set forth by any insured in the Application or related materials as of the inception date of the endorsement period of this endorsement.

**C. Who Is An Insured**

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

OGIC000373

1. Insured means each of the following:

    a. Any "named insured" and any current or former director, partner, member, executive officer, employee or "leased worker" of the "named insured", but solely while acting within the course and scope of his/her duties as such.

    b. Solely with regard to **Contractor's Pollution Legal Liability Insurance**, the "client", but only:

        (1) if the "named insured" is required to include the "client" as an additional insured in a written contract in effect during the endorsement period and signed by the "named insured" prior to the first commencement of the "pollution condition"; and

        (2) with respect to the "client's" vicarious liability resulting from the "named insured's" "contracting services".

        (3) Any Insurance afforded to the "client" under the terms and conditions of this endorsement will be limited to the lesser of the amount of the limits of insurance required by such written contract and the limits of insurance under this endorsement. In no event will we be liable for any amounts in excess of the limits of insurance shown on the SCHEDULE.

        In the event of the insured's bankruptcy, the trustees of the insured and in the event of the insured's death or incapacity, the insured's legal representatives or executors, but only with respect to each such trustee's, representative's or executors' vicarious liability resulting from the "named insured's" "contracting services" or "professional services".

    c. Any "additional insured", but only as respects "claims" against such person or entity for acts, errors or omissions of the "insured".

**D. Limits of Insurance**

1. The **Endorsement Aggregate Limit** of Insurance shown in the SCHEDULE of this endorsement and the rules below establish the most we will pay regardless of the number of:

    a. Insureds;

    b. "Claim"(s);

    c. Persons or organizations making "claim"(s);

    d. Governmental actions taken with respect to "cleanup costs";

    e. "Pollution condition"(s) or

    f. "Professional loss".

2. The **Endorsement Aggregate Limit** of Insurance shown in the SCHEDULE of this endorsement is the most we will pay for the sum of all damages, "cleanup costs" and "legal expenses" for which insurance is afforded under **Contractor's Pollution Legal Liability Insurance** for each "pollution condition" and in the aggregate. All "loss" arising out of the same, related, repeated or continuous "pollution condition"(s) shall be deemed to arise out of a single "pollution condition."

3. The **Endorsement Aggregate Limit** of Insurance shown in the SCHEDULE of this endorsement is the most we will pay for all "professional loss" afforded under **Professional Legal Liability Insurance** for each "professional loss" and in the aggregate. If **Professional Legal Liability Insurance** is not listed as 'included' in the SCHEDULE, then **Professional Legal Liability Insurance** is not afforded. All "professional loss" arising out of the same, related, repeated or continuous act(s), error(s) or omission(s) in rendering or failing to render "professional services" is deemed to arise out of a single act, error or omission.

4. The **Endorsement Aggregate Limit** of Insurance shown in the SCHEDULE of this endorsement is the most we will pay for all damages, "cleanup costs" and "legal expenses" for which insurance is afforded under **Premises Pollution Legal Liability Insurance** for each "pollution condition" and in the aggregate. All "loss" arising out of the same, related, repeated or continuous "pollution condition"(s) shall be deemed to arise out of a single "pollution condition".

5. The "Business Interruption" and "Extra Expense" Limit shown in the

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 11 of 21**

OGIC000374

SCHEDULE of this endorsement is the most we will pay for all "business interruption" and "extra expense", including "rental value" for which insurance is afforded under "business interruption" and "extra expense" coverage. This limit is part of and not in addition to the **Endorsement Aggregate Limit** of Insurance.

6. **Insurance Under Multiple Policies**

   a. Notwithstanding anything to the contrary in this endorsement or any other endorsement issued by us or a company affiliated with us, under no circumstances will more than one endorsement issued by us or a company affiliated with us apply to:

      (1) any "loss", "pollution condition" or "professional loss" that occurs or continues through more than one endorsement period of two or more policies (including this endorsement) issued by us or a company affiliated with us; or

      (2) "claim"(s) and "loss"(es) arising out of the same, related, repeated or continuous "pollution condition" or "professional loss".

   b. Subject to paragraph **c.** below, if more than one endorsement issued by us or a company affiliated with us would otherwise apply to any "loss", "pollution condition" or "professional loss" that occurs or continues through more than one endorsement period of two or more policies (including this endorsement) issued by us or a company affiliated with us, the only endorsement that will respond is the endorsement with the earliest inception date. No other endorsement will respond, even if the limits of the endorsement with the earliest inception date have been impacted or exhausted by payment(s) by us.

   c. The most we will pay for the total of all "claim"(s) and "loss"(es) arising out of the same, related, repeated or continuous "pollution condition"(s) or "professional loss"(s) under all policies issued by us or a company affiliated with us is the Each "Pollution Condition" Limit of Insurance or Each "Professional Loss" Limit of Insurance set forth in the endorsement with the earliest inception date of all applicable policies issued by us or a company affiliated with us.

E. **Deductible**

   1. We will not pay any damages, "cleanup costs", "professional loss", "legal expenses", business interruption" or "extra expense" until the amount of damages, "cleanup costs", "professional loss", "legal expenses", "business interruption" or "extra expense" paid by the Named Insured exceeds the applicable deductible shown in the SCHEDULE.

   2. The deductible shall be satisfied by monetary payments by the Named Insured of damages, "cleanup costs", "professional loss", "legal expenses", business interruption" or "extra expense". The Named Insured shall make payments within the deductible to the appropriate parties as designated by us.

   3. The deductible shall not reduce the limit of liability shown in the SCHEDULE.

F. **Conditions**

   1. **Bankruptcy**

      Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this endorsement.

   2. **Legal Action Against Us**

      No person or organization has a right under this endorsement:

      a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

      b. To sue us on this endorsement unless all of its terms have been fully complied with.

      A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this endorsement or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 12 of 21**

OGIC000375

**3. Insurance Under Two or More Coverages**

If Insurance is available under **Contractor's Pollution Legal Liability Insurance, Professional Legal Liability Insurance** or **Premises Pollution Legal Liability Insurance** and also available under "other intra-endorsement Insurance" for the same "loss", damage or injury, our obligations are limited as follows:

**a.** Any Insurance available under **Contractor's Pollution Legal Liability Insurance, Professional Legal Liability Insurance** or **Premises Pollution Legal Liability Insurance** is primary, and there will be no contribution from or concurrent coverage with "other intra-endorsement Insurance" that would otherwise be applicable; and

**b.** Any available "other intra-endorsement Insurance" is excess over any Insurance available under **Contractor's Pollution Legal Liability Insurance, Professional Legal Liability Insurance** or **Premises Pollution Legal Liability Insurance** including amounts within the Deductible shown in the SCHEDULE of this endorsement.

**c.** When "other intra-endorsement Insurance" is excess, we will have no duty under "other intra-endorsement Insurance" to defend you against any "claim" if we have the duty to defend you under **Contractor's Pollution Legal Liability Insurance, Professional Legal Liability Insurance** or **Premises Pollution Legal Liability Insurance.**

**d.** If two or more of this endorsement's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**4. Duties in the Event of an "Occurrence", "Pollution Condition", "Professional Loss", "Loss" or "Claim"**

**a.** No insured will, except at its own cost, voluntarily make a payment, assume any obligation, admit liability, or incur any expense without our prior written consent.

**b.** The insured must see to it that we are notified as soon as practicable of any "occurrence", "pollution condition", "loss" or act, error or omission in "professional services" which may result in a "claim". To the extent possible, notice should include:

**(1)** How, when and where the "occurrence", "pollution condition", "loss" or act, error or omission in "professional services" took place;

**(2)** The names and addresses of any person involved and/or having knowledge of the "occurrence", "pollution condition", "loss" or act, error or omission in "professional services";

**(3)** The "contracting services" that may have caused such "pollution condition"; and

**(4)** The nature of any resulting harm, injury or damage.

**c.** If a "claim" is made or brought against an insured, the insured must:

**(1)** Immediately record the specifics of the "claim" and the date it was received;

**(2)** Notify us as soon as practicable;

**(3)** Provide written notice of the "claim" as soon as practicable;

**(4)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with a "claim";

**(5)** Authorize us to obtain records and other information;

**(6)** Cooperate with us in the investigation, settlement or defense of the "claim"; and

**(7)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "loss" to which the Insurance under this endorsement applies;

**(8)** With respect to **Professional Legal Liability Insurance**, the

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 13 of 21**

OGIC000376

insured must also provide the date and details of all actual and alleged acts, errors or omissions in "professional services" which took place, along with the specific nature, date and extent of any injury or damage which has been sustained, copies of any contracts that have been entered into by any insured that are related to the "professional services" and details explaining how the "insured" first became aware of the circumstance.

**d.** In the case of a "pollution emergency", the insured must report any claim or potential claim as soon as practicable by contacting us at the telephone number specified in the SCHEDULE.

**5. Concealment, Misrepresentation or Fraud**

This endorsement is void in any case of fraud by you as it relates to this endorsement at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This endorsement;

**b.** The "covered location";

**c.** Your interest in the "covered location"; or

**d.** A "claim" under this endorsement.

**6. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this endorsement at any time during the endorsement period and up to three years afterward.

**7. Liberalization**

If we adopt any revision that would broaden the coverage under this endorsement without additional premium within 45 days prior to or during the endorsement period, the broadened coverage will immediately apply to this endorsement.

**8. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this endorsement has rights to recover damages from another, those rights are transferred to us to the extent of our payment. If the insured has rights to recover all or part of any payment we have made under this endorsement, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. Subrogation**

In the event of any payment under this endorsement, we will be subrogated to all of the insured's rights of recovery against any person or organization and the insured will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured will do nothing at any time to prejudice our subrogation rights. However, we waive our right(s) of recovery against any person or organization if and to the extent the "named insured" has agreed to waive its right(s) of recovery against such person or organization in a written contract signed by the "named insured" prior to:

**a.** The first commencement of a "pollution condition" out of which the "claim" arises under **Contractor's Pollution Legal Liability Insurance**, or

**b.** The act, error or omission in "professional services" out of which the "claim" arises under **Professional Legal Liability Insurance**.

**G. Definitions**

**1.** "Additional insured" means any person or entity that the insured has agreed in writing to add as an "additional insured" under the Endorsement, prior to the commission of any act for which such person or entity would be provided coverage under the endorsement, but only to the extent the insured would have been liable and coverage would have been afforded under the terms and conditions of the endorsement had such "claim" been made against the "insured".

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 14 of 21**

OGIC000377

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle Insurance or motor vehicle registration law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Automatic Extended reporting period" means the 90 day period of time set forth under the Extended Reporting Periods section

4. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

5. "Business Interruption" means the sum of the following:

a. Net income, which is net profit, if any, that would have been earned before taxes (or if there is a net loss before taxes, the net loss is deducted), and

b. Continuing normal operating expenses incurred excluding payroll not deducted in a. above,

due to the reasonably and necessary suspension of the insured's operations during the "period of restoration" at a "covered location".

6. "Claim" means a lawsuit or governmental action alleging legal liability on the part of the insured.

7. "Cleanup costs" means

a. reasonable and necessary costs, charges and expenses incurred, with our prior written consent, in the investigation, assessment, removal, disposal, abatement, containment, treatment, remediation (including the associated testing and monitoring) or neutralization of a "pollution condition", to the extent required by "environmental laws", required by a "licensed site professional" or required to satisfy the insured's obligations under a federal or state cleanup program;

b. Reasonable and necessary fees charged by an attorney designated or consented to by us incurred in connection with any such "cleanup costs";

c. Reasonable and necessary "restoration costs";

d. Reasonable and necessary "mitigation costs"; and/or;

e. Reasonable and necessary expenses incurred to respond to an imminent and substantial endangerment to the public health or welfare or to the environment because of a "pollution condition"; provided that, as a condition precedent to coverage, the "named insured" shall forward written notice to us of any action taken and expense incurred pursuant to this section as soon as practicable after any such "cleanup costs" have been incurred or assumed.

8. "Client" means the person or organization that directly hires the "named insured", by written contract signed by the "named insured", to render "contracting services" and for whom the "named insured" renders such services.

9. "Commencement date" means the date listed under "commencement date" on the SCHEDULE for each applicable coverage.

10. "Contracting services" means those contracting operations performed by you or on your behalf as disclosed to us as of the inception of the endorsement period, or as disclosed to us during the endorsement period and approved by us, in writing, in our sole and absolute discretion.

11. "Coverage territory" means the United States and its territories and possessions.

12. "Covered location" means each location shown in the SCHEDULE of this endorsement and all newly acquired locations during the endorsement period which are disclosed to us in writing during the endorsement period.

13. "Damages" means a monetary judgment, award or settlement. The term "damages" shall not include or mean:

a. future profits, restitution, disgorgement of unjust enrichment or profits by an insured, or the costs of complying with orders granting injunctive or equitable relief;

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CG 72 02 07 21
Page 15 of 21

OGIC000378

**b.** return or offset of fees, charges, or commissions charged by or owed to an insured for goods or services already provided or contracted to be provided;

**c.** taxes or loss of tax benefits;

**d.** fines, sanctions or penalties;

**e.** punitive or exemplary damages, or any damages which are a multiple of compensatory damages, unless insurable by law in any applicable venue that most favors coverage for such punitive, exemplary or multiple damages;

**f.** discounts, coupons, prizes, awards or other incentives offered to the insured's customers or clients;

**g.** liquidated damages, but only to the extent that such damages exceed the amount for which the insured would have been liable in the absence of such liquidated damages agreement; or

**h.** any amounts for which the insured is not liable, or for which there is no legal recourse against the insured.

**14.** "Deductible period" means the period of time that begins at the date and time that the we receive and record written notice of the necessary suspension of the insured's operations due to a "pollution condition" on, at, under or migrating from the a "covered location" and ends within the time frame shown on the SCHEDULE.

**15.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**16.** "Environmental damage" means the injurious presence in or upon land, the atmosphere, or any watercourse or body of water of "pollutants".

**17.** "Environmental laws" means any federal, state, provincial or local laws, including but not limited to statutes, rules, regulations, ordinances, guidance documents, and governmental, judicial or administrative orders and directives that are applicable to "pollution conditions" to which this Endorsement applies.

**18.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**19.** "Extra Expense" means the necessary expenses incurred by the insured, over and above the insured's continuing normal operating expenses, during the "period of restoration", that the insured would not have incurred had there been no "pollution condition" discovered at the "covered location", provided that the expenses are incurred to avoid or minimize the suspension of business and to continue operations:

**a.** at the "covered location", or

**b.** at replacement or temporary location(s), including:

**(1)** relocation expenses; and

**(2)** cost to equip and operate the replacement or temporary location(s).

Subject to the terms and conditions of this endorsement, we will pay no more for "extra expenses" than the percentage shown below multiplied by the Limit of Insurance stated in the SCHEDULE. If the "period of restoration" is:

**a.** 30 days or less, the percentage applied to the Limit of Liability shall be 40%;

**b.** 31-60 days, the percentage applied to the Limit of Liability shall be 80%;

**c.** 61 days or more, the percentage applied to the Limit of Liability shall be 100%.

**20.** "Field changes to design" includes but is not limited to, when a contractor discovers a minor physical job situation that makes it imprudent or impossible to complete the task, from the existing contract documents, the contractor then adjusts the job task, using practical construction knowledge, which does not inhibit the quality of the project, and leads to a field solution. This definition does not include any design that is required to be done by a licensed architect or engineer, and it does not include design related to construction means, methods, or jobsite safety precautions.

**21.** "Insured contract" mans that party of any written contract or written agreement under which the "named

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 16 of 21**

OGIC000379

insured" assume the tort liability of another party to pay compensatory damages for "loss" to a third person or organization, provided that such written contract or written agreement is signed by the "named insured" prior to the "loss". Tort liability means a liability that would be imposed by law in the absence of any contract or agreement. However, "insured contract" does not include any tortious conduct that would otherwise not be covered by this endorsement, nor if the tortious conduct was solely that of the person or persons for whom such liability under the insured contract was assumed.

22. "Job site" means the location where the "contracting services" are being performed. "Job site" does not include any location which currently is or was, at the time the insured or subcontractor working directly or indirectly on the insured's behalf were working on the location, owned, rented, used or occupied by the insured.

23. "Leased worker" means a person leased to the insured, by a labor leasing firm under an agreement between the insured and the labor leasing firm to perform duties related to the conduct of the insured's business.

24. "Legal expenses" means reasonable and necessary legal fees, charges and expenses incurred in the investigation and defense of a "claim", provided such costs, charges and expenses are authorized by us. "Legal expenses" does not include any expense that is incurred by an insured in assisting in the investigation, defense or resolution of a "claim".

25. "Licensed site professional" means a licensed environmental scientist or engineer that is in good standing with, and acting under the authority of federal, state, provincial or local laws for the purpose of addressing "pollution conditions" at a "covered location".

26. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

27. "Loss" means "bodily injury", "property damage" or "environmental damage".

28. "Mitigations costs" means expenses incurred to clean up or mitigate a "pollution condition" resulting from a "pollution emergency" at a "covered location" or covered "job site", as required by a federal or state regulatory agency, prior to the initiation of a formal "claim" against the insured. "Mitigation costs" may only be covered with our prior approval and if notification of such "pollution condition" is provided as soon as practicable. "Mitigation costs" will not be covered where the "pollution condition" does not result in a "claim" or where the "pollution condition" would not otherwise be covered under the terms and conditions of this endorsement. "Mitigation expenses" shall not exceed $25,000.00 and are subject to and will reduce the aggregate limit of liability. **Refer to Paragraph F, 4. Duties in the Event of an "Occurrence", "Pollution Condition", "Professional Loss", "Loss" or "Claim"** for information on "pollution emergency" reporting.

29. "Mold matter" means mold, mildew or any type or form of fungus, including mycotoxins, spores or by-products produced or released by fungi.

30. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, on which are permanently mounted:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CG 72 02 07 21
**Page 17 of 21**

OGIC000380

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle Insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle Insurance law or motor vehicle registration law are considered "autos".

31. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

32. "Optional Extended reporting period" means the 1-year period of time set forth under the Extended Reporting Periods section

33. "Other intra-endorsement Insurance" means insurance provided under the terms of the endorsement other than the **Premises Pollution Legal Liability Insurance**, **Contactor's Pollution Legal Liability Insurance** or **Professional Legal Liability Insurance** afforded by this endorsement.

34. "Period of restoration" means the period of time that begins after the "deductible period" and ends when the "covered location(s)" should be restored to operation with reasonable speed and quality or when business activities resume at the new permanent location. The expiration date of this endorsement will not reduce the "period of restoration", nor shall the "extended reporting period" extend it.

35. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

36. "Pollution condition" means the discharge, dispersal, release, escape, seepage or migration of "pollutants" into or upon land, the atmosphere, or any watercourse or body of water.

37. "Pollution emergency" means any "pollution condition" where immediate action is required to respond to a potential or actual "claim".

38. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

CG 72 02 07 21
Page 18 of 21

OGIC000381

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**39.** "Professional loss" means:

**a.** A monetary judgment, award or settlement of compensatory damages;

**b.** "Legal expenses" associated with the above paragraph.

"Professional loss" does not include:

**a.** Civil or criminal fines and penalties;

**b.** Punitive, exemplary or multiplied damages;

**c.** Injunctive or equitable relief;

**d.** The return of fees or charges for services rendered;

**e.** Costs and expenses incurred by the "insured" to redo, change, supplement or fix the "insured's" work or services, including redesign; or

**f.** Any of the "insured's" overhead, mark-up, or profit.

**40.** "Professional Services" means those activities listed under Professional Services in the SCHEDULE that are rendered by or on behalf of the "named insured".

**41.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this Insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**42.** "Rental Value" means the loss of any anticipated rental income the insured would have earned during the "period of restoration" by renting all or a portion of the "covered location(s)" to a third party not owned by, affiliated with, or connected in any way to the insured, less any rental income the insured actually earned or could have earned during the "period of restoration" by renting all or a portion of the "covered location(s)" or by making use of other

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 19 of 21**

OGIC000382

property. "Rental value" does not apply to any loss included in the definition of "business interruption" and "extra expense".

43. "Responsible insured" means any officer, director, partner, member, manager, supervisor or foreman of any insured of any employee of an insured that has responsibility, in whole or in part, for risk control, risk management, health and safety or environmental affairs, control or compliance.

44. "Restoration costs" means expenses required to restore, repair or replace real or personal property to substantially the same condition it was in prior to being damaged during the course of responding to a "pollution condition" to which this endorsement applies. These costs will not exceed the actual cash value of such real or personal property immediately prior to such damage, or include costs associated with improvements or betterments. Actual cash value shall mean the cost to replace such real or personal property, immediately prior to such damage, minus the accumulated depreciation of the real or personal property.

45. "Retroactive date" means the date listed under "Retroactive date" on the SCHEDULE for each applicable coverage.

46. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this Insurance applies. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

47. "Transportation" means the movement of waste or material by "auto" or "mobile equipment" (including "loading or unloading") provided that the person or entity transporting the waste or material is properly licensed to transport such waste or material by "auto" or "mobile equipment".

48. "Underground storage tank" means a stationary container or vessel, including the associated piping connected thereto, which is ten percent (10%) or more beneath the surface of the ground and is:

   a. Constructed primarily of non-earthen materials; and

   b. Designed to contain any substance.

49. "Value engineering" means an organized effort directed at analyzing designed building features, systems, equipment, and material selections for the purpose of achieving essential functions at the lowest life cycle cost consistent with required performance, quality, reliability, and safety.

50. "Your product":

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         (b) Others trading under your name; or

         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      (2) The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

51. "Your work":

   a. Means:

      (1) Work or operations performed by you or on your behalf; and

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CG 72 02 07 21
Page 20 of 21

OGIC000383

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

## H. Extended Reporting Periods

With respect to **Premises Pollution Legal Liability Insurance** or **Professional Legal Liability Insurance**:

**a.** You are entitled to an automatic ninety (90) day "automatic extended reporting period", commencing on the last day of the endorsement period. The ninety (90) day "automatic extended reporting period" applies to a "claim" first made during the endorsement period and reported to us, in writing, during the ninety (90) day "automatic extended reporting period". The ninety (90) day "automatic extended reporting period" applies only if we cancel or non-renew the **Professional Legal Liability Insurance** or the **Premises Pollution Legal Liability Insurance** for a reason other than non-payment of premium, non-payment of deductible, fraud or misrepresentation.

**b.** Upon non-renewal or cancellation of this endorsement for any reason except the non-payment of premium, the insured will have the right to purchase, for one hundred percent (100%) of the expiring annual premium, an "optional extended reporting period" of twelve (12) months. Coverage provided by such "optional extended reporting period" will only apply to "claims" first made against any insured during the endorsement period and reported to us, in writing, during the "optional extended reporting period", and arising out of any act, error or omission committed on or after the "retroactive date" and before the end of the endorsement period. In order for the insured to invoke the "optional extended reporting period", the payment of the additional premium for the must be paid to us within 60 days of the termination of this endorsement.

**c.** The purchase of the "optional extended reporting period" will in no way increase the Endorsement Aggregate Limit of Liability or any sublimit of liability. At the commencement of the "optional extended reporting period". the entire contribution will be deemed earned, and in the event the insured terminates the "optional extended reporting period" for any reason prior to its natural expiration, we will not be liable to return any contribution paid for the "optional extended reporting period"

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 21 of 21**

OGIC000384

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES - CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY

This endorsement modifies insurance provided under the following:

CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY FORM

**SECTION IV. INSURANCE, H. Extended Reporting Periods,** paragraph **b.** is replaced by the following:

1. Upon non-renewal or cancellation of this endorsement for any reason, the insured will have the right to purchase, for one hundred percent (100%) of the expiring annual premium, an " optional extended reporting period" of twelve (12) months. Coverage provided by such "optional extended reporting period" will only apply to "claims" first made against any insured during the endorsement period and reported to us, in writing, during the "optional extended reporting period", and arising out of any act, error or omission committed on or after the "retroactive date" and before the end of the endorsement period. In order for the insured to invoke the "optional extended reporting period", the payment of the additional premium for the must be paid to us within 60 days of the termination of this endorsement.

**CG 72 19** 05 21

Page **1** of **1**

OGIC000385

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION-FOODBORNE ILLNESS EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training, or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of a communicable disease; or

**d.** Failure to report a communicable disease to authorities.

This exclusion does not apply to any foodborne illness arising out of contact with or consumption of a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2**. **Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training, or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of a communicable disease; or

**d.** Failure to report a communicable disease to authorities.

This exclusion does not apply to any foodborne illness arising out of contact with or consumption of a good or product intended for bodily consumption.

---

Includes copyrighted material of
Insurance Service Office, Inc., with its permission

**CG 72 30** 07 22
Page 1 of 1

# EXHIBIT

## "7"

OGIC000386



Insured: Mike Burdett Roofing and Exteriors LLC
Claim Number: 0002735785

Policy Number: CWP 179385Y
Policy Period(s): 10/8/2022 - 10/8/2026
Policy Cancelled: _____

☑ NON-CERTIFIED POLICY

OGIC000387



## Your passion. Our promise. Imagine the possibilities.

Congratulations on the continued success of your business and thank you for again choosing Westfield to be a partner in your progress.

Along with the Brandon Insurance Group, it's our privilege to not only help you avoid risk, but see how it can present business opportunities.

If you have questions or concerns about your policy, simply contact Brandon Insurance Group at 215-256-8020 or visit their website at www.brandonins.com. You can also visit us at **westfieldinsurance.com** for useful information about your policy such as:

- Detailed policy and coverage information
- ID cards or proof of insurance
- Bill pay services
- Claims information and status
- Business insights and risk management resources

Again, thank you for your business. Together, let's greet the future by imagining all the possibilities.

OGIC000388



# A Business Insurance Policy for
# Mike Burdett Roofing and Exteriors LLC

Prepared by

Brandon Insurance Group

of HARLEYSVILLE, Pennsylvania

OGIC000389

IN WITNESS WHEREOF, this Company has caused this policy be signed by its President and
Secretary and countersigned by a duly authorized representative of the Company if required by law.

*Secretary*                    *President*

ID 7004 06 25

OGIC000390



# Westfield Privacy Notice to US Insurance Customers

Effective: 2024 April 1

We are committed to protecting your privacy. This notice describes the personal information we collect about you and how we use it. This privacy promise applies to all our Westfield US insurance companies.

**SUMMARY**

- We gather information directly from you[1], from your transactions with us and from outside sources.
- We use your information only to provide insurance to you, to investigate and resolve claims or to improve the products and services we offer.
- We will share your information with the independent agent or insurance broker that you chose.
- We share your information with third-parties who help us deliver services to you.
- *We do not sell your personal information.* We do not share your information with other companies for their marketing purposes.
- We take measures to protect your information while it is in our custody. We require the third-parties who help us to protect your information, too.

**INFORMATION WE COLLECT**

We collect information about you in order to quote and service your insurance policy and to investigate and pay claims. This includes:

- Information from your application and other forms (such as your name, address, date of birth, email address, driver's license number and type of vehicle or property).
- Information about your transactions with us, our affiliates or others (such as your insurance coverages, limits and rates, payment and claims history and information needed for billing and payment).
- Information from third parties (such as your driving record, claims history with other insurers and credit information).
- Information about your online interactions with us (such as your IP address, the kind of device you used, the time of your visit to our site and pages visited). We use this information to deliver online services to you and/or to evaluate and improve our services.

We also use de-identified aggregate information to measure readers' interest in and use of various areas of our website and of the programs we administer. Although we may share this aggregate information with third parties, none of this information will allow anyone to identify you or to determine anything personal about you.

---

[1] For a personal lines policy, this could include information from the head of household or other family member buying insurance that covers you. For a commercial lines policy, this could include information from your company's representative.

OGIC000391

**INFORMATION ABOUT MINORS**

We do not sell to or intentionally communicate with children under the age of 13. We may request specific information about a child from parents in order to properly quote an insurance policy, verify identities or deliver requested transactions. We do not retain information about minors other than what is necessary to deliver requested services.

**INFORMATION WE DISCLOSE**

We do not sell or rent your personal information. We disclose your information to third-parties only as permitted by law:

- To process transactions that you request or to service your policy.
- To investigate and pay claims.
- To prevent fraud.
- To perform marketing services on our behalf. (We do NOT allow third-parties to use the information they receive from us to market on their own or anyone else's behalf.)
- To comply with legal requirements.

Recipients include employees within our family of insurance companies, claims representatives, insurance agents or brokers, service providers, auditors, consumer reporting agencies, government agencies, law enforcement and the courts.

**HOW WE PROTECT YOUR INFORMATION**

We restrict access to nonpublic personal information about you to those employees and outside services providers who need to know that information in order to provide our products or services to you. Their use of information is restricted by law, by our employee code of conduct and by written agreements where appropriate. We maintain physical, electronic and procedural safeguards that comply with applicable federal and state regulations to guard your information.

If you believe you have found a security issue with one of our products or services, please report it to **InfosecAlerts@Westfieldgrp.com** as quickly as possible. Please describe the issue in as much detail as possible, including the date and time you discovered the issue and how to reproduce the issue. Screenshots and videos can be especially helpful. Please also include your name and contact information in case we need additional detail.

**Social Media and Online Engagement**

We sometimes use new technologies, including social media, to communicate with customers, potential customers, employees and potential employees. These sites and applications include things we develop ourselves and certain third-party platforms such as Facebook, X, formerly known as Twitter, LinkedIn or Instagram. Those third-party websites and applications are not operated or controlled by us. When using those services, you may reveal personal information to us and to third parties. Please carefully read the privacy policies of those third-party platforms before posting any non-public information.

Our employees will not use, share or retain your personal information from a social media or other third-party service except as necessary to respond to a specific message or request from you, to provide services to you, or to comply with legal requirements.

**FORMER CUSTOMERS**

If you end your relationship with us, we will continue to adhere to the policies and practices described in this privacy promise for as long as we have your information.

OGIC000392

**PRIVACY CONTACT INFORMATION**

If you have any questions, concerns or comments about our privacy promise, you may contact us by phone (1-800-552-9139), email (privacy@westfieldgrp.com) or by physical mail to Privacy Officer, Westfield Insurance, One Park Circle, PO Box 5001, Westfield Center, OH 44251.

OGIC000393



# IMPORTANT NOTICE TO OUR POLICYHOLDERS

### *Westfield Insurance Fraud Hot-Line*

PLEASE READ THIS IMPORTANT INFORMATION

- Fraudulent insurance claims cost us all money.

- Call us if you have information concerning a fraudulent insurance claim.

- All information will be kept confidential.

- Call and discuss your information with a trained investigator, or leave the information anonymously on a telephone answering machine.

- We can all help fight insurance fraud.

## Be a Fraud Buster

## 1-800-654-6482

AD 8522 (08-10)

OGIC000394



# IMPORTANT NOTICE TO POLICYHOLDERS

Please be advised of an upcoming change to our payment terms that may affect how you make your policy payments.

**What's Changing?**
Effective April 1, 2025, a fee of up to 3% will be applied to all payments made using a credit card, where permissible. This fee is charged by our payment processing vendor to cover credit card processing costs.

**How to Avoid the New Credit Card Fee:**
We offer several alternative payment methods that do not involve a credit card fee, such as:
- Electronic Funds Transfer (EFT) - direct payment from a checking or savings account. You can set up EFT through MyWestfield or by calling our Billing Team at **800-243-0210 option 2**.
- Paying by check or other available payment method other than credit card.

We understand that this change may cause an inconvenience for you, and we appreciate your understanding and continued support as we strive to deliver exceptional service. If you have any questions or concerns, feel free to reach out to our Billing Team at **800-243-0210 option 2** or email billing@westfieldgrp.com.

AD 94 20 01 25

Page 1 of 1

OGIC000395



THIS NOTICE DOES NOT GRANT ANY COVERAGE OR CHANGE
THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE
POLICY. IF THERE IS ANY CONFLICT BETWEEN YOUR POLICY AND
THIS NOTICE, THE PROVISIONS OF YOUR POLICY SHALL PREVAIL.

**Policyholder Disclosure Notice of Terrorism Insurance Coverage and Premium**

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security, and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect you coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

## PREMIUM CHARGED

During your current policy period, the portion, if any, of your premium that is attributable to coverage for acts of terrorism as defined in the Act is $ _____ (refer to the individual dec pages for the Terrorism premium).

**If you do not desire the coverage** for acts of terrorism as defined in the Act, as amended, you may reject the coverage and instruct the insurance company to remove it and refund the premium described above. **To reject the coverage, you must:**

1) advise the insurance company by letter (on your company letterhead),

2) signed by the owner, representative, or properly designated official of the named insured.

AD 85 84 07 19                                                                                                          Page 1 of 2
Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

OGIC000396

**The insurance company must receive your letter within 60 days** from the date shown at the bottom right side of the forms titled "Common Policy Declarations". Please refer to "Common Policy Declarations" for the mailing address of the insurance company.

If your policy premium is $500, that may represent a minimum premium. In that case, the portion that is attributable to acts of terrorism as defined in the Act, as amended, may be included within that minimum and your total premium will not be reduced if you reject coverage for act of terrorism. The minimum premium will still apply.

Should you have any question regarding this notice, please contact your insurance agent.

AD 85 84 07 19
Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

OGIC000397



**WESTFIELD**®

# TERRORISM REJECTION AUTHORIZATION

During your current policy period, the portion of your premium that is attributable to coverage for acts of terrorism can be found in the Declarations.

**If you do not desire the coverage** for acts of terrorism, you may reject the coverage and instruct the insurance company to remove it at issuance by submitting a letter on your letterhead or by completing and submitting this Terrorism Rejection Authorization form.

If your policy premium is $500, that may represent a minimum premium. In that case, the portion that is attributable to coverage for acts of terrorism may be included within that minimum, and your total premium will not be reduced if you reject coverage for acts of terrorism. The minimum premium will still apply.

The rejection of coverage for Terrorism is valid and binding on all insureds and persons claiming benefits under the policy/application for the policy term as shown below.

This rejection of coverage for Terrorism will apply to any reinstatement, amended, altered, or modified policy with this company or with any affiliated company unless the Named Insured makes a written request to the company to exercise a different option.

After careful review of the Terrorism Coverage provided, I wish to reject coverage for acts of terrorism. Following is my signature authorizing the removal of this coverage from the policy noted below:

| **Policy Number:** 179385Y | **Policy Term:** 10/08/2025 - 10/08/2026 |
|---|---|
| **Agency:** Brandon Insurance Group | **Named Insured:** Mike Burdett Roofing and Exteriors LLC |
| **Signature:** | **Name:** |
| **Title:** | **Date:** |

***The insurance company must receive this notice within 60 days from policy issuance.***

AD 93 41 03 21

Page 1 of 1

OGIC000398



**WESTFIELD**®

Re: Mike Burdett Roofing and Exteriors LLC
Policy Number: 179385Y
Agency Name: Brandon Insurance Group

# NOTICE OF REDUCTION IN COVERAGE:
# MULTISTATE ENDORSEMENTS ADDRESSING
# DATA PRIVACY AND CYBER INCIDENT EXCLUSIONS

This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

Changes are highlighted below. This Notice does not reference every editorial change made in your policy. The material in this Notice refers to endorsement numbers; **however, not all endorsements are included in a particular policy**.

**One or more of the following forms has been attached to your policy:**

---

## GENERAL LIABILITY CHANGES

**CG 00 69 – Exclusion – Violation Of Law Addressing Data Privacy**

When this endorsement is attached to your policy, an exclusion is added to Coverage **A** and Coverage **B** that excludes coverage for bodily injury, property damage or personal and advertising injury that generally arises out of the violation of statutes, ordinances, regulations or other laws generally pertaining to any person's or organization's confidential or personal material or information, including financial, health, biometric or other nonpublic material or information. This exclusion is a reinforcement of coverage intent. Damages related to violations of laws pertaining to data privacy are not intended to be covered under this Coverage Part.

**CG 21 06 – Exclusion – Access Or Disclosure Of Confidential Or Personal Material Or Information**

This endorsement is revised to delete the provisions addressing the Electronic Data Exclusion, replace "damages" with "bodily injury" or "property damage" and add biometric information to the types of material or information addressed in the endorsement. Additionally, the types of expenses addressed in the last paragraph of the exclusion are expressly extended to identity monitoring expenses, data restoration expenses and extortion expenses.

AD 93 98 03 24                                                                                           Page 1 of 3

OGIC000399

With respect to bodily injury, property damage and personal and advertising injury arising out of access or disclosure of confidential or personal material or information, the various changes in this revised endorsement are a reinforcement of coverage intent.

With respect to deletion of the Electronic Data Exclusion, the changes in this revised endorsement result in no impact on coverage.

### CG 40 35 – Exclusion – Cyber Incident

When this endorsement is attached to your policy, coverage is excluded under Coverage **A** and Coverage **B** with respect to bodily injury, property damage or personal and advertising injury arising out of a cyber incident.

To the extent that current policy exclusions do not apply to liability arising out of cyber incidents, attachment of this endorsement will result in a reduction of coverage.

---

## UMBRELLA CHANGES

### CU 00 05 – Exclusion – Violation Of Law Addressing Data Privacy

When this endorsement is attached to your policy, an exclusion is added to Coverage **A** and Coverage **B** that excludes coverage for bodily injury, property damage or personal and advertising injury that generally arises out of the violation of statutes, ordinances, regulations or other laws generally pertaining to any person's or organization's confidential or personal material or information, including financial, health, biometric or other nonpublic material or information. This exclusion is a reinforcement of coverage intent. Damages related to violations of laws pertaining to data privacy are not intended to be covered under this Coverage Part.

### CU 21 86 – Exclusion – Access Or Disclosure Of Confidential Or Personal Material Or Information

This endorsement is revised to delete the provisions addressing the Electronic Data Exclusion, replace "damages" with "bodily injury" or "property damage" and add biometric information to the types of material or information addressed in the endorsement. Additionally, the types of expenses addressed in the last paragraph of the exclusion are expressly extended to identity monitoring expenses, data restoration expenses and extortion expenses.

With respect to bodily injury, property damage and personal and advertising injury arising out of access to or disclosure of confidential or personal material or information, the various changes in this revised endorsement are a reinforcement of coverage intent.

With respect to deletion of the Electronic Data Exclusion, the changes in this revised endorsement result in no impact on coverage.

### CU 34 56 – Exclusion – Cyber Incident

When this endorsement is attached to your policy, coverage is excluded under Coverage **A** and Coverage **B** with respect to bodily injury, property damage or personal and advertising injury arising out of a cyber incident.

AD 93 98 03 24

Page 2 of 3

OGIC000400

To the extent that current policy exclusions do not apply to liability arising out of cyber incidents, attachment of this endorsement will result in a reduction of coverage.

**Please contact your Westfield independent agent with any questions or for more information.**

OGIC000401



# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

IL P 001 01 04
© ISO Properties, Inc. 2004

Page 1 of 1

OGIC000402



## Premium Audit Notice – FAQ and Helpful Tips to Help Prepare You for Your Premium Audit

Westfield Insurance welcomes the opportunity to service your insurance needs. At the end of your policy term you may be contacted by our Premium Audit department, or one of our Premium Audit vendors, to complete your premium audit.

A premium audit is a review of your operations and financial records. Because your business insurance policy premiums were based upon estimated information (e.g. Payroll, Sales, Subcontract Costs, etc.) a premium audit may be conducted to help determine your final premium.

An accurate premium audit is a benefit to your business as the estimated exposures used to rate your policy will fluctuate during your policy period and maintaining accurate records will help you gain the most benefit from your premium audit. As part of the audit review the auditor will need to ask some questions about your business operations and records to ensure your operations and employees are classified correctly.

## FAQ

### Who will complete the audit?

You may be asked to complete a premium audit in one of four ways by one of our staff or vendor auditors:

- Mail/Voluntary Form – a premium audit form will be mailed to you and will ask a series of questions relative to your type of business and policy. You will be asked to fill out the form in its entirety and return it to Westfield via mail, fax, or email.

- Telephone Audit – a telephone auditor will call you to discuss your operation and review your financial records. A form may be sent to you via mail or email prior to the phone audit appointment to assist and prepare you for the premium audit.

- Hybrid Audit – an auditor will contact you to schedule and conduct the audit over the phone. Prior to the audit appointment you will be asked to forward necessary financial records. A review of those records and your operations will be discussed during the phone interview process.

- Physical Audit – a field auditor will contact you to schedule an appointment to conduct the audit at your premises. The auditor will inquire about your operations and physically review the financial records.

### What records will be needed?

The premium auditor will request and review the records needed based on your coverages and classifications. In most cases the auditor will be able to obtain the necessary audit data from two or more of the following records:

AD 80 12 11 17                                                                                           Page 1 of 2

OGIC000403

- Payroll based audits – Monthly/Quarterly Payroll Journals, Quarterly State Tax Reports (State Unemployment Reports), Federal 941 Tax Reports

- Sales based audits – Monthly Sales Reports, Monthly State Sales Tax Reports, General Ledgers, Financial Statements

- Subcontract Costs/Expense – Check Disbursements Report, Vendor Payment Report, General Ledger, 1099's, Financial Statements. Certificates of insurance should be obtained for each subcontractor.

## Helpful Tips

**Payroll based audits** – Many insurance policies are based on gross payroll. Gross payroll includes many items such as wages, bonuses, holiday pay, sick pay, commissions, overtime pay, and vacation pay.

Helpful Tip – Overtime: the amount paid in excess of straight time pay can be deducted if the excess portion can be verified by your payroll records. *Your records must show summarized overtime amounts paid by employee.*

Helpful Tip – Division of Payroll: Division of an individual employee's payroll to more than one classification is not allowed except for construction or erection operations. For construction and erection operations the payroll of an employee may be allocated to each type of work performed if proper records are kept (percentages are not acceptable). Payroll cannot be divided between construction, office, and sales classifications.

**Sales based audits** – Another premium base for general liability is gross sales. Gross sales are the amount charged by you to others for all goods or products sold and distributed and for any other operations or services performed by you for others.

Helpful Tip – The following may be deducted from gross sales if properly maintained in your financial records:
- Returns and Allowances
- Freight/Delivery Income
- Sales tax collected and submitted to a government agency

This information is provided to you as assistance for proper record keeping. Other insurance companies may differ in their requirements. Please feel free to contact our Premium Audit Department if you have any questions about the Premium Audit process.

OGIC000404



# Premium Audit Notice for Contractors

The records you keep can affect the premium you pay for your insurance policy, and there are steps you can take to help control these costs.

Your insurance premiums are based on your business's direct payroll and the amounts paid to any subcontractors you may hire. Subcontract costs are an area of concern because it is an area that can substantially increase the cost of your insurance if you do not hire "adequately insured subcontractors." Any operations performed by subcontractors without a certificate of insurance or who are inadequately insured will be classified under the specific classification description for each operation which carries a higher rate.

To help control the cost of your insurance you should obtain proper certificates of insurance from every subcontractor you hire prior to the commencement of work. A valid certificate of insurance will provide evidence of Workers' Compensation or General Liability coverage for a specific policy term and can be obtained from the subcontractor's insurance agent.

Helpful Tips:

- The certificate of insurance should cover the period the subcontractor performs work for you. If the subcontractor's certificate of insurance expires on a certain date, but they will be working beyond that date, a new certificate should be required. Current and expired certificates of insurance should be kept and maintained in a binder or electronic file.

- The subcontractor's limits of liability and coverages should be at least equal to those carried by your business for the time the work was performed to be considered "adequately insured." If the subcontractor's limits are too low, you should contact the subcontractor and request their limits be raised to equal your policy's limits.

- Be especially cautious when hiring casual or 1099 type laborers as these types of independent subcontractors sometimes do not carry insurance or limits of liability that may match your policy.

- You should read or have your insurance agent or attorney review every contract before signing to ensure the subcontractor is not transferring liability back to your business.

OGIC000405



**Westfield**
One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial Common Policy
Declarations
Renewal**

| **Company Providing Coverage**: Old Guard Insurance Company | |
|---|---|
| **Named Insured and Mailing Address:** | **Agency:** 378153 |
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone:  215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account No:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|

| **Policy Period:**  From  10/08/2025 To  10/08/2026 | At 12:01 A.M. standard time at your mailing address shown above |
|---|---|

| **Business Of Named Insured:** Contractors | **Entity Of Named Insured:** LLC |
|---|---|

### THIS IS A NON-PARTICIPATING POLICY

### Coverage and Premium Summary

| | |
|---|---|
| Commercial General Liability Coverage Part | $  |
| **Policy Annual Premium** | $ |

| | |
|---|---|
| **Total Advance Annual Policy Premium** | $  |

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.  For more detail, please refer to the individual coverage parts inside your policy.

**Forms and Endorsements Applicable to This Coverage Part:**
Refer to Schedule of Forms and Endorsements - IL DS 73

PLEASE REFER TO IL7097 FOR A DETAILED SUMMARY OF TAXES AND SURCHARGES BY STATE.

**Page 1 of 1**                IL DS 01 05 18                ISSUED DATE: 08/17/2025

OGIC000406



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial Common Policy Schedule**

**Renewal**

---

**Company Providing Coverage**: Old Guard Insurance Company

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353 |

**Policy Number:** 179385Y    **Billing Account No:** 6000013101    **Payment Plan:** Monthly (Paper Invoices)

**Policy Period:** From 10/08/2025 To 10/08/2026    At 12:01 A.M. standard time at your mailing address shown above

**Business Of Named Insured:** Contractors    **Entity Of Named Insured:** LLC

---

### Schedule of Insured Locations

**Loc.** 1

3420 Horton Rd
Newtown Square, PA 19073-3418

---

**Page 1 of 1**               IL DS 02 05 18               ISSUED DATE:08/17/2025

OGIC000407



## Westfield

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial General Liability
Declarations
Renewal**

**Company Providing Coverage:** Old Guard Insurance Company

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account Number:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|
| **Policy Period:** From: 10/08/2025 To: 10/08/2026 | | At 12:01 A.M. standard time at your mailing address shown above |

### Limits of Insurance

| | |
|---|---|
| Each Occurrence Limit | $1,000,000 |
| General Aggregate Limit (Other than products/completed-operations) | $2,000,000 |
| Products/Completed-Operations Aggregate Limit | $2,000,000 |
| Personal & Advertising Injury Limit | $1,000,000 |
| Damage to Premises Rented to You Limit  (Any one premises) | $100,000 |
| Medical Expense Limit (Any one person) | $1,000 |

| | |
|---|---|
| **Total Premises/Operations Premium** | $ ▮ |
| **Total Products/Completed Operations Premium** | $ ▮ |
| **Total Additional Coverages and Endorsements Premium** | $ ▮ |
| **Total Additional Interests Premium** | **Included** |
| **Total Terrorism Premium** | $ ▮ |
| **Total Advance Annual General Liability Premium** | $ ▮ |

**Forms And Endorsements Applicable To This Coverage Part:**
Refer to Schedule of Forms and Endorsements - IL DS 73

**Page 1 of 4**                    CG DS 01 05 18                    ISSUED DATE:08/17/2025



OGIC000408



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial General Liability
Declarations
Renewal**

| **Company Providing Coverage:** Old Guard Insurance Company | |
|---|---|
| **Named Insured and Mailing Address:** | **Agency:** 378153 |
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account Number:**<br>6000013101 | **Payment Plan:** Monthly<br>(Paper Invoices) |
|---|---|---|
| **Policy Period:** From: 10/08/2025 To: 10/08/2026 | At 12:01 A.M. standard time at your mailing address shown above | |

## Classification and Premium Schedule

Location of all premises owned by, rented to, or controlled by the name insured are shown on the Schedule of Insured Locations, IL DS 02, unless otherwise indicated.

| Location | Classification Code and Description | Premium Basis | Rate | Premium |
|---|---|---|---|---|
| #1: 3420 Horton Rd, Newtown Square, PA 19073-3418 | 98967 - Siding Installation | $██ | ██ | $██<br>$██ |

| | | |
|---|---|---|
| **Total Premises/Operations Premium** | | $██ |
| **Total Products/Completed Operations Premium** | | $██ |

CG DS 01 05 18          ISSUED DATE:08/17/2025

OGIC000409



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial General Liability
Declarations
Renewal**

**Company Providing Coverage:** Old Guard Insurance Company

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account Number:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|
| **Policy Period:** From: 10/08/2025 To: 10/08/2026 | At 12:01 A.M. standard time at your mailing address shown above | |

## Schedule of Additional Coverages and Endorsements

| Form Number/ Endorsement | Premium |
|---|---|
| CG7168 - COMMERCIAL GENERAL LIABILITY - ARTISAN CONTRACTOR ENDORSEMENT | $ |
| CG7121 - Damage to Your Work | Included |
| CG7160 - DAMAGE TO PROPERTY-BORROWED EQUIPMENT | Included |
| CG2404 - Waiver of Transfer of Rights of Recovery Against Others to Us | Included |
| CG7202 - Contractor's Professional and Pollution Legal Liability Endorsement | Included |

**Total Additional Coverages and Endorsements Coverage Premium:** $█

OGIC000410



**Westfield**

One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Commercial General Liability**
**Declarations**
**Renewal**

**Company Providing Coverage:** Old Guard Insurance Company

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account Number:**<br>6000013101 | **Payment Plan:** Monthly<br>(Paper Invoices) |
|---|---|---|
| **Policy Period:** From: 10/08/2025 To: 10/08/2026 | At 12:01 A.M. standard time at your mailing<br>address shown above | |

## Schedule of Additional Interests

| Form Number/ Endorsement | Premium |
|---|---|
| CG2010 [Automatic status when required by written contract, agreement, or permit] - Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization | Included |
| **Total Additional Interests Premium:** | **Included** |

**Page 4 of 4**                    CG DS 01 05 18                    ISSUED DATE:08/17/2025

OGIC000411



**Westfield**
One Park Circle, P.O. Box 5001
Westfield Center, OH 44251
800-243-0210
WestfieldInsurance.com

**Schedule of Forms and Endorsements Renewal**

| | |
|---|---|
| **Company Providing Coverage**: Old Guard Insurance Company | |

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account No:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|

| **Policy Period:** From 10/08/2025 To 10/08/2026 | At 12:01 A.M. standard time at your mailing address shown above |
|---|---|

## SCHEDULE OF FORMS AND ENDORSEMENTS

### FORMS THAT APPLY TO MULTIPLE COVERAGE PARTS

| NUMBER | EDITION DATE | TITLE |
|---|---|---|
| ILDS01 | 0518 | COMMERCIAL PACKAGE POLICY COMMON POLICY DECLARATIONS |
| ILDS02 | 0518 | COMMERCIAL PACKAGE POLICY COMMON POLICY SCHEDULE |
| IL0003 | 0908 | CALCULATION OF PREMIUM |
| IL0017 | 1198 | COMMON POLICY CONDITIONS |
| IL0021 | 0908 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| IL7013 | 1206 | EXCLUSION - LEAD |
| IL0120 | 1013 | PENNSYLVANIA CHANGES - DEFENSE COSTS |
| IL0246 | 0907 | PENNSYLVANIA CHANGES - CANCELLATION AND NONRENEWAL |
| IL0910 | 0702 | PENNSYLVANIA NOTICE |

### FORMS THAT APPLY TO COMMERCIAL GENERAL LIABILITY

| NUMBER | EDITION DATE | TITLE |
|---|---|---|
| CGDS01 | 0518 | COMMERCIAL GENERAL LIABILITY DECLARATIONS |
| CG0001 | 0413 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG0069 | 1223 | EXCLUSION - VIOLATION OF LAW ADDRESSING DATA PRIVACY |
| CG2001 | 1219 | PRIMARY AND NONCONTRIBUTORY - OTHER INSURANCE CONDITION |
| CG2010 | 1219 | ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION |
| CG2106 | 1223 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL MATERIAL OR INFORMATION |
| CG2147 | 1207 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG2167 | 1204 | FUNGI OR BACTERIA EXCLUSION |
| CG2170 | 0115 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| CG2186 | 1204 | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS |
| CG2279 | 0413 | EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY |
| CG2404 | 1219 | WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US |
| CG2426 | 0413 | AMENDMENT OF INSURED CONTRACT DEFINITION |
| CG2503 | 0509 | DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT |
| CG2504 | 0509 | DESIGNATED LOCATION(S) GENERAL AGGREGATE LIMIT |
| CG4015 | 1219 | CANNABIS EXCLUSION WITH HEMP EXCEPTION |

IL DS 73 05 18       ISSUED DATE:08/17/25

OGIC000412



| | |
|---|---|
| **Westfield**<br>One Park Circle, P.O. Box 5001<br>Westfield Center, OH 44251<br>800-243-0210<br>WestfieldInsurance.com | **Schedule of Forms and Endorsements Renewal** |

**Company Providing Coverage**: Old Guard Insurance Company

| **Named Insured and Mailing Address:** | **Agency:** 378153 |
|---|---|
| Mike Burdett Roofing and Exteriors LLC<br>3420 Horton Rd<br>Newtown Square, PA 19073-3418 | Brandon Insurance Group<br>409 MAIN ST<br>HARLEYSVILLE, PA 19438-2353<br>Telephone: 215-256-8020 |

| **Policy Number:** 179385Y | **Billing Account No:** 6000013101 | **Payment Plan:** Monthly (Paper Invoices) |
|---|---|---|

| **Policy Period:** From 10/08/2025 To 10/08/2026 | At 12:01 A.M. standard time at your mailing address shown above |
|---|---|

| | | |
|---|---|---|
| CG4028 | 0922 | BROAD ABUSE OR MOLESTATION EXCLUSION |
| CG4032 | 0523 | EXCLUSION - PERFLUOROALKYL AND POLYFLUOROALKYL SUBSTANCES (PFAS) |
| CG4035 | 1223 | EXCLUSION - CYBER INCIDENT |
| CG7017 | 1298 | EXCLUSION-ASBESTOS |
| CG7121 | 0518 | DAMAGE TO YOUR WORK |
| CG7160 | 0518 | DAMAGE TO PROPERTY - BORROWED EQUIPMENT |
| CG9909 | 1219 | PREMIUM AUDIT NONCOMPLIANCE CHARGE |
| CG7168 | 0521 | COMMERCIAL GENERAL LIABILITY - ARTISAN CONTRACTOR ENDORSEMENT |
| CG7202 | 0721 | CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY ENDORSEMENT |
| CG7219 | 0521 | PENNSYLVANIA CHANGES - CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY |
| CG7230 | 0722 | COMMUNICABLE DISEASE EXCLUSION - FOODBORNE ILLNESS EXCEPTION |

IL DS 73 05 18 ISSUED DATE:08/17/25

OGIC000413

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

OGIC000414

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

OGIC000415

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

&copy; ISO Properties, Inc., 2007 **Page 1 of 2**  ☐

OGIC000416

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007 IL 00 21 09 08    ☐

OGIC000417

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - LEAD

This endorsement modifies insurance provided under the following:

> BUSINESSOWNERS COVERAGE FORM
> FARM LIABILITY COVERAGE FORM
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> FARMOWNERS-RANCHOWNERS POLICY PERSONAL LIABILITY FORM
> OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE COVERAGE PART
> FARMER'S COMPREHENSIVE PERSONAL INSURANCE COVERAGE PART
> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

This insurance does not apply to:

**(1)** "Bodily injury", "property damage", "personal injury" or "personal and advertising injury" arising out of lead poisoning, lead contamination or exposure to lead.

**(2)** Any loss, cost or expense arising out of any:

    **a.** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

    **b.** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

**IL 70 13** 12 06

OGIC000418

IL 01 20 10 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDER'S ERRORS AND OMISSIONS
COVERAGE FORM
ELECTRONIC DATA LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

**1.** Section **I** of the Commercial General Liability, Commercial Liability Umbrella, Electronic Data Liability, Employment-related Practices Liability, Farm, Liquor Liability, Medical Professional Liability, Owners And Contractors Protective Liability, Pollution Liability, Product Withdrawal, Products/Completed Operations Liability, Railroad Protective Liability and Underground Storage Tank Coverage Parts, Auto Dealers Coverage Form and the Farm Umbrella Liability Policy;

**2.** Section **II** under the Auto Dealers, Business Auto and Motor Carrier Coverage Forms;

**3.** Section **III** under the Auto Dealers and Motor Carrier Coverage Forms;

**4.** Section **A.** Coverage under the Legal Liability Coverage Form; and

**5.** Coverage **C** – Mortgageholder's Liability under the Mortgageholder's Errors And Omissions Coverage Form.

Paragraph **B.** also applies to any other provision in the policy that sets forth a duty to defend.

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

IL 01 20 10 13 © Insurance Services Office, Inc., 2013 **Page 1 of 1**

OGIC000419

IL 02 46 09 07

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

**2. Cancellation Of Policies In Effect For Less Than 60 Days**

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

**3. Cancellation Of Policies In Effect For 60 Days Or More**

If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

**a.** You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

**b.** You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

**c.** A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**d.** Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

IL 02 46 09 07 © ISO Properties, Inc., 2006 **Page 1 of 2**

OGIC000420

**e.** Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

**f.** Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

**4.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

**5.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**6.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

**7.** If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**B.** The following are added and supersede any provisions to the contrary:

**1. Nonrenewal**

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

**2. Increase Of Premium**

If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006

OGIC000421

IL 09 10 07 02

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

---

**Instruction to Policy Writers**

Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania.

---

**IL 09 10 07 02** © ISO Properties, Inc., 2001 **Page 1 of 1** ☐

OGIC000422

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

OGIC000423

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment, training or monitoring of others by that insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012  CG 00 01 04 13

OGIC000424

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

---

**CG 00 01 04 13** © Insurance Services Office, Inc., 2012 **Page 3 of 16**

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000426

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

OGIC000427

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000428

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

OGIC000429

## COVERAGE C – MEDICAL PAYMENTS

### 1. Insuring Agreement

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000430

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

OGIC000431

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by;

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000432

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A;** and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

OGIC000433

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

OGIC000434

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

OGIC000435

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000436

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)** When all of the work called for in your contract has been completed.

    **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

 © Insurance Services Office, Inc., 2012

OGIC000437

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

OGIC000438

**COMMERCIAL GENERAL LIABILITY**
**CG 00 69 12 23**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – VIOLATION OF LAW ADDRESSING DATA PRIVACY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

**Violation Of Law Addressing Data Privacy**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** Any federal, state or local statute, ordinance, regulation or other law that addresses, prohibits, or limits access to, use of or the printing, dissemination, disposal, obtaining, collecting, storing, safeguarding, recording, retention, sending, transmitting, communicating, selling or distribution of any person's or organization's confidential or personal material or information, including financial, health, biometric or other nonpublic material or information.

Any such federal, state or local statute, ordinance, regulation or other law includes but is not limited to:

**(1)** The Illinois Biometric Information Privacy Act (BIPA), including any amendment of or addition to such law; or

**(2)** The California Consumer Privacy Act (CCPA), including any amendment of or addition to such law; or

**b.** Any law of a jurisdiction other than the United States of America (including its territories and possessions) or Puerto Rico that is similar to any statute, ordinance, regulation or other law described in Paragraph **a.** above, including but not limited to the European Union's General Data Protection Regulation.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

**Violation Of Law Addressing Data Privacy**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** Any federal, state or local statute, ordinance, regulation or other law that addresses, prohibits, or limits access to, use of or the printing, dissemination, disposal, obtaining, collecting, storing, safeguarding, recording, retention, sending, transmitting, communicating, selling or distribution of any person's or organization's confidential or personal material or information, including financial, health, biometric or other nonpublic material or information.

Any such federal, state or local statute, ordinance, regulation or other law includes but is not limited to:

**(1)** The Illinois Biometric Information Privacy Act (BIPA), including any amendment of or addition to such law; or

**(2)** The California Consumer Privacy Act (CCPA), including any amendment of or addition to such law; or

**b.** Any law of a jurisdiction other than the United States of America (including its territories and possessions) or Puerto Rico that is similar to any statute, ordinance, regulation or other law described in Paragraph **a.** above, including but not limited to the European Union's General Data Protection Regulation.

OGIC000439

COMMERCIAL GENERAL LIABILITY
CG 20 01 12 19

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PRIMARY AND NONCONTRIBUTORY – OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

**CG 20 01 12 19**              © Insurance Services Office, Inc., 2018              **Page 1 of 1**

OGIC000440

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 12 19**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) | Location(s) Of Covered Operations |
|---|---|
| All persons or organizations when you have agreed in writing in a contract or agreement that such persons or organizations be added as an additional insured. | All Locations |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.

Page **1** of **2**

© Insurance Services Office, Inc., 2012

**CG 20 10 12 19**

OGIC000441

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

**CG 20 10 12 19**

OGIC000442

**COMMERCIAL GENERAL LIABILITY**
**CG 21 06 12 23**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Material Or Information**

"Bodily injury" or "property damage" arising out of any access to or disclosure of any person's or organization's confidential or personal material or information, including:

**a.** Patents, trade secrets, processing methods, customer lists;

**b.** Financial information, credit card information;

**c.** Health information, biometric information; or

**d.** Any other type of nonpublic material or information.

This exclusion applies even if damages are claimed for notification costs, credit or identity monitoring expenses, forensic expenses, public relations expenses, data restoration expenses, extortion expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal material or information.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Material Or Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal material or information, including:

**a.** Patents, trade secrets, processing methods, customer lists;

**b.** Financial information, credit card information;

**c.** Health information, biometric information; or

**d.** Any other type of nonpublic material or information.

This exclusion applies even if damages are claimed for notification costs, credit or identity monitoring expenses, forensic expenses, public relations expenses, data restoration expenses, extortion expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal material or information.

**CG 21 06 12 23**                © Insurance Services Office, Inc., 2022                **Page 1 of 1**

OGIC000443

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

OGIC000444

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

CG 21 67 12 04 © ISO Properties, Inc.,  2003 Page 1 of 1  ☐

OGIC000445

**COMMERCIAL GENERAL LIABILITY**
**CG 21 70 01 15**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

**CG 21 70 01 15**       © Insurance Services Office, Inc., 2015       **Page 1 of 1**

OGIC000446

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

**1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

**2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**3.** A reinforced or unreinforced base coat;

**4.** A finish coat providing surface texture to which color may be added; and

**5.** Any flashing, caulking or sealant used with the system for any purpose.

© ISO Properties, Inc., 2003  **Page 1 of 1**

OGIC000447

COMMERCIAL GENERAL LIABILITY
CG 22 79 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

2. Subject to Paragraph **3.** below, professional services include:

   a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

CG 22 79 04 13                    © Insurance Services Office, Inc., 2012                    **Page 1 of 1**

OGIC000448

POLICY NUMBER:179385Y                                    **COMMERCIAL GENERAL LIABILITY**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US (WAIVER OF SUBROGATION)

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    ELECTRONIC DATA LIABILIITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART DESIGNATED SITES
    PLLUTION LIABILITY LIMITED COVERAGE PART DESIGNATED SITES
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLIICY DESIGNATED TANKS

### SCHEDULE

| |
|---|
| **Name Of Person(s) Or Organization(s):** Automatic status when required by written contract, agreement or permit |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make under this Coverage Part. Such waiver by us applies only to the extent that the insured has waived its right of recovery against such person(s) or organization(s) prior to loss. This endorsement applies only to the person(s) or organization(s) shown in the Schedule above.

© Insurance Services Office, Inc., 2019                          **CG 24 04 12 19**        ☐

OGIC000449

COMMERCIAL GENERAL LIABILITY
CG 24 26 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

   **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

 © Insurance Services Office, Inc., 2012 **Page 1 of 1**

OGIC000450

POLICY NUMBER: 179385Y

COMMERCIAL GENERAL LIABILITY
CG 25 03 05 09

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| **Designated Construction Project(s):** |
| --- |
| All Projects |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

  **1.** A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

  **2.** The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

**3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

**4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

CG 25 03 05 09 © Insurance Services Office, Inc., 2008 **Page 1 of 2** ☐

OGIC000451

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

**1.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

**2.** Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

**D.** If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

**E.** The provisions of Section **III** – Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

---

© Insurance Services Office, Inc., 2008  **CG 25 03 05 09**  ▢

OGIC000452

POLICY NUMBER: 179385Y

**COMMERCIAL GENERAL LIABILITY**
**CG 25 04 05 09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED LOCATION(S) GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Designated Location(s):** <br> All rented, owned and occupied locations other than construction projects. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which can be attributed only to operations at a single designated "location" shown in the Schedule above:

**1.** A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

**2.** The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

**4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

**CG 25 04 05 09** © Insurance Services Office, Inc., 2008 **Page 1 of 2** ☐

OGIC000453

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

**1.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

**2.** Such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of Section **III** – Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

© Insurance Services Office, Inc., 2008  **CG 25 04 05 09**  □

OGIC000454

COMMERCIAL GENERAL LIABILITY
CG 40 15 12 19

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CANNABIS EXCLUSION WITH HEMP EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of:

**a.** The design, cultivation, manufacture, storage, processing, packaging, handling, testing, distribution, sale, serving, furnishing, possession or disposal of "cannabis"; or

**b.** The actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "cannabis"; or

**2.** "Property damage" to "cannabis".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **A.1.** or **A.2.** above.

However, Paragraph **A.1.b.** does not apply to "bodily injury" or "property damage" arising out of the actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, or contact with, "cannabis" by:

**(1)** An insured; or

**(2)** Any other person for whom you are legally responsible

but only if the "bodily injury" or "property damage" does not arise out of your selling, serving or furnishing of "cannabis" to any person described above.

**B.** The exclusion in Paragraph **A.** does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of goods or products containing or derived from hemp, including, but not limited to:

**a.** Seeds;

**b.** Food;

**c.** Clothing;

**d.** Lotions, oils or extracts;

**e.** Building Materials; or

**f.** Paper.

**2.** "Property damage" to goods or products described in Paragraph **B.1.** above.

However, Paragraphs **B.1.** and **B.2.** above do not apply to the extent any such goods or products are prohibited under an applicable state or local statute, regulation or ordinance in the state wherein:

**(1)** The "bodily injury" or "property damage" occurs;

**(2)** The "occurrence" which caused the "bodily injury" or "property damage" takes place; or

**(3)** The offense which caused the "personal and advertising injury" was committed;

**3.** "Personal and advertising injury" arising out of the following offenses:

**a.** False arrest, detention or imprisonment; or

**b.** The wrongful eviction from, wrongful entry into, or invasion of the right or private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

OGIC000455

**C.** The following definition is added to the **Definitions** section:

"Cannabis":

**1.** Means:

Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC or cannabinoid is natural or synthetic.

**2.** Paragraph **C.1.** above includes, but is not limited to, any of the following containing such THC or cannabinoid:

**a.** Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or

**b.** Any compound, byproduct, extract, derivative, mixture or combination, such as:

**(1)** Resin, oil or wax;

**(2)** Hash or hemp; or

**(3)** Infused liquid or edible cannabis;

whether or not derived from any plant or part of any plant set forth in Paragraph **C.2.a.**

© Insurance Services Office, Inc., 2018 **CG 40 15 12 19**

OGIC000456

COMMERCIAL GENERAL LIABILITY
CG 40 28 09 22

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BROAD ABUSE OR MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to damages arising out of:

**1.** The actual, alleged or threatened abuse or molestation, including but not limited to sexual abuse or sexual molestation, of any person committed by anyone; or

**2.** The negligent:

   **a.** Employment;

   **b.** Investigation;

   **c.** Supervision;

   **d.** Reporting to the proper authorities, or failure to so report; or

   **e.** Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **1.** above.

---

**CG 40 28 09 22**     © Insurance Services Office, Inc., 2021     **Page 1 of 1**

OGIC000457

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – PERFLUOROALKYL AND POLYFLUOROALKYL SUBSTANCES (PFAS)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Perfluoroalkyl And Polyfluoroalkyl Substances**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged, threatened or suspected inhalation, ingestion, absorption, consumption, discharge, dispersal, seepage, migration, release or escape of, contact with, exposure to, existence of, or presence of, any "perfluoroalkyl or polyfluoroalkyl substances".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "perfluoroalkyl or polyfluoroalkyl substances", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Perfluoroalkyl And Polyfluoroalkyl Substances**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged, threatened or suspected inhalation, ingestion, absorption, consumption, discharge, dispersal, seepage, migration, release or escape of, contact with, exposure to, existence of, or presence of, any "perfluoroalkyl or polyfluoroalkyl substances".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "perfluoroalkyl or polyfluoroalkyl substances", by any insured or by any other person or entity.

OGIC000458

**C.** The following definition is added to the **Definitions** Section:

"Perfluoroalkyl or polyfluoroalkyl substances" means any:

**1.** Chemical or substance that contains one or more alkyl carbons on which hydrogen atoms have been partially or completely replaced by fluorine atoms, including but not limited to:

    **a.** Polymer, oligomer, monomer or nonpolymer chemicals and their homologues, isomers, telomers, salts, derivatives, precursor chemicals, degradation products or by-products;

    **b.** Perfluoroalkyl acids (PFAA), such as perfluorooctanoic acid (PFOA) and its salts, or perfluorooctane sulfonic acid (PFOS) and its salts;

    **c.** Perfluoropolyethers (PFPE);

    **d.** Fluorotelomer-based substances; or

    **e.** Side-chain fluorinated polymers; or

**2.** Good or product, including containers, materials, parts or equipment furnished in connection with such goods or products, that consists of or contains any chemical or substance described in Paragraph **C.1.**

Page 2 of 2      © Insurance Services Office, Inc., 2022      CG 40 32 05 23

OGIC000459

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – CYBER INCIDENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Cyber Incident**

"Bodily injury" or "property damage" arising out of a "cyber incident".

This exclusion applies even if damages are claimed for notification costs, credit or identity monitoring expenses, forensic expenses, public relations expenses, data restoration expenses, extortion expenses or any other similar cost or expense incurred by you or others arising out of a "cyber incident".

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Cyber Incident**

"Personal and advertising injury" arising out of a "cyber incident".

This exclusion applies even if damages are claimed for notification costs, credit or identity monitoring expenses, forensic expenses, public relations expenses, data restoration expenses, extortion expenses or any other similar cost or expense incurred by you or others arising out of a "cyber incident".

**C.** For the purposes of this endorsement, the following definition is added to the **Definitions** Section:

"Cyber incident" means any:

**1.** Unauthorized access to or use of any computer system.

**2.** Malicious code, virus or any other harmful code that is directed at, enacted upon or introduced into any computer system and is designed to access, alter, corrupt, damage, delete, destroy, disrupt, encrypt, exploit, use or prevent or restrict access to or the use of any part of any computer system or otherwise disrupt its normal functioning or operation.

**3.** Denial of service attack which disrupts, prevents or restricts access to or use of any computer system, or otherwise disrupts its normal functioning or operation.

© Insurance Services Office, Inc., 2022

OGIC000460

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - ASBESTOS

This endorsement modifies insurance under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury", "personal and advertising injury" or "property damage" arising out of:

1. Inhaling, ingesting or physical exposure to asbestos or goods or products containing asbestos; or

2. The use of asbestos in constructing or manufacturing any goods, product or structure; or

3. The removal, repair, encapsulation, enclosure, abatement or maintenance of asbestos in or from any goods, product or structure; or

4. The manufacture, sale, distribution, transportation, storage or disposal of asbestos or goods or products containing asbestos.

This insurance does not apply to payment for the investigation or defense of any claim, injury, loss, fine, penalty or lawsuit related to any of the foregoing items **1.** thru **4.** Nor do we have a duty to investigate or defend any such claim, injury, loss or lawsuit.

This insurance also does not apply to any loss, cost or expense incurred in complying with any federal, state, or local provision of law regarding the inspection, monitoring, or control of asbestos in any goods, products or structures.

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 70 17** 12 98

OGIC000461

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DAMAGE TO YOUR WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILTIY COVERAGE PART

1. The following is added to **SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** paragraph **1. Insuring Agreement:**

   f. Damages because of "property damage" include damages the insured becomes legally obligated to pay because of "property damage" to "your work" and shall be deemed to be caused by an "occurrence", but only if:

      (1) The "property damage" is the result of work performed on your behalf by a subcontractor(s) that is not a Named Insured;

      (2) The work performed by the subcontractor(s) is within the "products-completed operations hazard"; and

      (3) The "property damage" is unexpected or unintended from the standpoint of the insured.

   We will not be obligated to pay any sums to repair or replace the defective work performed on your behalf by a subcontractor.

2. **The following amendment supersedes all other amendments to Coverage A, Exclusion I.:**

   **Coverage A, Exclusion I.** is replaced by the following:

   I. **Damage To Your Work**

      "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

      This exclusion does not apply to "property damage" to "your work" resulting from work performed on your behalf by a subcontractor and included in the "products-completed operations hazard", however we will not be obligated to pay any sums to repair or replace the defective work performed on your behalf by a subcontractor.

      This endorsement applies only to the Named Insured and no other party.

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 71 21** 05 18

OGIC000462

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DAMAGE TO PROPERTY-BORROWED EQUIPMENT

This endorsement modifies insurance provided under the following**:**

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Under **SECTION 1, COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Item **2. Exclusions j.** is deleted and replaced by the following:

**j.  Damage To Property:**

**(1)** Property you own, rent or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of any real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any real property that must be restored, replaced, or repaired because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to:

**(i)** "property damage" to tools or equipment loaned to you if the tools or equipment are not being used to perform operations at the time of loss; or

**(ii)** "property damage" (other than damage by fire) to premises rented to you or temporarily occupied by you with the permission of the owner including contents of such premises rented to you for a period of seven (7) or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in **Section III - Limits Of Insurance.**

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were not occupied, rented or held for rental by you beyond one year from the date "your work" was completed.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG 71 60** 05 18

OGIC000463

POLICY NUMBER: 179385Y

COMMERCIAL GENERAL LIABILITY
CG 99 09 12 19

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PREMIUM AUDIT NONCOMPLIANCE CHARGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK LIABILITY COVERAGE PART

## SCHEDULE

| | |
|---|---|
| **Total Advance Premium:** | $ ▮▮▮ |
| **Audit Noncompliance Charge Factor:** | ▮ for the 1st year, ▮ for the 2nd year and ▮ for the 3rd year up to 2 times the GL total advance premium |
| **Number Of Written Attempts To Obtain Audit Information:** | 2 |
| **Reassessment Charge:** | $ |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

Paragraph **5.c.** of the **Premium Audit** Condition under **Section IV – Conditions** is replaced by the following:

  **c.** The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request. If the first Named Insured fails to comply with this request at the close of an audit period, an Audit Noncompliance Charge will be assessed, and notice will be sent to the first Named Insured.

  The additional charge will be determined by multiplying the Total Advance Premium by the Audit Noncompliance Charge Factor indicated in the Schedule of this endorsement. (The following example is for illustration purposes only.)

  Example:

     Total Advance Premium: $25,000

     Audit Noncompliance Charge Factor: 1

     Audit Noncompliance Charge: $25,000

  **(1)** We will only assess the Audit Noncompliance Charge:

    **(a)** For audits conducted after the end of the policy period; and

    **(b)** When we have made the number of written attempts indicated in the Schedule of this endorsement to obtain audit information from the first Named Insured.

  The due date for the Audit Noncompliance Charge is the date shown as the due date on the bill.

  **(2) Subsequent Compliance And Reassessment Charge**

    **(a)** The first Named Insured may notify us in writing, prior to the due date on the bill for the Audit Noncompliance Charge, that the Named Insured agrees to comply with the audit request.

    **(b)** A Reassessment Charge may apply if this charge is indicated in the Schedule.

    **(c)** The first Named Insured must comply with the audit within 30 days of our receipt of the written notification described in Paragraph **(2)(a)** above, and then the Audit Noncompliance Charge will no longer apply. If a Reassessment Charge is indicated in the Schedule of this endorsement, that charge will remain applicable.

**CG 99 09 12 19**          © Insurance Services Office, Inc., 2018          **Page 1 of 2**

OGIC000464

**(d)** If the first Named Insured fails to comply with the premium audit after 30 days of our receipt of the notification described in Paragraph **(2)(a)** above, a subsequent notice will be sent to the first Named Insured indicating that the Audit Noncompliance Charge and the Reassessment Charge (if applicable) will be final. The due date for the Audit Noncompliance Charge and the Reassessment Charge is the date shown as the due date on the bill.

© Insurance Services Office, Inc., 2018 **CG 99 09 12 19**

OGIC000465

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**.

# COMMERCIAL GENERAL LIABILITY
# ARTISAN CONTRACTORS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SCHEDULE**

The coverage provided by this endorsement is summarized below and is intended to provide a general coverage description only. For the details affecting each coverage please refer to the terms and conditions in the endorsements listed.

**The endorsements listed below will automatically be attached to your policy to complete the coverage provided by the Commercial General Liability Endorsement:**

- Additional Insured – Owners, Lessees or Contractors – Scheduled Person Of Organization - CG 20 10
- Contractor's Professional and Pollution Legal Liability – CG 72 02
- Damage To Your Work – CG 71 21
- Damage To Property – Borrowed Equipment – CG 71 60
- Primary And Noncontributory – Other Insurance Condition – CG 20 01
- Waiver of Transfer of Rights – CG 24 04

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 71 68** 05 21

OGIC000466

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY ENDORSEMENT

**THIS ENDORSEMENT PROVIDES CLAIMS MADE COVERAGE AND HAS DIFFERENT REPORTING REQUIREMENTS THAN OTHER PARTS OF THE POLICY. THIS ENDORSEMENT ALSO CONTAINS PROVISIONS WHICH LIMIT THE AMOUNT OF "LEGAL EXPENSES" THAT WE MAY BE RESPONSIBLE TO PAY. "LEGAL EXPENSES" WILL REDUCE EACH APPLICABLE LIMIT OF INSURANCE SHOWN IN THE SCHEDULE OF THIS ENDORSEMENT.**

**NO INSURED WILL, EXCEPT AT ITS OWN COST, VOLUNTARILY MAKE A PAYMENT, ASSUME ANY OBLIGATION, ADMIT LIABILITY OR INCUR ANY EXPENSE WITHOUT OUR WRITTEN CONSENT.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Coverage, exclusions, conditions or definitions contained in the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** do not apply to this endorsement unless specifically outlined below.

## SCHEDULE

| | |
|---|---|
| **"Named Insured":** Mike Burdett Roofing and Exteriors LLC **"Named Insured" Address:** 3420 Horton Rd,  Newtown Square, PA 19073-3418 | |
| **Endorsement Aggregate Limit of Insurance** | **$10,000** |
| **Contractor's Pollution Legal Liability Insurance Aggregate Limit:** | **Included** |
| **Contractor's Pollution Legal Liability Insurance Deductible for Each "Pollution Condition":** | **$500** |
| **"Commencement Date":** (*If left blank, the inception date of this endorsement*) | **2021-10-08** |
| | |
| **Professional Legal Liability Insurance Aggregate Limit:** | **Included** |
| **Professional Legal Liability Insurance Deductible for Each "Professional Loss":** | **$500** |
| **"Contracting Services":** | **All contracting services** |
| **"Professional Services":** | **Value engineering and field changes to design** |
| **"Retroactive Date":** (*If left blank, the inception date of this endorsement*) | **2021-10-08** |
| **"Automatic Extended Reporting Period":** | **90 days** |
| | |
| **Premises Pollution Legal Liability Insurance Aggregate Limit:** | **Excluded** |
| **Premises Pollution Legal Liability Insurance Deductible for Each "Pollution Condition":** | **Excluded** |
| **"Covered Location"(s):** Location 1 - 3420 Horton Rd, Newtown Square, PA  19073-3418 | |
| **"Retroactive Date":** (*If left blank, the inception date of this endorsement*) | **Excluded** |
| **"Automatic Extended Reporting Period":** | **Excluded** |
| | |
| **"Business Interruption" and "Extra Expense" Aggregate Limit:** | **Excluded** |
| **"Business Interruption" and "Extra Expense" "Deductible Period":** | **Excluded** |
| | |
| **"Pollution Emergency" Telephone Number:** | **1-800-347-4384** |

This endorsement amends the policy to provide Professional Legal Liability and Premises

Pollution Legal Liability Insurance on a claims made and reported basis and Contractor's

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 1 of 21**

OGIC000467

Pollution Legal Liability Insurance on an occurrence basis, when there is an applicable Limit of Insurance shown in the SCHEDULE. The terms and conditions of this endorsement govern the scope of coverage and your and our duties. Various provisions in this endorsement restrict coverage. Read the entire endorsement carefully to determine your rights and duties and what is and is not covered. The terms, conditions, exclusions, and limits of insurance set forth in this endorsement apply only to the coverage provided by this endorsement.

If this endorsement does not contain a cancellation provision, the terms and conditions of the cancellation provision of the policy, and any amendment to such terms, are incorporated herein and shall apply to coverage as is afforded by this endorsement, unless specifically stated otherwise in an endorsement(s) attached hereto.

Throughout this endorsement, the words "you" and "your" refer to the "named insured" under this endorsement. The words "we", "us" and "our" refer to the company providing this coverage. The word "insured" means any person or organization qualifying as such under **C. Who Is An Insured**. The term "policy" refers to the primary policy to which this endorsement is attached.

Words and phrases that appear in quotation marks have special meaning. Refer to **G. Definitions**. To the extent any words or phrases used in this endorsement are defined elsewhere in the policy, such definitions provided elsewhere do not apply to give meaning to the words or phrases used in this endorsement.

## SECTION IV -- INSURANCE

### A. Coverage

**1. Contractor's Pollution Legal Liability Insurance**

    **a.** We will pay those sums that you become legally obligated to pay as damages or "cleanup costs" because of "loss" caused by a "pollution condition" resulting from "contracting services", provided that:

        **(1)** The "pollution condition" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "loss" occurs during the endorsement period;

        **(3)** The "pollution condition" is on, at, under or migrating from a "job site";

        **(4)** The "pollution condition" results from "contracting services" rendered on or after the "commencement date" shown in the SCHEDULE of this endorsement and prior to the expiration of the endorsement period; and

        **(5)** The "pollution condition" results in a "claim" against you, and the "claim" is brought and maintained at all times in the "coverage territory."

    **b.** We have the right and duty to defend you against any "claim" seeking damages or "cleanup costs" because of "loss" to which **Contractor's Pollution Legal Liability Insurance** applies. However, we have no duty to defend you against any "claim" to which **Contractor's Pollution Legal Liability Insurance** does not apply.

    **c.** When we have a duty to defend, we will pay on your behalf "legal expenses" incurred as a result of a "claim" against you seeking damages or "cleanup costs" because of "loss" to which **Contractor's Pollution Legal Liability Insurance** applies.

    **d.** "Legal expenses" apply to and reduce the applicable Limit of Insurance shown in the SCHEDULE of this endorsement.

    **e.** We may, at our discretion, investigate any "occurrence" or "pollution condition" and settle any "claim" that may result. However, the Endorsement Aggregate Limit of Insurance shown on the SCHEDULE is the most we will pay for damages, "cleanup costs" and "legal expenses" under **Contractor's Pollution Legal Liability Insurance**. Our right and duty to defend under this endorsement ends once the applicable Limit of Insurance shown in the SCHEDULE has been used up in the payment of "legal expenses" or settlements, judgments or any combination thereof, to which **Contractor's Pollution Legal Liability Insurance** applies.

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 2 of 21**

OGIC000468

**f.** No other obligation or liability to pay sums or perform acts or services is covered under this endorsement.

**2. Professional Legal Liability Insurance**

  **a.** We will pay those sums that you become legally obligated to pay because of a "claim" resulting from an act, error, or omission in "professional services", provided that:

   **(1)** A Limit of Insurance is shown as included on the SCHEDULE under **Professional Legal Liability Insurance**;

   **(2)** The "claim" arises out of "professional services" rendered on or after the "retroactive date" and prior to the expiration of the endorsement period;

   **(3)** The "claim" is not covered under **Contractor's Pollution Legal Liability Insurance**; and

   **(4)** The "claim" is first made against the insured during the endorsement period and reported to us, in writing, during the endorsement period or, where applicable, the "automatic extended reporting period" or the "optional extended reporting period".

  **b.** We have the right and duty to defend you against any "claim" seeking "professional loss" to which **Professional Legal Liability Insurance** applies, including the right to select counsel, even if any of the allegations are groundless, false or fraudulent. However, we have no duty to defend you against any "claim" to which **Professional Legal Liability Insurance** does not apply.

  **c.** When we have a duty to defend, we will pay on your behalf "legal expenses" incurred as a result of a "claim" against you seeking "professional loss" to which **Professional Legal Liability Insurance** applies.

  **d.** "Legal expenses" apply to and reduce the applicable Limit of Insurance shown in the SCHEDULE of this endorsement.

  **e.** We may, at our discretion, investigate any "professional loss"

and settle any "claim" that may result. However, the Endorsement Aggregate Limit of Insurance shown on the SCHEDULE is the most we will pay for damages or "legal expenses" under **Professional Legal Liability Insurance**. Our right and duty to defend under this endorsement ends once the Endorsement Aggregate Limit of Insurance shown in the SCHEDULE has been used up in the payment of "legal expenses", settlements or judgments, or any combination thereof, to which **Professional Legal Liability Insurance** applies.

  **f.** No other obligation or liability to pay sums or perform acts or services is covered under this endorsement.

**3. Premises Pollution Legal Liability Insurance**

  **a.** We will pay those sums that you become legally obligated to pay as damages or "cleanup costs" because of "loss" caused by a "pollution condition", provided that:

   **(1)** The "loss" is caused by a "pollution condition" on, at, under or migrating from a "covered location";

   **(2)** The "pollution condition" results in a "claim" against you;

   **(3)** The "pollution condition" takes place, and the "claim" is brought and maintained at all times, in the "coverage territory" and "covered locations";

   **(4)** The "claim" is first made against you during the endorsement period and reported by you to us, in writing, during the endorsement period or, where applicable, the "automatic extended reporting period" or the "optional extended reporting period".

  **b.** We have the right and duty to defend you against any "claim" seeking damages or "cleanup costs" because of "loss" to which **Premises Pollution Legal Liability Insurance** applies. However, we have no duty to defend you against any "claim" to which **Premises Pollution Legal Liability Insurance** does not apply.

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 3 of 21**

OGIC000469

c. When we have a duty to defend, we will pay on your behalf "legal expenses" incurred as a result of a "claim" against you seeking damages or "cleanup costs" because of "loss" to which **Premises Pollution Legal Liability Insurance** applies.

d. "Legal expenses" apply to and reduce the applicable Limit of Insurance shown in the SCHEDULE of this endorsement.

e. We may, at our discretion, investigate any "pollution condition" and settle any "claim" that may result. However, the Endorsement Aggregate Limit of Insurance shown on the SCHEDULE is the most we will pay for damages, "cleanup costs" and "legal expenses" under **Premises Pollution Legal Liability Insurance**. Our right and duty to defend under this endorsement ends once the Endorsement Aggregate Limit of Insurance shown in the SCHEDULE has been used up in the payment of "legal expenses", settlements or judgments, or any combination thereof, to which **Premises Pollution Legal Liability Insurance** applies.

f. No other obligation or liability to pay sums or perform acts or services is covered under this endorsement.

**4. Business Interruption and Extra Expense**

We will pay on behalf of the insured "business interruption" and "extra expense", including "rental value", solely as a result of a "claim" for a "pollution condition" covered under **Premises Pollution Legal Liability Insurance** and not otherwise excluded under the terms and conditions of this endorsement; provided that a limit of liability is shown on the SCHEDULE under Business Interruption and Extra Expense.

**B. Exclusions**

**1.** With respect to **Contractor's Pollution Legal Liability Insurance**, **Professional Legal Liability Insurance** and **Premises Pollution Legal Liability Insurance**, this insurance does not apply to:

a. **Workers Compensation and Similar Laws**

Any obligation of the insured under any workers' compensation, unemployment compensation or disability benefits law or similar law.

b. **Hostile Acts**

A "pollution condition", "loss" or "claim" arising from any consequence, whether direct or indirect, of war (whether declared or not declared), invasion, act of foreign enemy, hostilities, civil war, rebellion, revolution, insurrection, military action, usurped power, strike, riot or civil commotion.

c. **Fines, Penalties, Punitive and Multiplied Damages**

Any actual or alleged "claim" or liability for, or amount consisting of, a fine, penalty, punitive damages, exemplary damages or multiplied damages.

d. **Equitable and Other Types of Relief**

Any actual or alleged "claim" or liability for equitable relief, restitution or the return of money for work or services.

e. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data. As used in this exclusion, electronic data means information, facts or programs stores as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

f. **Criminal Acts**

"Loss" arising out of a criminal act committed by or at the direction of the insured.

g. **Defective Drywall**

The existence of, exposure to, required removal or abatement of:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 4 of 21**

OGIC000470

**(1)** defective drywall, which includes, but is not limited to drywall that emits gases, vapors, or fumes or any other irritant or contaminant; and

**(2)** any other building component affected by defective drywall, including drywall that emits gases, vapors, fumes, or any other irritant or contaminant.

For purposes of this exclusion, drywall includes, but is not limited to any product known as gypsum board, wall board, and plaster board, drywall manufactured outside the United States and used for interior building material.

**2.** With respect to **Contractor's Pollution Legal Liability Insurance** and **Premises Pollution Legal Liability Insurance**, this insurance does not apply to:

**a. Known Circumstances or Conditions**

**(1)** A "pollution condition", "loss" or "claim" known by any insured prior to the endorsement period;

**(2)** A circumstance or condition known by any insured prior to the inception of the endorsement period where an insured should have reasonably foreseen that a "pollution condition", "loss" or "claim" would result.

**b. Employers Liability**

"Bodily injury" to

**(1)** An "employee" of any insured arising out of and in the course of employment by any insured or the performance of duties related to the conduct of any insured's business; or

**(2)** To the spouse (including the domestic partner or civil union partner recognized under the law of any applicable jurisdiction in the "coverage territory"), child, parent, brother or sister of that "employee" as a consequence of (1) above.

This exclusion applies whether any insured may be liable as an employer or in any other capacity

and to any obligation to share damages with or repay someone else who must pay damages as a result of the injury.

This exclusion does not apply to liability assumed by you under an "insured contract", provided that:

**(1)** The "insured contract" is in writing and signed by you;

**(2)** The "pollution condition" first commenced after you signed the "insured contract"; and

**(3)** The "pollution condition" is caused, in whole or in part, by you or those acting on your behalf.

**c. Contractual Liability**

"Loss" for which any insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement This exclusion does not apply to liability for damages:

**(1)** That you would have in the absence of the contract or agreement; or

**(2)** Assumed by you in a contract or agreement that is an "insured contract", provided that:

**(a)** The "insured contract" is in writing and signed by you;

**(b)** The "pollution condition" first commenced after you signed the "insured contract"; and the "pollution condition" is caused, in whole or in part, by you or by those acting on your behalf.

**d. Goods, Products or Materials**

A "pollution condition", "loss" or "claim" arising out of any goods, materials or products manufactured, sold, distributed, designed, handled, supplied, altered, repaired or disposed of by any insured or by others under license or trading under an insured's name.

**e. Intentional Acts**

A "pollution condition", "loss" or "claim" arising out of any actual or alleged:

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 5 of 21**

OGIC000471

**(1)** Intentional disregard of, or non-compliance with, any statute, regulation, ordinance, law or order by or at the direction of any insured or its agent; or

**(2)** Fraudulent, dishonest or malicious conduct by or at the direction of any insured or its agent.

**e. Professional Liability**

A "pollution condition", "loss" or "claim" arising out of the rendering of or failure to render professional services.

**f. Asbestos**

Any "loss", "pollution condition", cost, expense or "claim" which would not have occurred, in whole or in part, but for the actual, alleged or threatened existence of, presence of, inhalation of, ingestion of, use of, handling of, contact with or exposure to asbestos in any form, including products containing asbestos, asbestos fibers, asbestos dust and asbestos containing materials. This exclusion applies regardless of:

**(1)** The cause of the "loss", "pollution condition", cost, expense or "claim", or

**(2)** Whether the "loss", "pollution condition", cost, expense or "claim" is related to any product, services or operations of an insured.

**g. Lead**

Any "loss", "pollution condition", cost, expense or "claim" which would not have occurred, in whole or in part, but for the actual, alleged or threatened existence of, presence of, inhalation of, ingestion of, use of, handling of, contact with or exposure to lead, lead-based paint or any material containing lead or lead-based paint. This exclusion applies regardless of:

**(1)** The cause of the "loss", "pollution condition", cost, expense or "claim"; or

**(2)** Whether the "loss", "pollution condition", cost, expense or "claim" is related to any product,

services or operations of an insured.

**h. Nuclear or Radioactive Waste and Materials**

A "pollution condition", "loss" or "claim" which would have not occurred, in whole or in part, but for the actual, alleged or threatened contact with, exposure to, existence of or presence of any nuclear or radioactive material, waste or condition.

**i. Non-cumulation**

Any "occurrence", "claim", "loss" or "pollution condition", including the same, related, repeated or continuous "pollution condition"(s), that was:

**(1)** Reported to us or an affiliate of us under a endorsement or endorsement issued by us or an affiliate of us prior to the inception of the endorsement period of this endorsement; or

**(2)** Reported to another Insurance company or its agent prior to the inception of the endorsement period of this endorsement.

**j. Insured Versus Insured**

Any "claim" by an insured against another insured.

**k. Related Persons or Organizations**

Any "claim" by a person or organization:

**(1)** That wholly or partially owns, operates, manages or controls any insured;

**(2)** In which any insured has a direct or indirect ownership interest;

**(3)** That is controlled, operated or managed by any insured; or

**(4)** That is an affiliate of any insured;

but this exclusion will not apply to a "claim" made by an "additional insured".

**l. Mold Matter**

A "pollution condition", "loss" or "claim" which would have not occurred, in whole or in part, but for

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 6 of 21**

OGIC000472

the actual, alleged or threatened contact with, exposure to, existence of or presence of any "mold matter".

**m. Communicable Diseases**

Based upon or arising out of the exposure to infected individuals or animals, or contact with bodily fluids of infected individuals or animals.

3. With respect to **Contractor's Pollution Legal Liability Insurance**, this insurance does not apply to:

**a. Transportation**

A "pollution condition", "loss" or "claim" arising out of:

**(1)** The ownership, operation, maintenance, use (including "loading or unloading") or entrustment to others of any "auto", "mobile equipment", aircraft, watercraft, rolling stock or other mode of transportation, including any machinery or apparatus attached thereto or any cargo carried thereby; or

**(2)** Waste or materials transported, removed or taken by anyone beyond the boundaries of the "job site".

Paragraph **(1)** of this exclusion does not apply to a "pollution condition", "loss" or "claim" arising out of the use of an "auto" or "mobile equipment" within the boundaries of a "job site", if such use is solely and directly related to "contracting services".

**b. Faulty Workmanship/Insured's Work**

Any "claim" for or amounts consisting of the cost to repair or replace faulty workmanship, construction, fabrication, installation, assembly, erecting, manufacturing or remediation, if such faulty workmanship, construction, fabrication, installation, assembly, erecting, manufacturing or remediation was performed, in whole or in part, by or on behalf of an insured.

**c. Property**

"Property damage" to:

**(1)** Property that is or was at any time owned, rented or occupied by any insured; or

**(2)** Personal property in the care, custody or control of any insured.

4. With respect to **Professional Legal Liability Insurance**, this insurance does not apply to:

**a. Asbestos**

Arising out of the existence of, require removal or abatement of asbestos, in any form, including but not limited to products containing asbestos, asbestos fibers, asbestos dust and asbestos containing materials.

**b. Lead and Lead-Based Paint**

Arising out of the existence of, required removal or abatement of any lead and/or lead-based paint, in any form, including, but not limited to, products containing lead, lead dust and lead containing materials.

**c. Contractual Liability**

Arising from the insured's:

**(1)** Assumption of liability in a contract or agreement; or

**(2)** Breach of contract or agreement.

This exclusion does not apply to liability that the insured would have in the absence of the contract or agreement.

**d. Discrimination**

Arising from any discrimination on the basis of age, color, race, sex, creed, national origin, marital status, disability or sexual preference, unless such "claim" is based upon or arises out of the failure to make a reasonable accommodation for a disability in violation of the Americans With Disabilities Act 42 U.S.C. 12101, et seq., as amended.

**e. Employer's Liability**

Arising from any injury to:

**(1)** any employee, director, officer, partner or member of any insured or "leased worker" of any insured, if such injury arises in the course of:

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

OGIC000473

**(a)** employment by an insured; or

**(b)** performing duties related to the conduct of an insured's business; or

**(2)** the spouse, child, parent, brother or sister of such employee, director, officer, partner or member of any insured or "leased worker" of the insured, as a consequence of any injury to any of the persons described in Paragraph **(1)**. above.

This exclusion does not apply to liability assumed by the "named insured" in a contract or agreement that is an "insured contract".

**f. Express Warranty and Guaranty**

Arising from any express warranty or guaranty. This exclusion does not apply to any warranty or guarantee by the insured that the insured's "professional services" are in conformity with the standard of care that would be applicable in the absence of such express warranty or guarantee.

**g. Fiduciary Liability**

Arising from any involvement by an insured as:

**(1)** An officer, director, partner, member, trustee, employer or employee of a business enterprise not shown in the SCHEDULE or any charitable organization, or pension, welfare, profit sharing, mutual or investment fund or trust; or

**(2)** A fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto or any other employee benefit plan.

**h. Insurance and Suretyship**

Arising out of the requiring, obtaining, maintaining, advising as to or the failure to require, obtain, maintain or advise as to any form of Insurance, suretyship or bond, either with respect to any insured or any other person or organization.

**i. Insured Versus Insured**

Any "claim" by an insured against another insured. This exclusion does not apply to a "claim" by a "client".

**j. Intentional and Dishonest Acts**

Arising from any

**(1)** Intentional disregard of or non-compliance with, any statute, regulation, ordinance, law or order by or at the direction of the insured or its agent; or

**(2)** Actual or alleged fraudulent, dishonest or malicious conduct by the insured.

This exclusion does not apply to the insured that did not allegedly commit or allegedly participate in committing any of the forgoing described above.

**k. Joint Venture or Co-Venture**

Arising out of an insured's participation in a joint venture or co-venture. This exclusion does not apply to the "named insured's" liability resulting from the rendering or failure to render "contracting services" or "professional services" as a partner or member of a joint venture or co-venture.

**l. Known Circumstances or Conditions**

Arising from:

**(1)** A "claim" or "professional loss" known by a "responsible insured" prior to the inception of the "endorsement period"; or

**(2)** A circumstance or condition known by a "responsible insured" prior to the inception of the "endorsement period" where the "responsible insured" should have reasonably foreseen that a "claim", "pollution condition" or "professional loss" would result.

**m. Mold Matter**

Arising out of the existence of, exposure to, required removal or abatement of "mold matter", in any form including but not limited to any such cause or condition involving the presence, discharge or infiltration of moisture, vapor, water or any other liquid, or any damage

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 8 of 21**

OGIC000474

related thereto. For purposes of this exclusion, "mold matter" means mold, mildew or any type or form of fungus, including myotoxins, spores or by-products produced or released by fungi.

**n. Notices to Previous Insurers**

Arising from any "claim", act, error or omission in "professional services" or other circumstance reported by an insured under any prior endorsement issued by a person or organization other than us.

**o. Off-Site Waste Liability**

Arising out of any waste or materials transported beyond the boundaries of a "job site".

**p. Personal Injury**

Arising from the false arrest, humiliation, harassment, detention, imprisonment, wrongful entry or eviction or other invasion of private occupancy, malicious prosecution, abuse of process, libel, slander, harassment, or other defamatory or disparaging material, or a publication or an utterance in violation of an individual's right of privacy.

**q. Products**

Arising from any goods, materials or products designed, manufactured, sold, handled, distributed and/or supplied by any insured or by others under license or trade name from any insured.

**r. Professional Liability**

Arising out of the rendering of or failure to render professional services by the insured, unless there is a limit of insurance shown on the SCHEDULE for **Professional Legal Liability Insurance**.

**s. Property**

Arising out of:

**(1)** Any real property owned by the "named insured"; or

**(2)** for the repair, replacement or restoration of any personal property in the care, custody or control of the insured, other than

personal property owned or leased by, or in the care, custody or control of, the "client".

**t. Radioactive / Nuclear Material**

Arising out of:

**(1)** The radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof;

**(2)** Ionizing radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the processing or reaction of nuclear fuel;

**(3)** The existence, required removal or abatement of naturally occurring radioactive materials including, but not limited to, radon;

**(4)** High-level radioactive waste (spent nuclear fuel or the highly radioactive waste produced if spent fuel is reprocessed), uranium milling residues and waste with greater than specified quantities of elements heavier than uranium; or

**(5)** Mixed Waste as defined in Title 40 Code of Federal Regulations, Part 266.210; however, this paragraph 5. does not apply to Mixed Waste that contains Waste as defined in Title 10 Code of Federal Regulations, Part 61.2, including, but not limited to the actual, alleged or threatened exposure of any person(s) or property to any such matter.

**u. Retroactive Date**

A "claim" resulting from an act, error, or omission in "professional services" that commenced before the "retroactive date" shown in the **SCHEDULE** of this endorsement.

**v. Related Entities and Individuals**

Arising from a "claim" by an entity or individual

**(1)** that wholly or partially owns, operates or manages an insured;

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

OGIC000475

**(2)** in which an insured has a direct or indirect ownership interest;

**(3)** that is controlled, operated or managed by an insured; or

**(4)** that is an affiliate of an insured;

but this exclusion will not apply to a "claim" made by an "additional insured".

**w. Securities Violation**

Arising from any violation of the Securities Act of 1933 as amended or the Securities Exchange Act of 1934 as amended or any state Blue Sky or securities law or similar State, Federal or other governmental law, statute and any regulation or order issued pursuant to any of the foregoing statutes.

**x. Transportation**

Arising from the ownership, maintenance, use, operation, loading or unloading of any motorized land vehicle, aircraft, watercraft or rolling stock, including any machinery or apparatus attached thereto or any cargo carried thereby, beyond the boundaries of a "job site".

**4.** With respect to **Premises Pollution Legal Liability Insurance**, this insurance does not apply to:

**a. Transportation**

A "pollution condition", "loss" or "claim" arising out of:

**(1)** The ownership, operation, maintenance, use (including "loading or unloading") or entrustment to others of any "auto", "mobile equipment", aircraft, watercraft, rolling stock or other mode of transportation, including any machinery or apparatus attached thereto or any cargo carried thereby; or

**(2)** Waste or materials transported, removed or taken by anyone beyond the boundaries of a "covered location".

**b. Retroactive Date**

A "loss" or "claim" arising out of a "pollution condition" that commenced before the "retroactive date" shown in the **SCHEDULE** of this endorsement. For the purpose

of this exclusion, a "pollution condition" that commenced before the "retroactive date" shown in the SCHEDULE under **Premises Pollution Legal Liability Insurance** of this endorsement includes any dispersal, migration or further movement of such "pollution condition" on or after the "retroactive date".

**c. Divested Property**

Any "claim" or "loss" arising out of "pollution condition" on, at, under or migrating from a "covered location" where the actual or alleged "pollution condition" commenced after the time the "covered location" is sold, given away or abandoned by an insured, or is condemned.

**d. Property**

"Property damage" to:

**(1)** Property that is or was at any time owned, rented or occupied by any insured; or

**(2)** Personal property in the care, custody or control of any insured.

Paragraph **(1)** of this exclusion does not apply to "cleanup costs" because of "environmental damage" caused by a "pollution condition" on, at, under or migrating from a covered location.

**e. Underground Storage Tanks**

A "pollution condition", "loss" or "claim" arising out of the past or current existence of an "underground storage tank" on, at, under or migrating from a "covered location".

**f. Material Change in Use or Operations**

A "pollution condition", "loss" or "claim" arising out of a material change in the use of, or a material change in the operations at, any "covered location" from those set forth by any insured in the Application or related materials as of the inception date of the endorsement period of this endorsement.

**C. Who Is An Insured**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 10 of 21**

OGIC000476

1. Insured means each of the following:

   a. Any "named insured" and any current or former director, partner, member, executive officer, employee or "leased worker" of the "named insured", but solely while acting within the course and scope of his/her duties as such.

   b. Solely with regard to **Contractor's Pollution Legal Liability Insurance**, the "client", but only:

      (1) if the "named insured" is required to include the "client" as an additional insured in a written contract in effect during the endorsement period and signed by the "named insured" prior to the first commencement of the "pollution condition"; and

      (2) with respect to the "client's" vicarious liability resulting from the "named insured's" "contracting services".

      (3) Any Insurance afforded to the "client" under the terms and conditions of this endorsement will be limited to the lesser of the amount of the limits of insurance required by such written contract and the limits of insurance under this endorsement. In no event will we be liable for any amounts in excess of the limits of insurance shown on the SCHEDULE.

      In the event of the insured's bankruptcy, the trustees of the insured and in the event of the insured's death or incapacity, the insured's legal representatives or executors, but only with respect to each such trustee's, representative's or executors' vicarious liability resulting from the "named insured's" "contracting services" or "professional services".

   c. Any "additional insured", but only as respects "claims" against such person or entity for acts, errors or omissions of the "insured".

D. **Limits of Insurance**

   1. The **Endorsement Aggregate Limit** of Insurance shown in the SCHEDULE of this endorsement and the rules below establish the most we will pay regardless of the number of:

      a. Insureds;

      b. "Claim"(s);

      c. Persons or organizations making "claim"(s);

      d. Governmental actions taken with respect to "cleanup costs";

      e. "Pollution condition"(s) or

      f. "Professional loss".

   2. The **Endorsement Aggregate Limit** of Insurance shown in the SCHEDULE of this endorsement is the most we will pay for the sum of all damages, "cleanup costs" and "legal expenses" for which insurance is afforded under **Contractor's Pollution Legal Liability Insurance** for each "pollution condition" and in the aggregate. All "loss" arising out of the same, related, repeated or continuous "pollution condition"(s) shall be deemed to arise out of a single "pollution condition."

   3. The **Endorsement Aggregate Limit** of Insurance shown in the SCHEDULE of this endorsement is the most we will pay for all "professional loss" afforded under **Professional Legal Liability Insurance** for each "professional loss" and in the aggregate. If **Professional Legal Liability Insurance** is not listed as 'included' in the SCHEDULE, then **Professional Legal Liability Insurance** is not afforded. All "professional loss" arising out of the same, related, repeated or continuous act(s), error(s) or omission(s) in rendering or failing to render "professional services" is deemed to arise out of a single act, error or omission.

   4. The **Endorsement Aggregate Limit** of Insurance shown in the SCHEDULE of this endorsement is the most we will pay for all damages, "cleanup costs" and "legal expenses" for which insurance is afforded under **Premises Pollution Legal Liability Insurance** for each "pollution condition" and in the aggregate. All "loss" arising out of the same, related, repeated or continuous "pollution condition"(s) shall be deemed to arise out of a single "pollution condition".

   5. The "Business Interruption" and "Extra Expense" Limit shown in the

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 11 of 21**

OGIC000477

SCHEDULE of this endorsement is the most we will pay for all "business interruption" and "extra expense", including "rental value" for which insurance is afforded under "business interruption" and "extra expense" coverage. This limit is part of and not in addition to the **Endorsement Aggregate Limit** of Insurance.

6. **Insurance Under Multiple Policies**

   a. Notwithstanding anything to the contrary in this endorsement or any other endorsement issued by us or a company affiliated with us, under no circumstances will more than one endorsement issued by us or a company affiliated with us apply to:

      (1) any "loss", "pollution condition" or "professional loss" that occurs or continues through more than one endorsement period of two or more policies (including this endorsement) issued by us or a company affiliated with us; or

      (2) "claim"(s) and "loss"(es) arising out of the same, related, repeated or continuous "pollution condition" or "professional loss".

   b. Subject to paragraph **c.** below, if more than one endorsement issued by us or a company affiliated with us would otherwise apply to any "loss", "pollution condition" or "professional loss" that occurs or continues through more than one endorsement period of two or more policies (including this endorsement) issued by us or a company affiliated with us, the only endorsement that will respond is the endorsement with the earliest inception date. No other endorsement will respond, even if the limits of the endorsement with the earliest inception date have been impacted or exhausted by payment(s) by us.

   c. The most we will pay for the total of all "claim"(s) and "loss"(es) arising out of the same, related, repeated or continuous "pollution condition"(s) or "professional loss"(s) under all policies issued by us or a company affiliated with us is the Each "Pollution Condition" Limit of Insurance or Each "Professional Loss" Limit of Insurance set forth in the endorsement with the earliest inception date of all applicable policies issued by us or a company affiliated with us.

E. **Deductible**

   1. We will not pay any damages, "cleanup costs", "professional loss", "legal expenses", business interruption" or "extra expense" until the amount of damages, "cleanup costs", "professional loss", "legal expenses", "business interruption" or "extra expense" paid by the Named Insured exceeds the applicable deductible shown in the SCHEDULE.

   2. The deductible shall be satisfied by monetary payments by the Named Insured of damages, "cleanup costs", "professional loss", "legal expenses", business interruption" or "extra expense". The Named Insured shall make payments within the deductible to the appropriate parties as designated by us.

   3. The deductible shall not reduce the limit of liability shown in the SCHEDULE.

F. **Conditions**

   1. **Bankruptcy**

      Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this endorsement.

   2. **Legal Action Against Us**

      No person or organization has a right under this endorsement:

      a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

      b. To sue us on this endorsement unless all of its terms have been fully complied with.

      A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this endorsement or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 12 of 21**

OGIC000478

**3. Insurance Under Two or More Coverages**

If Insurance is available under **Contractor's Pollution Legal Liability Insurance, Professional Legal Liability Insurance** or **Premises Pollution Legal Liability Insurance** and also available under "other intra-endorsement Insurance" for the same "loss", damage or injury, our obligations are limited as follows:

**a.** Any Insurance available under **Contractor's Pollution Legal Liability Insurance, Professional Legal Liability Insurance** or **Premises Pollution Legal Liability Insurance** is primary, and there will be no contribution from or concurrent coverage with "other intra-endorsement Insurance" that would otherwise be applicable; and

**b.** Any available "other intra-endorsement Insurance" is excess over any Insurance available under **Contractor's Pollution Legal Liability Insurance, Professional Legal Liability Insurance** or **Premises Pollution Legal Liability Insurance** including amounts within the Deductible shown in the SCHEDULE of this endorsement.

**c.** When "other intra-endorsement Insurance" is excess, we will have no duty under "other intra-endorsement Insurance" to defend you against any "claim" if we have the duty to defend you under **Contractor's Pollution Legal Liability Insurance, Professional Legal Liability Insurance** or **Premises Pollution Legal Liability Insurance.**

**d.** If two or more of this endorsement's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**4. Duties in the Event of an "Occurrence", "Pollution Condition", "Professional Loss", "Loss" or "Claim"**

**a.** No insured will, except at its own cost, voluntarily make a payment, assume any obligation, admit liability, or incur any expense without our prior written consent.

**b.** The insured must see to it that we are notified as soon as practicable of any "occurrence", "pollution condition", "loss" or act, error or omission in "professional services" which may result in a "claim". To the extent possible, notice should include:

**(1)** How, when and where the "occurrence", "pollution condition", "loss" or act, error or omission in "professional services" took place;

**(2)** The names and addresses of any person involved and/or having knowledge of the "occurrence", "pollution condition", "loss" or act, error or omission in "professional services";

**(3)** The "contracting services" that may have caused such "pollution condition"; and

**(4)** The nature of any resulting harm, injury or damage.

**c.** If a "claim" is made or brought against an insured, the insured must:

**(1)** Immediately record the specifics of the "claim" and the date it was received;

**(2)** Notify us as soon as practicable;

**(3)** Provide written notice of the "claim" as soon as practicable;

**(4)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with a "claim";

**(5)** Authorize us to obtain records and other information;

**(6)** Cooperate with us in the investigation, settlement or defense of the "claim"; and

**(7)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "loss" to which the Insurance under this endorsement applies;

**(8)** With respect to **Professional Legal Liability Insurance**, the

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 13 of 21**

OGIC000479

insured must also provide the date and details of all actual and alleged acts, errors or omissions in "professional services" which took place, along with the specific nature, date and extent of any injury or damage which has been sustained, copies of any contracts that have been entered into by any insured that are related to the "professional services" and details explaining how the "insured" first became aware of the circumstance.

**d.** In the case of a "pollution emergency", the insured must report any claim or potential claim as soon as practicable by contacting us at the telephone number specified in the SCHEDULE.

**5. Concealment, Misrepresentation or Fraud**

This endorsement is void in any case of fraud by you as it relates to this endorsement at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This endorsement;

**b.** The "covered location";

**c.** Your interest in the "covered location"; or

**d.** A "claim" under this endorsement.

**6. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this endorsement at any time during the endorsement period and up to three years afterward.

**7. Liberalization**

If we adopt any revision that would broaden the coverage under this endorsement without additional premium within 45 days prior to or during the endorsement period, the broadened coverage will immediately apply to this endorsement.

**8. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this endorsement has rights to recover

damages from another, those rights are transferred to us to the extent of our payment. If the insured has rights to recover all or part of any payment we have made under this endorsement, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. Subrogation**

In the event of any payment under this endorsement, we will be subrogated to all of the insured's rights of recovery against any person or organization and the insured will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured will do nothing at any time to prejudice our subrogation rights. However, we waive our right(s) of recovery against any person or organization if and to the extent the "named insured" has agreed to waive its right(s) of recovery against such person or organization in a written contract signed by the "named insured" prior to:

**a.** The first commencement of a "pollution condition" out of which the "claim" arises under **Contractor's Pollution Legal Liability Insurance**, or

**b.** The act, error or omission in "professional services" out of which the "claim" arises under **Professional Legal Liability Insurance**.

**G. Definitions**

**1.** "Additional insured" means any person or entity that the insured has agreed in writing to add as an "additional insured" under the Endorsement, prior to the commission of any act for which such person or entity would be provided coverage under the endorsement, but only to the extent the insured would have been liable and coverage would have been afforded under the terms and conditions of the endorsement had such "claim" been made against the "insured".

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 14 of 21**

OGIC000480

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle Insurance or motor vehicle registration law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Automatic Extended reporting period" means the 90 day period of time set forth under the Extended Reporting Periods section

**4.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.** "Business Interruption" means the sum of the following:

**a.** Net income, which is net profit, if any, that would have been earned before taxes (or if there is a net loss before taxes, the net loss is deducted), and

**b.** Continuing normal operating expenses incurred excluding payroll not deducted in a. above,

due to the reasonably and necessary suspension of the insured's operations during the "period of restoration" at a "covered location".

**6.** "Claim" means a lawsuit or governmental action alleging legal liability on the part of the insured.

**7.** "Cleanup costs" means

**a.** reasonable and necessary costs, charges and expenses incurred, with our prior written consent, in the investigation, assessment, removal, disposal, abatement, containment, treatment, remediation (including the associated testing and monitoring) or neutralization of a "pollution condition", to the extent required by "environmental laws", required by a "licensed site professional" or required to satisfy the insured's obligations under a federal or state cleanup program;

**b.** Reasonable and necessary fees charged by an attorney designated or consented to by us incurred in connection with any such "cleanup costs";

**c.** Reasonable and necessary "restoration costs";

**d.** Reasonable and necessary "mitigation costs"; and/or;

**e.** Reasonable and necessary expenses incurred to respond to an imminent and substantial endangerment to the public health or welfare or to the environment because of a "pollution condition"; provided that, as a condition precedent to coverage, the "named insured" shall forward written notice to us of any action taken and expense incurred pursuant to this section as soon as practicable after any such "cleanup costs" have been incurred or assumed.

**8.** "Client" means the person or organization that directly hires the "named insured", by written contract signed by the "named insured", to render "contracting services" and for whom the "named insured" renders such services.

**9.** "Commencement date" means the date listed under "commencement date" on the SCHEDULE for each applicable coverage.

**10.** "Contracting services" means those contracting operations performed by you or on your behalf as disclosed to us as of the inception of the endorsement period, or as disclosed to us during the endorsement period and approved by us, in writing, in our sole and absolute discretion.

**11.** "Coverage territory" means the United States and its territories and possessions.

**12.** "Covered location" means each location shown in the SCHEDULE of this endorsement and all newly acquired locations during the endorsement period which are disclosed to us in writing during the endorsement period.

**13.** "Damages" means a monetary judgment, award or settlement. The term "damages" shall not include or mean:

**a.** future profits, restitution, disgorgement of unjust enrichment or profits by an insured, or the costs of complying with orders granting injunctive or equitable relief;

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 15 of 21**

OGIC000481

**b.** return or offset of fees, charges, or commissions charged by or owed to an insured for goods or services already provided or contracted to be provided;

**c.** taxes or loss of tax benefits;

**d.** fines, sanctions or penalties;

**e.** punitive or exemplary damages, or any damages which are a multiple of compensatory damages, unless insurable by law in any applicable venue that most favors coverage for such punitive, exemplary or multiple damages;

**f.** discounts, coupons, prizes, awards or other incentives offered to the insured's customers or clients;

**g.** liquidated damages, but only to the extent that such damages exceed the amount for which the insured would have been liable in the absence of such liquidated damages agreement; or

**h.** any amounts for which the insured is not liable, or for which there is no legal recourse against the insured.

**14.** "Deductible period" means the period of time that begins at the date and time that the we receive and record written notice of the necessary suspension of the insured's operations due to a "pollution condition" on, at, under or migrating from the a "covered location" and ends within the time frame shown on the SCHEDULE.

**15.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**16.** "Environmental damage" means the injurious presence in or upon land, the atmosphere, or any watercourse or body of water of "pollutants".

**17.** "Environmental laws" means any federal, state, provincial or local laws, including but not limited to statutes, rules, regulations, ordinances, guidance documents, and governmental, judicial or administrative orders and directives that are applicable to "pollution conditions" to which this Endorsement applies.

**18.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution,

bylaws or any other similar governing document.

**19.** "Extra Expense" means the necessary expenses incurred by the insured, over and above the insured's continuing normal operating expenses, during the "period of restoration", that the insured would not have incurred had there been no "pollution condition" discovered at the "covered location", provided that the expenses are incurred to avoid or minimize the suspension of business and to continue operations:

**a.** at the "covered location", or

**b.** at replacement or temporary location(s), including:

**(1)** relocation expenses; and

**(2)** cost to equip and operate the replacement or temporary location(s).

Subject to the terms and conditions of this endorsement, we will pay no more for "extra expenses" than the percentage shown below multiplied by the Limit of Insurance stated in the SCHEDULE. If the "period of restoration" is:

**a.** 30 days or less, the percentage applied to the Limit of Liability shall be 40%;

**b.** 31-60 days, the percentage applied to the Limit of Liability shall be 80%;

**c.** 61 days or more, the percentage applied to the Limit of Liability shall be 100%.

**20.** "Field changes to design" includes but is not limited to, when a contractor discovers a minor physical job situation that makes it imprudent or impossible to complete the task, from the existing contract documents, the contractor then adjusts the job task, using practical construction knowledge, which does not inhibit the quality of the project, and leads to a field solution. This definition does not include any design that is required to be done by a licensed architect or engineer, and it does not include design related to construction means, methods, or jobsite safety precautions.

**21.** "Insured contract" mans that party of any written contract or written agreement under which the "named

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 16 of 21**

OGIC000482

insured" assume the tort liability of another party to pay compensatory damages for "loss" to a third person or organization, provided that such written contract or written agreement is signed by the "named insured" prior to the "loss". Tort liability means a liability that would be imposed by law in the absence of any contract or agreement. However, "insured contract" does not include any tortious conduct that would otherwise not be covered by this endorsement, nor if the tortious conduct was solely that of the person or persons for whom such liability under the insured contract was assumed.

22. "Job site" means the location where the "contracting services" are being performed. "Job site" does not include any location which currently is or was, at the time the insured or subcontractor working directly or indirectly on the insured's behalf were working on the location, owned, rented, used or occupied by the insured.

23. "Leased worker" means a person leased to the insured, by a labor leasing firm under an agreement between the insured and the labor leasing firm to perform duties related to the conduct of the insured's business.

24. "Legal expenses" means reasonable and necessary legal fees, charges and expenses incurred in the investigation and defense of a "claim", provided such costs, charges and expenses are authorized by us. "Legal expenses" does not include any expense that is incurred by an insured in assisting in the investigation, defense or resolution of a "claim".

25. "Licensed site professional" means a licensed environmental scientist or engineer that is in good standing with, and acting under the authority of federal, state, provincial or local laws for the purpose of addressing "pollution conditions" at a "covered location".

26. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

27. "Loss" means "bodily injury", "property damage" or "environmental damage".

28. "Mitigations costs" means expenses incurred to clean up or mitigate a "pollution condition" resulting from a "pollution emergency" at a "covered location" or covered "job site", as required by a federal or state regulatory agency, prior to the initiation of a formal "claim" against the insured. "Mitigation costs" may only be covered with our prior approval and if notification of such "pollution condition" is provided as soon as practicable. "Mitigation costs" will not be covered where the "pollution condition" does not result in a "claim" or where the "pollution condition" would not otherwise be covered under the terms and conditions of this endorsement. "Mitigation expenses" shall not exceed $25,000.00 and are subject to and will reduce the aggregate limit of liability**. Refer to Paragraph F, 4. Duties in the Event of an "Occurrence", "Pollution Condition", "Professional Loss", "Loss" or "Claim"** for information on "pollution emergency" reporting.

29. "Mold matter" means mold, mildew or any type or form of fungus, including mycotoxins, spores or by-products produced or released by fungi.

30. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, on which are permanently mounted:

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 17 of 21**

OGIC000483

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle Insurance or motor vehicle registration law where they are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle Insurance law or motor

vehicle registration law are considered "autos".

**31.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**32.** "Optional Extended reporting period" means the 1-year period of time set forth under the Extended Reporting Periods section

**33.** "Other intra-endorsement Insurance" means insurance provided under the terms of the endorsement other than the **Premises Pollution Legal Liability Insurance**, **Contactor's Pollution Legal Liability Insurance** or **Professional Legal Liability Insurance** afforded by this endorsement.

**34.** "Period of restoration" means the period of time that begins after the "deductible period" and ends when the "covered location(s)" should be restored to operation with reasonable speed and quality or when business activities resume at the new permanent location. The expiration date of this endorsement will not reduce the "period of restoration", nor shall the "extended reporting period" extend it.

**35.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**36.** "Pollution condition" means the discharge, dispersal, release, escape, seepage or migration of "pollutants" into or upon land, the atmosphere, or any watercourse or body of water.

**37.** "Pollution emergency" means any "pollution condition" where immediate action is required to respond to a potential or actual "claim".

**38.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 18 of 21**

OGIC000484

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**39.** "Professional loss" means:

**a.** A monetary judgment, award or settlement of compensatory damages;

**b.** "Legal expenses" associated with the above paragraph.

"Professional loss" does not include:

**a.** Civil or criminal fines and penalties;

**b.** Punitive, exemplary or multiplied damages;

**c.** Injunctive or equitable relief;

**d.** The return of fees or charges for services rendered;

**e.** Costs and expenses incurred by the "insured" to redo, change, supplement or fix the "insured's" work or services, including redesign; or

**f.** Any of the "insured's" overhead, mark-up, or profit.

**40.** "Professional Services" means those activities listed under Professional Services in the SCHEDULE that are rendered by or on behalf of the "named insured".

**41.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this Insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**42.** "Rental Value" means the loss of any anticipated rental income the insured would have earned during the "period of restoration" by renting all or a portion of the "covered location(s)" to a third party not owned by, affiliated with, or connected in any way to the insured, less any rental income the insured actually earned or could have earned during the "period of restoration" by renting all or a portion of the "covered location(s)" or by making use of other

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 19 of 21**

OGIC000485

property. "Rental value" does not apply to any loss included in the definition of "business interruption" and "extra expense".

43. "Responsible insured" means any officer, director, partner, member, manager, supervisor or foreman of any insured of any employee of an insured that has responsibility, in whole or in part, for risk control, risk management, health and safety or environmental affairs, control or compliance.

44. "Restoration costs" means expenses required to restore, repair or replace real or personal property to substantially the same condition it was in prior to being damaged during the course of responding to a "pollution condition" to which this endorsement applies. These costs will not exceed the actual cash value of such real or personal property immediately prior to such damage, or include costs associated with improvements or betterments. Actual cash value shall mean the cost to replace such real or personal property, immediately prior to such damage, minus the accumulated depreciation of the real or personal property.

45. "Retroactive date" means the date listed under "Retroactive date" on the SCHEDULE for each applicable coverage.

46. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this Insurance applies. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

47. "Transportation" means the movement of waste or material by "auto" or "mobile equipment" (including "loading or unloading") provided that the person or entity transporting the waste or material is properly licensed to transport such waste or material by "auto" or "mobile equipment".

48. "Underground storage tank" means a stationary container or vessel, including the associated piping connected thereto, which is ten percent (10%) or more beneath the surface of the ground and is:

a. Constructed primarily of non-earthen materials; and

b. Designed to contain any substance.

49. "Value engineering" means an organized effort directed at analyzing designed building features, systems, equipment, and material selections for the purpose of achieving essential functions at the lowest life cycle cost consistent with required performance, quality, reliability, and safety.

50. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

51. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

---

OGIC000486

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

**H. Extended Reporting Periods**

With respect to **Premises Pollution Legal Liability Insurance** or **Professional Legal Liability Insurance**:

**a.** You are entitled to an automatic ninety (90) day "automatic extended reporting period", commencing on the last day of the endorsement period. The ninety (90) day "automatic extended reporting period" applies to a "claim" first made during the endorsement period and reported to us, in writing, during the ninety (90) day "automatic extended reporting period". The ninety (90) day "automatic extended reporting period" applies only if we cancel or non-renew the **Professional Legal Liability Insurance** or the **Premises Pollution Legal Liability Insurance** for a reason other than non-payment of premium, non-payment of deductible, fraud or misrepresentation.

**b.** Upon non-renewal or cancellation of this endorsement for any reason except the non-payment of premium, the insured will have the right to purchase, for one hundred percent (100%) of the expiring annual premium, an "optional extended reporting period" of twelve (12) months. Coverage provided by such "optional extended reporting period" will only apply to "claims" first made against any insured during the endorsement period and reported to us, in writing, during the "optional extended reporting period", and arising out of any act, error or omission committed on or after the "retroactive date" and before the end of the endorsement period. In order for the insured to invoke the "optional extended reporting period", the payment of the additional premium for the must be paid to us within 60 days of the termination of this endorsement.

**c.** The purchase of the "optional extended reporting period" will in no way increase the Endorsement Aggregate Limit of Liability or any sublimit of liability. At the commencement of the "optional extended reporting period". the entire contribution will be deemed earned, and in the event the insured terminates the "optional extended reporting period" for any reason prior to its natural expiration, we will not be liable to return any contribution paid for the "optional extended reporting period"

---

Includes copyrighted material of
Insurance Services Office, Inc. with its permission.

**CG 72 02** 07 21
**Page 21 of 21**

OGIC000487

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES - CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY

This endorsement modifies insurance provided under the following:

CONTRACTOR'S PROFESSIONAL AND POLLUTION LEGAL LIABILITY FORM

**SECTION IV. INSURANCE, H. Extended Reporting Periods,** paragraph **b.** is replaced by the following:

1.  Upon non-renewal or cancellation of this endorsement for any reason, the insured will have the right to purchase, for one hundred percent (100%) of the expiring annual premium, an " optional extended reporting period" of twelve (12) months. Coverage provided by such "optional extended reporting period" will only apply to "claims" first made against any insured during the endorsement period and reported to us, in writing, during the "optional extended reporting period", and arising out of any act, error or omission committed on or after the "retroactive date" and before the end of the endorsement period. In order for the insured to invoke the "optional extended reporting period", the payment of the additional premium for the must be paid to us within 60 days of the termination of this endorsement.

**CG 72 19** 05 21

Page **1** of **1**

OGIC000488

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION-
# FOODBORNE ILLNESS EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training, or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of a communicable disease; or

**d.** Failure to report a communicable disease to authorities.

This exclusion does not apply to any foodborne illness arising out of contact with or consumption of a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2**. **Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training, or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of a communicable disease; or

**d.** Failure to report a communicable disease to authorities.

This exclusion does not apply to any foodborne illness arising out of contact with or consumption of a good or product intended for bodily consumption.

---

Includes copyrighted material of
Insurance Service Office, Inc., with its permission

**CG 72 30** 07 22
Page 1 of 1

# EXHIBIT

# "8"



June 29, 2026

**Via Certified Mail, Return Receipt Requested and E-Mail (**<u>burdettexteriors@gmail.com</u>
& michaeljburdett1@gmail.com**)**

Mike Burdett Roofing and Exteriors LLC
3420 Horton Rd
Newtown Square, PA 19073-3418
c/o Mike Burdett

> **Re:** ***Kelly Stewart and Mackenzie Hickey v. Reed Court Apts, LLC v. Richard***
> ***S. Fleming v. Burdett Roofing and Exteriors, LLC***, **pending in the Court of**
> **Common Pleas of Delaware County, PA, Case No. CV-2025-001561**

| | |
|---|---|
| **Insurer:** | Old Guard Insurance Company |
| **Claim No.:** | 0002735785 |
| **Named Insured:** | Mike Burdett Roofing and Exteriors, LLC |
| **Policy Nos.:** | CWP 179385Y (policy period 10/08/2021 to 10/08/2022) |
| | CWP 179385Y (policy period 10/08/2022 to 10/08/2023) |
| | CWP 179385Y (policy period 10/08/2023 to 10/08/2024) |
| | CWP 179385Y (policy period 10/08/2024 to 10/08/2025) |
| | CWP 179385Y (policy period 10/08/2025 to 10/08/2026) |

## COVERAGE DETERMINATION AND RESERVATION OF RIGHTS

Dear Mr. Burdett:

I am writing on behalf of Old Guard Insurance Company ("Old Guard") to advise Mike Burdett Roofing and Exteriors, LLC ("Burdett Roofing") of Old Guard's coverage determination under the above-referenced insurance policies (the "Old Guard Policies") with respect to a civil action captioned, *Kelly Stewart and Mackenzie Hickey v. Reed Court Apts, LLC v. Richard S. Fleming v. Burdett Roofing and Exteriors, LLC*, pending in the Court of Common Pleas of Delaware County, PA, Case No. CV-2025-00156 (the "Lawsuit").

**I write to you as the person authorized to address insurance coverage issues on behalf of Burdett Roofing.  If you are not that person, <u>please let me know</u> immediately, and please provide me with the name and contact information of the appropriate person to whom this and other insurance-related communications should be directed**.

1



I write to advise you that, based upon the information available Old Guard, and for the reasons set forth in detail below, **Old Guard offers to provide a defense to Burdett Roofing under for the claims asserted against it in the Underlying Action, subject to a full and complete reservation of its rights, as set forth in detail below.** This defense will be provided under the Old Guard Policies effective for the policy periods of 10/08/2021 to 10/08/2022, and 10/08/2022 to 10/08/2023.

**However, Old Guard does not believe that it owes any coverage to Burdett Roofing due to the below-described Fungi Or Bacteria Exclusion (form CG 21 67 12 04). As such, while Old Guard offers to provide Burdett Roofing with a defense (under a full reservation of rights), Old Guard also asks that Burdett Roofing withdraw its tender and agree that Old Guard has no obligation to defend or indemnify Burdett Roofing, and thus also agree that Old Guard may withdraw from Burdett Roofing's defense (such that Burdett Roofing either will retain other counsel to substitute in to defend Burdett Roofing in place of counsel assigned by Old Guard, or Burdett Roofing will make arrangements with currently assigned counsel to pay that counsel going forward).**

**Should Burdett Roofing <u>not</u> agree that Old Guard has no duty to defend or indemnify Burdett Roofing as to the Underlying Action, and not agree to make arrangements to allow Old Guard to withdraw from Burdett Roofing's defense, Old Guard reserves all rights to withdraw its defense and/or file a declaratory judgment or other action seeking a ruling from a court that Old Guard has no duty to defend or indemnify Burdett Roofing, and thus that Old Guard may withdraw from Burdett Roofing's defense.**

Meanwhile, until such time as Burdett Roofing advises Old Guard of Burdett Roofing's response to the above request, Old Guard has retained the following defense counsel to represent and protect the interests of Burdett Roofing in the Underlying Action:

> Samuel Garson, Esq.
> Fowler, Hirtzel, McNulty & Spaulding, LLC
> Three Logan Square
> 1717 Arch Street, Suite 1310
> Philadelphia, PA 19103
> (215) 789-4844
> SGarson@fhmslaw.com

Should Burdett Roofing accept Old Guard's offer to defend, we request that Burdett Roofing provide the assigned defense counsel with its full cooperation. Please feel free to contact defense counsel directly with any questions.

2



In addition to the counsel assigned by Old Guard, Burdett Roofing is entitled to retain its own counsel, at its own expense, to work with assigned defense counsel for purposes of protecting against liability that may not be covered under the Old Guard Policies. **Since the Lawsuit asserts claims and seeks damages for which there may be no coverage owed under the Old Guard Policies, Burdett Roofing may also wish to retain separate counsel (at its own expense) to represent their interests.**

Old Guard's defense of Burdett Roofing is subject to a full and complete reservation of all of Old Guard's rights and defenses, including the right to deny or limit coverage (both defense and indemnity) to Burdett Roofing under the Old Guard Policies (and any other applicable policy) for the claims and damages asserted in the Underlying Actions, as set forth in detail below. Among other things, Old Guard reserves the right to file a declaratory judgment action, or other claim, seeking declaratory relief in order to obtain a declaration of the rights and obligations of the parties under the Old Guard Policies. Old Guard also reserves the right to withdraw its defense upon a determination (by Old Guard or a court) that Old Guard does not owe Burdett Roofing a duty to defend. Should the Lawsuit proceed to trial, it may be necessary to seek an allocated decision/verdict using a special verdict sheet to identify what portion of the verdict (and resulting judgment), if any, is allocable to damages that are not covered by the Old Guard Policies. In addition, special interrogatories may be necessary to resolve factual issues that affect the availability of coverage under the Old Guard Policies. Old Guard reserves all rights in connection with pursuing a special verdict sheet, special interrogatories, and/or other proceedings to achieve these objectives.

What follows is a discussion of Old Guard's coverage determination and reservation of rights for the claims asserted against Burdett Roofing in the Lawsuit. If you have any questions or believe this discussion to be incomplete or incorrect, please let us know as soon as possible. Similarly, if you disagree with any statements set forth below or have any additional information or material that you would like Old Guard to consider, please let us know. Without waiver of our rights, Old Guard will consider any additional information you provide.

## I.      FACTUAL BACKGROUND

### A.      The Complaint Filed By Plaintiffs In The Underlying Action

The Underlying Action was initiated by the filing of a Writ of Summon by Plaintiffs Kelly Stewart and Mackenzie Hickey on or about March 23, 2025. Plaintiffs filed a Complaint against Reed Court and Richard S. Fleming on or about November 4, 2025. Plaintiffs filed a Second Amended Complaint on or about January 12, 2026. The Second Amended Complaint remains the operative Complaint in the Underlying Action.

Plaintiffs in the Second Amended Complaint generally allege to have incurred damages related to mold exposure in their apartments in the Reed Court. Plaintiffs allege Richard



S. Fleming is the sole owner, managing member, and governor of Reed Court. There are no allegations directed against Burdett Roofing in the Second Amended Complaint. As more specifically alleged by Plaintiffs:

21. Plaintiffs, Kelly Stewart and Mackenzie Hickey, have been tenants at the Apartment Complex since September 2019 and first resided in a second floor apartment ("E-2") before moving into the first floor apartment below it ("E-1") in or about September 2023.

\* \* \*

24. Beginning in or about September 2021, Ms. Stewart first notified Mr. Fleming that water was infiltrating her bedroom ceiling and she was told that it would be taken care of by Defendant Reed Court.

\* \* \*

31. Likewise, Plaintiff repeatedly notified Mr. Fleming that she thought there was mold growing in her ceiling and bathroom and expressed her fear that it could cause health complications for her due to her emphysema.

32. Defendants denied that there was any mold, however, and took no actions to have E-2 inspected for mold or to remediate the mold in E-2.

\* \* \*

34. In November 2022, Plaintiffs provided a letter to Defendants from Ms. Hickey's primary care physician notifying them that she was suffering from chronic sinusitis and that the conditions in E-2 were not acceptable and needed to be remediated immediately. Attached hereto as Exhibit "D" and incorporated is a true and correct copy of the letter from Ms. Hickey's primary care physician dated November 25, 2022.

35. In March 2023, Ms. Stewart provided a letter from her allergist, Dr. Dossumbekova, to Defendants informing them that Ms. Stewart has chronic breathing problems, that mold is a known toxin that can cause breathing problems, asthma, and chronic sinusitis, and recommending that Defendants have E-2 professionally cleaned to remove the mold. Attached hereto as Exhibit "E" and incorporated is a true and correct copy of the letter from Dr. Dossumbekova dated March 6, 2023.

36. In or about May 2023, Defendants finally screwed a rough-cut patch of drywall over the open hole in her bedroom ceiling but left large gaps so that the bedroom continued to be exposed to the water intrusion and the mold in the rafters. Likewise, Defendants never remediated the plainly

4



WESTFIELD™

visible mold in the bedroom, the rafters, on the drywall, in the bathroom, or from any other locations in E-2 where it was now visibly growing on the walls along with pockets of water trapped in between the paint and drywall.

\*     \*     \*

39. In July 2023, Ms. Stewart provided a second letter from her allergist, Dr. Dossumbekova, to Defendants informing them that Ms. Stewart has chronic breathing problems, that mold is a known toxin that can cause breathing problems, asthma, and chronic sinusitis, and recommending that that Defendants have E-2 professionally cleaned to remove the mold.

\*     \*     \*

41. Despite repeatedly notifying Defendants of the leak in her bedroom, the mold forming throughout E-2, the health problems Plaintiffs were suffering, and providing them with videos and photos of the deteriorating conditions in the apartment, Defendants intentionally delayed abating the water intrusion, repairing and remediating the damage and mold in order to avoid spending money and maximizing their profit from Unit E-2. See, Ex. C.

\*     \*     \*

45. On September 5, 2023, Plaintiffs provided Defendants with Dr. Perez's Report documenting airborne levels of Aspergillus/Penicillium spores that rendered E-2 unfit and inhabitable for continued occupation due to the severe damage and hazardous health conditions caused by the unabated mold growth, requested alternative accommodations to mitigate her damages, and demanded the claim be reported to their insurance carrier. See, Notice of Intent to Sue dated September 5, 2023 attached hereto as Exhibit "I."

\*     \*     \*

48. Ms. Stewart had asked Defendants on multiple occasions if they could move into Unit E-1, which had been vacant for some time, but Defendants refused to transfer the Lease because they had it listed for rent at a much higher amount than Plaintiffs' rent.

49. Unfortunately, it soon became clear to Plaintiffs that E-1, although freshly painted, was also unfit and uninhabitable due to unabated mold growth and active water intrusion

5



WESTFIELD™

*      *      *

54. On August 26, 2024, Plaintiffs provided Defendants with Dr. Perez's Follow-up Report documenting airborne levels of Aspergillus/Penicillium spores that rendered E-1 unfit and inhabitable for continued occupation due to the severe damage and hazardous health conditions caused by the unabated mold growth, and Plaintiffs requested alternative accommodations. See, Notice of Intent to Sue dated August 26, 2024 attached hereto as Exhibit "L."

55. In response, Defendants did absolutely nothing – they failed to conduct a mold inspection, remediate the dangerous levels of mold identified in Dr. Perez's Follow-up Report, and ignored Ms. Stewart's repeated notifications of her health problems.

With respect to damages, Plaintiffs allege:

63. During the course of their tenancy, Ms. Stewart was compelled to discard the following personal property due to mold growth: bedding including two queen bed pillow tops; 2 queen box springs; couches; one lamp; one nightstand; one dresser; and clothing of both Plaintiffs.

*      *      *

73. Since March of 2022, Ms. Stewart has suffered from a number of health issues either exacerbated by or caused by her mold exposure including Hashimoto's thyroiditis, various gastroenterological maladies, chronic bronchitis, chronic cough, asthma, worsening emphysema, chronic rhinitis, multiple drug allergies, alcohol allergy, throat pain, thrush, various cysts and masses in her throat and neck, cervicalgia, fatigue, weight gain, headaches, hair loss, fevers, brain fog, odynophagia, chronic GERD, and dysphagia.

74. Since March of 2022, Ms. Stewart has been prescribed numerous medications to treat and suppress the symptoms of the aforementioned health issues either exacerbated by or caused by her mold exposure and will continue to take those medications for the foreseeable future.

*      *      *

76. Since October 2022, Ms. Hickey has likewise suffered from health issues either exacerbated by or caused by her mold exposure including

6



fevers, sore throat, congestion, swollen lymph nodes, joint pain, neck and throat pain, fatigue, headaches, and chronic sinusitis.

Based on the foregoing and other allegations in the Complaint, Plaintiffs have alleged causes of action against Reed Court and Mr. Fleming for:

- Breach of implied warranty of habitability (Count I);

- Breach of contract (Count II);

- Negligence (Count III);

- Intentional infliction of emotional distress (Count IV);

- Unfair and deceptive trade practices (Count V); and

- Unjust enrichment (Count VI).

### B.    The Joinder Complaint Filed By Reed Court and Richard S. Fleming

By way of a Joinder Complaint filed on or about March 23, 2026 by Reed Court and Mr. Fleming, Burdett Roofing was joined to the Lawsuit.  In their Joinder, Reed Court and Mr. Fleming "incorporate be reference the factual averments contained in Plaintiffs' Second Amended Complaint…."

As alleged by Reed Court and Mr. Fleming, Burdett Roofing purportedly entered into a contract with Reed Court to repair the roof of Plaintiffs' apartment building.  Despite Burdett Roofing installing new roofs, the apartments at Reed Court purportedly "continued to experience water infiltration."  As alleged by Reed Court and Mr. Fleming:

14. In March and April of 2022, Mike Burdett installed new roofs for buildings A-F at Reed Court.

15. After the installation was completed, Reed Court continued to experience water infiltration.

16. Reed Court contacted Burdett on several occasions to fix the water infiltration problem, but Burdett failed to properly remediate the roof to cure the water infiltration problem.

17. Defendants ultimately had to contract with another roofing company to have the roof properly replaced.

Based on the foregoing and other allegations in the Joinder Complaint, Reed Court and Mr. Fleming set forth causes of action against Burdett Roofing for:



- Negligence (Count I);

- Breach of contract (Count II);

- Contribution (Count III); and

- Indemnification (Count IV).

### C.    The Agreement Between Burdett Roofing and Reed Court

Old Guard is also in possession of an unsigned written agreement purportedly entered between Reed Court and Burdett Roofing on March 8, 2022 (the "Agreement"). The Agreement was attached to Reed Court and Mr. Fleming's Joinder Complaint against Burdett Roofing as Exhibit "B".  It is Old Guard's understanding that the Agreement governed the relationship between Reed Court and Burdett Roofing with respect to Burdett Roofing's work at the subject apartment complex.  **If that understanding is incorrect, and there is some other relevant written agreement, please let us know, and please provide us with a copy of said written agreement.**

Moreover, it is Old Guard's understanding that Burdett Roofing retained Northeast Contractors as a subcontractor, and that Northeast Contractors in fact performed all of the work described in the Agreement between Burdett Roofing and Reed Court.  It is further Old Guard's understanding that there is not a written agreement between Burdett Roofing and Northeast Contractors with respect to said work.  **If Old Guard's understanding with respect to any of the foregoing is incorrect, please let us know.**

## II.    THE OLD GUARD POLICIES

Old Guard issued the below-described five (5) Old Guard Policies consecutively, ranging in dates from October 8, 2021 to October 8, 2026:

- CWP 179385Y (policy period 10/08/2021 to 10/08/2022) (hereinafter the "2021-2022 Policy");

- CWP 179385Y (policy period 10/08/2022 to 10/08/2023) (hereinafter the "2022-2023 Policy");

- CWP 179385Y (policy period 10/08/2023 to 10/08/2024) (hereinafter the "2023-2024 Policy");

- CWP 179385Y (policy period 10/08/2024 to 10/08/2025) (hereinafter the "2024-2025 Policy"); and

- CWP 179385Y (policy period 10/08/2025 to 10/08/2026) (hereinafter the "2025-2026 Policy").



The Old Guard Policies provide certain commercial general liability ("CGL") coverage subject to a $1,000,000 each occurrence limit, a $2,000,000 general aggregate limit (other than products/completed-operations), and a $2,000,000 million products/completed-operations aggregate limit.

III. **OLD GUARD'S COVERAGE DETERMINATION AND RESERVATION OF RIGHTS**

A. **The Old Guard Policies Only Provide Coverage For "Bodily Injury" And/or "Property Damage" In Limited Circumstances**

Among other things, the Old Guard Policies provide certain CGL coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Specifically, the Old Guard Policies provide, in part, on form CG 00 01 04 13:

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

9



**b.** This insurance applies to "bodily injury" and "property damage" only if:

  **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

  **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

The Old Guard Policies contain the following definitions for "bodily injury", "occurrence" and "property damage":

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

*  *  *

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*  *  *

17. "Property damage" means:

  a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

  For the purposes of this insurance, electronic data is not tangible property.

10



As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CDROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Pursuant to the Damage To Your Work endorsement contained in each of the Old Guard Policies, the following language is added to the Policies' insuring agreement:

> f. Damages because of "property damage" include damages the insured becomes legally obligated to pay because of "property damage" to "your work" and shall be deemed to be caused by an "occurrence", but only if:
>
> > (1) The "property damage" is the result of work performed on your behalf by a subcontractor(s) that is not a Named Insured;
> >
> > (2) The work performed by the subcontractor(s) is within the "products-completed operations hazard"; and
> >
> > (3) The "property damage" is unexpected or unintended from the standpoint of the insured.
>
> We will not be obligated to pay any sums to repair or replace the defective work performed on your behalf by a subcontractor.

As applicable here, the Old Guard Policies only provide coverage for, among other things, "those sums that the insured becomes legally obligated to pay as damages because of … 'bodily injury' or 'property damage' to which this insurance applies."  The Old Guard Policies provide certain coverage for damages because of "bodily injury" and/or "property damage" if, among other things, such "bodily injury" and/or "property damage" occurred during the policy period and the injury was caused by an "occurrence" (as defined in the Old Guard Policies).

While Old Guard recognizes that Plaintiffs allege to have suffered "bodily injury" and "property damage", Old Guard reserves all rights to deny coverage to the extent Plaintiffs do not seek damages caused by an "occurrence" (defined as an "accident…").  As noted above, Plaintiffs have alleged causes of action for breach of the implied warranty of habitability (Count I), breach of contract (Count II), intentional infliction of emotional distress (Count IV), and unfair and deceptive trade practices (Count V); Reed Court and Mr. Fleming have also alleged a breach of contract claim against Burdett Roofing (Count II of the Joinder).  To the extent Plaintiffs and/or Reed Court and Mr. Fleming seek to hold Burdett Roofing liable in connection with such causes of action, Old Guard reserves all rights to deny coverage for those claims and for any judgment or settlement associated with those claims to the extent such causes of action do not involve accidental conduct or an "occurrence" as defined in the Old Guard Policies.

11



Old Guard also does not owe coverage to the Burdett Roofing to the extent that the Lawsuit does not seek the recovery of, and an insured is not legally obligated to pay, damages because of "bodily injury" or "property damage" as such terms are defined in the Policies.  Thus, for instance, to the extent that the Plaintiffs and/or Reed Court and Mr. Fleming seek recovery of purely economic damages (not because of any "bodily injury" and/or "property damage"), fees and costs, and/or punitive damages, Old Guard reserves all rights to further limit or deny coverage for that relief to the extent it does not constitute damages because of "bodily injury" or "property damage".

Moreover, for there to be any coverage under any of the Old Guard Policies, it must be the case that the bodily injury or property damage occur during the relevant policy period. Here, Reed Court alleges that Burdett Roofing completed its work in March and April 2022, and that water intrusion continued into Plaintiffs' apartments notwithstanding Burdett Roofing's work.  Plaintiffs allege that Ms. Stewart has suffered from mold-related health issues since March 2022, and that Ms. Hickey has suffered from mold-related issues since October 2022.  These allegations aver that the damage and injury at issue first occurred in 2022.  **Accordingly, to the extent there is coverage under any of the Old Guard Policies (which Old Guard believes it does not owe for the reasons set forth further below), only the 2021-2022 Policy (and perhaps the 2022-2023 Policy if Ms. Hickey's mold-related health issues first became apparent after October 8, 2022) would be triggered.  <u>Old Guard therefore denies any obligation to provide coverage (whether defense or indemnity) to Burdett Roofing under the 2023-2024 Policy, the 2024-2025 Policy, and the 2025-2025 Policy.</u>**  Old Guard reserves all rights to deny further limit or deny coverage under the 2022-2023 Policy should it be determined Ms. Hickey's mold-related health issues manifested prior to October 8, 2022.   The remainder of this letter discusses the 2021-2022 Policy and 2022-2023 Policy only, unless otherwise stated.

## B.    Fungi Or Bacteria Exclusion

The 2021-2022 Policy and the 2022-2023 Policy (as well as the other Old Guard Policies) contain the Fungi Or Bacteria Exclusion (form CG 21 67 12 04), **which Old Guard believes applies to preclude coverage for Burdett Roofing in relation to the Underlying Action**.  In pertinent part, the Fungi Or Bacteria Exclusion states that the insurance does not apply to:

**Fungi Or Bacteria**

a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its

12



contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

The Fungi Or Bacteria Exclusion defines "fungi" as follows:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

As applicable here, it appears that **all of Plaintiffs' alleged damages (both "bodily injury" and "property damage"), would not have occurred, in whole or in part, but for the actual or alleged inhalation, ingestion of, contact with, exposure to, existence of, or presence of, any mold on or within the Plaintiffs' apartments at Reed Court**. As it relates to any alleged "bodily injury", by way of example (and not as limitation) both Plaintiffs allege to have suffered "health issues either exacerbated by or caused by her mold exposure…." Plaintiffs also allege that they provided Reed Court and Mr. Fleming with multiple reports from their doctors notifying those Defendants that Plaintiffs were suffering from mold-related conditions. Plaintiffs also purportedly provided Reed Court and Mr. Fleming with reports authored by industrial hygienist Dr. Hernando Perez. In his reports, Dr. Perez opines that the Plaintiffs were exposed to Aspergillus/Penicillium while living in their apartments at Reed Court. There are no allegations contending that Plaintiffs suffer from some "bodily injury" unrelated to mold exposure.

As it relates to any alleged "property damage", by way of example (and not as limitation), Plaintiffs allege that "Ms. Stewart was compelled to discard the following personal property *due to mold growth*: bedding including two queen bed pillow tops; 2 queen box springs; couches; one lamp; one nightstand; one dresser; and clothing of both Plaintiffs". There are no allegations contending that Plaintiffs incurred any alleged "property damage" unrelated to mold exposure.

While Old Guard recognizes that Plaintiffs allege water intrusion into their apartments, it appears that any such water instruction is directly related to the complained-of mold exposure. Indeed, Plaintiffs' hygienist Dr. Perez opined that, "The mold growth in Ms.

13



Stewart's residence is a direct result of inadequate response to water intrusion into the space." We emphasize that the Fungi Or Bacteria Exclusion applies "regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage"; therefore, in harmony with this language in the Fungi Or Bacteria Exclusion, **mold must be excluded as a cause of Plaintiffs' alleged damages for there to be any coverage under the Old Guard Policies**. As discussed *supra.*, Plaintiffs allege all their damages would not have occurred, in whole or in part, but for the actual or alleged inhalation, ingestion of, contact with, exposure to, existence of, or presence of, any mold on or within the Plaintiffs' apartments at Reed Court.

**Accordingly, Old Guard believes that it owes no coverage to Burdett Roofing under the 2021-2022 Policy or the 2022-2023 Policy (or any of the other Old Guard Policies) on account of the Fungi Or Bacteria Exclusion.**

**<u>To the extent you disagree with this determination, we ask that you identify any allegations or alleged damages which are not attributable to mold exposure</u>.** Without waiver of rights, Old Guard will consider any additional information you provide. Old Guard otherwise reserves all rights to further limit or deny coverage pursuant to the Fungi Or Bacteria Exclusion.

### C.      <u>Exclusion b. Contractual Liability May Further Restrict Coverage</u>

The 2021-2022 Policy and the 2022-2023 Policy contain Exclusion b. Contractual Liability, which excludes coverage for:

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution

14



proceeding in which damages to which this insurance applies are alleged.

The 2021-2022 Policy and the 2022-2023 Policy contain a modified definition for "insured contract" (as modified by form CG 24 26 04 13), excerpted below in pertinent part:

"Insured contract" means:

\*       \*       \*

    f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

The 2021-2022 Policy and the 2022-2023 Policy do not provide coverage for liability assumed by (unless such liability is for another's tort liability assumed by Burdett Roofing in an "insured contract", which the Lawsuit does not allege). Here, it is alleged that Burdett Roofing's liability is based on its contractual undertakings, specifically at Count II of the Joinder Complaint. To the extent that Burdett Roofing's liability is based on its contractual obligations, Old Guard reserves all rights to further deny coverage for Count II (or any other Count) to the extent that this exclusion may apply.

### D.    Punitive Damages

Plaintiffs Kelly Stewart and Mackenzie Hickey specifically seek the recovery of punitive damages in the Lawsuit. Old Guard reserves all rights to further limit or deny coverage for any punitive damages to the extent such damages do not constitute damages because of "bodily injury" and/or "property damage", are excluded by a policy provision, and/or are precluded from coverage by applicable public policy.

### E.    Pennsylvania Changes – Defense Costs

The 2021-2022 Policy and the 2022-2023 Policy contain the Pennsylvania Changes – Defense Costs endorsement (form IL 01 20 10 13). That endorsement provides, in pertinent part:

15



If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims ("claims"), for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

As set forth above, there may be no coverage for Burdett Roofing under the Old Guard Policies for the claims set forth in the Lawsuit. As such, Old Guard reserves all rights to seek reimbursement for any defense costs incurred in defending Burdett Roofing in the Lawsuit pursuant to the foregoing endorsement.

### F. Other Insurance

The Old Guard Policies also have other insurance provisions which provide that the insurance available under the Policies may be impacted by other valid and collectible insurance. Old Guard reserves all rights to further limit or deny coverage under its Policies based on the other insurance provisions.

**To the extent that you have not already done so, please tender the coverage of Burdett Roofing to any other insurer(s) that may provide coverage to Burdett Roofing, whether as a named insured, additional insured or other insured, for the claims and damages asserted in the Lawsuit.** Old Guard reserves all rights to further limit or deny coverage to the extent that Burdett Roofing fails to timely tender this matter to any other insurer or party that may be obligated to provide insurance coverage to Burdett Roofing.

### IV. CONCLUSION

As described herein, Old Guard offers to provide a defense to Burdett Roofing in the Lawsuit, subject to a full and complete reservation of its rights. Old Guard reserves all of its rights to limit or deny coverage as set forth above. Old Guard specifically reserves the right to limit or deny coverage pursuant to the Fungi Or Bacteria Exclusion.

**Please let me know whether you will agree to withdraw your tender and agree that Old Guard has no obligation to defend or indemnify Burdett Roofing based on the Fungi Or Bacteria Exclusion, or whether you wish to accept use of Old Guard's proffered defense counsel.**

Old Guard reserves the right to modify its coverage position as additional information comes to light, including the right to rely upon any additional defenses based upon any

16



terms, conditions and/or exclusions contained in the Old Guard Policies and/or pursuant to applicable law. Old Guard specifically reserves the right to file a declaratory judgment against Burdett Roofing with respect to its rights and duties under the Old Guard Policies. Old Guard further reserves its rights to later deny a duty to defend and to withdraw from Burdett Roofing's defense. Old Guard also reserves its rights to further limit or deny coverage based upon any terms, conditions, provisions, and exclusions in the Old Guard Policies, whether specifically discussed herein or not. The Old Guard Policies are incorporated as if set forth at length.

If you feel that we are incorrect in our assessment of the coverage issues discussed herein, if you have questions, comments, or objections regarding the contents of this letter, or if you desire to discuss further the content of this letter or the claim in general, please feel free to contact me.

Sincerely,

Old Guard Insurance Company

Chris Schmehl, AIC
Casualty Litigation Claim Specialist

Cc:     Brandon Insurance Group
        409 Main St
        Harleysville, PA 19438-2353

17